No. 24-10084

---

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

RANI BOLTON, ALISON MERCKER, JAMES ARMSTRONG, MELISSA SUTER, and BENJAMIN LYMAN, individually and as representatives of a class of participants and beneficiaries on behalf of the INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC. EMPLOYEE STOCK OWNERSHIP PLAN,

*Plaintiffs-Appellants,*

v.

INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC., JOEL KNOX, BILL DEMMOND, CHRIS ROSENBERGER, LES SCHNEIDER, JAMES R. URBACH, and the INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC. ESOP COMMITTEE,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the Northern District of Georgia
Hon. Leigh Martin May
No. 1:22-cv-04602-LMM

---

**PRINCIPAL BRIEF FOR PLAINTIFFS-APPELLANTS**

---

Andrew D. Schlichter
Sean E. Soyars
Alexander L. Braitberg
SCHLICHTER BOGARD & DENTON LLP
100 S. Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115

Attorney for Plaintiffs-Appellants

*Rani Bolton, et al. v. Inland Fresh Seafood Corp. of Am., Inc., et al.*, No. 24-10084

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

Pursuant to Fed. R. App. P. 26.1(a), the undersigned hereby certifies that none of the Plaintiffs-Appellants are corporate parties.

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1(a), the following is an alphabetical list of all known trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. André, Julian L. (Attorney for the Inland Fresh Appellees)

2. Armstrong, James (Appellant)

3. Becker, Theodore M. (attorney for the Inland Fresh Appellees)

4. Bolton, Rani (Appellant)

5. Bradley Arant Boult Cummings LLP (law firm of Appellee James R. Urbach's counsel)

6. Braitberg, Alexander L. (attorney for Appellants)

7. Demmond, Bill (Appellee)

8. Elliot, John Hartshorn (attorney for Appellee James R. Urbach)

9. Faegre Drinker Biddle & Reath LLP (law firm of Appellee James R. Urbach's counsel)

*Rani Bolton, et al. v. Inland Fresh Seafood Corp. of Am., Inc., et al.*, No. 24-10084

10. Hogarth, Sarah (Attorney for the Inland Fresh Appellees)

11. Holley, William J., II (attorney for Appellee James R. Urbach)

12. Inland Fresh Seafood Corporation of America, Inc. (Appellee)

13. Inland Fresh Seafood Corporation of America, Inc. ESOP Committee (Appellee)

14. Knox, Joel (Appellee)

15. Lea, Heather (attorney for Appellants)

16. Lyman, Benjamin (Appellant)

17. May, Leigh Martin (United States District Judge)

18. McDermott Will & Emery LLP (law firm of the Inland Fresh Appellees' counsel)

19. Mercker, Allison (Appellant)

20. Oliver, Paul (attorney for the Inland Fresh Appellees)

21. Pearl, Richard J. (attorney for Appellee James R. Urbach)

22. Rosenberger, Chris (Appellee)

23. Schlichter, Andrew D. (attorney for Appellants)

24. Schlichter Bogard LLP (law firm of Appellants' counsel)

25. Schneider, Les (Appellee)

26. Soyars, Sean E. (attorney for Appellants)

27. Suter, Melissa (Appellant)

*Rani Bolton, et al. v. Inland Fresh Seafood Corp. of Am., Inc., et al.*, No. 24-10084

28. Swift, Currie, McGhee & Hiers LLP (law firm of Appellants' local counsel)

29. Taticchi, Mark D. (attorney for Appellee James R. Urbach)

30. Urbach, James R. (Appellee)

31. Wimberly Lawson Steckel Schneider & Stine, PC (law firm of the Inland Fresh Appellees' counsel)

32. Wolff, Bradley S. (local counsel for Appellants)

33. Zweigel, Scott Eric (attorney for Appellee James R. Urbach)

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants request oral argument. This appeal raises important legal questions concerning the propriety of the federal judiciary's use of a judge-made, policy-based doctrine to prevent plaintiffs from exercising explicit statutory rights granted by Congress, as well as the proper scope of exceptions to that doctrine. Plaintiffs-Appellants respectfully submit that oral argument will assist the Court in addressing these important questions.

# TABLE OF CONTENTS

Statement Regarding Oral Argument ....................................................... i

Table of Citations ............................................................................ iv

Jurisdictional Statement.................................................................... 1

Introduction ................................................................................. 2

Statement of the Issues .................................................................... 3

Statement of the Case ..................................................................... 4

    A.  Statutory background ............................................................ 4

    B.  Factual background ............................................................. 10

    C.  Procedural history .............................................................. 14

Summary of the Argument ............................................................... 18

Standard of Review ........................................................................ 20

Argument................................................................................... 21

    I.  ERISA does not require participants to exhaust a plan's administrative remedies before filing a civil action alleging statutory—rather than plan-based—violations. ........................... 21

        A.  Most courts of appeals have rejected an exhaustion requirement for claims alleging statutory violations................................... 21

        B.  This Court's exhaustion requirement for statutory claims has been undermined to the point of abrogation by the Supreme Court. ....................................................................... 24

    II.  Because exhaustion is not an element of any claim for liability, ERISA plaintiffs are not required to plead exhaustion in a complaint. ...... 33

    III.  The Plan excused any exhaustion requirement by affirmatively stating that participants "need not" file an administrative claim. .............. 36

    IV.  Plaintiffs plausibly alleged exceptions to the exhaustion requirement, to the extent that was required. .................................................. 39

        A.  The Court should clarify that an administrative remedy is inadequate when the plan cannot provide the relief sought................. 40

        B.  The Company told Plaintiffs to go straight to federal court. ............... 44

        C.  Exhaustion would have been futile. ...................................... 46

V.  The district court erred in denying Plaintiffs' request for a stay instead of dismissal under the circumstances of this case...........................49

VI. Even if the district court properly dismissed the action, the district court erred in not specifying dismissal was without prejudice. .................51

Conclusion....................................................................................................54

Certificate of Compliance.............................................................................55

Certificate of Service....................................................................................55

Addendum .....................................................................................................56

29 U.S.C. §§ 1001, 1109, 1113, 1132, 1133 (excerpts) ....................................56

# TABLE OF CITATIONS

## Cases

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004) ............................................................................4

*Amaro v. Cont'l Can Co.*,
  724 F.2d 747 (9th Cir. 1984)..............................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................39

*Babicz v. Sch. Bd. of Broward Cnty.*,
  135 F.3d 1420 (11th Cir. 1998)..........................................................20

*Bickley v. Caremark Rx, Inc.*,
  461 F.3d 1325 (11th Cir. 2006)............................................38, 48, 52

*Blankenship v. Metro. Life Ins. Co.*,
  644 F.3d 1350 (11th Cir. 2011)..........................................................46

*Bourgeois v. Pension Plan for the Emples. of Santa Fe Int'l Corps.*,
  215 F.3d 475 (5th Cir. 2000)..............................................................34

*Bryant v. Rich*,
  530 F.3d 1368 (11th Cir. 2008)..........................................................51

*California v. Sierra Club*,
  451 U.S. 287 (1981) ..........................................................................31

*Caperton v. A. T. Massey Coal Co.*,
  556 U.S. 868 (2009) ..........................................................................47

*Chailland v. Brown & Root, Inc.*,
  45 F.3d 947 (5th Cir. 1995)..........................................................24, 41

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011) ......................................................................5, 13

*Costantino v. TRW, Inc.*,
  13 F.3d 969 (6th Cir. 1994)..........................................................24, 38

*Counts v. Am. Gen. Life & Accident Ins. Co.*,
  111 F.3d 105 (11th Cir. 1997)............................................................25

*Curry v. Contract Fabricators, Inc. Profit Sharing Plan*,
  891 F.2d 842 (11th Cir. 1990)............................................................48

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995) ........................................................................36

*Dupree v. Owens*,
92 F.4th 999, 2024 U.S. App. LEXIS 2742 (11th Cir. 2024) ...........53

*Fallick v. Nationwide Mut. Ins. Co.*,
162 F.3d 410 (6th Cir. 1998).............................................................5

*Felder v. Casey*,
487 U.S. 131 (1988) ...........................................................25, 27, 28

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ..................................................................7, 11

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) ...........................................................18, 29, 31

*Griffin v. SunTrust Bank, Inc.*,
648 F. App'x 962 (11th Cir. 2016).....................................................41

*Hansberry v. Lee*,
311 U.S. 32 (1940) ........................................................................48

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
530 U.S. 238 (2000) ...................................................7, 10, 29, 31, 32

*Harrison v. Dig. Health Plan*,
183 F.3d 1235 (11th Cir. 1999)...........................................................6

*Harzewski v. Guidant Corp.*,
489 F.3d 799 (7th Cir. 2007)............................................................36

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
571 U.S. 99 (2013) ...........................................5, 6, 7, 13, 21, 36, 50

*Held v. Mfrs. Hanover Leasing Corp.*,
912 F.2d 1197 (10th Cir. 1990)....................................................22, 24

*Hitchcock v. Cumberland Univ. 403(b) DC Plan*,
851 F.3d 552 (6th Cir. 2017)...................................................8, 21, 23, 38

*Hutchinson v. Wickes Cos.*,
726 F. Supp. 1315 (N.D. Ga. 1989) ...................................................52

*Isaiah v. JPMorgan Chase Bank, N.A.*,
960 F.3d 1296 (11th Cir. 2020).................................................20, 49

*Jones v. Bock*,
549 U.S. 199 (2007) ..................................3, 16, 18, 25, 27, 33, 34, 35

v

*Kross v. Western Electric Co.*,
   701 F.2d 1238 (7th Cir. 1983)................................................................24

*La Ley Recovery Sys.-OB, Inc. v. Unitedhealthcare Ins. Co.*,
   No. 14-23400, 2015 U.S. Dist. LEXIS 5799 (S.D. Fla. Jan. 7, 2015) ..............52

*LaGrasta v. First Union Sec., Inc.*,
   358 F.3d 840 (11th Cir. 2004)................................................................33

*Lanfear v. Home Depot, Inc.*,
   536 F.3d 1217 (11th Cir. 2008)................................................................20, 36

*LaRue v. DeWolff, Boberg & Assocs.*,
   552 U.S. 248 (2008) ................................................................8

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
   507 U.S. 163 (1993) ................................................................27, 34

*Lee v. Blue Cross Blue Shield of Ala.*,
   No. 19-1895, 2020 U.S. Dist. LEXIS 174654 (N.D. Ala. Sep. 23, 2020) .........52

*Lee v. Blue Cross/Blue Shield of Ala.*,
   10 F.3d 1547 (11th Cir. 1994)................................................................39

*Mason v. Cont'l Grp.*,
   474 U.S. 1087 (1986) (White, J., dissenting from denial of certiorari) ............21

*Mason v. Cont'l Grp.*,
   763 F.2d 1219 (11th Cir. 1985)................................8, 24, 25, 28, 30, 32, 50

*Mass. Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985) ................................................................4, 8, 29, 30, 31

*Melech v. Life Ins. Co. of N. Am.*,
   739 F.3d 663 (11th Cir. 2014)................................................................5

