No. 24-10084

_____

### In the
# United States Court of Appeals
### for the
# Eleventh Circuit

_____

RANI BOLTON, ALISON MERCKER, JAMES ARMSTRONG, MELISSA SUTER, AND BENJAMIN LYMAN, individually and as representatives of a class of participants and beneficiaries on behalf of the INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC. EMPLOYEE STOCK OWNERSHIP PLAN,
*Plaintiffs-Appellants*,

– v. –

INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC., JOEL KNOX, BILL DEMMOND, CHRIS ROSENBERGER, LES SCHNEIDER, JAMES R. URBACH, and the INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC. ESOP COMMITTEE,
*Defendants-Appellees*.

_____

On Appeal from the United States District Court
for the Northern District of Georgia
Case No. 1:22-cv-04602, Hon. Leigh Martin May

_____

### JOINT RESPONSE BRIEF FOR DEFENDANTS-APPELLEES
_____

RICHARD PEARL
  *Faegre Drinker Biddle & Reath, LLP*
  *320 S. Canal St., Ste. 3300*
  *Chicago, IL 60606*
  *(312) 212-6525*

MARK D. TATICCHI
  *Faegre Drinker Biddle & Reath, LLP*
  *1 Logan Square, Ste. 2000*
  *Philadelphia, PA 19103*
  *(215) 988-2700*

*Counsel for Appellee James R. Urbach*

SARAH P. HOGARTH
  *McDermott Will & Emery LLP*
  *500 North Capitol Street NW*
  *Washington, DC 20001*
  *(202) 756-8000*

THEODORE M. BECKER
  *McDermott Will & Emery LLP*
  *444 West Lake Street, Ste. 4000*
  *Chicago, IL 60606*
  *(312) 372-2000*

*Counsel for the Inland Fresh Appellees**

*Additional counsel listed inside cover.

SCOTT ZWIEGEL
WILLIAM JAMES HOLLEY, II
 *Bradley Arant Boult Cummings, LLP*
 *Promenade Tower, 20th Floor*
 *1230 Peachtree St., NE*
 *Atlanta, GA 30339*
 *(404) 868-2002*

*Counsel for Appellee James R. Urbach*

JULIAN L. ANDRÉ
 *McDermott Will & Emery LLP*
 *2049 Century Park East, Ste. 3200*
 *Los Angeles, CA 90067*
 *(310) 277-4110*

PAUL OLIVER
 *Wimberly, Lawson, Steckel,*
  *Schneider & Stine, P.C.*
 *3400 Peachtree Rd., Ste. 400*
 *Atlanta, GA 30326*
 *(404) 365-0900*

*Counsel for the Inland Fresh Appellees*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), the under-signed counsel hereby certify that Defendant-Appellee Inland Fresh Seafood Corporation of America, Inc. does not have a parent corporation, and no pub-licly held corporation owns 10% or more of its stock. None of the other Defend-ants-Appellees are corporate parties.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Cir-cuit Rule 26.1-1(a), the following is a list of all known trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. André, Julian L. (Attorney for the Inland Fresh Appellees)

2. Armstrong, James (Appellant)

3. Becker, Theodore M. (Attorney for the Inland Fresh Appellees)

4. Bolton, Rani (Appellant)

5. Bradley Arant Boult Cummings LLP (Law Firm of Appellee James R. Urbach's Counsel)

6. Braitberg, Alexander L. (Attorney for Appellants)

7.     Demmond, Bill (Appellee)

8.     Elliot, John Hartshom (Attorney for Appellee James R. Urbach)

9.     Faegre Drinker Biddle & Reath LLP (Law Firm of Appellee James R. Urbach's Counsel)

10.    Hogarth, Sarah P. (Attorney for the Inland Fresh Appellees)

11.    Holley, William J., II (Attorney for Appellee James R. Urbach)

12.    Inland Fresh Seafood Corporation of America, Inc. (Appellee)

13.    Inland Fresh Seafood Corporation of America, Inc. ESOP Committee (Appellee)

14.    Knox, Joel (Appellee)

15.    Lea, Heather (Attorney for Appellants)

16.    Lyman, Benjamin (Appellant)

17.    May, Leigh Martin (United States District Judge for the Northern District of Georgia)

18.    McDermott Will & Emery LLP (Law Firm of the Inland Fresh Appellees' Counsel)

19.    Mercker, Allison (Appellant)

20.    Oliver, Paul (Attorney for the Inland Fresh Appellees)

21.    Pearl, Richard J. (Attorney for Appellee James R. Urbach)

22.    Rosenberger, Chris (Appellee)

23.    Schlichter, Andrew D. (Attorney for Appellants)

24.    Schlichter Bogard LLP (Law Firm of Appellants' Counsel)

25.    Schneider, Les (Appellee)

26.    Soyars, Sean E. (Attorney for Appellants)

27.    Suter, Melissa (Appellant)

28.    Swift, Currie, McGhee & Hiers LLP (Law Firm of Appellants' Counsel)

29.    Taticchi, Mark D. (Attorney for Appellee James R. Urbach)

30.    Urbach, James R. (Appellee)

31.    Wimberly Lawson Steckel Schneider & Stine, PC (Law Firm of the Inland Fresh Appellees' Counsel)

32.    Wolf, Bradley S. (Attorney for Appellants)

33.    Zweigel, Scott Eric (Attorney for Appellee James R. Urbach)

Dated: May 15, 2024          /s/ *Sarah P. Hogarth*
                             Counsel for the Inland Fresh Appellees
                             Inland Fresh Seafood Corporation of
                             America, Inc., Joel Knox, Bill Demmond,
                             Chris Rosenberger, Les Schneider, and
                             the Inland Fresh Seafood Corporation of
                             America, Inc. ESOP Committee

Dated: May 15, 2024          /s/ *Richard Pearl*
                             Counsel for Appellee James R. Urbach

**STATEMENT REGARDING ORAL ARGUMENT**

The defendants-appellees do not believe oral argument is necessary as this appeal is resolved by routine application of decades of settled precedent.

## TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ......C-1

Statement Regarding Oral Argument ............................................................i

Table of Authorities ...................................................................................iii

Introduction ................................................................................................ 1

Statement of the Issues ............................................................................... 2

Statement of the Case ................................................................................. 3

    A.  Legal background ......................................................... 3

    B.  Factual background ....................................................... 7

    C.  Procedural background ................................................. 9

Summary of Argument .............................................................................. 12

Standard of Review ................................................................................... 15

Argument .................................................................................................. 15

I.    The district court properly dismissed plaintiffs' action for failing
to exhaust administrative remedies. ................................................. 15

    A.  Plaintiffs were required to but failed to exhaust Plan remedies. ..... 16

        1.  Binding circuit precedent required exhaustion. ....................... 17

        2.  The Court's precedents have not been abrogated.....................20

        3.  Although immaterial here, binding circuit precedent
requires ERISA plaintiffs to plead exhaustion.........................25

    B.  The district court did not commit a clear abuse of discretion by
declining to excuse plaintiffs' failure to exhaust............................28

        1.  Neither the Plan nor summary plan description excused
exhaustion. ...............................................................................29

        2.  Plaintiffs cannot show exhaustion would have been futile.......36

    C.  The district court did not abuse its discretion in dismissing with
prejudice rather than ordering a stay. ........................................... 41

II.   Plaintiffs lack Article III standing. ....................................................46

Conclusion ................................................................................................ 51

# TABLE OF AUTHORITIES

## Cases

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
  925 F.3d 1205 (11th Cir. 2019) ............................................................ 51

*Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*,
  93 F.4th 1315 (11th Cir. 2024) ............................................................ 42

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004) ............................................................................... 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 27

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................. 26

*Bickley v. Caremark RX, Inc.*,
  461 F.3d 1325 (11th Cir. 2006) ................................. 6, 15, 17, 19, 21, 27,
                                                            29, 35, 37, 40, 42

*Bingham v. Thomas*,
  654 F.3d 1171 (11th Cir. 2011) ........................................................... 25

*Bryant v. Dupree*,
  252 F.3d 1161 (11th Cir. 2001) ........................................................... 15

*Bryant v. Rich*,
  530 F.3d 1368 (11th Cir. 2008) ..................................................... 46, 47

*Byrd v. MacPapers, Inc.*,
  961 F.2d 157 (11th Cir. 1992) ....................................................... 25, 26

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011) ............................................................................... 4

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................. 51

*Counts v. Am. Gen. Life & Acc. Ins.*,
  111 F.3d 105 (11th Cir. 1997) ..................................................... 6, 17, 21

*CTI-Container Leasing Corp. v. Uiterwyk Corp.*,
  685 F.2d 1284 (11th Cir. 1982) ........................................................... 15

## Cases—continued

*Dusek v. JPMorgan Chase & Co.*,
    832 F.3d 1243 (11th Cir. 2016)...........................................................44

*Felder v. Casey*,
    487 U.S. 131 (1988)..............................................................................23

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ..............................................................................7

*Flat Creek Transp., LLC v. Fed. Motor Carrier Safety Admin.*,
    923 F.3d 1295 (11th Cir. 2019) ......................................................47-48

*Fox v. Bowen*,
    835 F.2d 1159 (6th Cir. 1987) ..........................................................29

*Garcon v. United Mut. of Omaha Ins. Co.*,
    779 F. App'x 595 (11th Cir. 2019) ...................................................25

*Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*,
    26 F.4th 1235 (11th Cir. 2022) .........................................................47

*Great-West Life & Annuity Ins. v. Knudson*,
    534 U.S. 204 (2002) ...........................................................................24

*Griffin v. Coca-Cola Refreshments USA, Inc.*,
    989 F.3d 923 (11th Cir. 2021) ............................................................3

