No. 24-10084

---

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

RANI BOLTON, ALISON MERCKER, JAMES ARMSTRONG, MELISSA SUTER, and BENJAMIN LYMAN, individually and as representatives of a class of participants and beneficiaries on behalf of the INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC. EMPLOYEE STOCK OWNERSHIP PLAN,

*Plaintiffs-Appellants,*

v.

INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC., JOEL KNOX, BILL DEMMOND, CHRIS ROSENBERGER, LES SCHNEIDER, JAMES R. URBACH, and the INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC. ESOP COMMITTEE,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the Northern District of Georgia
Hon. Leigh Martin May
No. 1:22-cv-04602-LMM

---

**REPLY BRIEF FOR PLAINTIFFS-APPELLANTS**

---

Andrew D. Schlichter
Sean E. Soyars
Alexander L. Braitberg
SCHLICHTER BOGARD LLP
100 S. Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115

Attorneys for Plaintiffs-Appellants

*Rani Bolton, et al. v. Inland Fresh Seafood Corp. of Am., Inc., et al.*, No. 24-10084

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

Pursuant to 11th Cir. R. 26.1-1(a) and 11th Cir. R. 26.1-2(b), the following is an alphabetical list of additional persons and entities omitted from the CIP contained in the Principal Brief of Plaintiffs-Appellants filed March 14, 2024 (ECF No. 22) and the CIP contained in the Joint Response Brief for Defendants-Appellees filed May 15, 2024 (ECF No. 28):

1. Berry, Wayne R. (U.S. Department of Labor, Office of the Solicitor, counsel for the Secretary of Labor)

2. Byrum, Blair L. (U.S. Department of Labor, Office of the Solicitor, counsel for the Secretary of Labor)

3. Employee Benefits Security Administration, U.S. Department of Labor

4. Hahn, Jeffrey M. (U.S. Department of Labor, Office of the Solicitor, counsel for the Secretary of Labor)

5. Nanda, Seema (Solicitor of Labor, U.S. Department of Labor, counsel for the Secretary of Labor)

6. Office of the Solicitor, U.S. Department of Labor

7. Su, Julie (Acting Secretary of Labor, U.S. Department of Labor)

# TABLE OF CONTENTS

Table of Citations ................................................................................. ii

Argument ........................................................................................... 1

   I.   Plaintiffs have Article III standing. ................................ 1

   II.  The Supreme Court has undermined *Mason*'s judge-made, policy-based exhaustion rule for statutory ERISA claims to the point of abrogation. ................................................................. 8

   III. The Supreme Court's holding that exhaustion is generally an affirmative defense for pleading purposes is not limited to the PLRA. ...... 12

   IV. Plaintiffs otherwise showed that exhaustion was excused. ......................... 15

   V.  The district court abused its discretion in denying a stay. ......................... 18

   VI. Any dismissal should have explicitly been without prejudice. .................. 24

Conclusion ........................................................................................ 27

Certificate of Compliance ...................................................................... 28

Certificate of Service .......................................................................... 28

i

# TABLE OF CITATIONS

## Cases

*Appvion, Inc. Ret. Sav. & ESOP v. Buth*,
  ___ F.4th ___, 2024 U.S. App. LEXIS 9802 (7th Cir. Apr. 23, 2024) ..............26

*Bickley v. Caremark Rx, Inc.*,
  461 F.3d 1325 (11th Cir. 2006) .................................................. 13, 17

*Blankenship v. Metro. Life Ins. Co.*,
  644 F.3d 1350 (11th Cir. 2011) .........................................................18

*Boley v. Universal Health Servs.*,
  36 F.4th 124 (3d Cir. 2022) ................................................................3

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ........................................................3, 22

*Brooks v. Blue Cross & Blue Shield, Inc.*,
  116 F.3d 1364 (11th Cir. 1997) .........................................................13

*Brotherston v. Putnam Invs., LLC*,
  907 F.3d 17 (1st Cir. 2018).................................................................6

*Bryant v. Rich*,
  530 F.3d 1368 (11th Cir. 2008) ............................................ 21, 25, 26

*Byrd v. MacPapers, Inc.*,
  961 F.2d 157 (11th Cir. 1992) ...........................................................12

*Cedeno v. Sasson*,
  100 F.4th 386 (2d Cir. 2024) .............................................................17

*Chesemore v. Fenkell*,
  829 F.3d 803 (7th Cir. 2016) ...............................................................8

*Costantino v. TRW, Inc.*,
  13 F.3d 969 (6th Cir. 1994) ...............................................................18

*Costello v. United States*,
  365 U.S. 265 (1961)...........................................................................25

*Donovan v. Bierwirth*,
  754 F.2d 1049 (2d Cir. 1985) ..............................................................6

*Drinkwater v. Metro. Life Ins. Co.*,
  846 F.2d 821 (1st Cir. 1988)..............................................................16

*Dupree v. Owens*,
92 F.4th 999 (11th Cir. 2024) ..............................................................26

*Dusek v. JPMorgan Chase & Co.*,
832 F.3d 1243 (11th Cir. 2016) ...........................................................23

*Felder v. Casey*,
487 U.S. 131 (1988) .............................................................................11

*Fish v. Greatbanc Tr. Co.*,
749 F.3d 671 (7th Cir. 2014) ...............................................................22

*Franklin v. Curry*,
738 F.3d 1246 (11th Cir. 2013) ...........................................................21

*Fuller v. Suntrust Banks, Inc.*,
744 F.3d 685 (11th Cir. 2014) ...............................................................2

*Gamache v. Hogue*,
No. 19-21, 2023 U.S. Dist. LEXIS 57266 (M.D. Ga. Mar. 28, 2023) ...............21

*Garcon v. United Mut. of Omaha Ins. Co.*,
779 F. App'x 595 (11th Cir. 2019) .......................................................12

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) .............................................................................12

*Green v. SuperShuttle Int'l, Inc.*,
653 F.3d 766 (8th Cir. 2011) ...............................................................19

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
571 U.S. 99 (2013) ...............................................................................24

