**FOR PUBLICATION**

In the

# United States Court of Appeals

### For the Eleventh Circuit

———————————————

No. 24-10084

———————————————

RANI BOLTON,

ALISON MERCKER,

JAMES ARMSTRONG,

BENJAMIN LYMAN,

    individually and as representatives of a class of
participants and beneficiaries on behalf of the
Inland Fresh Seafood Corporation of America, Inc.
Employee Stock Ownership Plan,

MELISSA SUTER,

                             *Plaintiffs-Appellants,*

*versus*

INLAND FRESH SEAFOOD CORPORATION OF AMERICA,
INC.,

JOEL KNOX,

BILL DEMMOND,

CHRIS ROSENBERGER,

LES SCHNEIDER, et al.,

2                    Opinion of the Court                    24-10084

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-04602-LMM

_____

Before JORDAN and JILL PRYOR, Circuit Judges, and MORENO,* District Judge.

MORENO, District Judge:

In 1985, our Circuit grafted an administrative exhaustion requirement onto the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Since then, we have repeatedly affirmed that exhaustion is a prerequisite for ERISA plaintiffs who wish to seek judicial review in federal court. Our exhaustion requirement applies across the spectrum of ERISA claims, for benefits due under a retirement plan and for substantive violations of ERISA.

The plaintiffs here filed suit without first exhausting their administrative remedies. After reviewing the parties' briefs and the record, and with the benefit of oral argument, we agree with the district court that dismissal was warranted because no valid excuse relieves the plaintiffs of that obligation. Accordingly, we affirm the dismissal and remand so that the district court can indicate whether

_____

* The Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida, sitting by designation.

the dismissal is without prejudice to allow the plaintiffs another opportunity to exhaust.

## I.    BACKGROUND

Inland Fresh Seafood Corporation of America, Inc., established a pension plan to help its employees save for retirement. The plan has two key features. It is a defined-contribution plan, which means that the value of the participants' retirement benefits hinges on the market performance of the investments in their individual retirement accounts. It is also an employee stock ownership plan, a pension plan that invests primarily in the company's own stock. Over time, Inland Fresh contributes shares to participants' individual accounts. The longer a participant is employed with Inland Fresh, the more shares he receives. In the end, how much each participant earns in retirement depends on how well Inland Fresh's stock performs on the market.

The initial transaction that created the Inland Fresh employee stock ownership plan took place on November 26, 2016. The plan used the proceeds from a $92 million loan to purchase all 100,000 outstanding shares of Inland Fresh common stock from four of the company's directors and officers. On behalf of the plan itself and a proposed class of the plan's 578 participants, five former Inland Fresh employees brought claims under ERISA § 502(a)(2) and (a)(3) against Inland Fresh, the four officers and directors, the plan's trustee, and the plan's committee. The plaintiffs alleged that the defendants breached their fiduciary duties by causing the plan—and therefore, its participants—to overpay by tens of

millions of dollars for the Inland Fresh common stock. Specifically, the plaintiffs claimed that the four directors and officers instructed Inland Fresh executives to misrepresent the company's sales projections and inventory so that they could obtain a higher valuation and ultimately receive more money for their stock. As a result, the participants' benefits were allegedly worth less than they would have been had the plan purchased the shares at a price commensurate with their fair market value. The plaintiffs also alleged that the trustee failed to conduct proper due diligence before settling on the purchase price. The plaintiffs sought restoration of the plan's losses, disgorgement of the director and officers' ill-gotten gains, and other forms of equitable relief.

The plaintiffs acknowledged that the plan lays out administrative claims procedures. At the same time, the plaintiffs did not allege that they exhausted these procedures before filing suit. Instead, they pleaded that ERISA plaintiffs are under no obligation to affirmatively plead exhaustion, and they asked the district court for leave to remove these allegations if it agreed. In any event, they argued that they were excused from ever exhausting the plan's internal procedures at all.

The defendants moved to dismiss. On exhaustion grounds, the district court granted the defendants' motions. The court concluded that this Circuit mandates exhaustion before proceeding to court, and the United States Supreme Court has not abrogated this requirement. Since the plaintiffs failed to plead exhaustion and because the district court rejected each of the plaintiffs' excuses for

not exhausting, it dismissed the case. The court also denied the plaintiffs' request for a stay in lieu of dismissal so that they could pursue an administrative claim. Importantly, though, the district court did not clarify whether the dismissal was with or without prejudice. On appeal, the plaintiffs challenge each of these decisions.

## II.    STANDARDS OF REVIEW

The applicability of ERISA's exhaustion requirement is reviewed *de novo*. *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1221 (11th Cir. 2008). The district court's decision to dismiss for failure to plead exhaustion is reviewed for abuse of discretion. *Byrd v. Mac-Papers, Inc.*, 961 F.2d 157, 160 (11th Cir. 1992) (citing *Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990) and *Curry v. Cont. Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846–47 (11th Cir. 1990)). Whether the district court properly refused to excuse the failure to exhaust is "highly discretionary" and reviewed for "*clear* abuse of discretion." *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) (emphasis in original) (citations omitted). And a district court's decision whether to stay the litigation pending the plaintiff's exhaustion of administrative remedies is reviewed for abuse of discretion. *See Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 n.2 (11th Cir. 2000) (citing *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982)).