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ................................................................7, 29, 31

*Metro. Life Ins. Co. v. Glenn*,
   554 U.S. 105 (2008) ................................................................46

*Metro. Life Ins. Co. v. Price*,
   501 F.3d 271 (3d Cir. 2007)................................................................34

*Milofsky v. Am. Airlines, Inc.*,
   442 F.3d 311 (5th Cir. 2006) (en banc)................................................................22

*Nachman Corp. v. Pension Benefit Guaranty Corp.*,
446 U.S. 359 (1980) ...................................................................31

*Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emple. Benefit Plan*,
160 F.3d 1301 (11th Cir. 1998) ..........................................6

*Paese v. Hartford Life & Accident Ins. Co.*,
449 F.3d 435 (2d Cir. 2006) ...............................................34

*Patsy v. Board of Regents of Fla.*,
457 U.S. 496 (1982) .......................................................25, 28, 29

*Perez v. Sturgis Public Schools*,
598 U.S. 142 (2023) ..............................................................41

*Perrino v. S. Bell Tel. & Tel. Co.*,
209 F.3d 1309 (11th Cir. 2000) ........................25, 40, 41, 47

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41 (1987) ..................................................................4

*Powell v. Sch. Bd.*,
86 F.4th 881 (11th Cir. 2023) ...............................................41

*Reetz v. Lowe's Cos., Inc.*,
No. 18-75, 2021 U.S. Dist. LEXIS 195803 (W.D.N.C. Oct. 12, 2021) ............49

*Renfroe v. Nationstar Mortg., LLC*,
822 F.3d 1241 (11th Cir. 2016) ............................................45

*Rodriguez v. United States*,
480 U.S. 522 (1987) ..............................................................29

*Sec'y of Labor v. Preston*,
873 F.3d 877 (11th Cir. 2017) .................................................9

*Smith v. Sydnor*,
184 F.3d 356 (4th Cir. 1999) .............................................6, 22

*Springer v. Wal-Mart Associates' Grp. Health Plan*,
908 F.2d 897 (11th Cir. 1990) .......................................25, 46, 47

*Stephens v. Pension Benefit Guar. Corp.*,
755 F.3d 959 (D.C. Cir. 2014) .......................................6, 21, 23, 43

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015) ..............................................................11

*Trujillo v. Conover & Co. Communs., Inc.*,
221 F.3d 1262 (11th Cir. 2000) ..............................................20

*United States DOJ v. Landano*,
   508 U.S. 165 (1993) ................................................................33

*United States v. Archer*,
   531 F.3d 1347 (11th Cir. 2008) ...............................................24

*United States v. Files*,
   63 F.4th 920 (11th Cir. 2023) ..................................................24

*US Airways, Inc. v. McCutchen*,
   569 U.S. 88 (2013) ...................................................................36

*Variety Children's Hosp. v. Century Med. Health Plan*,
   57 F.3d 1040 (11th Cir. 1995) .................................................52

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ............................................................10, 29

*Wallace v. Oakwood Healthcare, Inc.*,
   954 F.3d 879 (6th Cir. 2020) .....................................................2

*Watts v. BellSouth Telecomms., Inc.*,
   316 F.3d 1203 (11th Cir. 2003) ..................27, 34, 38, 39, 40, 44, 45

*Wilczynski v. Lumbermens Mut. Cas. Co.*,
   93 F.3d 397 (7th Cir. 1996) ................................................35, 40

*Wilson v. Kimberly-Clark Corp.*,
   254 F. App'x 280 (5th Cir. 2007) (unpublished) ......................43

*Witt v. Metro. Life Ins. Co.*,
   772 F.3d 1269 (11th Cir. 2014) .............................................7, 50

*Wyatt v. Terhune*,
   315 F.3d 1108 (9th Cir. 2003) ..................................................51

*Yates v. Symetra Life Ins. Co.*,
   60 F.4th 1109 (8th Cir. 2023) .....................................................5

*Zipf v. AT&T*,
   799 F.2d 889 (3d Cir. 1986) .............................................8, 22, 23

**Statutes**

28 U.S.C. § 1331 ............................................................................1

29 U.S.C. § 1001(b) .............................................................2, 4, 30, 32

29 U.S.C. § 1002(16)(A)(i) ...........................................................11

29 U.S.C. § 1002(21)(A) ...............................................................11

29 U.S.C. § 1002(34)........................................................................11

29 U.S.C. § 1002(7)............................................................................4

29 U.S.C. § 1002(8)............................................................................4

29 U.S.C. § 1022..............................................................................13

29 U.S.C. § 1102(a)......................................................................11, 13

29 U.S.C. § 1104(a)(1)........................................................................7

29 U.S.C. § 1106................................................................................7

29 U.S.C. § 1109(a)..........................................................7, 31, 37, 42

29 U.S.C. § 1113..........................................................9, 10, 19, 50, 53

29 U.S.C. § 1132(a)(1)(B)..........................................................5, 23, 41

29 U.S.C. § 1132(a)(2)..........................................................1, 3, 7, 31, 37

29 U.S.C. § 1132(a)(3)........................................................................9

29 U.S.C. § 1132(e)(1)..........................................................1, 5, 8, 10, 45

29 U.S.C. § 1132(e)(1)......................................................................44

29 U.S.C. § 1132(f).............................................................................1

29 U.S.C. § 1133................................................................5, 8, 22, 28, 32

29 U.S.C. §1132(a).............................................................................4

42 U.S.C. § 1983..............................................................................28

**Rules**

Fed. R. App. P. 35(a).........................................................................24

Fed. R. Civ. P. 12(d).........................................................................39

Fed. R. Civ. P. 8(a)(2).......................................................................34

Fed.R.App.P. 4(a)(1)(A).......................................................................1

**Other**

Brief for Petitioners, 2006 U.S. S. Ct. Briefs LEXIS 726 *Jones v. Bock*, 549
    U.S. 199 (2007) (No. 05-7058).......................................................34

Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L.
    Rev. 527 (1947)..........................................................................26

U.S. Const., Art. III, § 1.....................................................................42

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) and (f) because this action arises under the Employee Retirement Income Security Act (ERISA), and is brought under 29 U.S.C. § 1132(a)(2).

This Court has jurisdiction under 28 U.S.C. § 1291 over the final judgment entered by the district court on December 5, 2023. A255 (Doc. 56).[1] Plaintiffs timely noticed their appeal on January 3, 2024. A256 (Doc. 59); Fed. R. App. P. 4(a)(1)(A).

---

[1] Citations in the form "A__" are to the pages of the Appendix. "Doc." refers to the district court ECF Document Number.

**INTRODUCTION**

"It is troubling to have no better reason for a rule of law than that the courts made it up for policy reasons. Yet that seems to be the case with ERISA's exhaustion requirement. Federal courts should reconsider when—or even whether—it's legitimate to apply this judge-made doctrine." *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 900 (6th Cir. 2020) (Thapar, J., concurring).

This appeal does not ask the Court to reconsider whether it is *ever* legitimate to apply an exhaustion requirement to ERISA claims. Rather, Plaintiffs merely seek a ruling that would align this circuit's law with that of virtually every other court of appeals to consider the issue. While the circuits have uniformly required exhaustion of claims challenging a denial of benefits under the terms of an ERISA plan, most they have held that no such exhaustion requirement applies to claims alleging a violation of ERISA's fiduciary duties or other statutory violations. This Court should reconsider its contrary precedent, which is inconsistent with the Supreme Court's exhaustion precedent and repeated admonition against tampering with ERISA's comprehensive civil enforcement scheme.

Congress' stated objective in enacting ERISA was to ensure that employees harmed by a breach of fiduciary duty would have "ready access to the Federal courts." 29 U.S.C. § 1001(b). Congress granted retirement-plan participants a right to bring suit in a representative capacity on behalf of their plans to seek monetary

and equitable relief for a breach of fiduciary duty. 29 U.S.C. § 1132(a)(2) and (a)(3). The judge-made exhaustion requirement contradicts those statutory rights. But even if it is appropriate to require exhaustion in fiduciary breach cases generally, Plaintiffs were excused from exhaustion under the specific facts of this case, or at least entitled to a stay pending exhaustion rather than dismissal. The Court should reverse the district court's dismissal on exhaustion grounds and remand for further proceedings on the merits of Plaintiffs' claims.

## STATEMENT OF THE ISSUES

1. Whether a plan participant must exhaust a plan's administrative remedies before commencing a civil action alleging a violation of ERISA's statutory obligations.

2. To the extent claims alleging violations of ERISA are subject to an exhaustion requirement, whether ERISA plaintiffs are obligated to plead exhaustion in the complaint despite the Supreme Court's holding that exhaustion generally is an affirmative defense that a plaintiff need not address to satisfy Rule 8(a)(2). *Jones v. Bock*, 549 U.S. 199, 211–17 (2007).

3. Whether the plan's affirmative statement that participants "need not" file an administrative claim excused them from doing so.

4. Whether Plaintiffs plausibly alleged other grounds to excuse exhaustion, to the extent they were required to affirmatively rebut a potential exhaustion defense.

3

5. Whether the district court erred in denying Plaintiffs' request for a stay instead of dismissal under the circumstances.

6. Whether the district court erred in not specifying that the dismissal on grounds of failure to exhaust administrative remedies was without prejudice.

## STATEMENT OF THE CASE

### A.    Statutory background

Congress enacted ERISA to protect "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b).[2] An "essential tool[] for accomplishing" ERISA's protective purposes is its comprehensive enforcement framework. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987); *see Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). That framework is designed to provide employees with "appropriate remedies . . . and ready access to the Federal courts." 29 U.S.C. § 1001(b). To that end, ERISA sets forth "six carefully integrated civil enforcement provisions" in 29 U.S.C. § 1132(a). *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). Three of these cover the types of claims that are often brought by participants in ERISA-covered plans.

**1. Denial-of-benefits claims.** Under ERISA § 502(a)(1)(B), a participant may

---

[2] A "participant" is "any employee or former employee . . .  who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). This is "a contract-based cause of action." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998). For example, an individual may allege that an insurer wrongfully denied coverage for medically necessary healthcare or disability benefits. *See, e.g., Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 665–66, 670 (11th Cir. 2014) (§ 502(a)(1)(B) claim challenging denial of long-term disability benefits). The plaintiff's entitlement to benefits depends on the language of the plan. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011) (explaining that § 502(a)(1)(B) requires enforcing the contract as written). State and federal courts have "concurrent jurisdiction" over such actions. 29 U.S.C. § 1132(e)(1).

"The courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013). The exhaustion requirement for § 502(a)(1)(B) claims "finds its genesis" in 29 U.S.C. § 1133. *Yates v. Symetra Life Ins. Co.*, 60 F.4th 1109, 1112 (8th Cir. 2023). That provision requires "every employee benefit plan" to afford "any participant *whose claim for benefits has been denied*" a reasonable opportunity "for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2) (emphasis added). Although this provision does not expressly

mandate exhaustion, courts have reasoned that it would be "anomalous" for "Congress to require plans" to include such procedures if participants were not required to utilize them. *Smith v. Sydnor*, 184 F.3d 356, 364 (4th Cir. 1999); *Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 964 (D.C. Cir. 2014) ("The exhaustion doctrine effectuates Congress's purpose in requiring that benefit plans provide for administrative review procedures by ensuring those internal remedial procedures are utilized.").