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000) ...........................................................................24

*Heimeshoff v. Hartford Life & Acc. Ins.*,
    571 U.S. 99 (2013) ................................................................................5

*In re Hubbard*,
    803 F.3d 1298 (11th Cir. 2015).........................................................19

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999).............................................................................7

*Hunstein v. Preferred Coll. & Mgmt. Servs., Inc.*,
    48 F.4th 1236 (11th Cir. 2022) .........................................................48

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
    140 S. Ct. 768 (2020)...........................................................................4

iv

## Cases—continued

*Jones v. Bock*,
    549 U.S. 199 (2007)................................................. 12, 16, 21-22, 25-26

*Lanfear v. Home Depot, Inc.*,
    536 F.3d 1217 (11th Cir. 2008)............ 6, 12, 15, 17-18, 20, 29-31, 38, 42

*Lee v. Argent Tr. Co.*,
    2019 WL 3729721 (E.D.N.C. Aug. 7, 2019) .........................................50

*Louis v. Aetna Health Inc.*,
    2017 WL 6939166 (M.D. Fla. Jan. 13, 2017)........................................27

*Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*,
    872 F.2d 80 (4th Cir. 1989)............................................................37, 39

*Mason v. Cont'l Grp., Inc.*,
    763 F.2d 1219 (11th Cir. 1985)............ 6, 13, 17, 19, 22-24, 37, 41, 43-44

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ........................................................................5, 24

*Miyahira v. Vitacost.com, Inc.*,
    715 F.3d 1257 (11th Cir. 2013) ............................................................ 15

*Muransky v. Godiva Chocolatier, Inc.*,
    979 F.3d 917 (11th Cir. 2020) ..................................................48-49, 51

*Nash v. Auburn Univ.*,
    812 F.2d 655 (11th Cir. 1987)...............................................................39

*Perrino v. S. Bell Tel. & Tel. Co.*,
    209 F.3d 1309 (11th Cir. 2000).......................................6, 18, 21, 39, 43

*Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*,
    942 F.3d 1200 (11th Cir. 2019) ............................................................47

*Plutzer v. Bankers Tr. Co.*,
    2022 WL 17086483 (2d Cir. Nov. 21, 2022) ........................................50

*Plutzer v. Bankers Tr. Co.*,
    2022 WL 596356 (S.D.N.Y. Feb. 28, 2022) .........................................50

*Sereboff v. Mid Atl. Med. Servs., Inc.*,
    547 U.S. 356 (2006) .............................................................................4

## Cases—continued

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983) .................................................................. 3

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*,
   549 U.S. 422 (2007) ............................................................. 47

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ....................................................... 47, 48

*Springer v. Wal-Mart Assocs.' Grp. Health Plan*,
   908 F.2d 897 (11th Cir. 1990) ...................... 6, 21, 35, 37-38

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................... 47

*Thole v. U.S. Bank N.A*,
   590 U.S. 538 (2020) ....................................................... 48-49

*Tsao v. Captiva MVP Rest. Partners, LLC*,
   986 F.3d 1332 (11th Cir. 2021) ...................................... 48, 50

*United States v. Files*,
   63 F.4th 920 (11th Cir. 2023) .......................................... 20

*United States v. Kaley*,
   579 F.3d 1246 (11th Cir. 2009) ............................. 20, 23, 26

*United States v. Lawson*,
   686 F.3d 1317 (11th Cir. 2012) ........................................ 20

*United States v. Vega-Castillo*,
   540 F.3d 1235 (11th Cir. 2008) ........................................ 23

*Watts v. BellSouth Telecommunications, Inc.*,
   316 F.3d 1203 (11th Cir. 2003) .................................... 33-36

*Wilding v. DNC Servs. Corp.*,
   941 F.3d 1116 (11th Cir. 2019) ........................................ 47

*Woods v. Warden, Holman Corr. Facility*,
   952 F.3d 1251 (11th Cir. 2020) ........................................ 42

## Statutes, Regulations, and Rules

29 U.S.C.
    § 1001 ................................................................................. 3
    § 1002(16)(A)(i) ........................................................... 7, 10
    § 1022(a) ......................................................................... 5
    § 1022(b) ...................................................................... 22
    § 1102(a) .................................................................. 7, 10
    § 1104(a)(1)(A) ............................................................ 10
    § 1104(a)(1)(B) ............................................................ 10
    § 1106(a) ...................................................................... 10
    § 1106(b) ...................................................................... 10
    § 1109(a) ........................................................................ 3
    § 1113(1) ........................................................................ 4
    § 1113(2) ........................................................................ 4
    § 1132 ............................................................................. 3
    § 1132(a) ...................................................................... 22
    § 1132(a)(1)(B) .............................................................. 4
    § 1132(a)(2) .................................................................... 3
    § 1132(a)(3) .................................................................... 3
    § 1132(a)(3)(B) ............................................................ 10
    § 1133 ....................................................................... 5, 31
    § 1133(2) ...................................................................... 22

42 U.S.C. § 1983 .......................................................... 22, 23

29 C.F.R. § 2520.104b ...................................................... 39

Fed. R. Civ. P.
    7(b) ............................................................................... 42
    41(b) ................................................................. 12, 14, 45

**INTRODUCTION**

In 2016, Inland Fresh Seafood Corporation of America, Inc., one of the largest seafood distributors in the southeastern United States, created a plan for its employees that would help them save for retirement by giving them an ownership interest in the company through allocations of company stock. Nearly six years to the day after the transaction took place, and on the eve of a statute of repose, a group of plaintiffs (newly former employees) brought a putative class action under the Employee Retirement Income Security Act of 1974 (ERISA) challenging the prudence of the transaction.

For four decades, this Court has required ERISA plaintiffs to exhaust plan remedies before filing suit. Plaintiffs failed to comply with this unassailable requirement, and the district court dismissed their case as a result. Nonetheless, plaintiffs request that a panel of this Court hold that its prior cases are abrogated, despite the absence of any Supreme Court decision or *en banc* Eleventh Circuit decision addressing the issue and the abundance of decisions rejecting indistinguishable efforts to overturn circuit precedent. The prior-precedent rule forecloses plaintiffs' central argument on appeal.

The district court additionally declined to exercise its discretion to save plaintiffs from their clear failure by either excusing exhaustion or staying the case for plaintiffs to comply with their clear exhaustion obligation. Plaintiffs

1

had Plan remedies they could have pursued and had retained ERISA counsel more than a year and a half before filing suit on the eve of a statutory deadline. Plaintiffs' failure to comply with settled circuit precedent to pursue those Plan remedies cannot show that those remedies would have been futile or that plaintiffs warrant a favorable exercise of discretion. All this is reason to affirm the judgment below dismissing plaintiffs' claims with prejudice.

What is more, plaintiffs also lack Article III standing to assert their claims because they have not suffered any concrete injury resulting from the transaction in question. The district court's dismissal can thus be affirmed on this alternative ground.

Plaintiffs' action was doomed from the outset as they cannot satisfy the most basic requirements of exhaustion and standing. Affirmance is in order.

## STATEMENT OF THE ISSUES

1.    Whether the district court properly dismissed plaintiffs' amended complaint with prejudice after concluding that plaintiffs failed to exhaust plan remedies and that it would not exercise its discretion to excuse the failure to exhaust or to stay litigation pending exhaustion.

2.    Whether plaintiffs have Article III standing when they pleaded no facts to demonstrate an injury in fact.

## STATEMENT OF THE CASE

### A.    Legal background

The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, "provide[s] a uniform [federal] regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *see also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). As part of a "careful balancing" of this highly reticulated framework, Congress created a "comprehensive civil enforcement scheme" that provides the "exclusive" "remedy" for ERISA claims. *Aetna*, 542 U.S. at 208-209.

ERISA section 502 sets forth the civil causes of action available to enforce ERISA, including claims that may be brought by plan participants. 29 U.S.C. § 1132. Relevant here, under section 502(a)(2), "participants [can] bring actions ... against plan fiduciaries for breach of fiduciary duty." *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 931 (11th Cir. 2021); 29 U.S.C. § 1132(a)(2) (cause of action "for appropriate relief under section 1109"); *id.* § 1109(a) (making fiduciaries liable for breach of fiduciary duty). Under section 502(a)(3), participants can "obtain other appropriate equitable relief" to redress violations of ERISA provisions or the terms of a plan. 29 U.S.C. § 1132(a)(3). This provision permits claims against non-fiduciaries for "'those categories of relief' that, traditionally speaking ... 'were typically

available in equity.'" *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011) (quoting *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006)).[1]

ERISA's carefully crafted remedial scheme also places several limits on plaintiffs' ability to bring claims.

Plaintiffs must file claims within the applicable limitations period. Breach of fiduciary duty claims, for example, are subject to ERISA's "statute of repose," which "effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 774 (2020). Except in cases of fraud or concealment, the statute bars breach-of-fiduciary-duty actions after the earlier of two limitations periods: either "within six years of 'the date of the last action which constituted a part of the breach or violation' or, in cases of breach by omission, 'the latest date on which the fiduciary could have cured the breach or violation'" (29 U.S.C. § 1113(1)) or within "three years" after the plaintiff had "actual knowledge of the breach" (*id.* § 1113(2)).

---

[1]    A participant may also bring an action under section 502(a)(1)(B) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiffs have not alleged they have been denied any benefits due under the plan.

Plaintiffs must also exhaust remedies through available plan procedures before filing ERISA claims in court. An employer-sponsored ERISA benefit plan is essentially a contract between an employer and its employees to provide promised benefits subject to certain minimum standards set by federal law. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146-147 (1985). As part of that contract, employers must include certain administrative plan processes for participants to redress grievances. 29 U.S.C. § 1133, for example, expressly requires a plan to "afford a reasonable opportunity to any participation whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary." And section 1022 more broadly requires a plan to "reasonably apprise such participants … of their rights and obligations under the plan," including all "the remedies available under the plan for the redress of claims which are denied in whole or in part." 29 U.S.C. § 1022(a), (b).