*In re Mut. Funds Inv. Litig.*,
529 F.3d 207 (4th Cir. 2008) .................................................................4

*Jones v. Bock*,
549 U.S. 199 (2007) ............................................... 9, 10, 12, 13, 14

*Kennedy v. Floridian Hotel, Inc.*,
998 F.3d 1221 (11th Cir. 2021) .............................................................1

*LaGrasta v. First Union Sec., Inc.*,
358 F.3d 840 (11th Cir. 2004) .............................................................14

*Laidig v. GreatBanc Tr. Co.*,
No. 22-1296, 2023 U.S. Dist. LEXIS 15986 (N.D. Ill. Jan. 31, 2023) ...............7

*Lanfear v. Home Depot, Inc.*,
536 F.3d 1217 (11th Cir. 2008) ...........................................................15

iii

*LaRue v. DeWolff, Boberg & Assocs.*,
 552 U.S. 248 (2008)............................................................................2

*Lee v. Argent Tr. Co.*,
 No. 19-156, 2019 U.S. Dist. LEXIS 132066 (E.D.N.C. Aug. 6, 2019) ..............7

*Mason v. Cont'l Grp.*,
 763 F.2d 1219 (11th Cir. 1985) ........................................ 9, 10, 11, 24

*Mertens v. Hewitt Associates,*
 508 U.S. 248 (1993)...........................................................................11

*Metro. Life Ins. Co. v. Glenn*,
 554 U.S. 105 (2008)...........................................................................18

*MSPA Claims 1, LLC v. Tenet Fla., Inc.*,
 918 F.3d 1312 (11th Cir. 2019) ...........................................................2

*Perez v. Bruister*,
 823 F.3d 250 (5th Cir. 2016) ..........................................................2, 3

*Perrino v. S. Bell Tel. & Tel. Co.*,
 209 F.3d 1309 (11th Cir. 2000) ........................................................18

*Plutzer v. Bankers Tr. Co.*,
 No. 21-3632, 2022 U.S. Dist. LEXIS 34712 (S.D.N.Y. Feb. 28, 2022) ..............7

*Plutzer v. Bankers Tr. Co.*,
 No. 22-561, 2022 U.S. App. LEXIS 32021 (2d Cir. Nov. 21, 2022)
 (unpublished) ..................................................................................7

*Sec'y of Labor v. Preston*,
 873 F.3d 877 (11th Cir. 2017) ..........................................................23

*Simmons v. Willcox*,
 911 F.2d 1077 (5th Cir. 1990) ..........................................................16

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
 549 U.S. 422 (2007)............................................................................1

*Smith v. Spizzirri*,
 144 S. Ct. 1173 (2024)......................................................................20

*Springer v. Wal-Mart Associates' Grout Health Plan*,
 908 F.2d 897 (11th Cir. 1990) ..........................................................17

*Thole v. U.S. Bank N.A*,
 590 U.S. 538 (2020)........................................................................3, 4

*Trans Union, LLC v. Ramirez*,
  594 U.S. 413 (2021)........................................................................1, 8

*Tsao v. Captiva MVP Rest. Partners, Ltd. Liab. Co.*,
  986 F.3d 1332 (11th Cir. 2021) ...........................................................5

*Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*,
  480 F.3d 1254 (11th Cir. 2007) .........................................................12

*United States v. Files*,
  63 F.4th 920 (11th Cir. 2023) ...............................................................9

*United States v. Kaley*,
  579 F.3d 1246 (11th Cir. 2009) .............................................................9

*Watts v. BellSouth Telecomms., Inc.*,
  316 F.3d 1203 (11th Cir. 2003) ......................................................9, 10

*Weiner v. Klais & Co.*,
  108 F.3d 86 (6th Cir. 1997) .................................................................16

*Wit v. United Behavioral Health*,
  79 F.4th 1068 (9th Cir. 2023) .............................................................16

**Statutes**

28 U.S.C. § 1658(b) ...............................................................................23

29 U.S.C. § 1001(b) ........................................................................ 11, 20

29 U.S.C. § 1002(34) ...............................................................................4

29 U.S.C. § 1104(a)(1).............................................................................16

29 U.S.C. § 1106(a)(1).............................................................................16

29 U.S.C. § 1108(b)(17) .........................................................................16

29 U.S.C. § 1108(b)(17)(B)(ii).................................................................16

29 U.S.C. § 1109(a) .................................................................................17

29 U.S.C. § 1110(a) .................................................................................17

29 U.S.C. § 1113(1)(A).......................................................................19, 24

29 U.S.C. § 1132(a)(2).............................................................................12

29 U.S.C. § 1133 .....................................................................................10

**Rules**

Fed. R. App. P. 27(a)(3)(B) ....................................................................19

Fed. R. Civ. P. 41(b) ............................................................................25

Fed. R. Civ. P. 7(b) ..............................................................................19

Fed. R. Civ. P. 8(a)...............................................................................14

## ARGUMENT

## I.    Plaintiffs have Article III standing.

Defendants challenge Article III standing, which goes to subject-matter jurisdiction. Br. 46–51; *see Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1229 (11th Cir. 2021). Defendants note that courts have leeway to address certain threshold issues before standing. Br. 47 n.3. But the threshold issue must be "a non-merits ground for dismissal." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007). A federal court cannot rule on the merits "without first determining" subject-matter jurisdiction. *Id.* at 430–31.

Here, Defendants contend that the exhaustion-based dismissal adjudicated the merits. Br. 45–46. If Defendants were correct (which they are not), the Court would first have to address standing.[1]

In any event, Plaintiffs have Article III standing. A plaintiff must show: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Trans Union, LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Defendants dispute only the first of these. Br. 48–49.

Plaintiffs allege an "economic injury, which is the epitome of 'concrete.'"

---

[1] The district court did not address Defendants' standing argument, which further shows that the court understood that it was *not* ruling on the merits.

*MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019). Plaintiffs bring suit in a representative capacity "on behalf of the Plan itself" and seek recovery of losses to "the plan as a whole." *Fuller v. Suntrust Banks, Inc.*, 744 F.3d 685, 695 (11th Cir. 2014); A55–A59 (Am. Compl. ¶¶ 1, 4, 8),[2] A97 (¶ 113), A131–A132. When an employee stock ownership plan (ESOP) pays more than fair market value for the company's stock, it suffers a loss in "the amount that the ESOP overpaid." *Perez v. Bruister*, 823 F.3d 250, 258 (5th Cir. 2016). As Defendants acknowledge, an ESOP is a defined-contribution plan, Br. 7 (citing A61–A62), meaning its assets are essentially "the sum of all the assets allocated for bookkeeping purposes to the participants' individual accounts," *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 262 (2008) (Thomas, J., concurring). "Consequently, the losses suffered by the participants in the ESOP are coterminous with those of the plan," and each participant's individual loss is proportional to the "losses of fellow participants" and to those of the plan as a whole. *Bruister*, 823 F.3d at 258.

In *Bruister*, the plaintiffs' "basic claim" was that the defendant's valuations of the company's stock "were inflated, which caused the ESOP, and therefore [the company's] employees, to pay too much" for the stock. 823 F.3d at 256. Plaintiffs make the same basic claim here. Each participant has an individual account

---

[2] "A__" citations are to the page numbers of the Appendix (ECF No. 23).

holding a portion of the Plan's allocated shares. A61–A63 (¶¶ 13–17, 19–24). Plaintiffs allege that the $92 million valuation of the Company's shares was inflated and far exceeded their fair market value, which caused the Plan to overpay by tens of millions of dollars, a proportionate share of which was borne by Plaintiffs and each of their fellow participants. A59–A60 (¶ 8), A80–A83 (¶¶ 69, 72, 75–76), A89 (¶ 93). Thus, each Plaintiff has alleged an actual, concrete, and particularized financial injury. A59–A60 (¶ 8); *see Bruister*, 823 F.3d at 258. Plaintiffs' allegations of losses to their "own Plan account[s]" establish Article III standing. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009); *Boley v. Universal Health Servs.*, 36 F.4th 124, 131–33 (3d Cir. 2022) (similar).

Defendants' contrary arguments are unavailing. They first contend that Plaintiffs allege "bare ERISA violations" with no injury to themselves. Br. 48–49. In fact, Plaintiffs allege that the Plan suffered substantial losses due to the inflated purchase price, which in turn harmed all Plan participants. A59–A60 (¶ 8), A80–A83 (¶¶ 69, 72, 75–76), A89 (¶ 93).

Defendants' assertion (Br. 49) that "vested participants that remain entitled to receive benefits" lack standing is based on a misunderstanding of *Thole v. U.S. Bank N.A*, 590 U.S. 538 (2020). "Of decisive importance*"* in *Thole* was that the plaintiffs participated in "a defined-benefit plan, *not a defined-contribution plan*." *Thole*, 590 U.S. at 540 (emphasis added). A defined-benefit plan is essentially a

contract that guarantees the employee a "fixed payment each month" which "do[es] not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Id*. at 540, 542–43. Those fixed benefits would "not change, regardless of how well or poorly the plan is managed." *Id*. at 543. Because the plaintiffs "would still receive the exact same monthly benefits that they are already slated to receive" regardless of whether they won or lost, they had "no concrete stake" in the outcome. *Id.* at 541.

In contrast, participants' benefits in a defined-contribution plan are "tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions." *Id.* at 540; *see* 29 U.S.C. § 1002(34). Thus, "the ultimate amount of money received by the beneficiaries will typically depend on how well the trust is managed, so every penny of gain or loss is at the beneficiaries' risk." *Thole*, 590 U.S. at 542. Here, Plaintiffs allege that the fiduciaries' particular investment decision to pay $92 million for an asset with a value of no more than $50 million reduced the ultimate amount of money Plaintiffs will receive in retirement. A86 (¶ 85), A89 (¶ 93). "If the plaintiffs' allegations are true, they suffered injury in that their retirement accounts were worth less than they would have been absent the breach of duty, and this injury was caused, as the plaintiffs have alleged, by the fiduciaries' misconduct." *In re Mut. Funds Inv. Litig*., 529 F.3d 207, 216 (4th Cir. 2008).

4

Defendants next argue that Plaintiffs' claims of financial losses depend on "vague, conclusory allegations." Br. 50. But the complaint contains pages of detailed factual allegations explaining why the $92 million purchase price was inflated and vastly exceeded the Company's fair market value. A80–A89 (¶¶ 69–93). The Selling Shareholders, seeking to maximize the payment to themselves, provided incomplete and misleading information regarding the Company's value to advisors whose analysis was used to arrive at the $92 million price. A80–A82 (¶¶ 69, 72, 74–75). The first advisor valued the Company at $50 million, *$42 million less* than the ultimate purchase price. A83 (¶ 76). The Selling Shareholders then embarked on a campaign to boost the valuation by providing inflated revenue projections and false information regarding the value of Company inventory. A83–A87 (¶¶ 78–85). The $92 million price far exceeded the amount that any outside party had ever offered to acquire the Company in an arm's-length deal. A81, A89 (¶¶ 70, 90–92). These factual allegations go far beyond the "conclusory allegations of injury" in the case cited by Defendants. *Tsao v. Captiva MVP Rest. Partners, Ltd. Liab. Co.*, 986 F.3d 1332, 1343 (11th Cir. 2021).

Defendants further contend that Plaintiffs' allegations of financial losses are rendered implausible by a 2017 government filing which shows an "*increase* in the Plan's equity value." Br. 50. But the test for loss from a fiduciary breach is not whether there was an "increase[] in absolute dollar value." *Brotherston v. Putnam*

5

*Invs., LLC*, 907 F.3d 17, 31 (1st Cir. 2018). Rather, the proper standard compares the actual result "to what the results would have been" had the fiduciary not breached its duty. *Id*.; *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) (holding "that the measure of loss . . . requires a comparison of what the Plan actually earned on the [imprudent] investment with what the Plan would have earned" but for the breach). Thus, a gain of over $13 million from an imprudent stock purchase did not preclude a finding of loss if the plan would have earned more under prudent management. *Bierwirth*, 754 F.2d at 1052, 1054–56.