## III.    DISCUSSION

### A. *ERISA Plaintiffs Must Exhaust Available Administrative Remedies Before Filing Suit in Federal Court.*

ERISA does not expressly contain an administrative exhaustion requirement.  But forty years ago, we implied one.  *See Mason v. Cont'l Grp., Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985).  In *Mason v. Continental Group, Inc.*, we grounded this decision in several "[c]ompelling" policy considerations:

> Administrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.

*Id.* (citations omitted).  We also reasoned that a pre-suit exhaustion requirement is consistent with Congressional intent.  *Id.* (citations omitted).

Since *Mason*, we have reaffirmed our exhaustion requirement time and time again.  *See, e.g.*, *Springer*, 908 F.2d at 899; *Perrino*, 209 F.3d at 1315; *Lanfear*, 536 F.3d at 1223–24.  "The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court."  *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) (quoting *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th

Cir. 1997)).  And we have clarified that "we apply the exhaustion requirement strictly," with equal force to contractual claims arising under a plan and claims for violations of ERISA itself.  *Perrino*, 209 F.3d at 1316 n.6, 1318 (citations omitted).

All circuits require exhaustion in the ERISA context.  Where we diverge is in our application of the exhaustion requirement to statutory violation claims.  Our precedent is at odds with a large chorus of our sister circuits which—though they require exhaustion for benefits claims—do not require exhaustion for claims alleging violations of ERISA.  *See Zipf v. Am. Tel. & Tel. Co.*, 799 F.2d 889, 891–94 (3d Cir. 1986); *Smith v. Sydnor*, 184 F.3d 356, 363–65 (4th Cir. 1999); *Galvan v. SBC Pension Benefit Plan*, 204 F. App'x 335, 338–39 (5th Cir. 2006); *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017); *Amaro v. Cont'l Can Co.*, 724 F.2d 747, 750–52 (9th Cir. 1984); *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1204–05 (10th Cir. 1990); *Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 965–66 (D.C. Cir. 2014).

The plaintiffs recognize that binding Eleventh Circuit precedent requires exhaustion of their breach-of-fiduciary-duty claims, but they urge us to abandon our precedent and apply the law of these other circuits.  We reject that call now, just as we have done before.  *See, e.g.*, *Bickley*, 461 F.3d at 1328 n.6; *Counts*, 111 F.3d at 109. Whatever we may feel about our exhaustion precedent does not relieve us of our responsibility to apply it.  After all, a prior published panel decision "is controlling 'unless and until it is overruled or undermined to the point of abrogation by the Supreme Court

or by this court sitting *en banc*.'" *United States v. Files*, 63 F.4th 920, 923 (11th Cir. 2023) (quoting *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008)).[1]

The plaintiffs argue that several Supreme Court cases have undermined our exhaustion precedents to the point that they can no longer be considered good law. Abrogation, though, is a demanding standard in this Circuit. "For a Supreme Court decision to undermine panel precedent to the point of abrogation, the decision must be clearly on point and clearly contrary to the panel precedent." *Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 743 (11th Cir. 2024) (citation modified). In addition to being squarely on point, the intervening Supreme Court case must also "actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *Id.* (quoting *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009)). In other words, it "must demolish and eviscerate each of [the] fundamental props" of the prior-panel precedent. *Jennings v. Sec'y, Fla. Dept. of Corr.*, 108 F.4th 1299, 1304 (11th Cir. 2024) (citation modified). "Even if the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide the appellate court with a basis for departing from its prior decision." *Id.* at 1305 (quoting *United States v. Vega-Castillo*, 540 F.3d 1235, 1237 (11th Cir. 2008)). Indeed, "[i]f the Supreme Court never discussed our precedent and did not otherwise comment on the precise issue before the prior panel, our

---

[1] The plaintiffs submit that this appeal warrants *en banc* consideration, but that decision rests with the active judges of this Court. *See* Fed. R. App. P. 40(c).

precedent remains binding." *United States v. Dubois*, 139 F.4th 887, 892–93 (11th Cir. 2025) (citation modified).

None of the plaintiffs' cases rise to this occasion. The principal case they cite, *Jones v. Bock*, concerned the Prison Litigation Reform Act ("PLRA"), not ERISA. *See* 549 U.S. 199 (2007). In *Jones*, the Supreme Court rejected the lower courts' attempts to fasten extratextual procedural rules to the PLRA. *See id.* at 202. The Court's central reason for doing so was that these rules lacked a textual basis. *See id.* at 214, 217, 220. The Court was also unconvinced that policy considerations justified such rules. *See id.* at 213–14, 219, 223–24. The plaintiffs claim that *Jones* "confirms" *Mason's* judge-made exhaustion requirement is wrong. They are mistaken. *Jones* is neither clearly on point nor clearly contrary to our exhaustion precedents. For one, it concerns a different statute. For another, it centers on judge-made procedural rules layered on top of that statute's express requirement to exhaust. *See id.* at 202; 42 U.S.C. § 1997e(a). It does not mention exhaustion of ERISA claims. Even if it can be said that *Jones* weakened *Mason*, it cannot be said that *Jones* demolished and eviscerated each of *Mason's* fundamental props. This is just as true, if not more so, for the other cases the plaintiffs cite. They either do not deal with administrative exhaustion or do not involve ERISA at all. None of these authorities displaces our precedent. *Mason* is the law, and it binds this panel.

### B. The District Court Did Not Abuse Its Discretion in Dismissing the Plaintiffs' Claims for Failure to Plead Exhaustion.