ERISA does not contain "a statute of limitations for filing suit under § 502(a)(1)(B)." *Heimeshoff*, 571 U.S. at 102, 105. "Thus, courts borrow the most closely analogous state limitations period," unless "the parties have contractually agreed upon a limitations period" in the ERISA plan. *Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emple. Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998). Because a denial-of-benefits claim under § 502(a)(1)(B) is essentially a breach of contract claim, courts have almost uniformly "held that a suit for ERISA benefits pursuant to section 502(a)(1)(B) should be characterized as a contract action for statute of limitations purposes." *Harrison v. Dig. Health Plan*, 183 F.3d 1235, 1240–41 (11th Cir. 1999). Generally, the limitations period for § 502(a)(1)(B) claims begins to run when the claim accrues, which does not occur until the plaintiff has exhausted administrative remedies and the plan has issued a final denial of benefits. *See Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1275–76 (11th

Cir. 2014). Although the parties can agree to a limitations period that begins to run before accrual, an "unreasonably short" contractual limitation is unenforceable. *Heimeshoff*, 571 U.S. at 106, 109.

**2. Fiduciary-breach claims.** ERISA accomplishes its protective purposes through "strict standards of trustee conduct . . . derived from the common law of trusts," including fiduciary duties of loyalty and prudence. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014). The statute requires fiduciaries to discharge their plan-related duties "solely in the interest of the participants" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(A)–(B). Congress supplemented those general fiduciary duties by categorically barring certain "prohibited transactions" with a high potential for abuse. *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241–42 (2000); *see* 29 U.S.C. § 1106.

"Section 409(a), 29 U.S.C. § 1109(a), makes fiduciaries liable for breach of these duties, and specifies the remedies available against them," including damages, restitution, and other equitable relief. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252 (1993). The second of ERISA's civil enforcement provisions, § 502(a)(2), 29 U.S.C. § 1132(a)(2), "allows the Secretary of Labor or any plan

7

beneficiary, participant, or fiduciary to bring a civil action 'for appropriate relief under section [409]." *Id.* at 252–53 (quoting 29 U.S.C. § 1132(a)(2)). The remedies in a § 502(a)(2) action are plan remedies; the plaintiff proceeds "in a representative capacity on behalf of the plan as a whole." *Russell*, 473 U.S. at 142 n.9. Although participants harmed by a fiduciary breach will benefit indirectly if money is restored to the plan, the statute "does not provide a remedy for individual injuries distinct from plan injuries." *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008). Federal courts have "exclusive jurisdiction" over § 502(a)(2) actions. 29 U.S.C. § 1132(e)(1).

Most circuits have held, in conflict with this Court, "that ERISA plan participants or beneficiaries do not need to exhaust internal remedial procedures before proceeding to federal court when they assert statutory violations of ERISA." *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017) (joining the Third, Fourth, Fifth, Ninth, Tenth, and D.C. Circuits); *cf. Mason v. Cont'l Grp.*, 763 F.2d 1219, 1226–27 (11th Cir. 1985). These courts reason that ERISA's "provision relating to internal claims and appeals procedures, Section 503, refers only to procedures regarding claims for *benefits*'" that have been denied. *Hitchcock*, 851 F.3d at 564 (quoting *Zipf v. AT&T*, 799 F.2d 889, 891 (3d Cir. 1986)); *see* ERISA § 503(2), 29 U.S.C. § 1133(2) (requiring plans to "afford a reasonable opportunity to any participant whose *claim for benefits has been denied*

for a full and fair review by the appropriate named fiduciary") (emphasis added).

ERISA itself contains a limitations period for breach of fiduciary duty claims. 29 U.S.C. § 1113 ("Limitation of actions" provision applies to claims alleging "a fiduciary's breach of any" duty or other statutory violation). In general, such actions must be commenced within "six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. § 1113(1). This is a statute of repose because the time limit is based upon "a specified time *since the defendant acted*" and not "the date when *the claim accrued*." *Sec'y of Labor v. Preston*, 873 F.3d 877, 883 (11th Cir. 2017) (quoting Black's Law Dictionary 1636–37 (10th ed. 2014)). While statutes of repose generally are not subject to equitable tolling, *id*. at 884–85, ERISA provides for tolling "in the case of fraud or concealment." 29 U.S.C. § 1113.[3]

**3. "Catchall" claims.** Third, plan participants may bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan," or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). The Supreme Court has

---

[3] The general six-year repose period can be shortened to three years if the plaintiff has "actual knowledge" of the breach. 29 U.S.C. § 1113(2). Defendants have not argued that Plaintiffs had such knowledge.

9

construed § 502(a)(3) as a "catchall" or "safety net" provision, "offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). For instance, because §§ 409(a) and 502(a)(2) expressly provide only for "fiduciary" liability, they do not provide an adequate remedy against a non-fiduciary who participates in an ERISA violation. But non-fiduciaries are subject to liability under § 502(a)(3), which "admits of no limit . . . on the universe of possible defendants." *Harris Tr.*, 530 U.S. at 246. Thus, a non-fiduciary who knowingly participates in a fiduciary's breach of duty is subject to appropriate equitable relief, such as disgorgement of ill-gotten profits derived from plan assets. *Id*. at 250–51. Accordingly, a participant may plead a § 502(a)(3) claim as an alternative basis for liability to the extent relief is unavailable under § 502(a)(2).

Section 502(a)(3) claims are within the exclusive jurisdiction of federal courts. 29 U.S.C. § 1132(e)(1). ERISA's limitation provision applies to § 502(a)(3) claims based on statutory violations. 29 U.S.C. § 1113.

## B.    Factual background

Plaintiffs are five former employees of Inland Fresh Seafood Corporation of America, Inc. ("Inland Fresh" or "Company"). A62–A63 (Am. Compl. ¶¶ 20–24, Doc. 35). They are among the 578 participants in the Inland Fresh Seafood Corporation of America, Inc. Employee Stock Ownership Plan ("Plan"). A62–A63

(¶¶ 19–24). An employee stock ownership plan or ESOP is "a type of pension plan that invests primarily in the stock of the company that employs the plan participants." *Dudenhoeffer*, 573 U.S. at 412; A74 (¶ 55). The Plan is also a defined-contribution plan, A61 (¶ 13), "meaning that participants' retirement benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015); *see* 29 U.S.C. § 1002(34).

Defendants-Appellees are the Plan's fiduciaries as defined by ERISA. A64 (¶¶ 25–42); *see* 29 U.S.C. §§ 1002(21)(A), 1102(a). Four of the defendants are members of the Inland Fresh Board of Directors: founder and CEO Joel Knox, COO Bill Demmond, President Chris Rosenberger, and Les Schneider (collectively the "Selling Shareholders"). A56–A57, A64–A68 (¶¶ 3, 27–38). The Board appointed Defendant ESOP Committee ("Committee") as the Plan's administrator and named fiduciary, to act as the Board's agent in managing the Plan on a day-to-day basis. A64, A68 (¶¶ 26, 39); *see* 29 U.S.C. §§ 1002(16)(A)(i), 1102(a). The Company, Selling Shareholders, and Committee are represented by the same counsel and refer to themselves collectively as the "Inland Fresh Defendants." *See* Doc. 25 at 1–2. Defendant James Urbach is trustee of the trust holding the Plan's assets. A68 (¶ 39).

11

Plaintiffs' claims arise from the transaction which established the Plan. A56–A57 (¶¶ 2–3). On November 26, 2016, Defendants caused the Plan to engage in a "leveraged ESOP" transaction (the "Transaction"). A61–A62 (¶¶ 12, 16, 18). Using the proceeds of a $92 million loan guaranteed by the Company, the Plan purchased from the Selling Shareholders all 100,000 outstanding shares of Inland Fresh stock, which is not publicly traded. A61–A62 (¶¶ 16–17). Plaintiffs allege that the $92 million purchase price far exceeded the Company's fair market value and resulted from the Selling Shareholders inflating the purchase price by providing false financial projections to valuation advisors. A56–A58 (¶¶ 3–4), A80–A81 (¶¶ 69–72). Upon receiving an initial valuation of approximately $50 million, certain Selling Shareholders sought competing valuations from other advisors and instructed Company executives to misrepresent the value of the Company's sales projections and inventory, resulting in a higher valuation opinion supporting the $92 million sale price. A83–A87 (78–85). Plaintiffs further allege that Defendant Urbach failed to protect participants' interests by approving the Transaction on the Plan's behalf without appropriate due diligence. A56–A57 (¶ 3), A81–A82 (¶¶ 72, 75), A87–A89 (¶¶ 86–89). The overpayment caused substantial losses to the Plan and reduced the value of participants' Plan accounts. A57–A60 (¶¶ 4, 8). Plaintiffs estimate the Plan's losses to be in the tens of millions of dollars. *Id.*

12

As required by ERISA, the Plan is "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a); *see* A165 (Ex. 1 to Inland Fresh Defs.' Mot. Dismiss, Doc. 42 at 11) ("Plan document"). The Plan document contains administrative claims procedures as required by ERISA § 503. A223 ("Supplement A, Claims and Review Procedures."). However, the Plan affirmatively states that participants "*need not file a claim* to receive a benefit under the Plan." A95 (¶ 110); A214 (Plan § 8.10). The summary plan description or SPD, a statutorily required disclosure intended to describe a plan's important provisions "in readily understandable form," *Amara*, 563 U.S. at 437–38,[4] similarly states that "you *do not need to file a formal claim* to receive your benefit," A95 (¶ 110); A153 (emphasis added). The Plan document states that a participant may submit a claim to "seek a review of the Committee's benefit determination." A95 (¶ 110); A214.

ERISA regulations implementing § 503 "contemplate an internal review process lasting about one year." *Heimeshoff*, 571 U.S. at 111. Under the Plan's claims procedure, the Committee has 90 days to make an initial benefit determination and can extend that time by an additional 90 days for special circumstances. A153, A223 (§ A-2). The claimant then has 60 days to appeal the determination. A154, A224 (§ A-4). The Committee then has another 60 days to

---

[4] *See* 29 U.S.C. § 1022 (requiring summary plan description to contain certain specified information and to be "written in a manner calculated to be understood by the average plan participant").

consider the appeal, which can again be extended by another 60 days for special circumstances. A154, A225 (§ A-6). Thus, exhausting the Plan's claims procedure would likely take at least six months.

## C.    Procedural history

As part of Plaintiffs' pre-filing investigation, Plaintiff Alison Mercker requested certain Plan-related documents from the Plan's administrator. A157–A158 (Ex. 2 to Am. Compl., Doc. 35-2).[5] In addition to requesting the Plan document and summary plan description, Plaintiffs requested other materials relevant to the Transaction including any contracts with the Trustee, any "valuation or appraisal reports" related to "the price paid" by the Plan for Inland stock, "the information provided" to the entities that prepared the valuation reports, any consultant reports considered by Plan fiduciaries in approving the Transaction, the identities of each fiduciary to the Plan, and "documentation of the fiduciary process" (*e.g.*, meeting minutes). *Id*.