Courts universally recognize that the ERISA scheme contains an implied requirement that participants in fact exhaust the available plan appeal processes before filing ERISA claims in court. *See, e.g.*, *Heimeshoff v. Hartford Life & Acc. Ins.*, 571 U.S. 99, 105 (2013). As this Court observed nearly four decades ago,

> [c]ompelling considerations exist for plaintiffs to exhaust administrative remedies prior to instituting a lawsuit. Administrative claim-resolution procedures reduce the number of frivolous law-

suits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.

*Mason v. Cont'l Grp., Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985). Thus, this Court has repeatedly reaffirmed these exhaustion principles and that "[t]h[e] exhaustion requirement applies equally to claims for benefits and claims for violations of ERISA itself." *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1224 (11th Cir. 2008); *accord Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006); *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 n.6 (11th Cir. 2000); *Counts v. Am. Gen. Life & Acc. Ins.*, 111 F.3d 105, 108-109 (11th Cir. 1997); *Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990).

The Court "strictly enforce[s]" the exhaustion requirement, excusing exhaustion only in "exceptional circumstances." *Perrino*, 209 F.3d at 1315. It will excuse the exhaustion requirement only when "resort to administrative remedies would be futile or the remedy inadequate,' ... or where a claimant is denied 'meaningful access' to the administrative review scheme in place." *Bickley*, 461 F.3d at 1328. The decision whether to excuse a failure to exhaust is "highly discretionary" and will be reversed only if the district court committed a "*clear* abuse of discretion." *Id.*

6

**B.    Factual background**

From humble beginnings in 1977 with one man and a pickup truck, defendant Inland Fresh Seafood Corporation of America, Inc. (Inland Fresh) has grown into one of the largest seafood distributors in the southeastern United States with hundreds of employees. To help employees save for retirement, Inland Fresh established the Inland Fresh Seafood Corporation of America, Inc. Employee Stock Ownership Plan (the Plan) in March 2016 and appointed defendant the Inland Fresh Seafood Corporation of America, Inc. ESOP Committee to manage the Plan as the named fiduciary. A61-62, A64, A68; *see* 29 U.S.C. §§ 1002(16)(A)(i), 1102(a). The Plan is a "defined-contribution" plan (A61-62), which means that each participant has "an individual account," the "employees and employers may contribute to the plan," "the employer's contribution is fixed and the employee receives whatever level of benefits the amount contributed on his behalf will provide." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) (cleaned up).

The Plan is also an "employee stock ownership plan" or ESOP, "a type of pension plan that invests primarily in the stock of the company that employs the plan participants." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 412 (2014). To become an ESOP, in November 2016, the Plan agreed to purchase all of the 100,000 outstanding shares of Inland Fresh common stock for

$92 million. A61-62. The shares previously belonged to defendants Joel Knox, Bill Demmond, Chris Rosenberger, and Les Schneider, who serve on the company's board of directors and as officers of the company. A56-57, A64-68. The transaction was approved by defendant James R. Urbach, who was appointed the trustee of the Inland Fresh Seafood Corporation of America, Inc. Employee Stock Ownership Trust (the Trust). A68.

The transaction was financed via a $92 million non-recourse loan. A61-62. To explain, the Plan holds Inland Fresh's common stock in the Trust as collateral for the loan, and it allocates shares of the company to individual Plan participants' accounts as principal and interest payments come due. A62. This means the participants paid nothing for the right to receive shares from the Plan, but their continued service earns them allocated shares. A174, A179-180.

The Plan has established "Claims and Review Procedures," which provide:

> While a Participant or Beneficiary need not file a claim to receive a benefit under the Plan, such a person may submit a written claim to the Committee or seek a review of the Committee's benefit determination. The Committee will afford the Participant or Beneficiary a full and fair review of such a request as provided in Supplement A.

8

A214. Supplement A outlines in detail the procedures for filing claims, committee review and determinations, and appeals to Plan fiduciaries of adverse determinations. A223-225.

Inland Fresh also added to the Plan an "Arbitration Requirement and Procedure." A218, A232-236. This section requires arbitration for "Covered Claims," which include any claim for Plan benefits, claims of Plan violations, and "any claim asserting a breach of, or failure to follow, any provision of ERISA," including "claims for breach of fiduciary duty, ERISA Section 510 claims, and claims for failure to timely provide notices or information required by ERISA." A232. The arbitration requirement does not waive "full compliance with the Plan's claims procedures as described in Supplement A," but instead requires that such procedures "to the extent applicable, must be exhausted with respect to any claim before any arbitration." A232.

### C.    Procedural background

Plaintiffs are five former Inland Fresh employees that participate in the Plan. A62-63. In May 2021, plaintiff Alison Mercker—through counsel—requested that Inland Fresh provide her with copies of the Plan documents, summary plan description, the latest annual report, and the trust agreement. A157-158.

More than a year and a half later, plaintiffs, through the same counsel, filed an ERISA complaint on behalf of the Plan and a proposed class of participants on the eve of the expiration of ERISA's six-year statute of repose. A8-9. The complaint alleged that defendants breached fiduciary duties (29 U.S.C. § 1104(a)(1)(A) & (B)), engaged in prohibited transactions (*id.* § 1106(a)-(b)), failed to monitor fiduciaries (*id.* §§ 1002(16)(A)(i), 1102(a)), and breached non-fiduciary duties (*id.* § 1132(a)(3)(B)). A43-52. Plaintiffs alleged that through the November 2016 transaction, the Plan purchased shares at a price exceeding the company's fair market value, and that defendant Urbach unlawfully approved the transaction without due diligence. A9-10; A31. But the complaint did not allege that plaintiffs exhausted administrative remedies. Accordingly, defendants filed motions to dismiss for failing to exhaust administrative remedies. Doc. 25-5 at 10; Doc. 26-1 at 2-3.

In response, plaintiffs amended their complaint. The amended complaint alleged the same ERISA violations. And it acknowledged that plaintiffs failed to use the claims procedure outlined in the Plan but took the position that Plaintiffs "have no obligation" to plead exhaustion, and that exhaustion was excused in any event. A92-112. Defendants again moved to dismiss, and the district court granted the motion. A240-255.

First, the district court held that circuit precedent required plaintiffs to allege that they exhausted administrative remedies (A244-245), but they did not do so (A247).

Second, the district court declined to exercise its discretion to excuse plaintiffs from the exhaustion requirement, rejecting each of plaintiffs' excuses as failing to satisfy the requisite standard. A247-251. In particular, the district court rejected plaintiffs' arguments that exhaustion under the Plan was only "optional" or that exhaustion would have been futile. A247-251.

Third, the district court declined to exercise its discretion to stay proceedings rather than dismiss the action. A252-254. As the court observed, plaintiffs had not properly sought such relief by motion. A252. Moreover, the court found a stay unwarranted because plaintiffs had plenty of opportunity to comply with this Court's settled precedent requiring exhaustion; as it concluded, giving these plaintiffs a stay—when they "did not attempt to pursue their claims through the administrative process and did not even bring suit on the claims until two weeks before the expiration of the statute of repose"— would "eliminate any incentive to submit to the administrative process in the first place, essentially eliminating the exhaustion requirement." A253 (citation omitted).

11

The district court therefore dismissed plaintiffs' claims (A254) with prejudice (*see* Fed. R. Civ. P. 41(b)).

## SUMMARY OF ARGUMENT

**I.**    The district court appropriately dismissed plaintiffs' complaint with prejudice for failing to exhaust administrative remedies.

**A.**    There is no dispute that plaintiffs did not pursue administrative remedies through the Plan's claims procedure. By failing to plead that they exhausted administrative remedies, plaintiffs failed to state a claim under settled circuit precedent. This Court has repeatedly and unequivocally held that the exhaustion requirement applies equally to claims for recovery of benefits and statutory ERISA claims. Plaintiffs are thus forced to argue that this Court's long line of cases on ERISA exhaustion have been abrogated. But this Court has expressly rejected efforts to overturn decades of circuit precedent. And plaintiffs' chief reason for asking the Court to do so relies on *Jones v. Bock*, 549 U.S. 199 (2007), a case interpreting a different statute that does not abrogate any ERISA decisions and, in fact, predates this Court's continued adherence to its longstanding precedent (*see, e.g.*, *Lanfear*, 536 F.3d 1217). Settled precedent required exhaustion, and plaintiffs failed to do so.

**B.**    The district court did not commit a clear abuse of discretion in declining to excuse plaintiffs' failure to exhaust administrative remedies. The

requirement is excused only in exceptional circumstances, and none is met here. Neither the Plan nor the related summary plan description indicate that exhaustion is not required. Plaintiffs' tortured interpretations of those documents must be rejected.

Futility is also no basis to excuse the failure to exhaust. This Court has adopted a strict futility standard that turns on whether plaintiffs "*could* have availed themselves of the grievance procedure." *Mason*, 763 F.2d at 1224 (emphasis added). Plaintiffs here plainly could have availed themselves of the Plan's procedures. Plaintiffs' alleged conflict of interest as a basis for futility is categorically foreclosed under circuit precedent. The lack of cross-examination in the Plan's claim procedures and Inland Fresh's failure to furnish requested documents that it was not required to provide do nothing to preclude plaintiffs from accessing the administrative claims procedure. And plaintiffs' assertion that the Plan is incapable of providing the relief sought is incorrect and immaterial. The ESOP Committee is granted significant discretion by the Plan and is empowered to resolve plaintiffs' issues. Exhaustion required that plaintiffs first seek remedies through the Plan.