Here, Defendants caused the Plan's assets to be encumbered by a $92 million loan, which Plaintiffs contend far exceeded the amount that was prudent under the circumstances. A61–A62 (¶¶ 16–17), A80 (¶ 69). As the loan is repaid, shares are released from collateral and allocated to participants' accounts. A62 (¶ 17). While the Plan's equity grows as repayment occurs, the Plan's equity would be much greater if Defendants had complied with ERISA. If instead of a $92 million loan, the loan had been in line with the Company's actual market value of roughly $50 million, either (1) a larger percentage of the loan would have been repaid (resulting in more shares being released from collateral and allocated to participants), or (2) the amount of each loan payment would have been reduced substantially, resulting in greater profits and higher share values for the Company's shareholders, the Plan and Plan participants.

In the cases cited by Defendants, the plaintiffs did "not adequately allege that overpayment occurred." *Plutzer v. Bankers Tr. Co.*, No. 22-561, 2022 U.S. App. LEXIS 32021, at *4 (2d Cir. Nov. 21, 2022) (unpublished). The plaintiffs relied *solely* on post-purchase equity values to show a purported overpayment. *Plutzer v. Bankers Tr. Co.*, No. 21-3632, 2022 U.S. Dist. LEXIS 34712, at *12 (S.D.N.Y. Feb. 28, 2022) (plaintiff alleged that "$133,430,000 paid by the Plan" must have been excessive based on later equity valuation of $13,250,000); *Lee v. Argent Tr. Co.*, No. 19-156, 2019 U.S. Dist. LEXIS 132066, at *9 (E.D.N.C. Aug. 6, 2019) (plaintiff relied solely on post-transaction valuation of $64.8 million to allege that $198 million purchase price "could not have been at fair-market value"). The courts analogized a leveraged ESOP transaction to a mortgage-financed house, concluding that the mere fact that the transactions were debt-financed was not, by itself, evidence of overpayment. *Plutzer*, 2022 U.S. Dist. LEXIS 34712, at *12–17; *Lee*, 2019 U.S. Dist. LEXIS 132066, at *9–11.

As discussed above, Plaintiffs point to additional facts beyond equity value to show that Defendants' misrepresentations about the Company's value inflated the $92 million purchase price, which far exceeded any offer ever received from a disinterested buyer at arm's-length. A80–A89 (¶¶ 69–70, 72, 74–76, 78–85, 90–92). These facts establish standing. *See Laidig v. GreatBanc Tr. Co.*, No. 22-1296, 2023 U.S. Dist. LEXIS 15986, at *16–17 (N.D. Ill. Jan. 31, 2023) (finding

sufficient overpayment allegations and distinguishing *Lee* and *Plutzer*). The transaction here is akin to a real estate purchase in which the seller misrepresents the value of the property, inducing a buyer to take out a $920,000 mortgage when an objective appraisal would have valued the property at no more than $500,000. The buyer would have to devote far more income to paying a $920,000 mortgage than a $500,000 mortgage, leaving less available funds for home improvements or investing. That is a concrete injury and analogous to the injury here.

The higher debt load also means that the Company's financial condition—on which participants' retirement security depends—is more precarious than it would be with a smaller debt load. A60 (¶ 8); *see Chesemore v. Fenkell*, 829 F.3d 803, 807 (7th Cir. 2016). Whether the Company's collapse is "certainly impending" is ultimately immaterial. *Cf.* Defs.' Br. 51. Even if the Company does not become insolvent, the inflated sales price and corresponding debt require the Company to devote more capital to paying off the financing required to obtain the shares, resulting in an actual, concrete injury to Plaintiffs in the form of reduced share value. A60 (¶ 8); *see supra*, pp. 6–8. Because Plaintiffs have alleged an actual injury, they need not *also* allege that further injury is imminent. *See Ramirez*, 594 U.S. at 423 ("actual *or* imminent" injury establishes standing) (emphasis added).

## II.    The Supreme Court has undermined *Mason*'s judge-made, policy-based exhaustion rule for statutory ERISA claims to the point of abrogation.

"The administrative exhaustion requirement is not found in the ERISA statute

8

itself. Instead, it is a court-imposed, policy-based requirement first recognized by this Circuit in *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1226–27 (11th Cir. 1985)." *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003). The Supreme Court has now made clear that "crafting and imposing" exhaustion rules not required by statute based on policy views "exceeds the proper limits on the judicial role." *Jones v. Bock*, 549 U.S. 199, 203 (2007).

Defendants nevertheless contend that *Mason* remains good law because *Jones* is not sufficiently "on point." Br. 22–23. A prior opinion is bad law if it has *either* been "overruled *or* undermined to the point of abrogation by the Supreme Court." *United States v. Files*, 63 F.4th 920, 923 (11th Cir. 2023) (emphasis added). That "the Supreme Court decision 'must be clearly on point'" pertains to what "constitute[s] an '*overruling*' for the purposes of this prior panel precedent rule." *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (emphasis added). Undermining is distinct from overruling. If a Supreme Court decision *also* had to "be clearly on point" to constitute "undermining to the point of abrogation," that part of the rule would be superfluous—any clearly on-point Supreme Court decision necessarily would "overrule" the prior opinion of this Court.

In any event, Defendants' assertion that *Bock* is not adequately on point is simply wrong. Defendants seek to distinguish *Bock* on the ground that the case involved the PLRA rather than ERISA. Br. 21–23. Defendants' assertion (at 22)

9

that ERISA "*does* provide an exhaustion requirement" runs headlong into *Watts*, 316 F.3d at 1207 ("The administrative exhaustion requirement is not found in the ERISA statute itself."). Although ERISA requires review procedures, 29 U.S.C. § 1133, even *Mason* recognized that those procedures pertain only to "persons whose claims [for benefits] have been denied," and not the type of statutory claim at issue here, *Mason*, 763 F.2d at 1227; *see also* ECF 32, Sec'y of Labor Amicus Brief 5–6 (explaining that 29 U.S.C. § 1133 is limited to benefits denials). In contrast, the PLRA unquestionably requires exhaustion of *all* claims, yet the Supreme Court held it improper for the judiciary to enhance that requirement through policy-based rules with no statutory basis. *Bock*, 549 U.S. at 203.