The plaintiffs next argue that even if our exhaustion precedents remain intact—which they undeniably do—the plaintiffs were not required to plead exhaustion. They encourage us to vacate the dismissal and remand for the district court to consider their request for leave to remove their conditional exhaustion allegations and to evaluate exhaustion on a factual record rather than on the pleadings. We decline to do so.

The parties spill much ink over how we should treat exhaustion at the pleading stage. The plaintiffs posit that we have not decided in a prior published decision whether an ERISA plaintiff must plead exhaustion. For this reason, they aver that *Jones* compels us to hold that it falls on ERISA defendants to plead the failure to exhaust as an affirmative defense. *See* 549 U.S. at 214–16 (concluding that "failure to exhaust is an affirmative defense under the PLRA" because nothing indicates that Congress intended to deviate from normal pleading requirements). Even if we adopt the plaintiffs' view, however, the amended complaint makes plain that they did not exhaust, and we agree that they were not excused from doing so. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint." (citing *Jones*, 549 U.S. at 215)); Part III.C., *infra*. On this basis, dismissal is appropriate.

The plaintiffs' original complaint said nothing about exhaustion. After the defendants moved to dismiss, the plaintiffs amended to assert that they had no obligation to affirmatively plead exhaustion. They insisted instead that the failure to exhaust in the ERISA context is an affirmative defense that a defendant must raise, and they relied on *Jones* for support. Though the plaintiffs believe they were not required to plead around the failure to exhaust, they included these arguments in their amended complaint "out of an abundance of caution." In the same breath, they asked the district court to disregard these allegations if it agreed that they need not plead exhaustion. The plaintiffs even requested leave to remove the allegations altogether. Presumably, they sought to avoid the inference that they had failed to exhaust. But if their artful pleading did not make this inference plausible, the plaintiffs' allegations that they were excused from exhausting made it all but certain. The plaintiffs effectively conceded that they did not exhaust before filing suit. It would thus serve no purpose to remand for the district court to entertain a possible amendment from the plaintiffs or for further factual development on exhaustion.

Even if the amended complaint left things less clear, the district court acted well within its discretion in dismissing it. The court concluded that ERISA plaintiffs must plead exhaustion or a valid exception. It found that the plaintiffs did neither. The court rejected the plaintiffs' reliance on *Jones* and dismissed the amended complaint. In *Byrd v. MacPapers, Inc.*, we declined to disturb a dismissal predicated on the plaintiff's failure to plead exhaustion or an exception to the exhaustion requirement. *See* 961 F.2d at 160–61.

The plaintiffs suggest that *Byrd* is unhelpful because it left the pleading question unresolved, but in that case, we upheld the dismissal "on the requirement of pleading exhaustion of remedies." *Id.* at 161. And we identified one of the issues presented on appeal as whether a plaintiff must allege exhaustion or a valid exception. *See id.* at 158.

To decide whether a plaintiff faithfully complied with the exhaustion requirement, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) (citations omitted). For example, district courts may consider plan documents on a motion to dismiss—an exception to the general rule that courts are "limited to reviewing what is within the four corners of the complaint" at that stage. *Bickley*, 461 F.3d at 1329 n.7. They are thus in a better position to dismiss cases like this one at the pleading stage, where it is clear that the plaintiffs did not exhaust administrative remedies before bringing their lawsuit. We cannot say the district court abused its discretion in dismissing the amended complaint on account of the plaintiffs' failure to plead exhaustion or a valid exception. *Accord Byrd*, 961 F.2d at 160–61; *Variety Child.'s Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 & n.2 (11th Cir. 1995) (finding no error in district court's dismissal where the plaintiff alleged that "it had complied with all conditions precedent or in the alternative that such conditions have been waived or excused" but failed to plead futility and "neither pleaded nor recited facts showing that it

had exhausted its administrative remedies under the plan" (citation modified)).

### C. *The District Court Did Not Clearly Abuse Its Discretion by Declining to Excuse the Plaintiffs' Failure to Exhaust Before Filing Suit.*

As we have said, courts should "apply the exhaustion requirement strictly." *Perrino*, 209 F.3d at 1318. If the plaintiff "had a fair and reasonable opportunity to pursue a claim through an administrative scheme prior to filing suit in federal court" and that administrative scheme "offers the potential for an adequate legal remedy," exhaustion is required as a precondition to judicial review. *Id.* We have, however, "recognize[d] narrow exceptions" in "exceptional circumstances," where requiring the plaintiff "to exhaust an administrative scheme would be an empty exercise in legal formalism." *Id.*

A district court may excuse the failure to exhaust if resorting to an available administrative scheme "would be futile or the remedy inadequate . . . or where a claimant is denied meaningful access to the administrative review scheme in place." *Id.* at 1316 (citation modified). A district court may also excuse exhaustion if it determines that the plan's language caused the plaintiff to "reasonably interpret[] . . . that she could go straight to court with her claim" without having to first completely exhaust the plan's internal procedures. *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1204 (11th Cir. 2003). Though this is not an exhaustive list, we are generally disinclined to expand it. *See, e.g.*, *Perrino*, 209 F.3d at 1316–18 (refusing to recognize "an employer's noncompliance with ERISA's

technical requirements" as a basis for excusing exhaustion in light of our strict application of the exhaustion requirement). But if an exception might apply, we give district courts wide latitude in deciding whether to excuse exhaustion. *See id.* at 1315.