On June 22, 2021, the Company responded through counsel. A159–A160 (Ex. 3 to Am. Compl., Doc. 35-3). While the Company produced basic documents including the Plan document and summary plan description, it otherwise refused to produce to Plaintiff Mercker "many documents she requests," asserting that ERISA

---

[5] The letter was addressed to the Company care of Eric Sussman, who had "sign[ed] as plan administrator" the Plan's annual reports filed with the Department of Labor. Doc. 25-3 at 2.

did not require disclosure. A159. The Company refused to provide agreements with the "ESOP trustee," consultants, or counsel. *Id*. The Company also refused to produce any "valuation reports relating to the ESOP." *Id*.

The Company's refusal to provide the requested information prevented Plaintiffs from ascertaining, at that time, that an actionable ERISA violation had occurred. A108–A110 (¶¶ 130–32), A114–A115 (¶¶ 141–142). After further investigation, Plaintiffs discovered the basis for their claims in September 2022, A113 (¶ 139), roughly two months before ERISA's six-year repose period would have expired on November 26, 2022.

On November 18, 2022, Plaintiffs filed suit under ERISA §§ 502(a)(2) and (3) on behalf of the Plan and a proposed class of the Plan's participants. A8–A9 (Compl. ¶ 1, Doc. 1). The Complaint alleged in five counts that Defendants breached their fiduciary duties and caused or participated in transactions prohibited by ERISA. A43–A52 (¶¶ 108–40). Counts I–III asserted § 502(a)(2) claims for relief under § 409(a) based on Defendants' alleged misconduct in their capacities as Plan fiduciaries. A43–A50 (¶¶ 108–36). Counts IV–V asserted § 502(a)(3) "catchall" claims against the Selling Shareholders to the extent they acted in a non-fiduciary capacity as knowing participants in their co-defendants' ERISA violations. A51–A52 (¶¶ 137–40). Plaintiffs seek restoration of the Plan's losses, disgorgement of ill-gotten profits, and other appropriate equitable relief. A52–A53.

15

The Complaint did not address exhaustion of administrative remedies.

The Inland Fresh Defendants and Urbach filed motions to dismiss. Docs. 25–26. Defendants' lead argument was that the Complaint should be dismissed for failing "to affirmatively plead exhaustion or an exception to the rule on the face of the complaint." Inland Fresh Defs.' Mem. at 10 (Doc. 25-5); Urbach Mem. at 2–3 (Doc. 26-1). Second, Defendants argued that failure to exhaust administrative remedies within the six-year repose period rendered the claims time-barred, even though Plaintiffs undisputedly filed the action within six years of the Transaction. Inland Fresh Defs.' Mem. at 11–13; Urbach Mem. at 4–6.

Plaintiffs amended their complaint to address the purported pleading deficiencies raised in the motions to dismiss. Doc. 35; *see* Fed. R. Civ. P. 15(a)(1)(B) (allowing party to amend once "as a matter of course" after service of Rule 12(b) motion). Although Plaintiffs disputed any obligation "to specially plead or demonstrate exhaustion in their complaint," A92 (¶ 107) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)), they addressed the issue "out of an abundance of caution." *id*. Plaintiffs alleged that the Plan itself excused them from filing an administrative claim, that the Plan could not provide the relief Plaintiffs seek, and that an administrative claim would have been futile. A93–A112 (¶¶ 108–37). Plaintiffs further alleged that while the action was timely under the six-year repose period, ERISA's tolling provision also applied. A112–A115 (¶¶ 138–42). Plaintiffs

did not discover Defendants' ERISA violations until September 2022, about two months before filing the action. A58 (¶ 5), A113 (¶ 139). The Amended Complaint asserted essentially the same causes of action as the original complaint: three counts premised upon fiduciary liability under § 502(a)(2), A121–A129 (¶¶ 148–79), and a single count for non-fiduciary liability under § 502(a)(3), A130–A131 (¶¶ 180–84).

Defendants moved to dismiss the Amended Complaint, again asserting failure to exhaust the Plan's administrative remedies and invoking ERISA's repose period. Docs. 40, 42. In opposing the motions, Plaintiffs requested leave to delete their exhaustion allegations if the district court concurred that *Bock* had abrogated any obligation "to specially plead or demonstrate exhaustion" in a complaint. Pls.' Opp. to Inland Fresh Mot. at 11 (Doc. 48). Plaintiffs further asserted that if the court were to accept Defendants' exhaustion arguments, the action should be stayed, not dismissed, to allow Plaintiffs to pursue exhaustion. *Id.* at 23–24.

On December 5, 2023, the district court granted Defendants' motions to dismiss. A240 (Order, Doc. 55). The court concluded that exhaustion is a pleading requirement and that *Bock*'s holding does not extend to ERISA cases. A246 (Order at 7). The court found that Plaintiffs had not "sufficiently pleaded exhaustion or an exception to the exhaustion requirement." A247–A251 (*id*. at 8–12). The court also denied Plaintiffs' request for a stay in lieu of dismissal. A252–A254 (*id*. at 13–15).

17

On the same date, the clerk entered judgment dismissing the action. A255.

Plaintiffs now appeal. A256.

## SUMMARY OF THE ARGUMENT

Most circuits have held that plaintiffs are not required to exhaust a plan's administrative remedies before filing a civil action alleging a violation of ERISA statutory rights, such as claims for breach of fiduciary duty. These courts have concluded that because ERISA's claims procedure provision refers specifically to denied claims for benefits under a plan, there is no textual basis for imposing an exhaustion requirement on fiduciary breach claims. While determining an entitlement to benefits and interpreting plan terms is the role of a plan administrator, interpreting and applying statutory terms is a task for the courts.

This Court's contrary precedent has been undermined to the point of abrogation by the Supreme Court's holding that policy-based, judge-made exhaustion rules "exceed[] the proper limits on the judicial role," *Jones v. Bock*, 549 U.S. 199, 203 (2007), as well as the Supreme Court's repeated disapproval of judicial tampering with ERISA's carefully crafted enforcement scheme, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002).

Even if Plaintiffs were subject to an exhaustion requirement, they had no obligation to plead around an affirmative defense. Given that ERISA does not itself require plaintiffs to plead exhaustion, the usual practice under the Federal Rules of

regarding exhaustion as an affirmative defense is controlling.

In any event, the Plan itself excused Plaintiffs from any exhaustion requirement by affirmatively stating that Plaintiffs were not required to file an administrative claim. Plaintiffs also plausibly alleged numerous exceptions to the exhaustion requirement. The Plan Administrator was not capable of providing an adequate remedy because it has no authority to restore tens of millions of dollars to the Plan or require the Selling Shareholders to disgorge wrongfully obtained assets, which are remedies that can only be ordered by a federal court. Even if the Administrator theoretically *could* provide Plaintiffs with an adequate remedy, there is no chance that it *would* order such a remedy against the Company's CEO and other executives, rendering the administrative process a futile and empty exercise. And like the Plan itself, the Summary Plan Description informed Plaintiffs that it was unnecessary to file an administrative claim before proceeding to court.

To the extent Plaintiffs failed to plead a plausible exception to the exhaustion requirement, the district court nevertheless abused its discretion in refusing Plaintiffs' request for a stay in lieu of dismissal under the circumstances here. ERISA explicitly provides that a fiduciary breach action is timely if filed within six years of the alleged breach. 29 U.S.C. § 1113. Plaintiffs filed this action within six years of the Transaction. By dismissing the action based on a judge-made exhaustion rule, the district court created a risk that Plaintiffs' timely fiduciary

19

breach action will be deemed untimely if it is refiled after Plaintiffs exhaust their administrative remedies, thereby violating Congressional intent embodied in ERISA's limitation provision.

Finally, even if the action was properly dismissed, the district court erred in not specifying that dismissal on exhaustion grounds was without prejudice.

The Court should reverse and remand for further proceedings on the merits of Plaintiffs' claims.

## STANDARD OF REVIEW

The dismissal of a complaint for failure to exhaust administrative remedies is reviewed *de novo*. *Babicz v. Sch. Bd. of Broward Cnty.*, 135 F.3d 1420, 1421 (11th Cir. 1998). Whether the requirement of exhaustion of administrative remedies applies to a claim is a question of law reviewed *de novo*. *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1221 (11th Cir. 2008). A district court's decision whether to excuse exhaustion is reviewed for abuse of discretion. *Id*. A decision whether to stay proceedings is also reviewed for abuse of discretion. *Trujillo v. Conover & Co. Communs., Inc.*, 221 F.3d 1262, 1264 n.2 (11th Cir. 2000). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, or follows improper procedures in making its decision." *Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296, 1308 (11th Cir. 2020).

## ARGUMENT

**I.  ERISA does not require participants to exhaust a plan's administrative remedies before filing a civil action alleging statutory—rather than plan-based—violations.**

Although the courts of appeals have uniformly required exhaustion for ERISA § 502(a)(1)(B) denial-of-benefits claims, *Heimeshoff*, 571 U.S. at 105, "the circuits are split on the issue of whether participants or beneficiaries of an ERISA plan 'must exhaust internal plan remedies before suing plan fiduciaries on the basis of an alleged violation of duties imposed by the statute,'" *Hitchcock*, 851 F.3d at 563 (quoting *Mason v. Cont'l Grp.*, 474 U.S. 1087, 1087 (1986) (White, J., dissenting from denial of certiorari)). Most courts to consider the issue have rejected an exhaustion requirement for such claims. This Court's contrary rule has been undermined by intervening Supreme Court precedent and promotes an inconsistent and unfair application of time limitations for ERISA claims.

### A.  Most courts of appeals have rejected an exhaustion requirement for claims alleging statutory violations.

Seven courts of appeals—the Third, Fourth, Fifth, Sixth, Ninth, Tenth, and D.C. Circuits—"have all held exhaustion is not required when plaintiffs seek to enforce statutory ERISA rights rather than contractual rights created by the terms of the Plan." *Hitchcock*, 851 F.3d at 564–65 (rejecting exhaustion requirement for anti-cutback and fiduciary breach claims); *Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 965–66 (D.C. Cir. 2014) (holding that participants asserting

21

fiduciary breach claim "need not exhaust internal remedial procedures before proceeding to federal court"); *Milofsky v. Am. Airlines, Inc.*, 442 F.3d 311, 313 (5th Cir. 2006) (en banc) (reversing dismissal of "fiduciary breach claims not requiring exhaustion of administrative remedies"); *Sydnor*, 184 F.3d at 364–65 ("[W]e hold that the judicially created exhaustion requirement does not apply to a claim for breach of fiduciary duty as defined in ERISA."); *Amaro v. Cont'l Can Co.*, 724 F.2d 747, 751–52 (9th Cir. 1984) (retaliation claim); *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1204-05 (10th Cir. 1990) (retaliation claim).