**C.** The district court also did not abuse its discretion in dismissing with prejudice. The district court appropriately declined to stay the case where there was no motion to stay, and where a stay would reward plaintiffs' clear

13

violation of ERISA's exhaustion requirement by effectively tolling the statute of repose. And the district court did not abuse its discretion by making the dismissal with prejudice. Because the district court did not specify that its dismissal was without prejudice, Federal Rule of Civil Procedure 41(b) provides that it operates like an adjudication on the merits—i.e., is with prejudice. This course of action by the district court was fully appropriate given the clear violation of the exhaustion requirement and expiration of the period set by ERISA's defendant-protective statute of repose.

**II.**     Alternatively, the Court could affirm dismissal because plaintiffs lack standing under Article III. Plaintiffs failed to allege that they suffered an injury-in-fact. Instead, plaintiffs claimed bare statutory violations of ERISA, which are insufficient to demonstrate a cognizable injury. And while plaintiffs briefly alleged financial harm and risk of future financial harm, these allegations were conclusory and overly speculative, respectively. They were also belied by other allegations in the amended complaint, which showed that the Plan increased in value after the challenged transaction. That benefited plaintiffs rather than harmed them. Dismissal may therefore be affirmed for lack of standing.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim is generally reviewed *de novo. Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013). In the context of ERISA exhaustion, "[w]hether the requirement of exhaustion of administrative remedies applies to a claim is a question of law that [this Court] review[s] *de novo*," while a district court's decision "whether to excuse the failure to exhaust administrative remedies" is reviewed only "for a clear abuse of discretion." *Lanfear*, 536 F.3d at 1221; *see also Bickley*, 461 F.3d at 1328.

The district court's decisions declining to grant a stay pending exhaustion of administrative remedies and dismissing with prejudice are reviewed for abuse of discretion. *See CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

## ARGUMENT

## I.   THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS' ACTION FOR FAILING TO EXHAUST ADMINISTRATIVE REMEDIES.

The district court correctly held that the amended complaint failed to establish that (1) plaintiffs exhausted their administrative remedies prior to filing suit or (2) that plaintiffs had a legally cognizable excuse for failing to exhaust administrative remedies. There is no dispute that plaintiffs did not

bring any administrative challenge as required by circuit precedent—they went straight to court. And plaintiffs' attempt to overturn circuit precedent or to show that the district court abused its discretion are unavailing. The district court was fully correct—and well within its discretion—to apply binding circuit precedent and to decline to excuse plaintiffs' derogation of settled circuit precedent through finding futility or granting a stay. Instead, dismissal with prejudice was warranted.

### A.    Plaintiffs were required to but failed to exhaust Plan remedies.

The district court correctly held that decades of this Court's precedent required plaintiffs to exhaust administrative remedies. Nonetheless, plaintiffs insist that there is no duty to exhaust administrative remedies for statutory ERISA claims and that this Court's settled precedent has been "undermined to the point of abrogation" by a Supreme Court decision interpreting the Prison Litigation Reform Act of 1995 (PLRA) that predates cases like *Lanfear* continuing to adhere to this rule. Plaintiffs' Br. 24; *see Jones*, 549 U.S. 199.

A panel of this Court may not overturn Circuit precedent. And no Supreme Court case has abrogated this Court's decisions applying the exhaustion requirement in ERISA cases. The applicable law therefore required plaintiffs to pursue administrative remedies, as the district court correctly held.

### 1.    *Binding circuit precedent required exhaustion.*

"The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Bickley*, 461 F.3d at 1328 (quoting *Counts v. Am. Gen. Life & Acc. Ins.*, 111 F.3d 105, 108 (11th Cir. 1997)). "Th[e] exhaustion requirement applies equally to claims for benefits and claims for violations of ERISA itself." *Lanfear*, 536 F.3d at 1224 (quoting *Bickley*, 461 F.3d at 1328).

In *Bickley*, the Court applied the exhaustion requirement to a claim that the defendant breached its duty as a fiduciary of an employee benefit plan by "enriching itself 'through undisclosed discounts, rebates, coupons and other forms of compensation.'" 461 F.3d at 1327-1328. The Court observed that it has "repeatedly emphasized" that the exhaustion requirement

> reduce[s] the number of frivolous lawsuits under ERISA, minimize[s] the cost of dispute resolution, enhance[s] the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow[s] prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.

*Id.* at 1330 (quoting *Mason*, 763 F.2d at 1227). Therefore, the plaintiff's failure to plead that he exhausted his administrative remedies was fatal to his breach of fiduciary duty claims. *Id.* at 1330.

Elaborating on *Bickley*, the Court in *Lanfear* declined again to narrow

17

the exhaustion requirement. There, the plaintiffs sued for breach of fiduciary duty "regarding the diminution of value of a defined contribution retirement plan." *Lanfear*, 536 F.3d at 1219. The plaintiffs attempted to distinguish *Bickley* on the ground that the alleged breach in that case "was committed by a third-party administrator of the plan," whereas in *Lanfear*, it was committed by the plaintiffs' former employer, the employer's board of directors, and the employer-appointed committees administering the plan. *Id.* at 1219-1220, 1224. The Court rejected the argument because "*Bickley* did not rest on this distinction." *Id.* at 1224. It held that "[t]he exhaustion requirement applies to complaints for breach of fiduciary duty under ERISA regardless of whether the breach was committed by a third-party administrator of the plan or the employer." *Id.* That holding was consistent with prior Eleventh Circuit precedent, which recognized that "ERISA claims arising from the substantive provisions of the statute" must first be exhausted, and that this requirement is "strictly enforce[d]." *Perrino*, 209 F.3d at 1315-1316 & n.6.

*Lanfear* controls plaintiffs' claims. As in *Lanfear*, plaintiffs brought claims under the substantive provisions of ERISA against their former employer, its board of directors, and the committee appointed to administer the Plan. It is settled law in this circuit that the "exhaustion requirement applies" here. *Lanfear*, 536 F.3d at 1224.

Plaintiffs' references to sister circuit decisions that contradict binding circuit precedent are inapposite. Despite conceding that the Eleventh Circuit and the Seventh Circuit are on one side of an "established circuit split" as to whether statutory ERISA claims must be exhausted, plaintiffs recite the reasoning of courts on the *other* side, as if those courts bind this one. Plaintiffs' Br. 24. Of course, this Court is "bound to follow [its] own precedent instead of [out-of-circuit] case law." *In re Hubbard*, 803 F.3d 1298, 1306 n.7 (11th Cir. 2015). This Court in *Mason* thoroughly considered Congress's intent and the same arguments on the other side in 1985—and it rejected those arguments. It held instead that "the legislative history of ERISA indicated that Congress had intended for the courts to apply an exhaustion requirement" to statutory ERISA claims. *Mason*, 763 F.2d at 1227. And that was one of many "[c]ompelling considerations" supporting the Court's interpretation. *Id.* The Court has reiterated that same holding numerous times for decades and rejected the same attempt plaintiffs make to change the Court's mind. *See, e.g.*, *Bickley*, 461 F.3d at 1328 n.6 (refusing to "reconsider its precedent requiring exhaustion of administrative remedies for claims alleging violation of statutory rights").

The Court's settled precedent required exhaustion—which plaintiffs undisputedly did not undertake.

### 2. *The Court's precedents have not been abrogated.*

Settled circuit precedent required exhaustion of remedies. And, as plaintiffs recognize, "an earlier panel's holding is controlling 'unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*.'" *United States v. Files*, 63 F.4th 920, 923 (11th Cir. 2023); Plaintiffs' Br. 24. This Court's "clear" line of precedent requiring exhaustion of ERISA statutory claims has not been abrogated. *Lanfear*, 536 F.3d at 1223.

Abrogation is a demanding standard. "A Supreme Court decision does not overrule one of our prior opinions unless the Supreme Court decision is 'clearly on point.'" *United States v. Lawson*, 686 F.3d 1317, 1319 (11th Cir. 2012) (quoting *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009)). "In addition to being squarely on point," the doctrine requires that the "intervening Supreme Court case actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *Kaley*, 579 F.3d at 1255 (holding that a Supreme Court decision finding disqualification of counsel to be erroneous because it deprived criminal defendant of his "counsel of choice" did not abrogate Eleventh Circuit precedent regarding restrictions on a criminal defendant's use of certain assets to pay legal fees of his counsel of choice).