Accordingly, Defendants fail to show that *Bock* turned on anything unique to the PLRA, or that anything unique to ERISA compels a different result. *Bock*'s holding was based not on what the PLRA *says*, but what it does not say: the Court rejected the practice of courts engrafting rules "*not* required by the" statute. *Bock*, 549 U.S. at 203. Thus, *Bock*'s holding had nothing to do with the specific statute at issue, and everything to do with "the proper limits on the judicial role" in our tripartite system of government. *Bock*, 549 U.S. at 203, id. at 216 ("[T]he judge's job is to construe the statute—not to make it better.") (citation omitted). There is simply no principled basis to conclude that "crafting and imposing" judge-made exhaustion rules not required by statute "exceeds the proper limits on the judicial

10

role" only if the case is brought under the PLRA, but is somehow within the proper limits on the judicial role if the case is brought under ERISA (or any other statute).

Similarly unavailing is Defendants' effort to distinguish *Felder v. Casey*, 487 U.S. 131 (1988). Defendants contend that Section 1983 civil rights claims "belong in court" and "are judicially enforceable in the first instance." Br. 23 (quoting *Felder*, 487 U.S. at 148). But Congress similarly intended that ERISA plaintiffs would have "*ready access* to the Federal courts" when statutory rights are violated, not become mired in administrative red tape as a prerequisite to suit. 29 U.S.C. § 1001(b). And given that Congress limited "intrafund review procedures" to "persons whose claims [for benefits] have been denied," *Mason*, 763 F.2d at 1227, Defendants' position that those procedures should be imposed "onto another type of" claim, like Plaintiffs' claims that Defendants violated their statutory rights, is inconsistent with Congressional intent, *Felder*, 487 U.S. at 148–49.

Defendants further contend that the Court should disregard the ERISA cases cited by Plaintiffs because they do not specifically address exhaustion. Br. 24. But Defendants ignore the central tenet of these cases. Because ERISA is "an enormously complex and detailed statute" that struck a careful balance between competing interests after "a decade of congressional study," *Mertens v. Hewitt Associates,* 508 U.S. 248, 251, 262 (1993), courts should be "especially reluctant to tamper with [its] enforcement scheme," *Great-West Life & Annuity Ins. Co. v.*

11

*Knudson*, 534 U.S. 204, 209 (2002).

ERISA's enforcement scheme grants "a participant" an unconditional right to bring "[a] civil action" like this one. 29 U.S.C. § 1132(a)(2). *Mason*'s atextual exhaustion prerequisite plainly "tampers" with the enforcement scheme; Defendants do not even try to argue otherwise. Thus, the Court should find that *Mason* and its progeny have been abrogated and reverse the dismissal order.

## III. The Supreme Court's holding that exhaustion is generally an affirmative defense for pleading purposes is not limited to the PLRA.

Even if *Mason*'s exhaustion rule remains viable, Plaintiffs were not required to plead around this affirmative defense. *Bock*, 549 U.S. at 216. Defendants contend that "circuit precedent" requires ERISA plaintiffs "to plead exhaustion," but they cite no case that actually decided the question. Br. 25 (citing *Garcon v. United Mut. of Omaha Ins. Co.*, 779 F. App'x 595 (11th Cir. 2019); *Byrd v. MacPapers, Inc.*, 961 F.2d 157 (11th Cir. 1992)). *Garcon* "is an unpublished opinion," and therefore does not constitute binding precedent." *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1260 n.3 (11th Cir. 2007); 11th Cir. R. 36-2. *Byrd* assumed that the plaintiff was required to plead exhaustion, but the single paragraph cited by Defendants does not address whether exhaustion is an affirmative defense for pleading purposes. *Byrd*, 961 F.2d 160–61. Accordingly, the prior panel precedent rule does not govern this question.

Aside from relying on nonexistent "precedent," Defendants suggest no other

12

basis for distinguishing *Bock*. Defendants baldly assert that *Bock* somehow turned on "the actual provisions and unique statutory context of the PLRA," but provide no supporting citation. Br. 26. Again, *Bock*'s holding that exhaustion is an affirmative defense for pleading purposes was based not on anything that the PLRA *says*, but on the *absence* of anything in the statute that would allow a court to deviate from the "usual practice" in civil cases generally. *Bock*, 549 U.S. at 212, 216–17 ("The PLRA . . . is silent on the issue whether exhaustion must be pleaded by the plaintiff or is an affirmative defense."). Because ERISA is also silent on the issue of pleading exhaustion, *Bock*'s holding applies fully here.

Defendants attempt to distinguish *Bock* on the ground that ERISA plan administrative procedures appear in plan documents which courts may consider on motions to dismiss. Br. 26–28. Although Defendants contend that this argument is somehow based on the pleading standard that the Supreme Court announced after *Bock*, that position is belied by their citation to *Bickley*, which pre-dates *Bock* and cites a 1997 case for the proposition that courts can consider ERISA plan documents under Rule 12(b)(6). *Bickley v. Caremark Rx, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) (citing *Brooks v. Blue Cross & Blue Shield, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)).

Defendants' apparent theory is that because administrative procedures are contained in a plan document, if the plaintiff does not affirmatively plead

exhaustion, a court would be justified in assuming that the plaintiff must not have exhausted administrative remedies. Br. 27–28. That logic is flawed. Rule 8(a) "requires simply a 'short and plain statement of the claim' in a complaint." *Bock*, 549 U.S. at 212 (quoting Fed. R. Civ. P. 8(a)). While an ERISA plaintiffs' ability to obtain relief may ultimately require compliance with an antecedent exhaustion requirement, the same could be said of any affirmative defense. Thus, under Defendants' reasoning, a plaintiff would have to plead around every possible affirmative defense "to plausibly show entitlement to relief." Br. 27. As a matter of statute, a PLRA's plaintiff's ability to obtain relief in court naturally turns on whether he exhausted the prison's grievance procedures, yet *Bock* makes clear that the subject need not be addressed in a complaint. *Bock*, 549 U.S. at 216. Similarly, any civil plaintiff's ability to obtain relief will usually depend on bringing suit within the applicable limitations period. But it is well settled that a plaintiff is not required to negate "[a] statute of limitations bar" in a complaint. *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Defendants also cite no authority suggesting that a court could properly assume that the failure to plead around a defense establishes the defense.