The district court below chose not to excuse the plaintiffs' failure to exhaust their administrative remedies before initiating this lawsuit. The plaintiffs advance three arguments for why the court was wrong to do so. *First*, the committee cannot address the plaintiffs' claims or provide the relief they seek. *Second*, the language in the plan documents excused exhaustion. *Third*, exhaustion would have been futile. We reject each argument and address them in turn.

### 1. Unavailable Scheme and Inadequate Remedy

The plaintiffs argue that the district court was wrong to not excuse their failure to exhaust because the plan's committee is not authorized to review their claims. The plaintiffs believe that the committee is limited to administrative tasks or to correcting mistakes of fact in calculating benefits due under the plan, rather than addressing breaches of fiduciary duty. The plaintiffs also complain that the committee has no power to provide the relief the plaintiffs seek. That is, the committee cannot hold the defendants personally liable for causing millions of dollars in losses to the plan and compel them to make the plan whole.

The district court held that the plan establishes a forum to review the plaintiffs' claims. The plan requires the committee to "make any adjustments it considers equitable and practicable to

correct a mistake of fact once the mistake becomes known," but that is not all the plan provides. A213 (Plan § 8.6). The plan vests the committee with "the duties and powers necessary to . . . construe and interpret the Plan and decide all questions arising in the administration, interpretation and application of the Plan and Trust Agreement." A212–A213 (Plan § 8.5). Bearing directly on the plaintiffs' claims, the plan states that "in no event will the Trust hold shares of Company Stock if and to the extent such investment would violate any provision of ERISA" and "[a]ll purchases of Company Stock by the Trust will be made at a price, . . . which, in the judgment of the Trustee, do[es] not exceed the fair market value of such Company stock." A192 (Plan §§ 5.1, 5.2). In making its determinations, the committee may rely on information provided by a participant, the employers, Inland Fresh legal counsel, or the trustee. Any determinations the committee makes in good faith "will be binding on all persons." A213 (Plan § 8.6).

We do not read the plan or the claims procedures as narrowly as the plaintiffs do. Reviewing the relevant plan provisions as part of one integrated agreement, the district court correctly concluded that the committee can take up the plaintiffs' claims. We reached the same conclusion in *Bickley v. Caremark RX, Inc.* when faced with similar plan language. *See* 461 F.3d at 1329 (reasoning that plan administrator was capable of addressing the plaintiff's claims for breach of fiduciary duty where the plan provided the administrator "with all power necessary to resolve all interpretive, equitable and other questions that shall arise in the operation and administration of this Plan" (citation modified)). The plaintiffs accuse

the defendants of recasting the claims procedures to apply to the plaintiffs' claims by incorporating statutory requirements into the plan. Their theory is that the claims procedures apply only for denial-of-benefits claims, and the defendants are "transform[ing]" the plaintiffs' statutory claims to subject them to these procedures. The plaintiffs call this the "inverse tactic" of a plaintiff's attempt at disguising benefits claims as statutory ones to avoid the exhaustion requirement in circuits where that distinction matters. *See, e.g.*, *Wit v. United Behav. Health*, 79 F.4th 1068, 1089 (9th Cir. 2023). The plaintiffs cite no authority that suggests a defendant is wrong to incorporate statutory requirements into a plan. Nonetheless, this argument is misplaced. The plan's arbitration clause makes clear that the claims procedures apply to and must be exhausted for statutory claims, such as those asserting a breach of fiduciary duty. *See* A232 (Plan § 14.1); Part III.C.2., *infra*.

As for the plaintiffs' contention that the plan does not afford them an adequate legal remedy, nothing in the record indicates that the committee cannot properly remedy their alleged harm. The plan at least "offers the potential for an adequate legal remedy" to appropriately address these breaches of fiduciary duty. *Perrino*, 209 F.3d at 1318. However, we are left to speculate because the plaintiffs did not initiate the plan's claims procedures before filing suit. Looking to the purpose of our exhaustion requirement and our strict adherence to it, we cannot say the district court clearly abused its discretion by refusing to excuse exhaustion for this reason under these circumstances. *See Mason*, 763 F.2d at 1227.

### 2. Plan Language

The plaintiffs next argue that the plan itself excused exhaustion. They insist that the plan's language makes exhaustion optional. In other words, the plaintiffs read the plan to allow them to go straight to federal court without exhausting their administrative remedies.

The plaintiffs highlight a few isolated phrases in the plan and summary plan description. The summary states, "[i]f you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court" and "[i]f it should happen that Plan fiduciaries misuse the Plan's money, . . . you may file suit in a federal court." A156 (Summary Plan Description, "Participant Rights"). We looked at similar language in *Bickley*. Like we said there, this language merely reminds the plaintiffs of their "general rights under ERISA" to eventually seek judicial review, but it does not affirmatively excuse them from exhausting the plan's required claims procedures. 461 F.3d at 1329.

The plan states that "[w]hile a Participant or Beneficiary need not file a claim to receive a benefit under the Plan, such a person may submit a written claim to the Committee or seek a review of the Committee's benefit determination." A214 (Plan § 8.10). The plaintiffs cling to the "need not" and "may" language as evidence that the plan has made exhaustion optional. We find the defendants' interpretation more compelling. This language does nothing more than advise participants that they will receive benefits automatically under the plan. It follows logically that if

participants receive benefits automatically, filing a claim to receive them in the first instance is unnecessary. On the other hand, if participants disagree with the amount of benefits they receive, they "may submit a written claim." *Id.* Even when participants are unsatisfied with the benefits they have received automatically under the plan—say, because they think their benefits would be worth more but for a fiduciary's breach of duty—they "may" (but are never required to) submit a claim in the first place.