These courts have declined "to find in ERISA an implied exhaustion requirement" because there is "no indication in the Act or its legislative history that Congress intended to condition a plaintiff's ability to redress a statutory violation in federal court upon the exhaustion of internal remedies." *Zipf*, 799 F.2d at 891.

> It is undisputed that the administrative appeals procedure ERISA requires in every plan does not apply to non-benefit challenges. Yet it is this statutory requirement upon which the judicially-created exhaustion requirement is grounded. It follows, therefore, that if there is no statutory requirement for an appeals procedure respecting claims not involving benefits, the logic of the exhaustion requirement no longer applies.

*Sydnor*, 184 F.3d 364–65 (citation omitted).

ERISA's claims procedure provision requires notice to a participant "whose claim for benefits under the plan has been denied." 29 U.S.C. § 1133(1). This

mirrors the language of § 502(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B) (participant may sue "to recover benefits due to him under the terms of his plan"). The "full and fair review" requirement again is limited to a "participant whose claim has been denied." 29 U.S.C. § 1133(2). In short, nothing in the statute suggests "that Congress meant for these internal remedial procedures to embrace . . . claims based on violations of ERISA's substantive guarantees." *Zipf*, 799 F.2d at 891–92.

In addition

> [w]hile plan administrators may have particular expertise in interpreting their pension plans' terms, federal judges have particular expertise in interpreting statutory terms. And while consistent application of a pension plan's terms might best be achieved by allowing plan administrators to interpret those terms in the first instance, consistent application of the law is best achieved by encouraging a unitary judicial interpretation of that law. Federal district courts also have the expertise to create a factual record, should that be necessary, and to encourage settlement of disputes where appropriate.

*Stephens*, 755 F.3d at 966.

Moreover, "when the claimant's position is that his or her federal rights guaranteed by ERISA have been violated," considerations such as cost reduction that support an exhaustion requirement in the benefits-denial context "are simply inapposite." *Zipf*, 799 F.2d at 893. If anything, forcing the plaintiff to go through an administrative process in which the alleged wrongdoer would be deciding the legality of its own conduct "would probably increase" costs and "would be purposeless, as well as futile and inadequate." *Hitchcock*, 851 F.3d at 562 (quoting

*Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994)); *Held*, 912 F.2d at 1205 (stating that requiring plaintiff to press his retaliation claim internally with the alleged wrongdoer "prior to bringing a legal action would serve little purpose"). Thus, when a plan's review procedure is "not capable of providing the remedy that [plaintiff] seeks," exhaustion "would make absolutely no sense and would be a hollow act of utter futility." *Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950–51 (5th Cir. 1995).

### B.    This Court's exhaustion requirement for statutory claims has been undermined to the point of abrogation by the Supreme Court.

This Court and the Seventh Circuit have held that the exhaustion requirement applies even where plaintiffs assert "claims grounded in statutory provisions of ERISA," such as claims for breach of fiduciary duty. *Mason*, 763 F.2d at 1226–27; *Kross v. Western Electric Co.*, 701 F.2d 1238, 1245 (7th Cir. 1983). A prior panel decision "is controlling 'unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*.'" *United States v. Files*, 63 F.4th 920, 923 (11th Cir. 2023) (quoting *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008)). Given the established circuit split on this exceptionally important issue, this appeal would warrant *en banc* consideration. Fed. R. App. P. 35(a). A panel of this Court should also conclude that *Mason* and

24

its progeny has been undermined to the point of abrogation by the Supreme Court.[6]

*Mason*'s exhaustion requirement for statutory claims was based primarily on general policy considerations. *Mason*, 763 F.2d at 1227. The Court also reasoned that the existence of an administrative procedure requirement in § 503, although applicable only to "persons whose claims have been denied," implied that a judicially imposed exhaustion requirement for statutory claims "appear[ed] to be consistent with the intent of Congress." *Id.*

*Mason* has been undermined by the Supreme Court's holding that "crafting and imposing" exhaustion rules not mandated by Congress based on judicial views about policy questions "exceeds the proper limits on the judicial role." *Bock*, 549 U.S. at 203; *see also Felder v. Casey*, 487 U.S. 131, 149 (1988) ("[P]olicy considerations alone . . . cannot justify judicially imposed exhaustion unless exhaustion is consistent with congressional intent.") (quoting *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 513 (1982)).

The claims in *Bock* were subject to the Prison Litigation Reform Act of 1995 (PLRA), which explicitly "requires prisoners to exhaust prison grievance procedures before filing suit." 549 U.S. at 202, 214. Some lower courts "adopted

---

[6] Several later cases cite *Mason* and the prior-precedent rule. *See, e.g.*, *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 n.6 (11th Cir. 2000); *Springer v. Wal-Mart Associates' Grp. Health Plan*, 908 F.2d 897, 899–900 & n.1 (11th Cir. 1990); *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 109 (11th Cir. 1997).

several procedural rules designed to implement this exhaustion requirement and facilitate early judicial screening." *Id*. at 202–03. For instance, the Sixth Circuit required plaintiffs to affirmatively plead exhaustion, to identify each prospective defendant in the initial grievance, and created a "'total exhaustion' rule, under which no part of the suit may proceed if any single claim in the action is not properly exhausted." *Id*. at 204–06.

The Supreme Court rejected these rules because they were not required by the PLRA or Federal Rules of Civil Procedure. *Id*. at 211–24. As to the rule requiring plaintiffs to plead exhaustion, the "PLRA itself" did not—"explicitly or implicitly"—"justify deviating from the usual procedural practice" of treating exhaustion as an affirmative defense *Id.* at 214. The Court "explained that courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns." *Id*. at 212. The lower courts' policy reasons for treating exhaustion as a pleading requirement could not "fairly be viewed as an interpretation of the PLRA." *Id*. at 216. "'Whatever temptations the statesmanship of policy-making might wisely suggest,' the judge's job is to construe the statute— not to make it better" or to "'read in by way of creation.'" *Id*. (quoting Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 533 (1947)). Because "the PLRA does not itself require plaintiffs to plead exhaustion, such a result 'must be obtained by the process of amending the Federal Rules, and not by

judicial interpretation.'" *Id*. at 217 (quoting *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993)). The Court similarly rejected the "name all defendants" rule as "lack[ing] a textual basis in the PLRA," and *id*. at 217, and the "total exhaustion" rule as contrary to the usual practice of dismissing only the deficient portions of a complaint while allowing the remainder to proceed, *id*. at 220–21.

*Bock* confirms that *Mason*'s effort to supplement ERISA with a judge-made and policy-based exhaustion requirement "exceeds the proper limits on the judicial role." *Bock*, 549 U.S. at 203. Even though "[t]here is no question that exhaustion is mandatory under the PLRA," *Bock* held that it was improper to create procedural rules designed to implement the requirement and make it "more effective." *Id*. at 204, 211, 215. In contrast to the PLRA, "the ERISA statute itself" does not even require exhaustion. *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003). "Instead, it is a court-imposed, policy-based requirement." *Id.* Given *Bock*'s holding that it is improper to impose judge-made exhaustion rules even in the context of a statute that *requires* exhaustion, it follows that a judicially created exhaustion requirement in the context of a statute that does *not* require exhaustion is necessarily improper.

In *Felder*, the Supreme Court held that a state statute imposing an exhaustion requirement on plaintiffs bringing civil rights actions in state court under 42 U.S.C.

27

§ 1983 was preempted by federal law. 487 U.S. at 134. The Court had previously "refused to engraft an exhaustion requirement" onto § 1983 actions "where Congress had not provided for one." *Id*. at 149 (citing *Patsy*, 457 U.S. at 508–12). Because "Congress established an exhaustion requirement for a specific class of § 1983 actions"—those brought by prisoners—engrafting an exhaustion requirement "onto another type of § 1983 action" would be inconsistent with Congressional intent. *Id.* at 148–49. "[D]ecisions concerning both the desirability and the scope and design of any exhaustion requirement turn on a host of policy considerations which 'do not invariably point in one direction,'" and thus "are best left to 'Congress' superior institutional competence.'" *Id.* at 149 (quoting *Patsy*, 457 U.S. at 513).

*Mason* cited ERISA § 503 as evidence that imposing an exhaustion requirement on fiduciary breach claims "appear[ed] to be consistent with the intent of Congress." 763 F.2d at 1227. But because § 503 is limited to a specific class of ERISA claims—those brought by a "participant whose claim for benefits has been denied," 29 U.S.C. § 1133(2)—engrafting an exhaustion requirement onto another type of ERISA claims is inconsistent with Congressional intent. *Felder*, 487 U.S. at 148–49. The policy considerations relied upon by *Mason* in imposing an exhaustion requirement on ERISA fiduciary breach plaintiffs "'do not invariably point in one direction'" and "are best left to 'Congress' superior institutional

competence.'" *Id.* at 149 (quoting *Patsy*, 457 U.S. at 513).

In that regard, the Supreme Court's ERISA precedents further undermine *Mason*. Since *Mason* was decided, the Supreme Court has "observed repeatedly" that because "ERISA is a 'comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system," courts should be "especially 'reluctant to tamper with [its] enforcement scheme.'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quoting *Mertens v. Hewitt Associates,* 508 U.S. 248, 251, 254 (1993); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)); *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000).

Resorting to policy to supplement the statutory text upsets the careful balance that Congress struck in enacting ERISA, "an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests." *Mertens*, 508 U.S. at 262; *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996) (ERISA balances "competing congressional purposes"). "Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 526 (1987).

If Congress believed that "[c]ompelling considerations" supported requiring

29

fiduciary breach claimants "to exhaust administrative remedies prior to instituting a lawsuit," *Mason*, 763 F.2d at 1227, it would have codified such a requirement. Instead, Congress declared that participants would have "ready access to the Federal courts" to assert their rights under ERISA, strong evidence that Congress did *not* intend to subject victims of fiduciary misconduct to an administrative appeal process before instituting a civil action. 29 U.S.C. § 1001(b).

Given that ERISA's "enforcement scheme [was] crafted with such evident care," courts should not infer additions to the text that Congress chose to omit. *Russell*, 473 U.S. at 147. "The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Id.* (citations omitted).

In *Russell*, the court of appeals had upheld an award of extracontractual compensatory and punitive damages caused by an insurer's delay in processing a participant's claim for disability benefits. *Id.* at 136–37. The court of appeals believed that ERISA's "congressional purpose" supported such an award. *Id.* at 138. The Supreme Court reversed, rejecting the argument that Congress implicitly intended to authorize such remedies: the "six carefully integrated civil enforcement provisions" in ERISA § 502(a) provide "strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate

expressly." *Id*. at 146 (emphasis added). "The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.'" *Id.* (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361 (1980)). Because nothing in ERISA's text authorizes extracontractual or punitive damages, the statute's general remedial purpose was not a valid basis to infer Congressional intent to provide such a remedy. *Id*. at 145 ("The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide.") (quoting *California v. Sierra Club*, 451 U.S. 287, 297 (1981)).