The requirement to exhaust ERISA statutory remedies is settled in this circuit. Nonetheless, plaintiffs request that "*Mason* and its progeny" be recognized as abrogated, yet in the same breath admit that several cases on the ERISA exhaustion requirement have expressly applied the prior-precedent rule to this issue. *See* Plaintiffs' Br. 25-26 & n.6 (citing *Perrino*, 209 F.3d at 1315 n.6; *Springer*, 908 F.2d at 899-900 & n.1; and *Counts*, 111 F.3d at 109). And in 2006, this Court in *Bickley* refused to "reconsider its precedent requiring exhaustion of administrative remedies for claims alleging violation of statutory rights." 461 F.3d at 1328 n.6. The Court explained that "unless otherwise directed by the United States Supreme Court or this court *en banc*, we are bound by precedent to apply the exhaustion requirement." *Id.*

Plaintiffs primarily rely on *Jones v. Bock*, 549 U.S. 199 (*see* Plaintiffs' Br. 25-27), but that case had nothing to do with ERISA. *Jones* interpreted the PLRA to resolve two issues: (1) "whether exhaustion under the PLRA is a pleading requirement the prisoner must satisfy in his complaint or an affirmative defense the defendant must plead and prove," and (2) what was the "level of detail required in a grievance to put the prison and individual officials on notice of the claim." 549 U.S. at 204-205. The Court held that the proper "interpretation *of the PLRA*" was that exhaustion was an affirmative defense, not

a pleading requirement. *Id.* at 216 (emphasis added). It reached that conclusion by examining the actual provisions and unique statutory context of the PLRA, including the fact that "claims covered by the PLRA are typically brought under 42 U.S.C. § 1983, which does not require exhaustion at all." *Id.* at 212. It also considered that the "PLRA dealt extensively with the subject of exhaustion," making the lack of an explicit pleading requirement especially notable. *Id.*

Unlike the PLRA, ERISA claims by plan participants are brought under 29 U.S.C. § 1132(a)—ERISA itself, and not Section 1983. And the statute *does* provide an exhaustion requirement, but not an "extensive[]" system of exhaustion provisions like in the PLRA. ERISA requires that every benefit plan shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim" (29 U.S.C. § 1133(2)) and permits a plan to define "procedures to be followed" and "remedies available" for redress (*id.* § 1022(b)). Faced with this particular statutory context, this Court agreed with sister circuits that the structure, purpose, and history of ERISA made it clear "that Congress had intended for the courts to apply an exhaustion requirement." *Mason*, 763 F.2d at 1227. An intervening decision interpreting the PLRA is far from being "squarely on point," let alone in "direct[]

22

conflict" with this Court's well established ERISA precedent. *Kaley*, 579 F.3d at 1255.

Plaintiffs contend that "[g]iven *Bock*'s holding … in the context of" the PLRA, an exhaustion requirement for statutory claims "in the context of" ERISA "is necessarily improper." Plaintiffs' Br. 27. But the recognition that these are indeed different contexts is fatal to plaintiffs' argument. Moreover, "[e]ven if the reasoning of an intervening high court decision is at odds with a prior appellate court decision," as plaintiffs suggest, this Court has held that "that does not provide the appellate court with a basis for departing from its prior decision with prior circuit precedent." *United States v. Vega-Castillo*, 540 F.3d 1235, 1237 (11th Cir. 2008).

Plaintiffs' other cases fare no better than *Jones. Felder v. Casey* was a preemption case that rejected a state exhaustion requirement that attached to federal Section 1983 claims. 487 U.S. 131, 149 (1988). The decision rested on peculiarities of Section 1983 and other "civil rights statutes," which, by their very nature, "*belong in court*" and "are judicially enforceable *in the first instance*." *Id.* at 148. ERISA is entirely different because Congress drafted it to ensure that "pension plans provide intrafund review procedures." *Mason*, 763 F.2d at 1227.

The Supreme Court's ERISA cases cited by plaintiffs do not address exhaustion at all. *Great-West Life & Annuity Insurance Co. v. Knudson* held that an ERISA provision authorizing equitable relief could not be used to bring a certain claim seeking legal relief. 534 U.S. 204, 209 (2002). And in *Massachusetts Mutual Life Insurance v. Russell*, the Court declined to recognize a "cause of action for extra-contractual damages" where there was no suggestion whatsoever "in the statute itself and in its legislative history" that Congress intended to allow such a cause of action. 473 U.S. at 148. By contrast, this Court's decisions upholding the exhaustion requirement did so on the basis of evidence in ERISA's text and purpose. *See Mason*, 763 F.2d at 1227. Finally, *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.* merely authorized ERISA suits against nonfiduciaries. 530 U.S. 238, 247 (2000). Again, that is nowhere near being squarely on point in contradiction with this Court's exhaustion cases.

Because no case has abrogated *Mason* and its progeny, the panel of this Court must continue to observe this Circuit's exhaustion requirement in ERISA cases.

### 3.    *Although immaterial here, binding circuit precedent requires ERISA plaintiffs to plead exhaustion.*

Plaintiffs additionally suggest (at 33-36) that, even if exhaustion of statutory ERISA claims were required, they should not be required to *plead* exhaustion. But any dispute on this is entirely academic here: Plaintiffs did in fact plead that they were excused from exhausting administrative remedies. It is thus immaterial whether a hypothetical ERISA plaintiff does or does not have to plead exhaustion—because plaintiffs' failure to exhaust appears undisputedly on the face of the complaint. A92-112; Plaintiffs' Br. 34-35 (acknowledging that plaintiffs affirmatively chose to plead facts regarding excuse from exhaustion); *see also Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) ("A complaint may be dismissed if an affirmative defense … appears on the face of the complaint." (citing *Jones*, 549 U.S. at 215)).

Regardless, plaintiffs again run headlong into circuit precedent. Not only does circuit precedent require exhaustion, it requires an ERISA plaintiff to *plead* exhaustion. *See Garcon v. United Mut. of Omaha Ins. Co.*, 779 F. App'x 595, 599 (11th Cir. 2019) ("The plaintiff must plead that he has exhausted available administrative remedies."); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160-161 (11th Cir. 1992) (affirming the district court's judgment "on the requirement of pleading exhaustion of remedies").

25

Nor has this circuit precedent on pleading exhaustion been abrogated either. For similar reasons that this circuit's exhaustion requirement for ERISA statutory claims has not been abrogated (*see supra* at 20-24), *Jones v. Bock* has likewise not altered the requirement that a plaintiff must plead exhaustion to bring an ERISA claim. *See, e.g.*, *Byrd*, 961 F.2d at 160 (11th Cir. 1992); A245 (collecting cases).

As explained above (at 21-23), *Jones* held that the proper "interpretation *of the PLRA*" was that exhaustion was an affirmative defense, not a pleading requirement. 549 U.S. at 216 (emphasis added). It reached that conclusion by examining the actual provisions and unique statutory context of the PLRA. It did not address the unique statutory context of ERISA. It therefore cannot possibly meet the requirements of being "clearly on point" and "actually abrogate[ing] or directly conflict[ing] with, as opposed to merely weaken[ing], the holding of the prior panel." *Kaley*, 579 F.3d at 1255.

It is worth emphasizing that—as with the Court's substantive exhaustion requirement—the Court's requirement that ERISA plaintiffs plead exhaustion is correct; whether ERISA exhaustion is part of plaintiffs' claim or an affirmative defense is immaterial as a practical matter in the ERISA context in light of the Supreme Court's seminal decisions in *Bell Atlantic Corp. v.*

26

*Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which post-date *Jones*.

As noted above, the Plan is essentially a contract between an employer and an employee, and each Plan includes its own procedures that plaintiffs must use before filing suit. And it is well-settled that courts may consider the terms of a plan in resolving a motion to dismiss ERISA claims (*Bickley*, 461 F.3d at 1329 n.7) because the existence and terms of the Plan and the plaintiff's participation in it are "central to" any participant's ERISA claims—as plaintiffs themselves seem to acknowledge (*see, e.g.*, A62-63).

As a matter of contract, a plaintiff's ability to plausibly allege entitlement to relief in court naturally turns on whether she complied with ERISA's antecedent requirement to seek the remedy her plan provides. And even if treated as an affirmative defense, a failure to exhaust will necessarily appear on the face of an ERISA plaintiff's complaint absent allegations about exhaustion. That is because the plaintiff must allege or incorporate the terms of the plan, and the plan terms will show that the plaintiff's lawsuit could not be brought until Plan remedies were exhausted, as Inland Fresh's do here. *See supra* at 8-9; *infra* at 29-36; *cf. Louis v. Aetna Health Inc.*, 2017 WL 6939166, at *4 (M.D. Fla. Jan. 13, 2017) (collecting cases uniformly agreeing that plan

27

terms requiring arbitration of ERISA statutory claims are generally enforceable). A plaintiff's silence on exhaustion conclusively proves all an ERISA defendant needs to establish the defense—that there was exhaustion required and a process available, with no action by the plaintiff.

*    *    *

Plaintiffs were required to but failed to exhaust administrative remedies. Because the district court did not commit a clear abuse of discretion in declining to excuse exhaustion as we explain below (*see infra* at 28-41), dismissal follows.

### B.    The district court did not commit a clear abuse of discretion by declining to excuse plaintiffs' failure to exhaust.

The district court declined to exercise its discretion to excuse plaintiffs' failure to exhaust administrative remedies after finding that plaintiffs had ample opportunity to pursue the Plan processes. Nonetheless, plaintiffs contend that the district court abused its discretion in failing to excuse them from the exhaustion requirement. Plaintiffs' Br. 36-49. They assert a bevy of excuses: (1) the Plan language and summary plan description do not require exhaustion (Plaintiffs' Br. 36-39, 44-45); (2) exhaustion would have been futile due to a conflict of interest (*id.* at 46-49); and (3) the Plan claims procedure otherwise provided an inadequate remedy (*id.* at 40-43). But none of these provides a

28

legally cognizable excuse, nor did the district court clearly abuse its discretion in concluding as much.

As an initial point, plaintiffs misstate the standard as "abuse of discretion." Appellants' Br. 20. This Court has stressed that because the "district court has the sound discretion" to excuse exhaustion, the proper standard of review is "*clear* abuse of discretion." *Bickley*, 461 F.3d at 1328 (emphasis in original); *accord Lanfear*, 536 F.3d at 1221; *cf. Fox v. Bowen*, 835 F.2d 1159, 1162 (6th Cir. 1987) ("'Clear' means obvious, unmistakable, certain, positive."). Plaintiffs' arguments cannot survive that standard.

### 1. *Neither the Plan nor summary plan description excused exhaustion.*

The district court did not clearly abuse its discretion in finding that neither the Plan nor summary plan description excused plaintiffs from exhausting Plan remedies.