Finally, the Court should reject Defendants' position that Plaintiffs waived the issue because failure to exhaust appears "on the face of the complaint." Br. 25. Plaintiffs addressed the issue conditionally, while objecting that they had no

obligation to "plead or demonstrate exhaustion" and requesting leave to delete those allegations if the court ruled in Plaintiffs' favor on the legal issue. A92 (¶ 107). A holding that Plaintiffs waived the issue by proceeding in that manner would encourage inefficiency. If Plaintiffs had omitted the topic from their amended complaint to avoid putting a potential defense on the face of the complaint, that would have burdened the parties and court with an additional amendment and another round of motion to dismiss briefing.

## IV. Plaintiffs otherwise showed that exhaustion was excused.

The Plan and SPD both informed Plaintiffs that it was unnecessary to file an administrative claim as a prerequisite to obtaining their "benefit," which includes the amounts lost due to fiduciary breaches. Pls.' Br. 36–39; 44–45; *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1222–23 (11th Cir. 2008). The Plan's review procedures are limited to issues of Plan interpretation and correcting mistakes of fact in calculating benefits under the Plan as written, not providing remedies for a fiduciary breach. Pls.' Br. 37–38, 42–43. The Secretary of Labor, who has primary regulatory and enforcement authority for ERISA, 29 U.S.C. §§ 1132, 1135, agrees that the SPD "appears to direct participants to *court* in the event of a fiduciary's malfeasance," adding that "[i]t strains credulity that Plaintiffs should have known to avail themselves of these facially inapplicable 'procedures'" before filing suit. Sec'y of Labor Amicus Brief 10–11 (ECF 32).

Defendants contend that the Plan's review procedures apply because they "implicate the Plan's terms" insofar as the Plan prohibits the fiduciaries from violating "any provision of ERISA" or paying more than "fair market value" for Company stock. Br. 32–33. The provision concerning "fair market value" merely recites the statutory language governing ESOP transactions. *See* 29 U.S.C. § 1108(b)(17)(B)(ii) (exemption from liability if plan pays no more than "fair market value" for stock that is not publicly traded). In effect, Defendants are trying to "disguise" statutory claims as contractual claims by incorporating statutory requirements into the Plan. Courts have consistently precluded participants from employing the inverse tactic, holding that plaintiffs cannot evade the exhaustion requirement for claims asserting a denial of benefits under the terms of a plan by "disguising" the contractual claim as a breach of fiduciary duty.[3] The Court should reject Defendants' similar effort.

Plaintiffs' claims arise from the duties imposed on ERISA fiduciaries by statute—that they discharge their duties prudently, loyally, and avoid prohibited transactions that waste plan assets because they exceed fair market value. 29 U.S.C. §§ 1104(a)(1), 1106(a)(1), 1108(b)(17). Those standards would govern

---

[3] *Wit v. United Behavioral Health*, 79 F.4th 1068, 1089 (9th Cir. 2023); *Weiner v. Klais & Co.*, 108 F.3d 86, 91 (6th Cir. 1997); *Simmons v. Willcox*, 911 F.2d 1077, 1081 (5th Cir. 1990); *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988).

Defendants' conduct regardless of whether the Plan incorporated them expressly. *Cf.* 29 U.S.C. § 1110(a) (any plan provision purporting "to relieve a fiduciary from responsibility . . . for any . . . duty under this part shall be void as against public policy"). Accordingly, Defendants cannot transform Plaintiffs' statutory claims into contractual claims simply by incorporating statutory standards into the terms of the Plan. In short, Defendants cite nothing in the Plan that required Plaintiffs to exhaust administrative remedies before filing suit for breach of fiduciary duty.

Defendants' reliance on "the Plan's arbitration provision" is misplaced. Br. 36. Section 14.1(b) contains a class action waiver that purports to limit the claimant to "individual" relief only. A233–A234. Four circuits have addressed nearly identical provisions and have uniformly found them to be an invalid prospective waiver of ERISA participants' statutory right to pursue plan-wide relief under 29 U.S.C. § 1109(a). *Cedeno v. Sasson*, 100 F.4th 386, 406–07 (2d Cir. 2024) (reaching same conclusion as "closely analogous" decisions of Third, Seventh, and Tenth Circuits). The Plan states that if the class action waiver is invalid, the entirety of Section 14.1 "shall be rendered null and void in all respects." A234. Because the arbitration procedure is a nullity, Defendants cannot use it to create an exhaustion requirement that exists nowhere else in the Plan.

Defendants note that *Bickley* and *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897 (11th Cir. 1990), involved similar disclosures that

17

participants "may file suit in federal court." Br. 34–35. But in neither case did the plan documents affirmatively inform participants that they "*need not* file a claim," as here. *See* Pls.' Br. 38.

Defendants further contend that their conflicts of interest are irrelevant as a matter of law. Br. 37–38. That bright-line approach cannot be squared with precedent requiring a "case-specific" analysis of the effect of an administrator's conflict. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008); *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). Here, the conflict is severe, Pls.' Br. 47, assuring that the administrative process would be "an empty exercise in legal formalism," *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1318 (11th Cir. 2000). The Company's refusal to produce unquestionably relevant documents and its hostile stance in this litigation cement the conclusion that exhaustion would have been futile. Pls.' Br. 48–49; *see Costantino v. TRW, Inc.*, 13 F.3d 969, 975 (6th Cir. 1994) (defendant's "stance in the instant litigation" supported futility finding).