The plaintiffs argue that *Lanfear v. Home Depot, Inc.* obliges us to read the term "benefit" here to include "whatever would have been [in the plaintiffs' retirement accounts] had the plan honored [their] entitlement, which includes an entitlement to prudent management." *536 F.3d at 1223* (citation modified). Thus, they understand *Lanfear* to mean that they "need not file a claim to receive" losses due to the defendants' fiduciary breaches. A214 (Plan § 8.10). This is a strained reading of that case. In *Lanfear* we simply resolved a statutory standing issue. After observing that "ERISA allows the recovery of benefits, but [] does not allow suits for extracontractual damages," we decided that a claim brought by a plaintiff seeking to recoup losses due to a fiduciary's breach of duty is a claim for benefits—not damages. *536 F.3d at 1222–23.* Thus, we held that such plaintiffs qualify as participants under ERISA and have standing to sue. *Id.* at 1223; *see* 29 U.S.C. § 1002(7). *Lanfear* does not control our reading of the plan's language.

Ultimately, the plan's arbitration clause dispenses with any lingering ambiguity. There, the language is explicit—it binds

participants to bring claims in arbitration, including "claims for breach of fiduciary duty." A232 (Plan § 14.1). Before participants may arbitrate such claims, "the plan's claims procedures . . . must be exhausted." *Id.* Seeking to invalidate this unequivocal command, the plaintiffs point to the class-action waiver in the next subsection. They identify several circuits that have deemed similar provisions unlawful. *See, e.g., Cedeno v. Sasson*, 100 F.4th 386, 400–01, 406–07 (2d Cir. 2024) (holding that class waiver provision in arbitration agreement was unenforceable as applied to participant seeking relief under ERISA § 502(a)(2), and summarizing similar decisions from the Third, Seventh, and Tenth Circuits). Because the arbitration clause states, "[i]n the event a court of competent jurisdiction were to find these requirements to be unenforceable or invalid, then the entire Arbitration Procedure . . . shall be rendered null and void in all respects," the plaintiffs say that the language expressly requiring exhaustion for their claims has no effect. A243 (Plan § 14.1(b)). However, the plaintiffs do not cite—and we cannot find—any case in which this Court has invalidated such waivers, and we decline to do so now because the issue is not before us.

The plaintiffs' reliance on *Watts v. BellSouth Telecommunications, Inc.* also does not help their cause. *See* 316 F.3d 1203. In *Watts* we recognized that, "from the perspective of the average plan participant," where a participant "reasonably interprets . . . that she could go straight to court with her claim" without having to first exhaust the plan's internal procedures, the court may excuse exhaustion. *Id.* at 1204, 1207. There, the summary plan description created an ambiguity concerning what participants should do if

their claim was denied. In one place, the summary told participants that they could appeal the denial of a claim using the administrative appeal process. *Id.* at 1208. On the very next page, participants were informed that they could proceed to federal court if their claim is denied. *Id.* The plan documents in *Watts* did not expressly require an internal appeal. *Id.*

The ambiguity contemplated in *Watts* is simply not present here. The average plan participant would understand that exhaustion of the claims procedures is mandatory. The plan expressly requires it. Even if it did not, like the district court noted, the plaintiffs did not plead that they reasonably believed the plan documents instructed them to go straight to court.

### 3. Futility

In one final attempt, the plaintiffs ask us to hold that the district court clearly abused its discretion for not excusing their failure to exhaust on futility grounds. Like their other arguments, this one also fails to persuade us.

Again, exhaustion is excused "when resort to the administrative route is futile." *Springer*, 908 F.2d at 899 (citation omitted). The plaintiffs claim that because some of the defendants sit on the committee—though at this stage it is unclear whom—and the committee would decide whether the defendants violated ERISA, exhaustion would be futile. This conflict-of-interest argument fails "as a matter of law." *Id.* at 901. "[T]he futility exception is about meaningful access to administrative proceedings, not a potential conflict of interest of the decisionmakers." *Lanfear*, 536 F.3d at

1225 (synthesizing *Bickley* and *Springer*); *cf. Curry*, 891 F.2d at 846
(excusing exhaustion where plan administrator repeatedly ignored
the participant's requests for documents supporting the denial of
benefits).  This exception "protects participants who are denied
meaningful access to administrative procedures, not those whose
claims would be heard by an interested party." *Lanfear*, 536 F.3d at
1224.

The plaintiffs declare that a bright-line approach on conflicts
of interest in this context is inconsistent with "precedent requiring
a 'case-specific' analysis of the effect of an administrator's conflict."
But the cases they cite concern judicial review of a plan adminis-
trator's benefits decision, and whether (and to what extent) a con-
flict of interest tainted the administrative proceeding such that the
court should set aside the decision.  *See Metro. Life Ins. Co. v. Glenn*,
554 U.S. 105, 115–17 (2008); *Blankenship v. Metro. Life Ins. Co.*, 644
F.3d 1350, 1354–55 (11th Cir. 2011).  While these cases indicate that
a conflict may sometimes justify overruling an administrator's de-
cision, they do not suggest that a potential conflict should invali-
date an administrative proceeding before it has even begun.