*Mason*'s reading of an implied administrative remedy requirement into ERISA has been undermined to the point of abrogation by the Supreme Court's repeated admonishment against tampering with ERISA's civil enforcement scheme. *Great-West*, 534 U.S. at 209; *Harris Tr.*, 530 U.S. at 247; *Mertens*, 508 U.S. at 251, 254; *Russell*, 473 U.S. at 147. In § 502(a), Congress carefully crafted an integrated system of procedures for enforcement. Section 502(a) unequivocally authorizes a "participant" to bring a "civil action" for "appropriate relief under section 1109," which imposes "Liability for breach of fiduciary duty." 29 U.S.C. §§ 1109(a), 1132(a)(2). Nothing in § 502(a) even implicitly suggests an administrative remedy prerequisite to pursuing a civil enforcement action, let alone expressly. The only

31

limitation on a participant's authority to bring a civil action under § 502(a) derives from the internal review requirement in the adjacent § 503—but that applies only to a "participant *whose claim for benefits has been denied*." 29 U.S.C. § 1133(2) (emphasis added). The fact that Congress chose to limit such internal review requirements to a specific type of claim (§ 502(a)(1)(B) denial-of-benefits), is strong evidence that it did not simply forget to require such procedures for other types of claims, like fiduciary breach claims under § 502(a)(2) and (3). Indeed, imposing an administrative remedy requirement in the fiduciary breach context contradicts Congress's stated intention that participants be granted "ready access to the Federal courts" to seek relief for fiduciary misconduct. 29 U.S.C. § 1001(b).

*Mason* is further undermined by *Harris Trust*. There, the Supreme Court rejected the use of "nontextual clues" such as legislative history and "policy consequences" to depart from the text of ERISA § 502(a)(3). *Harris Tr.*, 530 U.S. at 254. That is precisely what *Mason* did in departing from the text of § 503. The Court in *Mason* acknowledged that the administrative procedure requirement in § 503 only expressly applied to "persons whose claims have been denied," and thus did not apply to the fiduciary breach claims before the Court. *Mason*, 763 F.2d at 1227. The Court nevertheless concluded that extending § 503 in a manner that would cover fiduciary breach claims "appear[ed] to be consistent with the intent of Congress" and legislative history and supported by policy considerations. *Id*. The

32

Supreme Court has since steadfastly refused to "engraft [a] policy choice onto the statute that Congress passed." *United States DOJ v. Landano*, 508 U.S. 165, 181 (1993).

For these reasons, the Court should hold that exhaustion is not required when ERISA plaintiffs seek to enforce statutory ERISA rights rather than contractual rights created by the terms of a plan and reverse the order of dismissal.

## II.    Because exhaustion is not an element of any claim for liability, ERISA plaintiffs are not required to plead exhaustion in a complaint.

If exhaustion was required, Plaintiffs nevertheless were "not required to specially plead or demonstrate exhaustion in their complaint[]." *Bock*, 549 U.S. at 216. Eleventh Circuit law is clear that "plaintiffs are not required to negate an affirmative defense in their complaint." *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (alterations omitted). Exhaustion of administrative remedies is an affirmative defense. *Bock*, 549 U.S. at 216.

The district court erroneously concluded that *Bock*'s holding is limited to PLRA cases and does not extend to ERISA. A246 (Order at 7). The result in *Bock* did not turn on any unique feature of the PLRA. To the contrary, *Bock* turned on the *absence* of anything in the PLRA's text that would warrant deviating from the usual practice applicable to civil actions generally. *Bock*, 549 U.S. at 212, 216–17. The Court first looked to Rule 8, which applies to all civil actions, and "requires simply a 'short and plain statement of the claim' in a complaint," with affirmative

defenses to be pleaded by the defendant in response. *Bock*, 549 U.S. at 212 (quoting Fed. R. Civ. P. 8(a)(2)). The Court then noted that there was no "serious[] dispute" that "courts typically regard exhaustion as an affirmative defense in *other contexts*," *i.e.*, non-PLRA cases. *Id*. (citing Brief for Petitioners 34–36, and nn. 12–13) (emphasis added). Those other contexts *include ERISA cases*, among other statutes.[7] Based on Rule 8 and how courts typically treat exhaustion *outside* of the PLRA context—and the lack of anything in the PLRA compelling a different practice—the Court concluded "that the usual practice should be followed" in PLRA cases, "and the usual practice under the Federal Rules is to regard exhaustion as an affirmative defense." *Id*. at 212, 216–17 ("Given that the PLRA does not itself require plaintiffs to plead exhaustion, such a result 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'") (quoting *Leatherman*, 507 U.S. at 168).

Just as "the PLRA itself does not require plaintiffs to plead exhaustion," neither does ERISA. Indeed, ERISA itself, unlike the PLRA, does not require exhaustion *at all*, let alone contain an exhaustion pleading requirement. *Watts*, 316

---

[7] Br. for Pet'rs, 2006 U.S. S. Ct. Briefs LEXIS 726, at *69 n.13, *Jones v. Bock*, 549 U.S. 199 (2007) (No. 05-7058) (citing *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006), *Bourgeois v. Pension Plan for the Emples. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000), as examples of ERISA cases holding that exhaustion is an affirmative defense); *see also Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007) ("The exhaustion requirement is a nonjurisdictional affirmative defense.").

F.3d at 1207. Accordingly, *Bock*'s reasoning applies with even greater force to ERISA cases.

Because the district court concluded that Plaintiffs were required to plead exhaustion, the district court did not address Plaintiffs' request for leave to delete paragraphs 107 through 137 from the Amended Complaint. *See* Pls.' Opp. to Inland Fresh Mot. Dismiss at 11 & n.3 (Doc. 48). Plaintiffs did not address the issue of exhaustion in the Complaint. A8–A54. Plaintiffs only addressed the issue in the Amended Complaint due to uncertainty as to whether Defendants' cases treating exhaustion as an ERISA pleading requirement remained good law. A92 (¶ 107). If Plaintiffs had the benefit of a decision of this Court that ERISA plaintiffs also are not required to specially plead or demonstrate exhaustion in their complaints under *Bock*, 549 U.S. at 216, Plaintiffs would not have attempted to plead around an affirmative defense in the Amended Complaint, thereby allowing the defense to be adjudicated on a factual record, *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402–03 (7th Cir. 1996) (discussing preference for resolving exhaustion issues based on a factual record rather than "solely on the basis of the factual allegations in the plaintiff's complaint"). Accordingly, the Court should vacate the dismissal and remand for the district court to consider Plaintiffs' request for leave to amend.

### III.   The Plan excused any exhaustion requirement by affirmatively stating that participants "need not" file an administrative claim.

One of ERISA's central goals is to enable every employee to "determine exactly what his rights and obligations are under the plan" by "*examining the plan documents*." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). Indeed, the entire "statutory scheme . . . 'is built around reliance on the face of written plan documents.'" *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013) (quoting *Curtiss-Wright*, 514 U.S. at 83). Even if exhaustion of administrative remedies were required as a general matter, the plan documents here excused Plaintiffs from pursuing an administrative claim. The plan must be enforced as written. *Heimeshoff*, 571 U.S. at 108.

The written Plan document states that participants "*need not file a claim* to receive a benefit under the Plan." A95 (¶ 110); A214 (§ 8.10). The Summary Plan Description similarly states that "you *do not need to file a formal claim* to receive your benefit." A153 (emphasis added). This Court has held that the meaning of "benefit" in the context of a defined-contribution plan is "whatever is in the retirement account when the employee retires or *whatever would have been there had the plan honored the employee's entitlement*, which includes an entitlement to prudent management." *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1222–23 (11th Cir. 2008) (quoting *Harzewski v. Guidant Corp.*, 489 U.S. 799, 804–05 (7th Cir. 2007)) (emphasis by *Lanfear*). Therefore, the Plan expressly excused Plaintiffs

36

from having to file an administrative claim to "receive" their "benefit," which includes the additional sums that would have been in their accounts had Defendants not violated ERISA. A96 (¶ 111). Plaintiffs were thus entitled to exercise their statutory right to proceed directly to federal court to recover those sums. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2).

The Plan goes on to state that a participant "*may* submit a written claim to the Committee or seek a review of the Committee's benefit determination." A95 (¶ 110). Even if this imposed a mandatory claim requirement despite using the permissive "may," it simply does not apply here. Plaintiffs' claims for breach of fiduciary duty do not seek a "review of the Committee's benefit determination." *Id*. A claim for "review" is one asserting that the Committee made a "mistake of fact" or otherwise misapplied the Plan's terms. A213 ("**Section 8.6 Committee Rules and Decisions** . . . The Committee will make any adjustments it considers equitable and practicable *to correct a mistake of fact* once the mistake becomes known.") (italics added). This is confirmed by statements in the Plan and Summary Plan Description that the Committee's decision will "refer the claimant to the specific Plan provisions upon which its decision is based." A154; A225 (§ A-7) (stating that Committee's decision must include a "[r]eference to the specific Plan provisions . . . on which the benefit determination on review is based").

The claim here is not that the Committee misinterpreted or misapplied a

37

provision of the Plan or made a factual mistake in calculating Plaintiffs' benefits under the Plan as written. Rather, Plaintiffs contend that the Transaction which established the Plan was illegal because the inflated purchase price resulted from an imprudent process and misrepresentations regarding the Company's assets and business prospects. A80–A81 (¶¶ 69–70). Thus, if Plaintiffs were to file a claim requesting the Committee to review its benefit determination, the Committee "would merely recalculate their benefits and reach the same result." *Hitchcock*, 851 F.3d at 562 (quoting *Costantino*, 13 F.3d at 975).

The district court acknowledged that it was unnecessary for Plaintiffs "to file a claim to receive" their Plan benefit, but concluded that this did not excuse Plaintiffs from pursuing an administrative claim. A248 (Order at 9). But the court did not address *Lanfear*'s holding that the benefit to which each Plaintiff is entitled includes the amounts that the Plan allegedly lost due to Defendants' ERISA violations, which Plaintiffs seek to recover in this action. 536 F.3d at 1222–23. The opinion cited by the district court, *Bickley v. Caremark Rx, Inc.*, 461 F.3d 1325, 1329 (11th Cir. 2006), contains no suggestion that the plan at issue affirmatively stated that participants "need *not* file a claim," as here.

The district court also cited no provision of the Plan that clearly mandated exhaustion. Ambiguities as to whether a plan required exhaustion are construed against the drafter. *See Watts*, 316 F.3d at 1207–08 (citing *Lee v. Blue Cross/Blue*

*Shield of Ala.*, 10 F.3d 1547, 1551 (11th Cir. 1994)). Even if the Plan's statement that Plaintiffs "need not file a claim to receive a benefit" did not unambiguously excuse exhaustion, neither did anything in the Plan unambiguously mandate exhaustion. Therefore, it was reasonable for Plaintiffs to conclude that exhaustion was not required. A96 (¶ 111); *Watts*, 316 F.3d at 1207–08. The ambiguity should be construed against the Company as the Plan's drafter.