For their argument, plaintiffs first rely on a phrase in the Plan's "Claims and Review Procedures" section informing participants that "[w]hile a Participant or Beneficiary *need not* file a claim to receive a benefit under the Plan, such a person may submit a written claim to the Committee or seek a review of the Committee's benefit determination." Plaintiffs' Br. 36; A214. Plaintiffs also identify a similar phrase in the summary plan description that states that "[a]lthough you do not need to file a formal claim to receive your benefit, you

may submit a written claim to the Committee or seek a review of the determination by the Committee on your Plan benefit." A153. According to plaintiffs, the words "need not" and "you do not need to" imply that participants may go directly to court without filing administrative challenges.

That is a red herring. No one argues that exhaustion is a prerequisite to "receiv[ing] a benefit." Rather, ERISA requires the plaintiff to exhaust administrative remedies "before suing in federal court." *Lanfear*, 536 F.3d at 1223. Under the Plan, distribution of benefits is scheduled and automatic. A200-211; *see, e.g.*, A204 (describing participants that "must receive or begin to receive payment of their Accounts by that April 1 date, regardless of employment status"). As a matter of common sense, one "need not" file a claim every time she desires to receive a benefit to which she is entitled.

The Plan language clearly draws a distinction between *receiving* a benefit—for which a written claim is not required—and the option to "seek a review of the Committee's benefit determination." A214. *After* a participant receives or does not receive a benefit, *then* he or she may initiate the administrative process to challenge the Committee's action. That there is "no need" to file a claim in order to *receive* a benefit is an unremarkable proposition.

Plaintiffs twist the Plan language by construing the phrase "receive a benefit" to refer to "whatever would have been [in the account] had the plan

30

honored the employee's entitlement, which includes an entitlement to prudent management." Plaintiffs' Br. 36 (quoting *Lanfear*, 536 F.3d at 1222-1223). Yet even under that construction, plaintiffs *have* received benefits, and what they contest is the amount. A claim based on their "entitlement to prudent management" would constitute "seek[ing] a review" of a benefit determination, which must be done through the administrative process.

The clause providing that participants "may submit a written claim" also does not eliminate the exhaustion requirement. *See* Plaintiffs' Br. 37. Filing a claim is optional in the sense that a participant is never *required* to pursue a claim at all. But that does not mean the administrative process can be entirely dispensed with for participants who do wish to pursue eventual relief in court. As to those participants, the Plan's language does nothing to remove the exhaustion requirement derived from 29 U.S.C. § 1133.

Plaintiffs next suggest that the claims procedure is restricted to claims asserting that the Committee made a "mistake of fact" or otherwise "misapplied the Plan's terms." Plaintiffs' Br. 37 (citing A213, A154, A225). That argument places too much weight on isolated phrases in the Plan and summary plan description. Nowhere does either document remotely suggest that the Committee's review can only involve correcting a mistake of fact or correcting a misapplication of the Plan's terms. To the contrary, the Plan broadly states

31

that "any determination" the Committee makes "will be binding on all persons," and that the Committee is "entitled to rely upon information" furnished by outside sources to make its determinations. A213.

In any case, plaintiffs' claims *do* implicate the Plan's terms because they concern the 2016 initial purchase of Inland Fresh common stock. Article V of the Plan states that "in no event will the Trust hold shares of Company Stock if and to the extent such investment would violate any provision of ERISA or the Code or is otherwise determined to be imprudent by the Committee or Trustee." A192. It further provides that "[a]ll purchases of Company Stock by the Trust will be made at a price, or at prices, which, in the judgment of the Trustee, do not exceed the fair market value of such Company Stock." A192. And it specifically ensures that "the Trustee will determine fair market value" in "the initial acquisition of Company Stock." A192.

These provisions bear directly on plaintiffs' claims. Plaintiffs' conclusion that "the Transaction which established the Plan was illegal because the inflated purchase price resulted from an imprudent process" (Plaintiffs' Br. 38) does, after all, assert *both* a "mistake of fact" (an allegedly erroneous assessment of fair market value) *and* a misapplication of the "Plan's terms"

32

(those prohibiting ERISA violations and the "imprudent" acquisition of company stock). There is therefore no basis to excuse plaintiffs' failure to pursue administrative remedies.

Plaintiffs misapply *Watts v. BellSouth Telecommunications, Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003). In that case, the plan established a "two-tier claim and appeal procedure for participants who wish to make a disability claim." *Id.* at 1204. The plaintiff filed a claim for benefits, received a denial, and then appealed the denial. *Id.* at 1205. But she did not file a "second administrative appeal" because the summary plan description led her to believe that it was not required. *Id.* at 1206. The document stated that participants "may use" the administrative appeal procedure after a "claim for benefits is denied," but it also stated that "[i]f you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court." *Id.* This suggested that a participant could deem the administrative remedies process complete for purposes of exhaustion so long as a claim has been "denied or ignored."

The Court held that a plaintiff could be excused from exhaustion if she "reasonably believed, based upon what the summary plan description said, that she was not required to exhaust her administrative remedies before filing a lawsuit." 316 F.3d at 1207. And "[b]y describing without limitation either

route"—continuing the appeals process or filing in court—"as one the participant 'may' use to obtain relief," the "clear implication" of the summary plan description was that "neither is a prerequisite for the other." *Id.* at 1208.

This case is distinguishable from *Watts* for two principal reasons. First, plaintiffs did not file any administrative claims, let alone complete an administrative appeal. In *Watts*, it was reasonable to believe under those circumstances, based on the summary plan description, that a *second* appeal was not required. The same cannot be said here because in no sense could the administrative claims process be deemed complete.

Second, the summary plan description in *Watts* created a classic ambiguity. It provided that *after* a claim for benefits was denied or ignored, the participant "may" do either of two things—appeal the decision or file an action in court. But here, there is no such ambiguity. There is only the general recognition that "you may file suit in a state or federal court" to challenge a denial of benefits, and that if "Plan fiduciaries misuse the Plan's money, … you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court." A156.

Under *Bickley*, these statements do not excuse exhaustion. That case involved identical plan language on fiduciary misuse of funds, directing participants to seek assistance from the Department of Labor or to sue in federal

34

court. *Bickley*, 461 F.3d at 1329. But this Court held that the "may file suit in federal court" language "merely recites plan participants' general rights under ERISA and does not excuse a participant from satisfying the exhaustion requirement." *Id.*

This Court's decision in *Springer*, which was cited approvingly in *Bickley*, went even further. It held that it was "frivolous" to argue that "the Plan … itself g[a]ve [the plaintiff] the right to sue in federal court" without exhaustion in circumstances where the participant has a "claim for benefits under the Plan which is denied or ignored in whole or in part." *Springer*, 908 F.2d at 900. As in *Bickley*, the plan language "merely recite[d] beneficiaries' general rights under ERISA," including the "undisputed … *eventual* right to seek federal court review." *Id.* (emphasis added). To hold otherwise would contradict "[t]he very premise of the exhaustion requirement" that "the right to seek federal court review matures only after that requirement has been appropriately satisfied or otherwise excused." *Id.*

There is no room for confusion about the Plan language here. As in *Springer* and *Bickley*, the Plan and summary plan description express the availability of eventual relief in court. Plaintiffs' reference to the provision that participants "need not" file a claim to *receive* a benefit is a strained attempt to conjure an ambiguity and recreate *Watts*. The Plan itself thwarts that attempt

because it sets forth clear administrative procedures for resolving a variety of disputes, without even a hint that participants could skip those procedures and file a lawsuit immediately.

Furthermore, the Plan's arbitration provision reinforces the exhaustion requirement. It states that "the Plan's claims procedures … *must be exhausted* with respect to *any* claim" prior to arbitration. A232. And that announcement occurs in the context of "Covered Claims" which are defined to include claims for benefits as well as statutory ERISA claims. A232. The "average plan participant" would well understand that the administrative claims process must come first. *Watts*, 316 F.3d at 1207. There was no clear abuse of discretion in finding that the Plan and summary plan description were not grounds to excuse exhaustion.

### 2.    *Plaintiffs cannot show exhaustion would have been futile.*

The district court also did not clearly abuse its discretion in concluding that plaintiffs could not meet this Court's futility standard. A249-251.

The Court's unwillingness to excuse a failure to exhaust on the basis of futility is enshrined in the difficult standard set out in *Mason*. "The test for 'futility' is not[] … whether the employees' claims would succeed, but

whether the employees could have availed themselves of the grievance procedure." 763 F.2d at 1224.[2] The plaintiff must show that "they would be denied access to the claims procedures" if they attempted to use them. *Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 83 (4th Cir. 1989). "[B]are allegations of futility are no substitute for the 'clear and positive' showing of futility required before suspending the exhaustion requirement." *Bickley*, 461 F.3d at 1330. Thus, the futility standard requires complete absence of an opportunity to raise claims through an ERISA procedure. *See, e.g.*, *Mason*, 763 F.2d at 1224. Plaintiffs cannot make this showing.

Plaintiffs make several futility arguments, but none comes close to showing that Plan procedures were entirely unavailable, let alone that the district court clearly abused its discretion in finding procedures to be available.

**a.** Plaintiffs' first argument—that because some ESOP Committee members are also board members, they could not "fairly adjudicate Plaintiffs' claims" (Plaintiffs' Br. 47)—is foreclosed by circuit precedent. "[T]he futility

---

[2]    Although *Mason* applied the futility standard in the context of collective bargaining, this Court uses the same standard in the ERISA context. *See Springer*, 908 F.2d at 901 (adopting "clear and positive" futility standard from *Makar*, 872 F.2d at 83); *Makar*, 872 F.2d at 83 (ERISA futility standard same as futility standard under Labor Management Relations Act).

exception is about meaningful access to administrative proceedings, *not a potential conflict of interest of the decisionmakers.*" *Lanfear*, 536 F.3d at 1225 (emphasis added). The Court cited *Springer*, which had held that a plaintiff "may not invoke the futility exception" where "the reviewer is 'basically the same entity as the initial internal decider and … both deciders have an interest in 'holding costs down.'" *Id.* And in *Lanfear*, the Court rejected a futility claim identical to plaintiffs': the claim that the "same parties who breached their fiduciary duty would have been the decisionmakers in the administrative proceeding." *Id.* at 1224; *compare id. with* Plaintiffs' Br. 47 (arguing futility because "Plaintiffs would be asking the Committee members to hold themselves … personally liable").