## V.    The district court abused its discretion in denying a stay.

Defendants seek to justify the district court's denial of a stay on both procedural and substantive grounds. Br. 41–45. None have merit.

Defendants mistakenly contend that "plaintiffs never filed a motion to stay proceedings" as required by Rule 7(b). Br. 42. The district court apparently

believed that Plaintiffs were required to file their stay request as a separate document, rather than in their opposition to Defendants' motion to dismiss. A252. But Rule 7(b) contains no "separate document" requirement. It merely requires that a request for relief "be in writing," "state with particularity the grounds for seeking the order," and "state the relief sought." Fed. R. Civ. P. 7(b). Plaintiffs' stay request fully complied with the rule. *See* Pls.' Opp. Inland Fresh Defs.' Mot. at 23–24 (Doc. 48); *see also* Fed. R. App. P. 27(a)(3)(B) ("A response may include a motion for affirmative relief."). Thus, the fact that the motion was included in Plaintiffs' response to Defendants' motion rather than a standalone document was not a valid basis for denial.

Substantively, the district court's ruling was an abuse of discretion because it negated Plaintiffs' statutory right to commence a fiduciary breach action within six years of the violation. Pls.' Br. 49–51; *see* 29 U.S.C. § 1113(1)(A). Defendants contend that the district court had discretion to dismiss Plaintiffs' timely civil action based on this Court's judicially created rule requiring ERISA plaintiffs to exhaust administrative remedies "*before* suing in federal court." Br. 42. The Eighth Circuit rejected a similar argument under analogous circumstances. *See Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011).

In *Green*, the district court granted a motion to compel arbitration, and then dismissed the action under "a judicially created exception" to the Federal

19

Arbitration Act's mandatory stay provision. *Id.* at 769–70.[4] The Eighth Circuit reversed the dismissal. If arbitration did not resolve the parties' dispute, the plaintiffs "may be prejudiced by the dismissal of the district court action because the statute of limitations may run and bar them from refiling complaints." *Id.* at 770. Under those circumstances, "the district court abused its discretion in dismissing the action, rather than staying it pending completion of the arbitration." *Id.*

The same reasoning applies here. If the administrative process does not resolve the parties' dispute, Plaintiffs would be prejudiced by the dismissal order, because any refiled complaint could be found time-barred under ERISA's limitations period. *See* Pls.' Br. 50–51. Applying the judge-made exhaustion rule in a way that causes a plaintiff to lose substantive rights does not advance the purposes of the doctrine, violates ERISA's limitations provision, and undermines the statute's explicit purposes of protecting the interests of plan participants and granting them "ready access to the Federal courts" to enforce their rights. 29 U.S.C. § 1001(b).

That is not to say that a district court must enter a stay "whenever plaintiffs have run out of time to pursue the exhaustion process" as Defendants contend. If a plaintiff obtained actual knowledge of a claim with ample time to complete the

---

[4] The Supreme Court recently abrogated this exception as contrary to the FAA's plain text. *Smith v. Spizzirri*, 144 S. Ct. 1173, 1175–78 (2024).

process yet deliberately ignored administrative remedies, a district court would be justified in denying a stay. *See, e.g.*, *Bryant v. Rich*, 530 F.3d 1368, 1375 n.11 (11th Cir. 2008). There is nothing like that here.

Defendants mistakenly assume that Plaintiffs had ample time to exhaust administrative remedies because the transaction occurred in 2016 and they hired "experienced ERISA counsel who requested plan documents on [their] behalf" by May 2021. Br. 43. But suspecting that a claim exists and having enough information to pursue that claim are two very different things. Plaintiffs specifically allege that they did not learn the basis of their claims until September 2022. A113 (¶ 139). On a motion to dismiss, that allegation must be accepted as true. *Franklin v. Curry*, 738 F.3d 1246, 1248 (11th Cir. 2013). Until they learned of the facts supporting their claim, there was no administrative claim to pursue.

Because determining the proper valuation of a privately held stock requires specialized expertise, the mere fact that the Transaction occurred in 2016 did not make it apparent that the Plan *overpaid* for the stock. *See, e.g., Gamache v. Hogue*, No. 19-21, 2023 U.S. Dist. LEXIS 57266, at *2–3, *9–12 (M.D. Ga. Mar. 28, 2023) (finding certified public accountant with M.B.A. from Northwestern University sufficiently qualified to provide expert testimony on valuation of ESOP shares). Moreover, whether ESOP fiduciaries violated ERISA depends largely on "the process used by the fiduciaries to reach their decision." *Fish v. Greatbanc Tr.*

21

*Co.*, 749 F.3d 671, 673 (7th Cir. 2014). "No matter how clever or diligent, ERISA plaintiffs generally" have no access to facts about the fiduciary process, which "tend systemically to be in the sole possession of defendants before discovery." *Braden*, 588 F.3d at 598.

Indeed, the opaque nature of the Transaction is precisely *why* Plaintiffs requested documents from Defendants in May 2021. A157–A158. If Plaintiffs already knew all the facts needed to pursue an administrative claim, there would have been no need to request "valuation or appraisal reports" and "documentation of the fiduciary process." *Id.* To be sure, if Defendants had produced the requested materials in June 2021, Plaintiffs may have had enough information to pursue an administrative remedy. But Defendants refused. A159. Under the Plan's claims procedure, a participant must provide supporting facts and documentation for the initial claim and any appeal, upon which the Committee will base its decision. A223–A224 (§§ A-2, A-4, A-5). Given Defendants' refusal to provide the information that Plaintiffs needed to determine if they even had a claim, there was no administrative remedy to pursue in June 2021. When Plaintiffs finally learned the basis for their claims in September 2022, it would have been impossible to exhaust administrative remedies before the six-year repose period would have run. Pls.' Br. 13–14, 50–51.