The plaintiffs next point to the defendants' approach to doc-
ument production in this case.  In Plaintiff Alison Mercker's May
28, 2021, letter to Inland Fresh requesting various documents,
Mercker's counsel cited 29 U.S.C. § 1024 and 29 C.F.R. § 2520.104b
as the basis for the request.  In response, Inland Fresh produced
only the documents called for by those provisions.  It produced no
others.  Sometime later, the defendants produced the other

documents pursuant to the plan's claims procedures. The plaintiffs criticize the decision to produce only what was called for by the authority the plaintiffs cited. They say this illustrates that exhaustion would have been futile because the committee would not have allowed them a reasonable opportunity to prove their claims. This argument proves too much, and the district court properly rejected it. The plaintiffs' criticism reduces to a complaint that the defendants held them to a standard of precision. This cannot be a basis for futility.

The plaintiffs also protest that because nothing in the plan allows them to cross-examine witnesses or compel live testimony, trying to prove their claims would have been futile. They cite no authority for this proposition, and we decline to expand the futility exception in this manner. "[C]ross-examination need not be a part of every hearing in order to satisfy due process." *Woodbury v. McKinnon*, 447 F.2d 839, 844 (5th Cir. 1971) (citation omitted).[2] Just because the committee cannot compel live testimony does not render the claims procedures futile. An administrative proceeding need not mirror a judicial one to fulfill our policy aims. *See Mason*, 763 F.2d at 1227. At bottom, the plaintiffs have not made a "clear and positive showing" that they were denied meaningful access to the claims procedures to warrant suspending the exhaustion requirement. *Springer*, 908 F.2d at 901 (citation modified). In fact, the

---

[2] Decisions from the former Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

plaintiffs' futility arguments are premature and speculative because they did not even attempt to exhaust before filing suit. This alone justifies disregarding those arguments. *See Bickley*, 461 F.3d at 1330.

### D. The District Court Did Not Abuse Its Discretion in Denying the Plaintiffs' Request for a Stay.

"The general rule is that where the plaintiff enters the federal courthouse prematurely, the district court should dismiss." *Nat'l Bank of Com. of S.A. v. Marshall*, 628 F.2d 474, 479 (5th Cir. 1980) (citation modified). Even if we affirm the district court's dismissal for failure to exhaust and its refusal to excuse such failure, the plaintiffs ask us to conclude that the district court abused its discretion in denying their request to stay the litigation so that they could exhaust their administrative remedies. We decline to do so, on procedural and substantive grounds.

The district court denied the plaintiffs' request for a stay in part because the court, citing Federal Rule of Civil Procedure 7(b), determined that the plaintiffs did not properly move for this relief. Rather than file a standalone motion, the plaintiffs embedded the request in their opposition brief to one of the motions to dismiss. The plaintiffs argue that because the Federal Rules of Civil Procedure do not mandate that a party make a motion by filing a "separate document," this was not a valid basis for denying their request.

In pertinent part, Rule 7(b) states that "[a] request for a court order must be made by motion . . . in writing[,] . . . stat[ing] with particularity the grounds for seeking the order; and stat[ing] the relief sought." There is ample law in this Circuit interpreting this

Rule to justify denying relief where the underlying request is em-
bedded in a brief opposing a motion to dismiss. *See, e.g., Advance
Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315,
1336–37 (11th Cir. 2024) (discussing cases). Though these cases
concern motions for leave to amend a complaint, the core proce-
dural tenet is the same: A proper request for a court order may only
be made by a formal motion, and a formal motion may not be
made in a brief opposing a different motion. In view of these cases
and the plain language of the Rule, we cannot say the district court
abused its discretion in denying the plaintiffs' request to stay the
case on procedural grounds. *See Newton v. Duke Energy Fla., LLC*,
895 F.3d 1270, 1277–78 (11th Cir. 2018) (holding that the district
court did not abuse its discretion in refusing to consider a motion
for leave to amend because it was raised in an opposition brief).

        On the substance, the plaintiffs' position is equally uncon-
vincing. They argue that because the district court's dismissal ex-
poses them to the risk that any future claims they might bring will
be time-barred by ERISA's limitations provision, the district court
abused its discretion by declining to stay the case pending exhaus-
tion. ERISA requires claims alleging a breach of fiduciary duty to
be filed within the earlier of two periods: (1) six years from "the
date of the last action which constituted a part of the breach or
violation," or (2) three years from the date on which the plaintiff
first acquired "actual knowledge of the breach or violation." *See* 29
U.S.C. § 1113. Neither party disputes that the six-year statute of
repose applies here. The plaintiffs timely sued in the waning days
of this timeframe. The initial stock purchase to create the plan

occurred on November 26, 2016, and the plaintiffs filed suit on November 18, 2022. But now, the plaintiffs are well beyond expiration of the statute of repose, and their claims were dismissed by the district court.

Fortunately for the plaintiffs, ERISA provides more time to sue in cases of fraud or concealment. *See id.* (in cases of "fraud or concealment," the plaintiff has six years from "the date of discovery of such breach or violation" to bring a claim). The plaintiffs are well aware of this exception. In fact, they pleaded that due to the defendants' fraud and concealment, they did not discover the basis for their claims until September 2022. This would mean, assuming the exception applies, the plaintiffs' deadline to bring their breach-of-fiduciary-duty claims is September 2028. Assuming the district court below rules that the dismissal is without prejudice, this extension provides the plaintiffs with ample time to first exhaust the plan's internal procedures—a process that, by the plaintiffs' own estimation, could take between six and twelve months—and to subsequently file new claims.