## IV.    Plaintiffs plausibly alleged exceptions to the exhaustion requirement, to the extent that was required.

Defendants filed their motions under Rule 12(b)(6). Doc. 40 at 1; Doc. 42 at 2.[8] The district court did not notify Plaintiffs that it was converting the motions to Rule 56 motions or that it otherwise intended to rule based on "matters outside the pleadings." evidence beyond the allegations of the complaint and any documents incorporated by reference. *Cf.* Fed. R. Civ. P. 12(d). Thus, even if Plaintiffs were required to *plead* exhaustion, they were not obligated to conclusively *prove* exhaustion or an exception thereto at the motion-to-dismiss stage. Rather, Plaintiffs only needed to "state[] a plausible claim for relief" to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), *i.e.*, sufficient factual matter to support a reasonable inference "that one of the exceptions to the exhaustion

---

[8] Inland Fresh Defendants also cited Rule 12(b)(1) in support of their argument that Plaintiffs lacked Article III standing. Doc. 42 at 2. The district court did not reach that issue.

requirement applies," *Wilczynski*, 93 F.3d at 402. And because exhaustion is an affirmative defense, dismissal was improper unless "the face of the complaint" clearly established that no exception could plausibly apply. *LaGrasta*, 358 F.3d at 845.

Courts may excuse exhaustion when "requiring a plaintiff to exhaust an administrative scheme would be an empty exercise in legal formalism." *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1318 (11th Cir. 2000). Exhaustion is excused "when resort to administrative remedies would be futile or the remedy inadequate, or where a claimant is denied 'meaningful access' to the administrative review scheme in place." *Id.* at 1315 (citation omitted). Exhaustion is also excused when the plaintiff reasonably interprets "language in the summary plan description" as allowing her to "go straight to court." *See Watts*, 316 F.3d at 1204, 1208 (plaintiff excused from exhaustion where documents told participants they "may use" claims procedure). These exceptions apply here.

### A.   The Court should clarify that an administrative remedy is inadequate when the plan cannot provide the relief sought.

Because exhaustion is a judicially created defense, the court is "still in the process of shaping it insofar as new factual scenarios are concerned." *Watts,* 316 F.3d at 1207. Thus, when there is "no Circuit law that controls the facts" of a particular case, the Court has been willing to recognize additional exceptions to the exhaustion requirement. *Id*.

The Court has stated that exhaustion may be excused when "the remedy [is] inadequate," but does not appear to have addressed when this exception should apply. *Perrino*, 209 F.3d at 1318. Other circuits have recognized that exhaustion should be excused when the plan is not "capable of providing the relief sought by the plaintiff." *Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950 (5th Cir. 1995). This rule is consistent with precedent outside of the ERISA context holding that plaintiffs "can proceed without attempting to exhaust administrative remedies" when they seek a "form of relief" that is unavailable under the statute requiring exhaustion. *Powell v. Sch. Bd.*, 86 F.4th 881, 884 (11th Cir. 2023) (holding that IDEA's exhaustion requirement was inapplicable where plaintiffs sought "compensatory and punitive damages," which were available under ADA but unavailable under IDEA) (citing *Perez v. Sturgis Public Schools*, 598 U.S. 142, 143 S. Ct. 859, 864–65 (2023)).

When a participant seeks benefits under the terms of a plan, 29 U.S.C. § 1132(a)(1)(B), there is no question that the plan can provide the relief sought. The participant is seeking payment from the plan itself; the administrator has the authority to pay valid claims from the plan's assets. *Griffin v. SunTrust Bank, Inc.*, 648 F. App'x 962, 965 (11th Cir. 2016) (discussing cases holding that the proper defendant "in an action concerning ERISA benefits is the party that controls the administration of the plan" and is "capable of providing the relief requested")

(citations omitted).

In contrast, the Plan was incapable of providing the forms of relief that Plaintiffs seek in this action. Instead of seeking a payment *from* the Plan, Plaintiffs are seeking a court order requiring Defendants to restore money *to* the Plan. A57–A58 (¶ 4), A132. Any of the Defendants found to have breached their fiduciary duties "shall be *personally liable to make good to such plan any losses* to the plan resulting from each such breach, and to *restore to such plan any profits* of such fiduciary which have been made through use of assets of the plan by the fiduciary." *See* 29 U.S.C. § 1109(a) (emphasis added). Alternatively, Plaintiffs seek equitable relief such as disgorgement from the Selling Shareholders. A104–A105 (¶¶ 123–24), A130–A131 (¶¶ 181–84); *see* 29 U.S.C. § 1132(a)(3)(B).

A federal court is empowered to render such judgments by virtue of Article III and federal statutes. *See* U.S. Const., Art. III, § 1. Indeed, ERISA explicitly authorizes "the court" to provide such relief—not an administrator. 29 U.S.C. § 1109(a). The Committee has no such power. It has no authority to render judgments compelling the Selling Shareholders or Urbach to restore $40 million or more to the Plan. A102–A104 (¶¶ 121–23). The Committee's "Powers and Duties" are limited to administrative tasks like interpreting the Plan, keeping records, and hiring service providers. A212–A213 (§ 8.5). Nothing in the Plan remotely empowers the Committee to hold the Inland Fresh CEO or other Selling

42

Shareholders personally liable to pay the Plan tens of millions of dollars or to compel disgorgement. Therefore, the plan is incapable of providing the relief sought, and exhaustion should be excused. *Wilson v. Kimberly-Clark Corp.*, 254 F. App'x 280, 286 (5th Cir. 2007) (unpublished) (reversing dismissal on exhaustion grounds because defendants failed to show that the the plan was "capable of providing the relief sought").

The district court did not dispute Plaintiffs' allegations that "the ESOP Committee lacks power to compel testimony or hold each defendant personally liable for the millions of dollars in losses that Plaintiffs claim." A249–A250 (Order at 10–11). Rather, the court rejected this as a basis for excusing exhaustion due to a lack of "Eleventh Circuit authority" on point. *Id*. The Court should recognize an exception to the exhaustion requirement where the plan cannot provide the remedy that the plaintiff seeks. *See Chailland*, 45 F.3d at 950.

.The district court further reasoned that even if the Committee lacked the power to provide a sufficient remedy, requiring exhaustion still could cause the parties to resolve their dispute outside of litigation. A250. But under that reasoning, there could never be an exception to the exhaustion requirement. In any event, a court can encourage settlement, accomplishing the same purpose. *Stephens*, 755 F.3d at 966.

**B.    The Company told Plaintiffs to go straight to federal court.**

In *Watts*, the plaintiff was excused because the summary plan description ("SPD") said that participants "may use" the appeal procedure, but did not state that doing so was "necessary before a lawsuit may be filed." *Id.* at 1208. The ordinary meaning of the word "may," as denoting "a voluntary, rather than mandatory, review procedure," combined with the SPD's failure "to disclose that pursuing those remedies is necessary before the claim can be taken to court," excused exhaustion. *Id*. at 1208–09. The Court noted that an employer could easily fix such a defect through careful drafting and use of mandatory language like "shall." *Id*. at 1208 n.2.

The SPD here not only describes the claims procedure in permissive, rather than mandatory, terms—"you *may* submit a written claim"—it affirmatively informed Plaintiffs that they did "*not need* to" file a claim. A153 (emphasis added). Like *Watts*, nothing in the SPD disclosed that pursuing an internal claim was *necessary* before the claim can be taken to court.

Below, Inland Fresh Defendants cited the SPD's statement that "[i]f you have a claim for benefits which is denied or ignored . . . you may file suit in a *state* or federal court." A156 (emphasis added). The only type of ERISA suit that a participant can file in state court is "one under subsection (a)(1)(B)." 29 U.S.C. § 1132(e)(1). The claims in this case, brought under ERISA § 502(a)(2) and (a)(3),

are within the "exclusive jurisdiction" of federal courts. *Id*. The same paragraph of the SPD states that if "Plan fiduciaries misuse the Plan's money, . . . you may file suit in a *federal* court," without mentioning any claim prerequisite. A156 (emphasis added).[9] If the Company wanted participants to understand that an internal claim must be denied or ignored before they could file a federal court suit under ERISA § 502(a)(2) or (a)(3), the SPD should have said: "If Plan fiduciaries misuse the Plan's money, *and* you file a claim for benefits that is denied or ignored, you may file suit in a federal court." Instead, it told Plaintiffs to go straight to federal court, negating any exhaustion bar. *Watts*, 316 F.3d at 1204; A95–A96 (¶¶ 110–11).

The district court distinguished *Watts* on the ground that the plaintiff there provided "testimony" that she was misled and was proceeding pro se. A248–A249 (Order at 9–10). But on a Rule 12(b)(6) motion, Plaintiffs had no opportunity to provide similar evidence. Construing the pleading and its exhibits "in the light most favorable to the plaintiff," *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1243 (11th Cir. 2016), it is plausible that Plaintiffs understood the Plan not to mandate exhaustion, A96 (¶ 111).

---

[9] This case involves misuse of the Plan's money: Defendants saddled the Plan with a $92 million liability in exchange for a far-less-valuable asset.

45

**C.    Exhaustion would have been futile.**

The district court erred in concluding that an administrator's conflict of interest can never establish futility. The importance of an administrator's conflict of interest requires a "case-specific" analysis. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). In deciding whether to uphold an administrator's benefits decision, "[t]he effect that a conflict of interest will have . . . in any given case will vary according to the severity of the conflict and the nature of the case." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). Because a severe conflict can sometimes justify overturning a benefits decision, it follows that some conflicts are so immense that even pursuing an administrative claim would be an obvious exercise in futility. This is such a case.

To be sure, in the typical case an administrator's conflict raises no serious futility concerns. For example, the Court found an administrator's alleged conflict to be irrelevant in the context of a Wal-Mart employee's claim for "$20,181.79 in medical benefits." *Springer v. Wal-Mart Associates' Grp. Health Plan*, 908 F.2d 897, 898 (11th Cir. 1990)*. Springer* involved the type of garden-variety conflict that is often present in ERISA health and welfare plans: "the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Glenn*, 554 U.S. at 108. If such a run-of-the-mill conflict could establish futility,

"the exhaustion of internal administrative remedies would be excused in virtually every case." *Springer*, 908 F.2d at 901.

The conflict here is not remotely comparable to *Springer*. Plaintiffs are not seeking payment of a $20,000 medical claim that would only negligibly affect Wal-Mart's bottom line. Plaintiffs would be asking Committee members to confess to—and to find that the Board members who appointed them are guilty of—violating federal law at the expense of Company employees' retirement savings. Plaintiffs would be asking the Committee members to hold *themselves* and the Company's top executives personally liable for tens of millions of dollars. AC A102, A105 (¶¶ 121, 124). Moreover, while Plaintiffs did not previously know the Committee members' identities, A108 (¶ 129), the Company acknowledged in post-judgment briefing that "some of the Inland Fresh Defendants" (presumably Selling Shareholders), are also Committee members. Mem. at 8 (Doc. 57-1 at 9). It is beyond improbable that the Committee could fairly adjudicate Plaintiffs' claims without letting personal interests affect the outcome, let alone that Plaintiffs could realistically *prevail* before an adjudicator asked to condemn itself to potential financial ruin. *Cf. Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868, 880 (2009) ("no man can be a judge in his own case"). These are exactly the type of "exceptional circumstances" where "an ERISA claim cannot be redressed effectively through an administrative scheme." *Perrino*, 209 F.3d at 1318. If

exhaustion would not be futile here, it is hard to imagine it ever could be.