Plaintiffs address *Springer* in their futility argument, but not *Lanfear*. They attempt to distinguish *Springer* on the basis that this case involves claims of significantly greater financial loss than the "$20,000 medical claim" in that case. Plaintiffs' Br. 47. But *Lanfear* clarified the futility analysis and categorically ruled out any conflict-based arguments, regardless of the degree of conflict. "[T]he futility exception" is simply not "about" conflict of interest. 536 F.3d at 1225; *accord Springer*, 908 F.2d at 901 (futility argument was "insufficient as a matter of law"). This is consistent with the Court's repeated emphasis that futility is about *access* to process. No conflict

of interest could prevent the plaintiffs from accessing the claims procedures outlined in the Plan.

**b.** Plaintiffs' complaint about the defendants' failure to produce certain documents upon request and the lack of a cross-examination procedure (Plantiffs' Br. 48-49) does not render exhaustion futile, for similar reasons.

Plaintiff Mercker requested certain documents "[u]nder ERISA § 104(b)(4) [29 U.S.C. § 1024(b)(4)], and 29 CFR § 2520.104b." A157. In response, Inland Fresh provided several of the requested documents, but not documents that ERISA did not require it to disclose. A159. That cannot possibly be an "exceptional circumstance[]" justifying excuse (*Perrino*, 209 F.3d at 1315), else there would be no exhaustion requirement because a would-be plaintiff would need only request a document she has no right to in order to obviate the exhaustion requirement.

Nor is the lack of a cross-examination procedure a possible basis for excuse from exhaustion. It is commonplace for administrative proceedings not to provide for cross-examination. *Cf. Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987). Plaintiffs cannot say that if they had attempted to pursue administrative remedies, they would have been "denied access to the claims procedures." *Makar*, 872 F.2d at 83. That the procedure might be *different* from litigation does not render it unavailable. Thus, these arguments fail to

make the required "clear and positive" showing that exhaustion would have been futile.

**c.** Finally, plaintiffs suggest that this Court has "not addressed" when a plaintiff can circumvent the exhaustion requirement by asserting that the claims process was "not capable of providing the relief sought." Plaintiffs' Br. 41-42.

But plaintiffs' argument cannot be squared with *Bickley*. There, the Court was "not persuaded" that "no administrative procedure for [plaintiff's] statutory claims was available because the administrative scheme in the Plan only related to denial of benefit claims." *Bickley*, 461 F.3d at 1329. Because the Plan granted the employer discretion to administer the Plan and resolve all questions that may arise, it was sufficient that it could "receive and review claims such as [the plaintiff's] and respond." *Id.* at 1330.

The same follows here. The ESOP Committee has broad authority to "decide all questions arising in the administration, interpretation and application of the Plan and Trust Agreement." A213. It may develop a record and render a decision on plaintiffs' claims, fulfilling the purpose of the exhaustion doctrine. And the ESOP Committee "has the duties and powers necessary to discharge its obligations under the Plan and Trust Agreement," which are "not limited to" those listed in the Plan. A212.

Plaintiffs' argument—that a plaintiff need only allege some form of relief only available in court to enable it to wholesale circumvent ERISA's exhaustion requirement—is irreconcilable with the reasons for the exhaustion requirement and the terms of the Plan. Exhaustion is meant to "reduce the number of frivolous lawsuits under ERISA," "minimize the cost of dispute resolution," and facilitate fiduciaries' resolution of issues. *Mason*, 763 F.2d at 1227. There is no reason why exhaustion is "futile" within the meaning of this Court's precedents simply because plaintiffs insist that they want a remedy the Plan would not be willing to provide; lesser remedies might well resolve or narrow the dispute. At the very least, the district court did not clearly abuse its discretion in concluding that the Plan procedures were sufficient not to render the administrative process futile, and its conclusion in that regard should be upheld.

### C. The district court did not abuse its discretion in dismissing with prejudice rather than ordering a stay.

The district court correctly dismissed this action with prejudice in light of plaintiffs' exhaustion failures. Nonetheless, plaintiffs contend that, rather than dismiss, the district court should have granted a stay pending exhaustion of administrative remedies or dismissed without prejudice. The district court exercised its discretion appropriately as to each.

**1.** The district court was well within its discretion not to order a stay.

41

For starters, as the district court noted, plaintiffs never filed a motion to stay proceedings. *See* A252 (citing Fed. R. Civ. P. 7(b)). A district court acts well within its discretion to deny relief not properly requested by motion. *Accord, e.g.*, *Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315, 1336 (11th Cir. 2024) (no abuse of discretion to deny leave to amend when not requested by proper motion). And it is far too late now to cure the error. *Cf. Woods v. Warden, Holman Corr. Facility*, 952 F.3d 1251, 1256 (11th Cir. 2020) (stay not warranted where party failed "to justify his extreme delay in filing" motion for stay).

The district court appropriately denied the stay as a substantive matter too. "The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies *before* suing in federal court." *Bickley*, 461 F.3d at 1328 (emphasis added). To be sure, a district court has "broad discretion" to conclude that a particular case warrants a stay of proceedings while a plaintiff exhausts the remedies she should have pursued before filing suit. *E.g.*, *Lanfear*, 536 F.3d at 1223. But the district court surely did not abuse its discretion in finding this case not worthy of a favorable exercise of discretion. A252-254.

As described at length (at pages 16-24, *supra*), that this Court requires exhaustion of administrative remedies before filing an ERISA suit is beyond

any reasonable dispute. By June 2021, plaintiff Mercker had already retained experienced ERISA counsel who requested plan documents on her behalf. A157-158. Plaintiffs then waited a *year and a half* before commencing this action on November 18, 2022, one week before November 26, 2022, when the six-year period expired under ERISA's statute of repose (A8; A61-62) and without having even commenced the required administrative process. The district court appropriately considered such conduct to "flout[] the policy reasons underlying the exhaustion requirement" and undeserving of a favorable exercise of discretion. A252-253 (citing *Perrino*, 209 F.3d at 1315).

Plaintiffs, represented by experienced ERISA counsel since at least May 2021 (*see* A117-120, A157-158), could have exhausted administrative remedies rather than wait and hope that the district court would excuse exhaustion in light of the self-inflicted proximity of the limitations period. Permitting plaintiffs to file suit without first completing (or even starting) the administrative process is at odds with "important policy rationales" underlying the exhaustion requirement (*Perrino*, 209 F.3d at 1315)—namely, that it is meant to "reduce the number of frivolous lawsuits under ERISA" and "minimize the cost of dispute resolution." *Mason*, 763 F.2d at 1227. Under plaintiffs' rule requiring a stay be entered whenever plaintiffs have run out of time to pursue the exhaustion process, every ERISA plaintiff could file a complaint before

43

even attempting to exhaust plan administrative remedies, so long as they waited long enough to do it. That framework would inevitably burden courts with lawsuits that might well never have been filed if pursued through the administrative claims process in the first instance. And rather than "minimiz[ing] the cost of dispute resolution" (*Mason*, 763 F.2d at 1227), granting stays as a matter of course would impose additional financial burdens on defendants by requiring them to retain counsel to represent them in court instead of focusing resources on addressing claims through established internal procedures that may resolve those claims entirely.

Nor is it an answer to claim that denying a stay may cause plaintiffs to "lose substantive rights" because ERISA's statute of repose will bar future litigation. Plaintiffs' Br. 50. While "[s]tatutes of repose arguably affect rights, remedies, and rules of decision"—they do so by conferring "on *defendants* a right to be free of liability by imposing an absolute temporal bar on claims"; they "prevent recovery by plaintiffs after the repose period, and [they] impose the additional decision rule that courts must rule in defendants' favor if plaintiffs delay beyond the statutory period to bring suit." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1248 (11th Cir. 2016) (emphasis added). *Defendants* have a right to no longer face ERISA liability after the statute of repose

44

expires. Allowing plaintiffs to routinely circumvent either the exhaustion requirement or statute-of-repose's effect is irreconcilable with ERISA. These plaintiffs in particular—who challenge an ESOP transaction that occurred six years before filing litigation, who retained ERISA counsel and requested documents more than a year and a half before filing litigation, and who have never even tried to exhaust remedies despite admitting it would have only taken six months (Plaintiffs' Br. 14)—could hardly present a less compelling case in which to override these principles.

In short, the district court appropriately refused to reward plaintiffs' failure to comply with this Circuit's well settled exhaustion precedents, particularly where a defendant-protective statute of repose is in play.

**2.** The district court was also within its discretion to dismiss this case with prejudice.

The Inland Fresh defendants' motion to dismiss expressly requested dismissal with prejudice. Doc. 42-1 at 19, 25. Plaintiffs complain, however, because although the district court granted defendants' motion, it did not expressly specify whether its dismissal was with prejudice. Plaintiffs' Br. 51-54; *see also* A254-255. But the district court did not need to specify. Under Federal Rule of Civil Procedure 41(b), unless a dismissal order states otherwise, the dismissal, "except one for lack of jurisdiction, improper venue, or failure to

45

join a party under Rule 19—operates as an adjudication on the merits"—that is, it is *with* prejudice.