Defendants contend that because statutes of repose are intended to benefit

defendants, the district court properly rejected Plaintiffs' stay request—potentially subjecting Plaintiffs to a time bar—even though they unquestionably filed suit within the six-year repose period. As Defendants' own case states, a statute of repose requires a court to "rule in defendants' favor if plaintiffs delay beyond the statutory period to *bring suit*." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1248 (11th Cir. 2016) (emphasis added). Plaintiffs filed suit *within* the statutory period, thereby providing Defendants fair notice of the claims against them. Defendants cite no authority suggesting that a defendant is *also* entitled to have any extrajudicial administrative process completed within the statutory period. Although the general purpose of a statute of repose may be protective of defendants, the *length* of the statutory period also benefits plaintiffs by providing a date certain by which they must commence suit. Had Congress intended that ERISA plaintiffs be required to commence fiduciary breach actions sooner than six years, it would have said so explicitly. *See, e.g.*, 28 U.S.C. § 1658(b) (five-year repose period for certain securities fraud claims). And because ERISA expressly provides for tolling in cases of fraud or concealment, Congress did not intend "to provide complete repose" to fiduciaries. *Sec'y of Labor v. Preston*, 873 F.3d 877, 885 (11th Cir. 2017).

    The effect of the district court's denial of Plaintiffs' stay request was to reduce the six-year period prescribed by Congress. To ensure an ability to commence a

civil action within six years of the transaction, Plaintiffs would have had to file an administrative claim more than a year before the expiration of the repose period. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 109 & n.4 (2013) (noting that internal review would take "about one year" under applicable regulations and citing a study finding that "exhaustion can take 15 to 16 months" in a typical ERISA § 502(a)(1)(B) case. Defendants' assertion that exhaustion *could* occur within six months ignores that the Committee also can extend the time for decision by up to 150 days, thereby significantly extending the time required to exhaust administrative remedies. See Pls.' Br. 13–14; A223, A225 (§§ A-2, A-6). Thus, if Plaintiffs had discovered the basis for their claims at any time within one year of the repose period's expiration and immediately filed an administrative claim, Defendants could have "run out the clock" by extending their review and prevented Plaintiffs from filing a timely suit. A223, A225 (§§ A-2, A-6).

Strengthening the defendant's limitations defense is not among the exhaustion doctrine's purposes. *Cf. Mason*, 763 F.2d at 1227. Denying Plaintiffs' stay request, thereby creating a potential time bar for any later suit, violated Congress' intent that fiduciary breach actions would be timely if commenced within six years of the violation. 29 U.S.C. § 1113(1)(A).

## VI. Any dismissal should have explicitly been without prejudice.

Defendants contend that the district court did not need to specify whether

24

dismissal was with prejudice because unless a dismissal order states otherwise, the dismissal, "except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits," and is therefore with prejudice. Br. 45–46 (quoting Fed. R. Civ. P. 41(b)). But the jurisdictional exception under Rule 41(b) is not limited to "fundamental jurisdictional defects which render a judgment void and subject to collateral attack, such as lack of jurisdiction over the person or subject matter." *Costello v. United States*, 365 U.S. 265, 285 (1961). Rather, the exception broadly encompasses "those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim," such as a "[f]ailure to file the affidavit of good cause in a denaturalization proceeding." *Costello*, 365 U.S. at 285. Exhaustion is such a precondition and is "like a defense for lack of jurisdiction" or improper venue in that it is treated as "a matter[] in abatement, and ordinarily [does] not deal with the merits." *Bryant*, 530 F.3d at 1374, 1376 (citation omitted).

Because exhaustion is a precondition requisite and jurisdictional in nature, the district court's exhaustion-based dismissal falls within the jurisdictional exception in Rule 41(b). Nevertheless, "even if a dismissal is presumptively without prejudice, it is a best practice for district courts to err on the side of clarity and indicate whether prejudice has attached." *Dupree v. Owens*, 92 F.4th 999, 1008

25

(11th Cir. 2024). Defendants do not attempt to distinguish *Dupree*. Thus, if dismissal is not reversed, the district court should be instructed to clarify that dismissal is without prejudice. *Id.*

Defendants contend that because *Bryant* did not entirely foreclose the possibility that a failure to exhaust could "correctly result in a dismissal with prejudice," this case should be treated as such. Br. 46. *Bryant* suggested that dismissal with prejudice might be proper if a party had "evidenced" that administrative remedies were "*absolutely* time barred or otherwise *clearly* infeasible." *Bryant*, 530 F.3d at 1375 n.11 (emphasis added). Defendants merely assert that ERISA's six-year repose period has passed, Br. 46, but they ignore Plaintiffs' argument that tolling applies due to Defendants' fraud or concealment, Pls.' Br. 53.[5] The district court merely noted that this case "*raises* statute-of-limitations concerns" without further addressing the issue. A252 (emphasis added). Moreover, the district court did not address Defendants' standing argument, which shows that it understood that it was not reaching the merits. *See supra*, p. 1 & n.1 Thus, this is not the rare case where dismissal on exhaustion grounds could correctly result in dismissal with prejudice.

---

[5] Even if the repose period barred claims based on the Transaction itself, claims based on post-transaction conduct in maintaining an inflated valuation would still be timely. *Appvion, Inc. Ret. Sav. & ESOP v. Buth*, ___ F.4th ___, 2024 U.S. App. LEXIS 9802, at *17–19 (7th Cir. Apr. 23, 2024).

## CONCLUSION

The Court should reverse the district court's dismissal on exhaustion grounds and remand for further proceedings on the merits of Plaintiffs' claims.

July 5, 2024                           Respectfully submitted,

                                        /s/ *Sean E. Soyars*
                                        Andrew D. Schlichter
                                        Sean E. Soyars
                                        Alexander L. Braitberg
                                        SCHLICHTER BOGARD LLP
                                        100 S. Fourth Street, Suite 1200
                                        St. Louis, Missouri 63102
                                        (314) 621-6115

                                        Attorneys for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

1. I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) because it contains 6,465 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 Word Times New Roman 14-point font.

s/ *Sean E. Soyars*
Sean E. Soyars
Attorney for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

On July 5, 2024, I electronically filed and served this brief via CM/ECF.

s/ *Sean E. Soyars*
Sean E. Soyars
Attorney for Plaintiffs-Appellants