Nevertheless, the plaintiffs believe that the district court's refusal to stay the case harmed their "substantive rights" because the timeliness of the new claims they might bring hinges on a finding that the "fraud or concealment exception" applies. This is unavailing. The plaintiffs pleaded fraud and concealment here and are free to do so again in a future lawsuit. The only difference is that now they are in the position where they must convince the court that such fraud or concealment did in fact occur.

As the district court aptly recognized, "plaintiffs in ERISA actions must exhaust available administrative remedies *before* suing in federal court." *Lanfear*, 536 F.3d at 1223 (emphasis added) (citation omitted). The court reasoned that allowing a plaintiff to sue without first fully exhausting administrative remedies—or, in this case, without even initiating exhaustion—would subvert our aims to, for example, "reduce the number of frivolous lawsuits under ERISA," "minimize the cost of dispute resolution," and prevent "premature judicial intervention in the decisionmaking process." *Mason*, 763 F.2d at 1227. Extending this further, awarding a stay to ERISA plaintiffs who fail to even begin the administrative exhaustion process before lodging their complaint would effectively eliminate our pre-suit exhaustion requirement and discourage diligence on the part of plaintiffs' counsel to investigate and pursue potential claims. We cannot say that the district court abused its discretion when it refused to endorse such a practice.

### E. The District Court Should Be Permitted to Indicate Whether the Dismissal Is Without Prejudice.

Even if we affirm on all other grounds, the plaintiffs ask this panel for a limited remand order instructing the district court to specify that the dismissal is without prejudice. "[I]t is a best practice for district courts to err on the side of clarity and indicate whether prejudice has attached." *Dupree v. Owens*, 92 F.4th 999, 1008 (11th Cir. 2024). This is significant because silence can be construed against a plaintiff. If a dismissal order does not state that dismissal is without prejudice, it will operate as "an adjudication on the merits"—i.e., a dismissal with prejudice—unless the dismissal rests on

lack of jurisdiction, improper venue, or failure to join a party under Federal Rule of Civil Procedure 19.  Fed. R. Civ. P. 41(b).

The district court dismissed the amended complaint but did not clarify the prejudicial scope of its order.  On this basis, the defendants argue that by routine operation of Federal Rule of Civil Procedure 41, the dismissal order amounts to a dismissal with prejudice.  The defendants also seem to suggest that the district court intended to dismiss this case with prejudice because one of the motions to dismiss requested dismissal with prejudice (though Defendant James Urbach's motion did not).  The plaintiffs aver that the failure to exhaust administrative remedies falls under Rule 41(b)'s jurisdictional exception, and, as such, the dismissal order is not an adjudication on the merits.  But their primary argument is the court should have specified that the dismissal is without prejudice because "[e]xhaustion of administrative remedies . . . ordinarily does not deal with the merits."  *Bryant*, 530 F.3d at 1374 (citation modified).

"We regard exhaustion of administrative remedies as a matter of judicial administration."  *Id*. at 1375.  Failure to exhaust administrative remedies is "non-jurisdictional" and is "not generally an adjudication on the merits."  *Id*. at 1374.  We have intimated that a dismissal without prejudice is the correct result in this context.  *See, e.g.*, *Lanfear*, 536 F.3d at 1225 (remanding with instructions for the district court to consider whether failure to exhaust available administrative procedures should yield a dismissal without prejudice).  However, we have acknowledged that some circumstances

may warrant dismissing a case indefinitely. *See Bryant*, 530 F.3d at 1375 n.11 ("We do not mean to say today that a failure to exhaust can never correctly result in a dismissal with prejudice.").

We decline to rule on the effect of the district court's order and instead remand so that the court can specify whether prejudice attaches. In so doing, we also avoid any conjecture about what the district court might have intended to do. Whether the plaintiffs may return to federal court after exhausting the plan's claims procedures should be decided by the district court, at least in the first instance.

**AFFIRMED and REMANDED, in part, for proceedings consistent with this opinion.**

JORDAN, Circuit Judge, joined by JILL PRYOR, Circuit Judge, Concurring:

Judge Moreno has drafted a well-written opinion for the court, and I join it in full. I write separately to propose that we convene en banc to consider overruling *Mason v. Continental Group*, 763 F.2d 1219, 1227 (11th Cir. 1985), which imposed a judicially-created and atextual administrative exhaustion requirement for fiduciary-breach and statutory claims under ERISA, 29 U.S.C. §§ 1109(a), 1132(a)(2)–(3).

There are a number of good reasons for overruling *Mason*. I will try to be brief in summarizing them.

First, ERISA, which is a "comprehensive and reticulated" act, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (internal quotation marks and citation omitted), does not have an exhaustion requirement. It has long been understood that courts "are not at liberty to add to or take from the language of [a] statute." *Stockley v. United States*, 260 U.S. 532, 540 (1923). We should not impose a requirement that Congress has omitted. *See, e.g., Silva-Hernandez v. U.S. Bureau of Citizenship & Immigr. Servs.*, 701 F.3d 356, 361 (11th Cir. 2012) ("We cannot add to the terms of the provision what Congress left out.") (citation omitted).

Second, *Mason* acknowledged that ERISA does not require exhaustion, *see* 763 F.2d at 1225, yet it imposed an exhaustion requirement for fiduciary-breach and statutory claims for policy reasons: "Compelling considerations exist for plaintiffs to exhaust

administrative remedies prior to instituting a lawsuit. Administrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated." *Id.* at 1227.