Below, Inland Fresh Defendants noted the possibility that the Committee "could provide a remedy by pursuing claims against others." Mem. at 11 (Doc. 42-1) (citing *Bickley*, 461 F.3d at 1330 n.9). But in *Bickley*, the participants and plan administrator (Georgia-Pacific) shared a common interest in obtaining a remedy (recovering misappropriated plan assets), because the administrator funded the plan at issue. *See Bickley*, 461 F.3d at 1327–28, 1330 & n.9. Here, the interests of Plaintiffs and the Committee are not aligned—the Committee is an alleged wrongdoer. AC ¶ 125. Thus, even if the Committee theoretically *could* sue itself and the other Defendants, any suit by the Committee purporting to represent Plaintiffs' interests would violate due process and present an unacceptable risk of collusion. *Hansberry v. Lee*, 311 U.S. 32, 45 (1940).

Futility and denial of meaningful access to claims procedures is further shown by the Plan Administrator's refusal to produce documents relevant to Plaintiffs' claims. A107–A110 (¶¶ 128–32); *see Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990). The district court noted the administrator's argument that Plaintiffs were not entitled to the documents under the statute cited in their letter, ERISA § 104. Nevertheless, the Inland Fresh Defendants conceded that Plaintiffs were "*entitled to the very same documents*" under Supplement A to the Plan. Mot. at 13 (emphasis added). The administrator's

refusal to produce information to which Plaintiffs would be entitled under the Plan's claims procedure—merely because Plaintiffs cited a statutory provision instead of the Plan (a copy of which they were requesting in the letter)—is evidence that the administrator would not have allowed Plaintiffs a reasonable opportunity to prove their claims. AC ¶ 131. At a minimum, the Administrator's recalcitrance raises a plausible inference that Plaintiffs were denied meaningful access to the process.

Moreover, "the Plan contains no procedure that would have allowed Plaintiffs to obtain and present . . . *live testimony*." AC ¶ 119 (emphasis added). Fiduciary breach claims "depend[] heavily on the credibility of witnesses." *Id*. ¶ 118; *Reetz v. Lowe's Cos., Inc.,* No. 18-75, 2021 U.S. Dist. LEXIS 195803, at *160–61 (W.D.N.C. Oct. 12, 2021). With no ability to cross-examine each Defendant, trying to prove an administrative claim would have been futile.

## V.    The district court erred in denying Plaintiffs' request for a stay instead of dismissal under the circumstances of this case.

The district court's denial of Plaintiffs' request for a stay pending exhaustion of administrative remedies was an abuse of discretion because it violated ERISA's limitations provision. *See Isaiah*, 960 F.3d 1296, 1308 (abuse of discretion to apply "the law in an unreasonable or incorrect manner").

ERISA states that a fiduciary breach action is timely if the "action" is "commenced" within six years of "the date of the last action which constituted a

49

part of the breach or violation." 29 U.S.C. § 1113(1)(A). Plaintiffs commenced this action on November 18, 2022, A8, within six years of the November 26, 2016 Transaction. A61–A62 (¶ 16). ERISA contains no other prerequisites to a timely suit for breach of fiduciary duty. Thus, Congress intended that Plaintiffs' action would be deemed timely.

By refusing Plaintiffs' request for a stay in lieu of dismissal, the district court applied a judge-made exhaustion requirement in an unreasonable or incorrect manner. As a result of the dismissal, if Plaintiffs were to file a new action after exhausting their administrative remedies, the action may be time-barred unless a court finds that ERISA's "fraud or concealment" exception applies. *See* 29 U.S.C. §1113.

Applying the exhaustion doctrine in a manner that causes a plaintiff to lose substantive rights through a time bar does not serve the doctrine's purposes. *Cf. Mason*, 763 F.2d at 1227. Because the limitations period for a § 502(a)(1)(B) claim generally does not even begin to run until the administrative process is completed, it is virtually impossible for the administrative process itself to render a § 502(a)(1)(B) claim untimely. *See Witt*, 772 F.3d at 1275–76. If a plan contains an "unreasonably short" contractual limitation for that does not allow sufficient time to commence a § 502(a)(1)(B) civil action after the administrative process is complete, a court can refuse to enforce it. *Heimeshoff*, 571 U.S. at 109–10, 114–15.

50

Because ERISA's statute of repose runs from the time when the defendant acted, *Preston*, 873 F.3d at 883, enforcing the exhaustion requirement through dismissal can cause a claim to become time-barred during the administrative process. Although the district court suggested that Plaintiffs "inexplicably" delayed in filing suit, that is incorrect. A253–A254 (Order at 14–15). Given the Company's refusal to produce information in June 2021, Plaintiffs did not learn of the basis for their claims until September 2022. A113 (¶ 139). By then, it was not possible to complete the 6–12 month administrative process before the repose period would have expired. *See supra*, pp. 13–14. A stay pending exhaustion would have ensured that the action could proceed once administrative remedies were exhausted, consistent with § 1113. Under these circumstances, it was an abuse of discretion not to grant a stay. If dismissal is not reversed outright, the action should be remanded with instructions to grant a stay pending exhaustion.

## VI.    Even if the district court properly dismissed the action, the district court erred in not specifying dismissal was without prejudice.

Eleventh Circuit precedent is clear that "'dismissal of an action on the ground of failure to exhaust administrative remedies is *not on the merits*.'" *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (emphasis added, quoting *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003)). Rather, exhaustion is regarded as "a matter in abatement" or "a matter of judicial administration" and is akin to a jurisdictional defense. *Id*. at 1374, 1376. Because a dismissal for failure to exhaust does not

adjudicate the merits, such a dismissal should be "without prejudice" to refiling once administrative remedies are exhausted. *See, e.g.*, *Bickley*, 461 F.3d at 1330 (affirming "the district court's dismissal of Bickley's complaint without prejudice for failure to exhaust his administrative remedies"); *Variety Children's Hosp. v. Century Med. Health Plan*, 57 F.3d 1040, 1042 (11th Cir. 1995) (affirming "dismissal of Count I without prejudice subject to Variety's exhaustion of its administrative remedies"). The usual practice of district courts within the Eleventh Circuit in ERISA cases is to dismiss without prejudice when dismissal is based on failure to exhaust.[10]

Here, the district court's order addressed exhaustion only, without reaching any of Defendants' alternative arguments for dismissal. Yet, the order did not specify that dismissal was without prejudice. Generally, "any dismissal . . . except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19— operates as an adjudication on the merits," unless "the dismissal order states

---

[10] *Lee v. Blue Cross Blue Shield of Ala.*, No. 19-1895, 2020 U.S. Dist. LEXIS 174654, at *11–12 (N.D. Ala. Sep. 23, 2020) (granting dismissal "without prejudice to allow Lee to exhaust her claims"); *La Ley Recovery Sys.-OB, Inc. v. Unitedhealthcare Ins. Co.*, No. 14-23400, 2015 U.S. Dist. LEXIS 5799, at *5–6 (S.D. Fla. Jan. 7, 2015) (dismissing complaint without prejudice "to allow Plaintiff to pursue its administrative remedies under ERISA"); *Hutchinson v. Wickes Cos.*, 726 F. Supp. 1315, 1322 (N.D. Ga. 1989) ("A dismissal for failure to exhaust administrative remedies . . . is not a determination on the merits" but rather "results in an action being dismissed without prejudice prior to adjudication of the merits.").

otherwise." Fed. R. Civ. P. 41(b). Because the district court's order was solely on grounds of exhaustion, it "was not on the merits." *Bryant*, 530 F.3d at 1375. Because exhaustion is treated like a jurisdictional dismissal, the order should have stated that dismissal was without prejudice. *See Dupree v. Owens*, 92 F.4th 999, 2024 U.S. App. LEXIS 2742, at *15 (11th Cir. 2024) ("Dismissals for a lack of jurisdiction are not judgments on the merits and are to be entered without prejudice.").

"[E]ven if a dismissal is presumptively without prejudice, it is a best practice for district courts to err on the side of clarity and indicate whether prejudice has attached." *Id*. at *16. Therefore, to the extent the Court does not reverse the dismissal outright, the Court should nevertheless "vacate and remand for the limited purpose of allowing the district court to dismiss the case without prejudice," *id*., thereby clarifying that any post-exhaustion suit is not subject to a preclusion defense.

Defendants may suggest that dismissal with prejudice was proper because ERISA's six-year statute of repose has now run. *See supra*, p. 16. But Plaintiffs contend that the tolling exception to the statute of repose applies, because this is a "case of fraud or concealment." 29 U.S.C. § 1113; A112–A115 (¶¶ 138–42). If Plaintiffs were to again file suit after exhausting administrative remedies, the timeliness of that pleading would necessarily depend on its content. Any ruling that

a future action would necessarily be time-barred would be premature.

## CONCLUSION

The Court should reverse the district court's dismissal on exhaustion grounds and remand for further proceedings on the merits of Plaintiffs' claims.

March 14, 2024                          Respectfully submitted,

                                        /s/ *Sean E. Soyars*
                                        Andrew D. Schlichter
                                        Sean E. Soyars
                                        Alexander L. Braitberg
                                        SCHLICHTER BOGARD & DENTON LLP
                                        100 S. Fourth Street, Suite 1200
                                        St. Louis, Missouri 63102
                                        (314) 621-6115

                                        Attorneys for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

1. I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) because it contains 12,766 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 Word Times New Roman 14-point font.

*s/ Sean E. Soyars*
Sean E. Soyars
Attorney for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

On March 14, 2024, I electronically filed and served this brief via CM/ECF.

*s/ Sean E. Soyars*
Sean E. Soyars
Attorney for Plaintiffs-Appellants

# ADDENDUM

## 29 U.S.C. §§ 1001, 1109, 1113, 1132, 1133 (excerpts)

### § 1001. Congressional findings and declaration of policy

. . .

**(b) PROTECTION OF INTERSTATE COMMERCE AND BENEFICIARIES BY REQUIRING DISCLOSURE AND REPORTING, SETTING STANDARDS OF CONDUCT, ETC., FOR FIDUCIARIES.**

It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

. . .

### § 1109. Liability for breach of fiduciary duty

**(a)** Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

. . .

### § 1113. Limitation of actions

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

> **(1)** six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> **(2)** three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

## § 1132. Civil enforcement

**(a)** PERSONS EMPOWERED TO BRING A CIVIL ACTION.

A civil action may be brought—

**(1)** by a participant or beneficiary—

**(A)** for the relief provided for in subsection (c) of this section, or

**(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

**(2)** by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

**(3)** by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

. . .

**(e)** JURISDICTION

**(1)** Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

…

## § 1133. Claims procedure

In accordance with regulations of the Secretary, every employee benefit plan shall—

**(1)** provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

**(2)** afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.