Plaintiffs take issue with the ordinary operation of Rule 41 and cite *Bryant v. Rich* for the proposition that dismissal on exhaustion grounds is "not generally an adjudication on the merits." 530 F.3d 1368, 1374 (11th Cir. 2008). But the Court expressly limited its discussion to the facts that (1) the district court's "dismissal was without prejudice" and (2) where exhaustion of administrative remedies was not "absolutely time barred or otherwise clearly infeasible." *Id.* at 1375 n.11. Thus, when the *Bryant* Court noted that "[w]e do not mean to say today that a failure to exhaust can never correctly result in a dismissal with prejudice" (530 F.3d at 1375 n.11), it likely was contemplating a case like this one.

Here, the district court dismissed the complaint for failure to state a claim on grounds that plaintiffs failed to plead exhaustion and that their conduct in running up against ERISA's statute of repose—which has now long passed—warranted dismissal. Under these circumstances, it was within the district court's discretion to render a dismissal with prejudice.

## II.    PLAINTIFFS LACK ARTICLE III STANDING.

Although the district court dismissed the amended complaint on exhaustion grounds, this Court has an "independent obligation to ensure jurisdiction

46

exists" (*Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1206 (11th Cir. 2019)), and it may affirm on "any ground supported by the record" (*Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019)). It should affirm on the ground that plaintiffs lack Article III standing.[3]

"The irreducible constitutional minimum of standing requires a plaintiff to show that he (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Flat Creek Transp., LLC v. Fed. Motor Carrier Safety Admin.*, 923 F.3d 1295, 1300 (11th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)) (cleaned up). "[M]ere conclusory statements"—legal conclusions couched as factual allegations—cannot support standing. *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022). "Where, as here, a case is at the pleading stage,

---

[3]   The Supreme Court's jurisdictional-sequencing trilogy permits ruling on the threshold discretionary issue of exhaustion first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 (1998) (observing that an "exhaustion question" might be properly resolved before jurisdiction); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*, 549 U.S. 422, 430-431 (2007) ("a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits'" (citation omitted)); *see also Bryant*, 530 F.3d at 1374 ("Even though a failure-to-exhaust defense is non-jurisdictional, it is like a defense for lack of jurisdiction in one important sense: Exhaustion of administrative remedies is a 'matter[ ] in abatement, and ordinarily [does] not deal with the merits.'").

the plaintiff must 'clearly ... allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338. This Court "take[s] seriously" that requirement "because standing doctrine is intended to confine the federal courts to a properly judicial role." *Flat Creek Transp.*, 923 F.3d at 1300. Moreover, each element must be "plausibly" demonstrated. *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021).

To demonstrate an injury in fact, a plaintiff must plead "an injury that is concrete, particularized, and actual or imminent, rather than conjectural or hypothetical." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 925 (11th Cir. 2020). "An injury is concrete if it actually exists—that is, if it is 'real, and not abstract.'" *Hunstein v. Preferred Coll. & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242-1243 (11th Cir. 2022) (quoting *Spokeo*, 578 U.S. at 340). Concreteness of an injury is "essential to the Constitution's separation of powers" because it "ensures that plaintiffs have a real stake in the actions they bring." *Id.* Thus, a "'bare statutory violation' is not enough." *Id.* (quoting *Muransky*, 979 F.3d at 936). Rather, an alleged statutory violation must "itself [have] caused a harm." *Muransky*, 979 F.3d at 926.

Plaintiffs failed to plead standing for two reasons. First, "[t]here is no ERISA exception to Article III." *Thole v. U.S. Bank N.A*, 590 U.S. 538, 547

48

(2020). The amended complaint alleges bare ERISA violations while acknowledging that plaintiffs are vested participants that remain entitled to receive benefits. A61 ¶ 15. Therefore, the "alleged mismanagement" of the Plan was not a concrete injury. *Thole*, 590 U.S. at 541.

Second, plaintiffs did not "clearly and specifically set forth facts" showing any financial harm. *Muransky*, 979 F.3d at 924-925. The amended complaint advances four theories of harm caused by the alleged violations: First, plaintiffs offer a general allegation that the Plan "suffered millions of dollars in losses" in "the amount that ESOP overpaid" for the common stock. A59 ¶ 8. Second, plaintiffs allege a "risk that 'the debt load' incurred by the [stock purchase] Transaction will be 'unsustainable,' causing Plan participants' shares to become worthless." A60 ¶ 8. Third, plaintiffs suggest that Inland Fresh will have to "devote more capital to paying off the financing required to obtain the shares," which would "reduc[e] the amount of cash" held by the company, which in turn would reduce the value of the company's shares that participants received through the Plan. A60 ¶ 8. And fourth, plaintiffs allege that the "inflated loan value takes longer to pay off, thereby reducing the number of shares released to participants each year." A60 ¶ 8.

Each of these theories fails. The claim of financial losses fails because it relies on "vague, conclusory allegations" that are "not enough to confer

standing." *Tsao*, 986 F.3d at 1343. And those allegations are rendered implausible by other allegations in the amended complaint. Specifically, plaintiffs acknowledge that the 2016 Transaction was 100% leveraged (A61-62) and that in 2017, "the fair value of the Plan's Company stock was $6.449 million" according to a Form 5500 that Inland Fresh submitted to the Department of Labor (A81 ¶ 71). This reflects an *increase* in the Plan's equity value because, at the time of the November 2016 transaction, the purchase price equaled the amount borrowed. As one court explained in another ESOP case, if "[t]he purchase price was $198 million and the [] ESOP took on $198 million in debt to obtain the stock," then "the expected value of the [] ESOP's shares ... would be $0." *Lee v. Argent Tr. Co.*, 2019 WL 3729721, at *4 (E.D.N.C. Aug. 7, 2019). Where the ESOP was then valued at "$64.8 million" not long after the transaction, the plan "realized an immediate equitable benefit." *Id.*; *see id.* at *1 (lack of standing where plaintiffs relied on $64.8 million ESOP valuation to argue that "the $198 million that the [] ESOP paid for [the company's] stock was excessive"); *accord Plutzer v. Bankers Tr. Co.*, 2022 WL 596356 (S.D.N.Y. Feb. 28, 2022), *aff'd*, 2022 WL 17086483 (2d Cir. Nov. 21, 2022).

As in *Lee*, the ESOP in this case was valued at $0 at the time of the November 2016 transaction, yet the $6.5 million valuation in March 2017 indicates a substantial benefit to the Plan's participants in a short amount of time.

50

Plaintiffs' other alleged injuries are not cognizable. The "risk" that Inland Fresh's "debt load" would cause its "shares to become worthless" is entirely speculative. A60 ¶ 8. A "threatened injury must be *certainly impending* to constitute injury in fact,'" and "[a]llegations of *possible* future injury' are not sufficient.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). Thus, "a conclusory statement that a statutory violation caused a risk of injury" is "not enough." *Muransky*, 979 F.3d at 928. And the risk that the 2016 loan will create a chain of events affecting the value and allocation of plaintiffs' shares "is too contingent to constitute a 'substantial likelihood' of future injury." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1215 (11th Cir. 2019); *Clapper*, 568 U.S. at 410-411 (standing cannot be based on "a speculative chain of possibilities").

Therefore, this Court may alternatively affirm the dismissal of the amended complaint on the basis that plaintiffs failed to demonstrate standing.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's dismissal with prejudice of plaintiffs' claims.

Dated: May 15, 2024

Respectfully submitted,

/s/ Richard Pearl

RICHARD PEARL
 Faegre Drinker Biddle & Reath, LLP
 320 S. Canal St., Ste. 3300
 Chicago, IL 60606
 (312) 212-6525

MARK D. TATICCHI
 Faegre Drinker Biddle & Reath, LLP
 1 Logan Square, Ste. 2000
 Philadelphia, PA 19103
 (215) 988-2700

SCOTT ZWIEGEL
WILLIAM JAMES HOLLEY, II
 Bradley Arant Boult Cummings, LLP
 Promenade Tower, 20th Floor
 1230 Peachtree St., NE
 Atlanta, GA 30339
 (404) 868-2002

Counsel for Appellee
James R. Urbach

/s/ Sarah P. Hogarth

SARAH P. HOGARTH
 McDermott Will & Emery LLP
 500 North Capitol Street NW
 Washington, DC 20001
 (202) 756-8000

THEODORE M. BECKER
 McDermott Will & Emery LLP
 444 West Lake Street, Ste. 4000
 Chicago, IL 60606
 (312) 372-2000

JULIAN L. ANDRÉ
 McDermott Will & Emery LLP
 2049 Century Park East, Ste. 3200
 Los Angeles, CA 90067
 (310) 277-4110

PAUL OLIVER
 Wimberly, Lawson, Steckel,
  Schneider & Stine, P.C.
 3400 Peachtree Rd., Ste. 400
 Atlanta, GA 30326
 (404) 365-0900

Counsel for Inland Fresh Appellees
Inland Fresh Seafood Corporation of
America, Inc., Joel Knox, Bill Demmond, Chris Rosenberger, Les
Schneider, and the Inland Fresh Seafood Corporation of America, Inc.
ESOP Committee

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief:

(i)    complies with the type-volume limitation of Rule 32(a)(7) because it contains 11,184 words, excluding the parts of the brief exempted by Rule 32(f); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word for Microsoft 365 MSO and is set in Century Supra 14-point font.

Dated: May 15, 2024                 */s/ Sarah P. Hogarth*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2024, I electronically filed the foregoing brief with the Clerk of this Court using the CM/ECF system, and counsel for all parties will be served by the CM/ECF system.

Dated: May 15, 2024                 */s/ Sarah P. Hogarth*