The Supreme Court has told the lower federal courts that "crafting and imposing" exhaustion rules that "are not required" by the text of a federal statute "exceeds the proper limits on the judicial role." *Jones v. Bock*, 549 U.S. 199, 203, 217 (2007) (rejecting judicially-created rule that plaintiffs have to plead exhaustion in suits covered by the Prison Litigation Reform Act because the Act "does not itself require plaintiffs to plead exhaustion"). Although *Jones* does not do away with *Mason* under our strict abrogation standard, *see, e.g., Jennings v. Sec'y, Fla. Dep't of Corr.*, 108 F.4th 1299, 1304 (11th Cir. 2024), it does show that *Mason* erred in relying on policy considerations to create an atextual exhaustion requirement for fiduciary-breach and statutory claims under ERISA. If exhaustion is going to be required for such claims, "that is a result which must be obtained by the process of amending [ERISA], and not by judicial interpretation." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993).

Third, as the Court's opinion notes, seven circuits—the Third, Fourth, Fifth, Sixth, Ninth, Tenth, and D.C. Circuits—have

held that plaintiffs asserting fiduciary-breach and statutory claims under ERISA do not have to exhaust administrative remedies. *See generally Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564–65 (6th Cir. 2017) ("We agree with the Third, Fourth, Fifth, Ninth, Tenth, and D.C. Circuits . . . [and] hold that ERISA plan participants or beneficiaries do not need to exhaust internal remedial procedures before proceeding to federal court when they assert statutory violations of ERISA.") (citing cases).

The only circuit to align with *Mason*, the Seventh Circuit, reasoned that exhaustion should be required for fiduciary-breach and statutory claims in part because "Congress'[ ] apparent intent in mandating internal claims procedures found in ERISA was to minimize the number of frivolous lawsuits, promote a non-adversarial dispute resolution process, and decrease the cost and time of claims settlement." *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996) (citing 29 U.S.C. § 1133). But, as the Third Circuit has explained, "[t]he [ERISA] provision relating to internal claims and appeals procedures, [29 U.S.C. § 1133(2)], refers only to procedures regarding claims for *benefits*," and therefore does not support creating an exhaustion requirement for non-benefit claims. *See Zipf v. AT&T*, 799 F.2d 889, 891 (3d Cir. 1986).

Moreover, the Seventh Circuit's exhaustion rule, unlike that of the Eleventh Circuit, is not mandatory. *See Lindemann*, 79 F.3d at 650 ("[T]he law of this Circuit remains that the decision to require exhaustion as a prerequisite to bringing a federal lawsuit is a matter within the discretion of the trial court and its decision will

be reversed only if it is obviously in error."); *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138–39 (7th Cir. 1997) (affirming, as not an abuse of discretion, the district court's determination that a former employee asserting an ERISA statutory claim under 29 U.S.C. § 1140 did not have to exhaust administrative remedies). So our circuit stands alone in requiring mandatory exhaustion for fiduciary-breach and statutory claims under ERISA.

Fourth, secondary authorities side with the majority position that exhaustion is not required for fiduciary-breach and statutory claims under ERISA. *See, e.g., RIA Pension & Benefits Library* § 139,411 (2025) ("Exhaustion of administrative remedies is not required in actions for breach of fiduciary duty."); Andrew L. Oringer, ERISA: A Comprehensive Guide § 8.04[E] at 8-43 (9th ed. & 2023 supp.) ("Unlike actions recover benefits, the courts generally have not required the exhaustion of internal claims procedures as a precondition to filing suit [for breach of fiduciary duties]. Because suits alleging breach of fiduciary duty involve statutory application rather than plan interpretation, the special expertise of plan administrators with respect to plan language and proper applications would be of little or no assistance to a reviewing court."); Jared A. Goldstein, *Employment Discrimination Claims Under ERISA Section 510: Should Courts Require Exhaustion of Arbitral and Plan Remedies?*, 93 Mich. L. Rev. 193, 197 (1994) ("[C]ourts should not impose an exhaustion of plan remedies requirement for statutory claims . . . because neither the text nor the legislative history of ERISA indicates that Congress intended to require exhaustion for statutory claims."); Stephen R. Bruce, Pension Claims: Rights and

Obligations 704 (2d ed. 1993) ("Exhaustion of a plan's claims procedure is not a prerequisite to an action to remedy a statutory violation if the violation is independent of the correct interpretation of the plan's terms."). These authorities provide further support for overruling *Mason*.

Fifth, and finally, the issue is an important one that is likely to recur. According to some industry sources, ERISA fiduciary-breach cases have increased following the Supreme Court's decision in *Hughes v. Northwestern University*. *See* 595 U.S. 170, 176 (2022) (holding that courts cannot "rely[ ] on the participants' ultimate choice over their investments to excuse allegedly imprudent decisions by [plan fiduciaries]"). For example, one publication reports that excessive fee litigation in 401(k) plans increased by 35% in 2024. *See* Daniel Aronowitz & Karolina Jazwiak, *401(k) Excessive Fee Litigation Spiked to 'Near Record Pace' in '24*, PlanAdviser (Jan. 13, 2025), https://perma.cc/L7UG-LUX6.

I urge my colleagues to vote to rehear this case en banc and consider overruling *Mason*.