No. 24-10084-U

---

UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

---

RANI BOLTON, ALISON MERCKER, JAMES ARMSTRONG, MELISSA SUTER, and BENJAMIN LYMAN, individually and as representatives of a class of participants and beneficiaries on behalf of the INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC. EMPLOYEE STOCK OWNERSHIP PLAN,

*Plaintiffs-Appellants,*

v.

INLAND FRESH SEAFOOD CORPORATION, *et al.*,

*Defendants-Appellees*.

---

Appeal from the United States District Court for the Northern District of Georgia
Hon. Leigh Martin May
No. 1:22-cv-04602-LMM

---

## APPELLANTS' EN BANC BRIEF

---

Andrew D. Schlichter
Sean E. Soyars
Alexander L. Braitberg
SCHLICHTER BOGARD LLC
100 S. Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115

Attorneys for Plaintiffs-Appellants

*Rani Bolton, et al. v. Inland Fresh Seafood Corp. of Am., Inc., et al.*,

No. 24-10084-U

### CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

Pursuant to Fed. R. App. P. 26.1(a), the undersigned hereby certifies that none of the Plaintiffs-Appellants are corporate parties.

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1(a) and 26.1-2(d), the following is an alphabetical list of all known trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party, including all persons and entities listed on all previously filed CIPs:

1. André, Julian L. (attorney for the Inland Fresh Appellees)

2. Armstrong, James (Appellant)

3. Becker, Theodore M. (attorney for the Inland Fresh Appellees)

4. Berry, Wayne R. (U.S. Department of Labor, Office of the Solicitor, counsel for the Secretary of Labor)

5. Bolton, Rani (Appellant)

6. Borzi, Phyllis (proposed amicus curiae, Former Assistant Secretary for Employee Benefits Security, United States Department of Labor)

7.    Bradley Arant Boult Cummings LLP (law firm of Appellee James R. Urbach's counsel)

8.    Braitberg, Alexander L. (attorney for Appellants)

9.    Byrum, Blair L. (U.S. Department of Labor, Office of the Solicitor, counsel for the Secretary of Labor)

10.   Chavez-DeRemer, Lori (Secretary of Labor, U.S. Department of Labor)

11.   Demmond, Bill (Appellee)

12.   Elliot, John Hartshorn (attorney for Appellee James R. Urbach)

13.   Employee Benefits Security Administration, U.S. Department of Labor

14.   Faegre Drinker Biddle & Reath LLP (law firm of Appellee James R. Urbach's counsel)

15.   Hahn, Jeffrey M. (formerly of the U.S. Department of Labor, Office of the Solicitor, counsel for the Secretary of Labor)

16.   Handorf, Karen (proposed amicus curiae, Former Deputy Associate Solicitor of Labor, Plan Benefits Security Division, United States Department of Labor)

17.   Hauser, Timothy (proposed amicus curiae, Former Associate Solicitor of Labor, Plan Benefits Security Division, and Former Deputy Assistance

Secretary for Program Operations, Employee Benefits Security

Administration, United States Department of Labor)

18. Hogarth, Sarah (attorney for the Inland Fresh Appellees)

19. Holley, William J., II (attorney for Appellee James R. Urbach)

20. Hopkins, Elizabeth (counsel for proposed amici curiae Phyllis C. Borzi,

Karen Handorf, Timothy Hauser, Ali Khawar, Daniel J. Maguire, and

William Taylor)

21. Inland Fresh Seafood Corporation of America, Inc. (Appellee)

22. Inland Fresh Seafood Corporation of America, Inc. ESOP Committee

(Appellee)

23. Knox, Joel (Appellee)

24. Khawar, Ali (proposed amicus curiae, Former Acting Assistant Secretary for

Employee Benefits Security, United States Department of Labor)

25. Lea, Heather (former attorney for Appellants)

26. Lyman, Benjamin (Appellant)

27. Maguire, Daniel (proposed amicus curiae, Former Director, Office of Health

Plan Standards and Compliance Assistance, Employee Benefits Security

Administration, United States Department of Labor)

28. May, Leigh Martin (United States District Judge)

29.  McDermott Will & Emery LLP (law firm of the Inland Fresh Appellees' counsel)

30.  Mercker, Allison (Appellant)

31.  Nanda, Seema (former Solicitor of Labor, U.S. Department of Labor, counsel for the Secretary of Labor)

32.  Office of the Solicitor, U.S. Department of Labor

33.  Oliver, Paul (attorney for the Inland Fresh Appellees)

34.  Pearl, Richard J. (attorney for Appellee James R. Urbach)

35.  Rosenberger, Chris (Appellee).

36.  Schlichter, Andrew D. (attorney for Appellants)

37.  Schlichter Bogard LLC (law firm of Appellants' counsel)

38.  Schneider, Les (Appellee)

39.  Soyars, Sean E. (attorney for Appellants)

40.  Su, Julie (former Acting Secretary of Labor, U.S. Department of Labor)

41.  Suter, Melissa (Appellant)

42.  Swift, Currie, McGhee & Hiers LLP (law firm of Appellants' local counsel)

43.  Taticchi, Mark D. (attorney for Appellee James R. Urbach)

44.  Taylor, William (proposed amicus curiae, Former Counsel of Regulations, Plan Benefits Security Division, United States Department of Labor)

45.    Urbach, James R. (Appellee)

46.    Wimberly Lawson Steckel Schneider & Stine, PC (law firm of the Inland

Fresh Appellees' counsel)

47.    Wolff, Bradley S. (local counsel for Appellants)

48.    Zweigel, Scott Eric (attorney for Appellee James R. Urbach)

**STATEMENT REGARDING ORAL ARGUMENT**

The En Banc Briefing Notice states that oral argument of 20 minutes per side will be held in Atlanta in June 2026. ECF No. 57. Plaintiffs-Appellants agree that oral argument will facilitate the Court's resolution of the important question of whether to overrule its exhaustion precedent for fiduciary-breach and statutory ERISA claims and believe that 20 minutes per side is appropriate.

# TABLE OF CONTENTS

Statement Regarding Oral Argument ........................................................................ i

Table of Citations ..................................................................................................... iv

Jurisdictional Statement ........................................................................................... 1

Statement of the Issues ............................................................................................. 2

Introduction .............................................................................................................. 3

Statement of the Case ............................................................................................... 4

    A.  Statutory background .................................................................................... 4

    B.  Factual background ..................................................................................... 11

    C.  Procedural history ...................................................................................... 14

Summary of the Argument ...................................................................................... 19

Standard of Review ................................................................................................. 20

Argument ................................................................................................................. 21

    I.   The Court should overrule *Mason*'s policy-based exhaustion
        requirement for statutory claims because it is inconsistent with
        ERISA's text, Supreme Court precedent, and the decisions of sister
        circuits. ....................................................................................................... 21

        A.  *Mason*'s exhaustion requirement is inconsistent with ERISA's
            text. ...................................................................................................... 22

        B.  *Mason*'s policy-based exhaustion requirement is contrary to
            Supreme Court precedent. ................................................................... 27

        C.  The Eleventh Circuit "stands alone" in mandating exhaustion for
            fiduciary-breach and statutory claims under ERISA ......................... 29

        D.  Other factors favor overruling *Mason*. .............................................. 34

    II.  Alternatively, the district court erred in not specifying that dismissal
         was without prejudice. ............................................................................... 36

Conclusion .............................................................................................................. 40

Certificate of Compliance ....................................................................................... 41

Certificate of Service .............................................................................................. 41

Addendum ............................................................................................................... 42

29 U.S.C. §§ 1001, 1109, 1113, 1132, 1133 (excerpts) .................................... 42

# TABLE OF CITATIONS

**Cases**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) ............................................................ 4, 34

*Amaro v. Cont'l Can Co.*,
724 F.2d 747 (9th Cir. 1984) ............................................... 30

*Babicz v. Sch. Bd. of Broward Cnty.*,
135 F.3d 1420 (11th Cir. 1998) ........................................... 20

*Bolton v. Inland Fresh Seafood Corp. of Am., Inc.*,
155 F.4th 1272 (11th Cir. 2025) .................. 3, 13, 18, 23, 28, 30, 33, 34, 37

*Brown v. J.B. Hunt Transp. Servs.*,
586 F.3d 1079 (8th Cir. 2009) ............................................. 24

*Bryant v. Rich*,
530 F.3d 1368 (11th Cir. 2008) ........................................... 37, 39

*Chailland v. Brown & Root, Inc.*,
45 F.3d 947 (5th Cir. 1995) ................................................. 33

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011) ........................................................... 6, 14

*Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*,
66 F.4th 876 (11th Cir. 2023) ............................................. 20, 31, 34

*Costantino v. TRW, Inc.*,
13 F.3d 969 (6th Cir. 1994) ................................................. 33

*Costello v. United States*,
365 U.S. 265 (1961) ........................................................... 38

*Dupree v. Owens*,
92 F.4th 999 (11th Cir. 2024) ............................................. 39

*Fallick v. Nationwide Mut. Ins. Co.*,
162 F.3d 410 (6th Cir. 1998) ............................................... 5

*Felder v. Casey*,
487 U.S. 131 (1988) ........................................................... 25, 27, 29

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ........................................................... 7, 11

*Gamache v. Hogue*,
No. 19-21, 2023 U.S. Dist. LEXIS 57266 (M.D. Ga. Mar. 28, 2023) .............. 35

*Glazner v. Glazner*,
347 F.3d 1212 (11th Cir. 2003) (en banc) ...................................................... 20

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) ................................................................................... 23, 29

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
530 U.S. 238 (2000) ............................................................................... 8, 9, 29

*Harrison v. Dig. Health Plan*,
183 F.3d 1235 (11th Cir. 1999) ...................................................................... 7

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
571 U.S. 99 (2013) ...................................................... 3, 6, 7, 14, 24, 35

*Held v. Mfrs. Hanover Leasing Corp.*,
912 F.2d 1197 (10th Cir. 1990) .................................................................. 30, 33

*Hitchcock v. Cumberland Univ. 403(b) DC Plan*,
851 F.3d 552 (6th Cir. 2017) .................................... 10, 26, 30, 31, 33

*Hutchinson v. Wickes Cos.*,
726 F. Supp. 1315 (N.D. Ga. 1989) ............................................................... 38

*Jones v. Bock*,
549 U.S. 199 (2007) ...................................................... 17, 21, 27, 28

*Jones v. Governor of Fla.*,
975 F.3d 1016 (11th Cir. 2020) (en banc) ...................................................... 21

*Kross v. Western Electric Co.*,
701 F.2d 1238 (7th Cir. 1983) ........................................................................ 29

*La Ley Recovery Sys.-OB, Inc. v. Unitedhealthcare Ins. Co.*,
No. 14-23400, 2015 U.S. Dist. LEXIS 5799 (S.D. Fla. Jan. 7, 2015).............. 38

*Lanfear v. Home Depot, Inc.*,
536 F.3d 1217 (11th Cir. 2008) ................................................................. 20, 23

*LaRue v. DeWolff, Boberg & Assocs.*,
552 U.S. 248 (2008) ......................................................................................... 8

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
507 U.S. 163 (1993) ....................................................................................... 28

*Lee v. Blue Cross Blue Shield of Ala.*,
No. 19-1895, 2020 U.S. Dist. LEXIS 174654 (N.D. Ala. Sep. 23, 2020)......... 38

*Lindemann v. Mobil Oil Corp.*,
79 F.3d 647 (7th Cir. 1996) ...................................................................... 33

*Mason v. Continental Group, Inc.*,
763 F.2d 1219 (11th Cir. 1985) ...................................................... 2, 22, 24, 29

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) ...................................................................... 5, 8, 23, 29

*McCarthan v. Dir. of Goodwill Indus.-Suncoast*,
851 F.3d 1076 (11th Cir. 2017) (en banc) ............................................. 20, 23, 34

*Melech v. Life Ins. Co. of N. Am.*,
739 F.3d 663 (11th Cir. 2014) ................................................................... 5

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) ...................................................................... 8, 28, 29, 32

*Milofsky v. Am. Airlines, Inc.*,
442 F.3d 311 (5th Cir. 2006) (en banc) ....................................................... 30

*Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emple. Benefit Plan*,
160 F.3d 1301 (11th Cir. 1998) .................................................................... 7

*Patsy v. Board of Regents of Fla.*,
457 U.S. 496 (1982) ...................................................................... 25, 27, 29

*Payne v. Tennessee*,
501 U.S. 808 (1991) ................................................................................ 20

*Perrino v. S. Bell Tel. & Tel. Co.*,
209 F.3d 1309 (11th Cir. 2000) ................................................................. 23

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41 (1987) .................................................................................. 5

*Ramos v. Louisiana*,
590 U.S. 83 (2020) ............................................................................. 20, 21

*Rodriguez v. United States*,
480 U.S. 522 (1987) ................................................................................ 27

*Salus v. GTE Directories Serv. Corp.*,
104 F.3d 131 (7th Cir. 1997) ..................................................................... 33

*Sec'y of Labor v. Preston*,
873 F.3d 877 (11th Cir. 2017) ............................................................... 10, 35

*Silva-Hernandez v. U.S. Bureau of Citizenship & Immigr. Servs.,*
  701 F.3d 356 (11th Cir. 2012) ................................................................... 24

*Smith v. Jefferson Pilot Life Ins. Co.,*
  14 F.3d 562 (11th Cir. 1994) .................................................................... 32

*Smith v. Sydnor,*
  184 F.3d 356 (4th Cir. 1999) ............................................ 6, 26, 30, 31, 32

*Springer v. Wal-Mart Associates' Grp. Health Plan,*
  908 F.2d 897 (11th Cir. 1990) .................................................................. 23

*Stephens v. Pension Benefit Guar. Corp.,*
  755 F.3d 959 (D.C. Cir. 2014) ........................................... 6, 26, 30, 31

*Tibble v. Edison Int'l,*
  575 U.S. 523 (2015) .................................................................................. 11

*United States v. Svete,*
  556 F.3d 1157 (11th Cir. 2009) (en banc) ................................................ 21

*Variety Children's Hosp. v. Century Med. Health Plan,*
  57 F.3d 1040 (11th Cir. 1995) .................................................................. 37

*Varity Corp. v. Howe,*
  516 U.S. 489 (1996) ............................................................................... 9, 28

*Watts v. BellSouth Telecomms., Inc.,*
  316 F.3d 1203 (11th Cir. 2003) ................................................................ 24

*Witt v. Metro. Life Ins. Co.,*
  772 F.3d 1269 (11th Cir. 2014) .................................................................. 7

*Wyatt v. Terhune,*
  315 F.3d 1108 (9th Cir. 2003) .................................................................. 37

*Yates v. Symetra Life Ins. Co.,*
  60 F.4th 1109 (8th Cir. 2023) ..................................................................... 6

*Zipf v. AT&T,*
  799 F.2d 889 (3d Cir. 1986) ....................................... 10, 25, 27, 30, 31, 32, 33

**Statutes**

28 U.S.C. § 1331 ........................................................................................... 1

29 U.S.C. § 1001(b) ........................................................................ 3, 4, 21, 23

29 U.S.C. § 1002(16)(A)(i) ........................................................................ 12

29 U.S.C. § 1002(21)(A) ............................................................................. 11

29 U.S.C. § 1002(34) ................................................................................ 11

29 U.S.C. § 1002(7) .................................................................................... 4

29 U.S.C. § 1002(8) .................................................................................... 5

29 U.S.C. § 1022 ....................................................................................... 14

29 U.S.C. § 1102(a) .............................................................................. 11, 13

29 U.S.C. § 1104(a) .................................................................................... 7

29 U.S.C. § 1104(a)(1) ................................................................................ 8

29 U.S.C. § 1106 ......................................................................................... 8

29 U.S.C. § 1109(a) .................................................................................. 23

29 U.S.C. § 1109(a) ............................................................................... 8, 32

29 U.S.C. § 1113 .................................................... 10, 23, 35, 36, 39

29 U.S.C. § 1132(a) ................................................................................. 3, 5

29 U.S.C. § 1132(a)(1)(B) ................................................................ 3, 5, 25

29 U.S.C. § 1132(a)(2) .......................................................... 1, 3, 5, 8, 23

29 U.S.C. § 1132(a)(3) .............................................................. 3, 5, 9, 23

29 U.S.C. § 1132(e)(1) .............................................................. 1, 11, 31

29 U.S.C. § 1132(f) ..................................................................................... 1

29 U.S.C. § 1133 .................................................................... 6, 10, 24, 25

**Rules**

Fed. R. App. P. 4(a)(1)(A) ........................................................................ 1

Fed. R. Civ. P. 15(a)(1)(B) ...................................................................... 17

Fed. R. Civ. P. 41(b) ................................................................................ 38

**Other**

Bryan A. Garner, *et al., The Law of Judicial Precedent* (2016) ........................... 20

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) and (f) because this action arises under the Employee Retirement Income Security Act (ERISA), and is brought under 29 U.S.C. § 1132(a)(2).

This Court has jurisdiction under 28 U.S.C. § 1291 over the final judgment entered by the district court on December 5, 2023. A255 (Doc. 56).[1] Plaintiffs timely noticed their appeal on January 3, 2024. A256 (Doc. 59); Fed. R. App. P. 4(a)(1)(A).

The Court granted en banc rehearing on January 27, 2026, thereby vacating the panel's October 15, 2025 opinion. ECF No. 55-1.

---

[1] Citations in the form "A__" are to the pages of the Appendix filed in this appeal (ECF No. 23). "Doc." refers to the district court ECF Document Number.

## STATEMENT OF THE ISSUES

1. Should the Court overrule *Mason v. Continental Group, Inc.*, 763 F.2d 1219 (11th Cir. 1985), which imposed an administrative exhaustion requirement for plaintiffs bringing fiduciary-breach and statutory claims under ERISA?

2. To the extent *Mason*'s exhaustion requirement is not overruled, did the district court err in not specifying that dismissal was "without prejudice"?

## INTRODUCTION

A stated purpose of the Employee Retirement Income Security Act is to provide workers "ready access to the Federal courts" to protect their interests in employee benefit plans. 29 U.S.C. § 1001(b). Through ERISA's civil enforcement provision, Congress empowered plan participants to bring certain civil actions. *See* 29 U.S.C. § 1132(a). Such claims generally fall within one of two categories: (1) claims for "benefits due," which depend on "the terms of [the] plan," 29 U.S.C. § 1132(a)(1)(B), and (2) claims that a fiduciary violated a substantive provision of ERISA itself, such as a breach of fiduciary duty. *See* 29 U.S.C. § 1132(a)(2), (3).

In 1985, this Circuit "grafted an administrative exhaustion requirement onto" ERISA, holding that the "exhaustion requirement applies across the spectrum of ERISA claims, for benefits due under a retirement plan and for substantive violations of ERISA." *Bolton v. Inland Fresh Seafood Corp. of Am., Inc.*, 155 F.4th 1272, 1278 (11th Cir. 2025) (discussing *Mason* and its progeny). Although "[t]he courts of appeals have uniformly required" pre-suit exhaustion for benefits due claims, *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013), the Eleventh Circuit "stands alone in requiring mandatory exhaustion for fiduciary-breach and statutory claims under ERISA." *Bolton*, 155 F.4th at 1291 (Jordan, J., concurring).

This appeal presents the rare circumstance where the Court should overturn its

precedent. *See id*. at 1289–91 (summarizing "a number of good reasons for overruling *Mason*."). *Mason* is inconsistent with ERISA's text, which does not impose an exhaustion requirement on statutory claims. Supreme Court precedent in an analogous context shows "that *Mason* erred in relying on policy considerations to create an atextual exhaustion requirement for fiduciary-breach and statutory claims under ERISA." *Id*. at 1290. And *Mason* conflicts with the law of seven sister circuits, which rejects an exhaustion requirement for such claims. Thus, overruling *Mason* will discourage forum-shopping while restoring the "uniform regulatory regime over employee benefit plans" that ERISA was intended to establish. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Finally, eliminating a non-substantive procedural requirement for a subset of ERISA claims does not implicate any significant reliance interests. For these reasons, discussed further below, the Court should overrule *Mason*, reverse the district court's dismissal on exhaustion grounds, and remand the case for further proceedings.

<div align="center">

**STATEMENT OF THE CASE**

</div>

**A.**     **Statutory background**

Congress enacted ERISA "to protect . . . the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b).[2] The statute

---

[2] A "participant" is "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or

<div align="center">

4

</div>

accomplishes its protective purposes "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." *Id.*

An "essential tool[] for accomplishing" ERISA's protective purposes is the "civil enforcement scheme of § 502(a)," 29 U.S.C. § 1132(a), *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987), and its "six carefully integrated civil enforcement provisions," *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). Plan participants are empowered to bring two distinct types of civil actions: plan-based "denial-of-benefits" actions, *see* 29 U.S.C. § 1132(a)(1)(B), and statute-based claims for breach of fiduciary duties, *see* 29 U.S.C. § 1132(a)(2)–(3).

**1. Plan-based denial-of-benefits claims.** Under ERISA § 502(a)(1)(B), a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). This is "a contract-based cause of action." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998). For example, such an action may allege that an insurer wrongfully denied coverage for healthcare or disability benefits. *See, e.g., Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 665–66, 670 (11th Cir. 2014) (§ 502(a)(1)(B) claim challenging denial of

---

by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

long-term disability benefits). The plaintiff's entitlement to relief depends on the specific language of the plan. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011) (explaining that § 502(a)(1)(B) requires enforcing the contract as written).

"The courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013). The exhaustion requirement for § 502(a)(1)(B) claims "finds its genesis" in 29 U.S.C. § 1133. *Yates v. Symetra Life Ins. Co.*, 60 F.4th 1109, 1112 (8th Cir. 2023). That provision requires "every employee benefit plan" to afford "any participant *whose claim for benefits has been denied*" a reasonable opportunity "for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2) (emphasis added). Although this provision does not expressly require exhaustion, courts have reasoned that it would be "anomalous" for "Congress to require plans" to include such procedures if participants were not required to utilize them. *Smith v. Sydnor*, 184 F.3d 356, 364 (4th Cir. 1999); *Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 964 (D.C. Cir. 2014) ("The exhaustion doctrine effectuates Congress's purpose in requiring that benefit plans provide for administrative review procedures by ensuring those internal remedial procedures are utilized.").

ERISA does not contain "a statute of limitations for filing suit under

§ 502(a)(1)(B)." *Heimeshoff*, 571 U.S. at 102, 105. "Thus, courts borrow the most closely analogous state limitations period," unless "the parties have contractually agreed upon a limitations period" in the ERISA plan. *Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emple. Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998). Because a denial-of-benefits claim is essentially a breach of contract claim, courts have almost uniformly "held that a suit for ERISA benefits pursuant to section 502(a)(1)(B) should be characterized as a contract action for statute of limitations purposes." *Harrison v. Dig. Health Plan*, 183 F.3d 1235, 1240–41 (11th Cir. 1999). Generally, the limitations period begins to run when the claim accrues, which does not occur until the plaintiff has exhausted administrative remedies and the plan has issued a final denial of benefits. *See Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1275–76 (11th Cir. 2014). Although a plan document can establish a limitations period that begins to run before accrual, an "unreasonably short" contractual limitation is unenforceable. *Heimeshoff*, 571 U.S. at 106, 109.

**2. Statute-based claims.** ERISA accomplishes its protective purposes by imposing on plan fiduciaries "strict standards of trustee conduct . . . derived from the common law of trusts," including duties of loyalty and prudence. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014); *see* 29 U.S.C. § 1104(a). Fiduciaries must discharge their plan-related duties "solely in the interest of the participants" and "with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(A)–(B). Congress supplemented those general duties by categorically barring certain "prohibited transactions" with a high potential for abuse. *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241–42 (2000); *see* 29 U.S.C. § 1106.

"Section 409(a), 29 U.S.C. § 1109(a), makes fiduciaries liable for breach of these duties, and specifies the remedies available against them," including damages, restitution, and other equitable relief. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252 (1993). A court can grant such relief in an action under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), which "allows the Secretary of Labor or any plan beneficiary, participant, or fiduciary to bring a civil action 'for appropriate relief under section [409]." *Id*. at 252–53 (quoting 29 U.S.C. § 1132(a)(2)). The remedies in a § 502(a)(2) action are plan remedies; the plaintiff proceeds "in a representative capacity on behalf of the plan as a whole." *Russell*, 473 U.S. at 142 n.9. Although participants harmed by a fiduciary breach will benefit indirectly if money is restored to the plan, the statute "does not provide a remedy for individual injuries distinct from plan injuries." *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008).

When a statutory violation is outside the scope of § 502(a)(2), a participant

may seek relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (authorizing a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan," or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."). This is a "catchall" or "safety net" provision, as it "offer[s] appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). For instance, because §§ 409(a) and 502(a)(2) are limited to "fiduciary" violations, they do not provide an adequate remedy against a non-fiduciary who participates in an ERISA violation. But non-fiduciaries are subject to liability under § 502(a)(3), which "admits of no limit . . . on the universe of possible defendants." *Harris Tr.*, 530 U.S. at 246. Thus, a non-fiduciary who knowingly participates in a fiduciary's breach of duty is subject to appropriate equitable relief, such as disgorgement of ill-gotten profits derived from plan assets. *Id*. at 250–51. A participant may therefore plead a § 502(a)(3) claim as an alternative theory, to the extent relief is unavailable under § 502(a)(2).

In conflict with *Mason*, most courts of appeals have concluded "that ERISA plan participants or beneficiaries do not need to exhaust internal remedial procedures before proceeding to federal court when they assert statutory violations of ERISA." *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564

9

(6th Cir. 2017) (joining the Third, Fourth, Fifth, Ninth, Tenth, and D.C. Circuits).

These courts reason that ERISA's "provision relating to internal claims and

appeals procedures, Section 503, refers only to procedures regarding claims

for *benefits*'" that have been denied. *Hitchcock*, 851 F.3d at 564 (quoting *Zipf v.

AT&T*, 799 F.2d 889, 891 (3d Cir. 1986)); *see* ERISA § 503(2), 29 U.S.C. §

1133(2) (requiring plans to "afford a reasonable opportunity to any participant

whose *claim for benefits has been denied* for a full and fair review by the

appropriate named fiduciary") (emphasis added).

ERISA itself contains a limitations period for claims alleging "a fiduciary's

breach of any" duty or other statutory violation. 29 U.S.C. § 1113. Such actions

generally must be commenced within "six years after (A) the date of the last action

which constituted a part of the breach or violation, or (B) in the case of an

omission the latest date on which the fiduciary could have cured the breach or

violation." 29 U.S.C. § 1113(1). This is a statute of repose because the time limit is

based upon "a specified time *since the defendant acted*" and not "the date when *the

claim accrued*." *Sec'y of Labor v. Preston*, 873 F.3d 877, 883 (11th Cir. 2017)

(quoting Black's Law Dictionary 1636–37 (10th ed. 2014)). While statutes of

repose generally are not subject to equitable tolling, *id*. at 884–85, ERISA provides

for tolling "in the case of fraud or concealment." 29 U.S.C. § 1113.[3]

---

[3] The general six-year repose period can be shortened to three years if the plaintiff

While state and federal courts have "concurrent jurisdiction" over denial-of-benefits actions under ERISA § 502(a)(1)(B), federal courts have "exclusive jurisdiction" over § 502(a)(2) and (a)(3) actions. 29 U.S.C. § 1132(e)(1).

## B. Factual background

Plaintiffs are five former employees of Inland Fresh Seafood Corporation of America, Inc. ("Inland Fresh" or "Company"). A62–A63 (Am. Compl. ¶¶ 20–24, Doc. 35). They are among the 578 participants in the Inland Fresh Seafood Corporation of America, Inc. Employee Stock Ownership Plan ("Plan"). A62–A63 (¶¶ 19–24). An employee stock ownership plan, or ESOP, is "a type of pension plan that invests primarily in the stock of the company that employs the plan participants." *Dudenhoeffer*, 573 U.S. at 412; A74 (¶ 55). The Plan is also a defined-contribution plan, A61 (¶ 13), "meaning that participants' retirement benefits are limited to the value of their own individual investment accounts." *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015); *see* 29 U.S.C. § 1002(34).

Defendants-Appellees are the Plan's fiduciaries as defined by ERISA. A64 (¶¶ 25–42); *see* 29 U.S.C. §§ 1002(21)(A), 1102(a). Four of the defendants are members of the Inland Fresh Board of Directors: founder and CEO Joel Knox, COO Bill Demmond, President Chris Rosenberger, and Les Schneider (collectively

---

has "actual knowledge" of the breach. 29 U.S.C. § 1113(2). Defendants have not argued that Plaintiffs possessed such knowledge.

the "Selling Shareholders"). A56–A57, A64–A68 (¶¶ 3, 27–38). The Board appointed Defendant ESOP Committee ("Committee") as the Plan's administrator and named fiduciary, to act as the Board's agent in managing the Plan on a day-to-day basis. A64, A68 (¶¶ 26, 39); *see* 29 U.S.C. §§ 1002(16)(A)(i), 1102(a). The Company, Selling Shareholders, and Committee refer to themselves collectively as the "Inland Fresh Defendants." *See* Mot. Dismiss, Doc. 25 at 1–2. Defendant James Urbach is trustee of the trust holding the Plan's assets. A68 (¶ 39).

Plaintiffs' claims arise from the transaction which established the Plan. A56–A57 (¶¶ 2–3). On November 26, 2016, Defendants executed a "leveraged ESOP" transaction (the "Transaction"). A61–A62 (¶¶ 12, 16, 18). Using the proceeds of a $92 million loan guaranteed by the Company, the Plan purchased from the Selling Shareholders all 100,000 outstanding shares of Inland Fresh stock, which is not publicly traded. A61–A62 (¶¶ 16–17). As the loan is repaid, shares are allocated to participants' accounts. *Id*. ¶ 17. Plaintiffs allege that the $92 million purchase price far exceeded the Company's fair market value and resulted from the Selling Shareholders inflating the purchase price by providing false financial projections to valuation advisors. A56–A58 (¶¶ 3–4), A80–A81 (¶¶ 69–72). Upon receiving an initial valuation of approximately $50 million, certain Selling Shareholders sought competing valuations from other advisors and instructed Company executives to misrepresent the value of the Company's sales projections and inventory, resulting

in a higher valuation opinion supporting the $92 million sale price. A83–A87 (78–85). Plaintiffs further allege that Defendant Urbach failed to protect participants' interests by approving the Transaction on the Plan's behalf without appropriate due diligence. A56–A57 (¶ 3), A81–A82 (¶¶ 72, 75), A87–A89 (¶¶ 86–89). The overpayment caused substantial losses to the Plan and reduced the value of participants' Plan accounts. A57–A60 (¶¶ 4, 8).[4] Plaintiffs estimate the Plan's losses to be in the tens of millions of dollars. *Id.*

As required by ERISA, the Plan is "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a); *see* A165 (Ex. 1 to Inland Fresh Defs.' Mot. Dismiss, Doc. 42 at 11) ("Plan document"). The Plan document contains administrative claims procedures as required by ERISA § 503. A223 ("Supplement A, Claims and Review Procedures."). However, the Plan affirmatively states that participants "*need not file a claim* to receive a benefit under the Plan." A95 (¶ 110); A214 (Plan § 8.10) (emphasis added). The summary plan description, or SPD, an ERISA-mandated communication intended to describe a plan's key

---

[4] The panel opinion states that the value of each participant's account "depends on how well Inland Fresh's stock performs on the market." *Bolton*, 155 F.4th at 1278. Inland Fresh's stock is not publicly traded. The inflated sale price allegedly reduced participants' benefits compared to what "they would have been had the plan purchased the shares at a price commensurate with their fair market value," *id.*, by requiring the Company to bear a larger debt load to repay the loan, thus affecting the Company's financial results and share value, as well as causing fewer shares to be allocated to participants. A59–A60 (¶ 8).

provisions "in readily understandable form," *Amara*, 563 U.S. at 437–38,[5] similarly states that "you *do not need to file a formal claim* to receive your benefit," A95 (¶ 110); A153 (emphasis added). The Plan document states that a participant may submit a claim to "seek a review of the Committee's benefit determination." A95 (¶ 110); A214.

ERISA regulations implementing § 503 "contemplate an internal review process lasting about one year." *Heimeshoff*, 571 U.S. at 111. Under the Plan's claims procedure, the Committee has 90 days to make an initial benefit determination and can extend that time by an additional 90 days for special circumstances. A153, A223 (§ A-2). The claimant then has 60 days to appeal the determination. A154, A224 (§ A-4). The Committee then has another 60 days to consider the appeal, which can again be extended by another 60 days for special circumstances. A154, A225 (§ A-6).

## C. Procedural history

As part of Plaintiffs' pre-suit investigation, Plaintiff Alison Mercker requested certain Plan-related documents from the Plan's administrator. A157–A158 (Ex. 2 to Am. Compl., Doc. 35-2).[6] In addition to requesting the Plan document and

---

[5] *See* 29 U.S.C. § 1022 (requiring summary plan description to contain certain specified information and to be "written in a manner calculated to be understood by the average plan participant").

[6] The letter was addressed to the Company care of Eric Sussman, who had "sign[ed] as plan administrator" the Plan's annual reports filed with the

summary plan description, Plaintiffs requested other materials relevant to the Transaction including any contracts with the Trustee, any "valuation or appraisal reports" related to "the price paid" by the Plan for Inland stock, "the information provided" to the entities that prepared the valuation reports, any consultant reports considered by Plan fiduciaries in approving the Transaction, the identities of each fiduciary to the Plan, and "documentation of the fiduciary process" (*e.g.*, meeting minutes). *Id.*

On June 22, 2021, the Company responded through counsel. A159–A160 (Ex. 3 to Am. Compl., Doc. 35-3). The Company produced basic documents including the Plan document and summary plan description, but otherwise refused to produce to Plaintiff Mercker "many documents she requests," asserting that ERISA did not require disclosure. A159. The Company refused to provide agreements with the "ESOP trustee," consultants, or counsel. *Id.* The Company also refused to produce any "valuation reports relating to the ESOP." *Id.*

As stated in the Amended Complaint, the Company's refusal to provide the requested information prevented Plaintiffs from ascertaining, at that time, that an actionable ERISA violation had occurred. A108–A110 (¶¶ 130–32), A114–A115 (¶¶ 141–142). After further investigation, Plaintiffs discovered the basis for their claims in September 2022, A113 (¶ 139), roughly two months before ERISA's six-

Department of Labor. Doc. 25-3 at 2.

year repose period would have expired on November 26, 2022.

On November 18, 2022, Plaintiffs filed suit under ERISA §§ 502(a)(2) and (3) on behalf of the Plan and a proposed class of the Plan's participants. A8–A9 (Compl. ¶ 1, Doc. 1). The Complaint alleged in five counts that Defendants breached their fiduciary duties and caused or participated in transactions prohibited by ERISA. A43–A52 (¶¶ 108–40). Counts I–III asserted § 502(a)(2) claims for relief under § 409(a) based on Defendants' alleged misconduct in their capacities as Plan fiduciaries. A43–A50 (¶¶ 108–36). Counts IV–V asserted § 502(a)(3) "catchall" claims against the Selling Shareholders to the extent they acted in a non-fiduciary capacity as knowing participants in their co-defendants' ERISA violations. A51–A52 (¶¶ 137–40). Plaintiffs seek restoration of the Plan's losses, disgorgement of ill-gotten profits, and other appropriate equitable relief. A52–A53. The Complaint did not address exhaustion of administrative remedies.

Defendants moved to dismiss. Docs. 25–26. Defendants' lead argument was that the Complaint should be dismissed for failing "to affirmatively plead exhaustion or an exception to the rule on the face of the complaint." Inland Fresh Defs.' Mem. at 10 (Doc. 25-5); Urbach Mem. at 2–3 (Doc. 26-1). Second, even though Plaintiffs undisputedly filed the action within six years of the Transaction date, Defendants argued that failure to exhaust administrative remedies within the six-year repose period rendered the claims time-barred. Inland Fresh Defs.' Mem.

at 11–13; Urbach Mem. at 4–6.

Plaintiffs amended their complaint to address these purported pleading deficiencies. Doc. 35; *see* Fed. R. Civ. P. 15(a)(1)(B) (allowing party to amend once "as a matter of course" after service of Rule 12(b) motion). Although Plaintiffs disputed any obligation "to specially plead or demonstrate exhaustion in their complaint," A92 (¶ 107) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)), they addressed the issue "out of an abundance of caution" by alleging various exceptions to the exhaustion requirement, A92–A112 (¶¶ 107–37). Plaintiffs further alleged that while the action was timely under the six-year repose period, ERISA's tolling provision also applied due to Defendants' fraud or concealment. A112–A115 (¶¶ 138–42). Plaintiffs did not discover Defendants' ERISA violations until September 2022, about two months before filing the action. A58 (¶ 5), A113 (¶ 139). The Amended Complaint asserted essentially the same causes of action as the original complaint: three counts premised upon fiduciary liability under § 502(a)(2), A121–A129 (¶¶ 148–79), and a single count for non-fiduciary liability under § 502(a)(3), A130–A131 (¶¶ 180–84).

Defendants moved to dismiss the Amended Complaint, again asserting failure to exhaust administrative remedies and invoking ERISA's repose period. Docs. 40, 42. Plaintiffs opposed the motions while further asserting that if the court were to accept Defendants' exhaustion arguments, the action should be stayed, not

17

dismissed, to allow Plaintiffs to pursue exhaustion. Pls.' Opp. to Inland Fresh Mot. at 23–24 (Doc. 48).

On December 5, 2023, the district court granted Defendants' motions to dismiss. A240 (Order, Doc. 55). The court concluded that exhaustion is a pleading requirement and that Plaintiffs had not "sufficiently pleaded exhaustion or an exception to the exhaustion requirement." A246–A251 (Order at 8–12). The court also denied Plaintiffs' request for a stay in lieu of dismissal. A252–A254 (*id*. at 13–15). On the same date, the clerk entered judgment dismissing the action. A255.

On October 15, 2025, a panel affirmed the district court's dismissal on exhaustion grounds, with a limited remand to allow the district court to specify whether its dismissal was with prejudice. Slip op. at 2–3, 28 (ECF No. 50-1); *Bolton v. Inland Fresh Seafood Corp. of Am., Inc.*, 155 F.4th 1272, 1278, 1289 (11th Cir. 2025). Judge Jordan filed a concurring opinion, joined by Judge Jill Pryor, proposing that the Court convene en banc to consider overruling this Circuit's "judicially-created and atextual administrative exhaustion requirement for fiduciary-breach and statutory claims under ERISA" and summarizing "a number of good reasons for overruling *Mason*." 155 4th at 1289–91.

The Court granted Plaintiffs' petition for en banc rehearing on January 27, 2026, ECF No. 55, and subsequently directed the parties to focus on the question of whether *Mason*'s exhaustion requirement should be overruled, ECF No. 57.

## SUMMARY OF THE ARGUMENT

The Court should overrule *Mason*'s administrative exhaustion requirement for plaintiffs bringing ERISA fiduciary-breach and statutory claims. ERISA itself cannot be read to require exhaustion before a participant exercises his or her statutory right to commence a civil action. *Mason* relied on policy considerations to create an atextual barrier to suit, a practice disapproved by the Supreme Court.

Overruling *Mason* would align this Court with its sister circuits. Since *Mason* was decided, all courts of appeals to consider the issue have rejected a pre-suit exhaustion requirement for civil actions alleging a violation of fiduciary duties or other statutory rights. These courts have reasoned that because ERISA's claims procedure provision refers solely to denied claims for benefits under a plan, there is no textual basis for imposing an exhaustion requirement on fiduciary breach claims. While determining an entitlement to benefits and interpreting plan terms is the role of a plan administrator, interpreting and applying statutory terms is a task for the courts. And while internal review of benefit denials may reduce costs, that process is ill-suited for resolving claims of fiduciary breach like those at issue here.

Upon overruling *Mason*, the judgment dismissing the action should be reversed and the case remanded for further proceedings on the merits. In the event *Mason* is not overruled, the Court should remand with directions that the district court specify that dismissal on exhaustion grounds is without prejudice.

**STANDARD OF REVIEW**

The dismissal of a complaint for failure to exhaust administrative remedies is reviewed *de novo*. *Babicz v. Sch. Bd. of Broward Cnty.*, 135 F.3d 1420, 1421 (11th Cir. 1998). Whether the requirement of exhaustion of administrative remedies applies to a claim is a question of law reviewed *de novo*. *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1221 (11th Cir. 2008).

In considering whether to overturn precedent, this Court "follows the principles of stare decisis as described by the Supreme Court." *McCarthan v. Dir. of Goodwill Indus.-Suncoast*, 851 F.3d 1076, 1095 (11th Cir. 2017) (en banc) (citing *Glazner v. Glazner*, 347 F.3d 1212, 1216 (11th Cir. 2003) (en banc)). Although precedent should not be lightly overruled, stare decisis "is not an inexorable command." *Id*. at 1096 (quoting *Payne v. Tennessee*, 501 U.S. 808, 828 (1991)); *see* Bryan A. Garner, *et al., The Law of Judicial Precedent* 388 (2016) ("[S]tare decisis isn't an ineluctable doctrine to be applied with procrustean rigor."). Relevant factors include "the quality of the decision's reasoning; its consistency with related decisions; legal developments since the decision; and reliance on the decision." *Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*, 66 F.4th 876, 888 (11th Cir. 2023) (en banc) (quoting *Ramos v. Louisiana*, 590 U.S. 83, 106 (2020)). Precedent that "is 'inconsistent' with the text of the statute" is properly overruled. *McCarthan*, 851 F.3d at 1095 (citing *United States v. Svete*, 556 F.3d

1157, 1166 (11th Cir. 2009) (en banc)). In short, if precedent was wrongly decided, "*stare decisis* isn't supposed to be the art of methodically ignoring what everyone knows to be true." *Ramos*, 590 U.S. at 105.

## ARGUMENT

**I.      The Court should overrule *Mason*'s policy-based exhaustion requirement for statutory claims because it is inconsistent with ERISA's text, Supreme Court precedent, and the decisions of sister circuits.**

The Court should overrule *Mason* for several reasons. *First*, *Mason*'s exhaustion requirement for fiduciary breach and statutory ERISA claims is completely divorced from the statutory text, as recognized by sister circuits to address the issue. *Second*, *Mason*'s use of policy justifications to impose a barrier to suit undermines the statutory objective of granting participants harmed by fiduciary misconduct "ready access to the Federal courts," 29 U.S.C. § 1001(b), and "exceeds the proper limits on the judicial role," *Jones v. Bock*, 549 U.S. 199, 203 (2007). *Third*, the Eleventh Circuit "stands alone" in mandating exhaustion of fiduciary-breach and statutory ERISA claims. *Fourth*, reliance interests are minimal, as exhaustion is merely a threshold procedural issue and has no bearing on ERISA's underlying substantive duties. In short, *Mason* should be overruled because it is inconsistent with ERISA's text as well as "clear Supreme Court precedent and every relevant decision of [the] sister circuits." *Jones v. Governor of Fla.*, 975 F.3d 1016, 1033 (11th Cir. 2020) (en banc).

21

**A.** *Mason***'s exhaustion requirement is inconsistent with ERISA's text.**

*Mason* arose from a dispute in which union employees asserted that the Continental Can Company closed a plant in order to avoid certain pension and employee benefit obligations. 763 F.2d at 1221–22. The plaintiffs asserted several state law claims, as well as "a violation of their statutory rights" under ERISA. *Id.* at 1221. The state law claims were subject to dismissal because the plaintiffs fail to pursue grievance procedures under the applicable collective bargaining agreement. *Id.* at 1222–24.

Turning to the ERISA claims, the Court affirmed dismissal for failure to exhaust administrative remedies, rejecting the plaintiffs' argument "that an exhaustion requirement should only be applied to applications for or denials of benefits under the plan and not to claims involving violations of ERISA's statutory provisions." *Id*. at 1225. Even though ERISA § 502 "is silent with regard to whether exhaustion is to be required before these claims are brought in federal court," *id*., the Court nevertheless adopted an exhaustion rule based on general policy considerations, *id*. at 1227. The Court further reasoned that the existence of an administrative procedure requirement in ERISA § 503, although applicable only to "persons whose claims have been denied," implied that imposing a pre-suit exhaustion requirement on statutory claims "appear[ed] to be consistent with the intent of Congress," as also reflected in "the legislative history of ERISA." *Id.* The

Court has since reaffirmed *Mason*'s exhaustion requirement on several occasions. *Bolton*, 155 F.4th at 1279 (citing *Springer v. Wal-Mart Associates' Grp. Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990); *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000); *Lanfear*, 536 F.3d at 1223–24).

*Mason* and its progeny should be overruled as "inconsistent" with the statutory text. *See McCarthan*, 851 F.3d at 1095. Congress' express intention in enacting ERISA was to grant plan participants "*ready access* to the Federal courts" to obtain relief for fiduciary violations. 29 U.S.C. § 1001(b) (emphasis added). It did so through a "carefully crafted and detailed enforcement scheme" in ERISA § 502(a). *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (discussing "[t]he six carefully integrated civil enforcement provisions found in § 502(a)"). That scheme grants any plan "participant" an unconditional right "to bring a civil action . . . for appropriate relief" for a breach of fiduciary duty or other statutory violation. 29 U.S.C. §§ 1109(a), 1132(a)(2), 1132(a)(3). Congress declared that such actions would be timely if "commenced" within specified time limits. 29 U.S.C. § 1113. Nothing in these provisions suggests that Congress intended to require victims of fiduciary misconduct to exhaust administrative remedies as a prerequisite to commencing a civil action. *See Russell*, 473 U.S. at 147 ("The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has

23

enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.") (citation omitted). *Mason* thus erred in imposing a requirement that Congress chose to omit. *See, e.g., Silva-Hernandez v. U.S. Bureau of Citizenship & Immigr. Servs.*, 701 F.3d 356, 361 (11th Cir. 2012) ("We cannot add to the terms of the provision what Congress left out.") (citation omitted).

The only part of the statute that could be read to require pre-suit exhaustion is § 503—but that section is expressly limited to a "participant *whose claim for benefits has been denied*." 29 U.S.C. § 1133(2) (emphasis added).[7] *Mason* acknowledged this limitation in § 503,[8] but nevertheless concluded that "imposing an exhaustion requirement" on statutory ERISA claims "appear[ed] to be consistent with the intent of Congress that pension plans provide intrafund review procedures." *Id*. (citing 29 U.S.C. § 1133). That reasoning is at odds with Supreme Court precedent. Where "Congress established an exhaustion requirement for a specific class of" claims—42 U.S.C. § 1983 actions brought by prisoners—

---

[7] Although the courts have "uniformly" interpreted § 503 to require exhaustion for § 502(a)(1)(B) actions, *Heimeshoff*, 571 U.S. at 105, "[t]he administrative exhaustion requirement is not found in the ERISA statute itself," *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003); *see Brown v. J.B. Hunt Transp. Servs.*, 586 F.3d 1079, 1084 (8th Cir. 2009) ("On its face," § 503 only requires that plans "provide plan participants with appropriate notice and review—it does not contain an express requirement that employees exhaust contractual remedies prior to bringing suit.") (citation omitted).

[8] 763 F.2d at 1227 ("[S]ection 503 of ERISA, 29 U.S.C.A. § 1133, . . . requires pension plans to provide administrative procedure *for persons whose claims have been denied . . ..*") (emphasis added).

judicially imposing an exhaustion requirement "onto another type of § 1983 action" would be "inconsistent" with Congressional intent. *Felder v. Casey*, 487 U.S. 131, 148–49 (1988). The Court thus "refused to engraft an exhaustion requirement" onto non-prisoner § 1983 actions "where Congress had not provided for one." *Id*. at 149. "[D]ecisions concerning both the desirability and the scope and design of any exhaustion requirement turn on a host of policy considerations which 'do not invariably point in one direction,'" and thus "are best left to 'Congress' superior institutional competence.'" *Id.* (quoting *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 513 (1982)).

Other courts of appeals also reject the view that ERISA § 503 shows Congressional intent to impose an exhaustion requirement on statutory ERISA violations. To the contrary, these courts have declined "to find in ERISA an implied exhaustion requirement" because there is "no indication in the Act or its legislative history that Congress intended to condition a plaintiff's ability to redress a statutory violation in federal court upon the exhaustion of internal remedies." *Zipf v. AT&T*, 799 F.2d 889, 891 (3d Cir. 1986).

Both subsections of § 503 refer only to a participant "whose claim for benefits" has been denied. 29 U.S.C. § 1133(1)–(2). This mirrors the language of § 502(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B) (participant may sue "to recover benefits due to him under the terms of his plan"). The Secretary's claims-procedure

regulation likewise establishes "minimum requirements for employee benefit plan procedures pertaining to *claims for benefits* by participants and beneficiaries." 29 C.F.R. § 2560.503-1(a) (emphasis added).[9] In the context of § 502(a)(1)(B) denial-of-benefits claims, "[t]he exhaustion doctrine effectuates Congress's purpose in requiring that benefit plans provide for administrative review procedures by ensuring those internal remedial procedures are utilized." *Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 964 (D.C. Cir. 2014). But because § 503 "refers only to procedures regarding claims for *benefits*'" that have been denied, *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017) (quoting *Zipf*, 799 F.2d at 891), that logic does not extend to other types of ERISA claims. As stated by the Fourth Circuit:

> It is undisputed that the administrative appeals procedure ERISA requires in every plan does not apply to non-benefit challenges. Yet it is this statutory requirement upon which the judicially-created exhaustion requirement is grounded. It follows, therefore, that if there is no statutory requirement for an appeals procedure respecting claims not involving benefits, the logic of the exhaustion requirement no longer applies.

*Smith v. Sydnor*, 184 F.3d 356, 364–65 (4th Cir. 1999) (citation omitted). In short, nothing in the statute suggests "that Congress meant for these internal remedial

---

[9] As the Secretary of Labor discussed in supporting an initial en banc hearing, the benefit-review procedures prescribed in this regulation "are simply not designed for statutory claims." ECF No. 32, Br. for the Acting Secretary of Labor as Amicus Curiae Supporting Plaintiffs-Appellants' Pet. for Initial Hearing En Banc at 10 (May 22, 2024).

procedures to embrace . . . claims based on violations of ERISA's substantive guarantees." *Zipf*, 799 F.2d at 891–92.

Because *Mason*'s exhaustion requirement for fiduciary-breach and statutory claims under ERISA is inconsistent with ERISA's text, it should be overruled.

**B.** **_Mason_'s policy-based exhaustion requirement is contrary to Supreme Court precedent.**

In concluding that it would be desirable to require exhaustion for ERISA claims including breach of fiduciary duty and other statutory violations, *Mason* relied heavily on what the Court viewed as "compelling" policy considerations. 763 F.2d at 1227. This conflicts with the Supreme Court's instruction that "crafting and imposing" exhaustion rules that "are not required" by the text of a federal statute "exceeds the proper limits on the judicial role." *Jones v. Bock*, 549 U.S. 199, 203, 217 (2007) (rejecting judge-made exhaustion pleading rule where statute "does not itself require plaintiffs to plead exhaustion"); *see also Felder*, 487 U.S. at 149 ("[P]olicy considerations alone . . . cannot justify judicially imposed exhaustion unless exhaustion is consistent with congressional intent.") (quoting *Patsy*, 457 U.S. at 513). "Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 526 (1987).

In *Bock*, which involved claims subject to the Prison Litigation Reform Act (PLRA), the Supreme Court rejected several procedural rules that lower courts had created in an effort to enhance the PLRA's explicit exhaustion and judicial screening requirements. 549 U.S. at 202–06, 211–24. The lower courts' policy justifications for crafting these rules could not "fairly be viewed as an interpretation of the PLRA." *Id*. at 216. "[T]he judge's job is to construe the statute—not to make it better" or to "'read in by way of creation.'" *Id*. (citation omitted). Because "the PLRA does not itself require plaintiffs to plead exhaustion, such a result 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" *Id*. at 217 (quoting *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993)).

*Bock* shows "that *Mason* erred in relying on policy considerations to create an atextual exhaustion requirement for fiduciary-breach and statutory claims under ERISA." *Bolton*, 155 F.4th at 1290 (Jordan, J., concurring). Using policy to supplement the statutory text is particularly problematic in the context of ERISA, which is "an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests." *Mertens v. Hewitt Associates,* 508 U.S. 248, 262 (1993); *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996) (ERISA balances "competing congressional purposes"). The Supreme Court has "observed repeatedly" that because "ERISA is a 'comprehensive and reticulated statute,' the

product of a decade of congressional study of the Nation's private employee benefit system," courts should be "especially 'reluctant to tamper with [its] enforcement scheme.'" *Great-West*, 534 U.S. at 209 (quoting *Mertens,* 508 U.S. at 251, 254; *Russell*, 473 U.S. at 147); *Harris Tr.*, 530 U.S. at 247. *Mason*'s atextual exhaustion requirement impermissibly tampers with the § 502(a) enforcement scheme and disrupts the careful balance reflected in the text that Congress enacted. In short, the policy considerations relied upon by *Mason* in imposing an exhaustion requirement on participants bringing ERISA fiduciary-breach claims "'do not invariably point in one direction'" and "are best left to 'Congress' superior institutional competence.'" *Felder*, 487 U.S. at 149 (quoting *Patsy*, 457 U.S. at 513).

C.    **The Eleventh Circuit "stands alone" in mandating exhaustion for fiduciary-breach and statutory claims under ERISA.**

Before *Mason* was decided in 1985, only two other appellate courts had addressed whether an exhaustion requirement applies to "claims grounded in statutory provisions of ERISA." *See Mason*, 763 F.2d at 1226 (discussing conflicting decisions). The Seventh Circuit was the first court of appeals to address the question, and "applied an exhaustion requirement to alleged violations of statutory rights under ERISA." *Id.* (citing *Kross v. Western Electric Co.*, 701 F.2d 1238 (7th Cir. 1983)). The Ninth Circuit reached a contrary conclusion, rejecting an exhaustion requirement for ERISA claims "aris[ing] from an alleged statutory

violation." *Id*. (citing *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir. 1984)). *Mason* opted to follow the Seventh Circuit and an earlier Ninth Circuit decision that *Amaro* had distinguished. *Id*. at 1227.

Since *Mason*, "a large chorus of . . . sister circuits" has rejected an exhaustion requirement "for claims alleging violations of ERISA." *Bolton*, 155 F.4th at 1280 (citing cases). A total of seven circuits have now "all held exhaustion is not required when plaintiffs seek to enforce statutory ERISA rights rather than contractual rights created by the terms of the Plan." *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564–65 (6th Cir. 2017) (joining "the Third, Fourth, Fifth, Ninth, Tenth, and D.C. Circuits" and holding that participants were not required to exhaust internal remedial procedures before asserting statutory anti-cutback and fiduciary breach claims).[10] This includes all six courts of appeals to address the issue in the last 41 years, since *Mason* was decided. This unbroken string of contrary sister circuit precedent further supports overruling. *See*

---

[10] *Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 965–66 (D.C. Cir. 2014) (holding that participants asserting fiduciary breach claim "need not exhaust internal remedial procedures before proceeding to federal court"); *Milofsky v. Am. Airlines, Inc.*, 442 F.3d 311, 313 (5th Cir. 2006) (en banc) (reversing dismissal of "fiduciary breach claims not requiring exhaustion of administrative remedies"); *Smith v. Sydnor*, 184 F.3d 356, 364–65 (4th Cir. 1999) ("[W]e hold that the judicially created exhaustion requirement does not apply to a claim for breach of fiduciary duty as defined in ERISA."); *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1204–05 (10th Cir. 1990) (holding exhaustion not required for retaliation claim); *Zipf v. AT&T*, 799 F.2d 889, 891 (3d Cir. 1986) (same); *Amaro v. Cont'l Can Co.*, 724 F.2d 747, 751–52 (9th Cir. 1984) (same).

*Corporación AIC*, 66 F.4th at 888 (relevant factors include "legal developments since the decision").

The reasoning of the circuits that have rejected an exhaustion requirement for statute-based claims is more persuasive than the contrary view. As noted, these courts have concluded that there is no textual basis for requiring exhaustion of statutory claims, given that § 503 is limited to claims for *benefits* that have been denied. *See supra* at 25–26; *Stephens*, 755 F.3d at 966; *Hitchcock*, 851 F.3d at 564; *Zipf*, 799 F.2d at 891–92; *Sydnor*, 184 F.3d at 364–65. In addition, determining whether certain conduct violates a statute is an issue for the courts, not a plan administrator.

> [w]hile plan administrators may have particular expertise in interpreting their pension plans' terms, federal judges have particular expertise in interpreting statutory terms. And while consistent application of a pension plan's terms might best be achieved by allowing plan administrators to interpret those terms in the first instance, consistent application of the law is best achieved by encouraging a unitary judicial interpretation of that law. Federal district courts also have the expertise to create a factual record, should that be necessary, and to encourage settlement of disputes where appropriate.

*Stephens*, 755 F.3d at 966. Indeed, while Congress granted "concurrent" jurisdiction to state courts over § 502(a)(1)(B) denial of benefits claims, which often turn on state-law principles of contract interpretation, it reserved "exclusive jurisdiction" over other § 502(a) actions to the federal district courts. *See* 29 U.S.C. § 1132(e)(1). This further supports the conclusion that Congress intended for the

federal judiciary to resolve such statute-based claims.

Allowing the judiciary to resolve claimed statutory violations enhances the development of uniform standards by "providing a consistent source of law to help plan fiduciaries and participants predict the legality of proposed actions." *Zipf*, 799 F.2d at 893; *see Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 570 (11th Cir. 1994) (noting ERISA's goal of providing "uniformity in the administration of benefit plans for the protection of plan participants."). And because ERISA holds breaching fiduciaries "personally liable for damages," *Mertens*, 508 U.S. at 252 (citing 29 U.S.C. § 1109(a)), any assessment of the claimed statutory violation may be affected by the fiduciary's self-interest. *See Sydnor*, 184 F.3d at 365 n.9 ("By allowing a plaintiff to bring a claim for breach of fiduciary duty in federal court before exhausting administrative remedies, we recognize the general principle . . . that we do not give full credence to an ERISA fiduciary's assessment of his own allegedly wrongful conduct.").

Moreover, "when the claimant's position is that his or her federal rights guaranteed by ERISA have been violated," considerations such as cost reduction that support an exhaustion requirement in the benefits-denial context "are simply inapposite." *Zipf*, 799 F.2d at 893. If anything, forcing the plaintiff to go through an administrative process in which the alleged wrongdoer would be deciding the legality of its own conduct "would probably increase" costs and "would be

purposeless, as well as futile and inadequate." *Hitchcock*, 851 F.3d at 562 (quoting

*Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994)); *Held*, 912 F.2d at 1205

(stating that requiring plaintiff to press his retaliation claim internally with the

alleged wrongdoer "prior to bringing a legal action would serve little purpose").

Thus, when a plan's review procedure is "not capable of providing the remedy that

[plaintiff] seeks," exhaustion "would make absolutely no sense and would be a

hollow act of utter futility." *Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950–51

(5th Cir. 1995).

The reasoning of the only other circuit to align with *Mason* is not persuasive.

The Seventh Circuit reasoned that an exhaustion requirement for fiduciary breach

claims was appropriate in part based on "Congress'[ ] apparent intent in mandating

internal claims procedures" under § 503 and related policy considerations.

*Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996) (citing 29 U.S.C.

§ 1133). But this overlooks that § 503 "'refers only to procedures regarding claims

for *benefits*,' and therefore does not support creating an exhaustion requirement for

non-benefit claims." *Bolton*, 155 F.4th at 1290 (Jordan, J., concurring) (quoting

*Zipf*, 799 F.2d at 891). In addition, the Seventh Circuit grants district courts

discretion whether to "require exhaustion" in a particular case. *Lindemann*, 79 F.3d

at 650; *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138–39 (7th Cir. 1997)

(explaining that "it is within the discretion of the district courts to require

exhaustion of administrative remedies" and "it is also within the discretion of the district courts not to require exhaustion of administrative remedies," and finding no abuse of discretion in not requiring plaintiff asserting statutory anti-retaliation claim under 29 U.S.C. § 1140 to exhaust administrative remedies). The Eleventh Circuit thus "stands alone in requiring mandatory exhaustion for fiduciary-breach and statutory claims under ERISA." *Bolton*, 155 F.4th at 1291 (Jordan, J., concurring). Overruling *Mason* will thus alleviate a circuit split as to whether mandatory exhaustion applies to such claims, thereby discouraging potential forum-shopping and furthering ERISA's purpose of establishing a "uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

### D.    Other factors favor overruling *Mason*.

The Court further considers whether overruling precedent will affect significant reliance interests. *Corporación AIC*, 66 F.4th at 888; *McCarthan*, 851 F.3d at 1080, 1096–98. Here, such interests are minimal, as exhaustion pertains merely to a threshold procedural requirement, rather than a substantive legal standard or a defense on the merits.

This case illustrates that eliminating the exhaustion requirement will also prevent a potential inequity in the application of ERISA's statute of repose to breach of fiduciary duty claims. As noted, because denial-of-benefits claims

generally do not accrue for limitations purposes until administrative remedies are exhausted and the plan administrator issues a final denial of benefits, and a court can decline to enforce an unreasonably short plan-based limitations period, *see supra* at 6–7, there is little risk that pursuing an administrative claim will cause a participant's claim to become time-barred. *See Heimeshoff*, 571 U.S. at 105, 109 ("A participant's cause of action under ERISA [§ 502(a)(1)(B)] accordingly does not accrue until the plan issues a final denial.").

The same is not true for claims for breach of fiduciary duty or statutory ERISA violations, which are subject to a six-year statute of repose that generally runs from "the date of the last action which constituted a part of the breach or violation," 29 U.S.C. § 1113(1), regardless of "the date when *the claim accrued*," *Sec'y of Labor v. Preston*, 873 F.3d 877, 883 (11th Cir. 2017). Accordingly, while the limitations period for a benefits claim does not even start until the participant exhausts administrative remedies, ERISA's statute of repose can expire before the participant ever learns that any breach of fiduciary duty has occurred. Although some ERISA violations, such as unlawful retaliation, may be obvious to the affected individual, other fiduciary breaches, such as the allegedly inflated values of privately held stock at issue here, may be undetectable without specialized knowledge. *See, e.g., Gamache v. Hogue*, No. 19-21, 2023 U.S. Dist. LEXIS 57266, at *2–3, *9–12 (M.D. Ga. Mar. 28, 2023) (finding certified public

accountant with M.B.A. from Northwestern University sufficiently qualified to provide expert testimony on valuation of ESOP shares).

Here, because the Company refused to produce information such as valuation reports for the Transaction, Plaintiffs did not learn the basis for their claims until September 2022, roughly two months before ERISA's six-year repose period would have expired on November 26, 2022. A108–A110 (Am. Compl. ¶¶ 130–32), A113–A115 (¶¶ 139, 141–142). At that point, Plaintiffs could not have possibly completed the administrative process *before* filing suit within the repose period. The exhaustion requirement thus has the effect of shortening ERISA's repose period for fiduciary breach claims. Applying a judge-made rule to dismiss a timely fiduciary breach action like this one, thereby creating a potential time bar for any post-exhaustion suit, violates Congress' intent that fiduciary breach actions would be timely if commenced within six years of the violation. 29 U.S.C. § 1113(1)(A).

*       *       *

For these reasons, the Court should hold that plaintiffs bringing fiduciary-breach and statutory claims under ERISA are not required to exhaust administrative remedies, reverse the district court's dismissal of the action, and remand the case for further proceedings.

## II. Alternatively, the district court erred in not specifying that dismissal was without prejudice.

If the Court holds that Plaintiffs were not required to exhaust administrative

remedies before filing suit, that would resolve this appeal; the district court's dismissal on exhaustion grounds should then be reversed and the case remanded for further proceedings on the merits. But in the event *Mason* is not reversed, Plaintiffs alternatively seek a determination that the district court should have specified that dismissal was without prejudice. *See Bolton*, 155 F.4th at 1289 (remanding "so that the court can specify whether prejudice attaches").

Eleventh Circuit precedent is clear that "'dismissal of an action on the ground of failure to exhaust administrative remedies is *not on the merits*.'" *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (emphasis added, quoting *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003)). Rather, exhaustion is regarded as "a matter in abatement" or "a matter of judicial administration" and is akin to a jurisdictional defense. *Id*. at 1374, 1376. Because a dismissal for failure to exhaust does not adjudicate the merits, such a dismissal should be "without prejudice" to refiling once administrative remedies are exhausted. *See, e.g.*, *Bickley*, 461 F.3d at 1330 (affirming "the district court's dismissal of Bickley's complaint without prejudice for failure to exhaust his administrative remedies"); *Variety Children's Hosp. v. Century Med. Health Plan*, 57 F.3d 1040, 1042 (11th Cir. 1995) (affirming "dismissal of Count I without prejudice subject to Variety's exhaustion of its administrative remedies"). The usual practice of district courts within the Eleventh Circuit in ERISA cases is to dismiss without prejudice when dismissal is

based on failure to exhaust.[11]

Here, the district court's order addressed exhaustion only, without reaching any of Defendants' alternative arguments for dismissal. Yet, the order did not specify that dismissal was without prejudice. Generally, "any dismissal . . . except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits," unless "the dismissal order states otherwise." Fed. R. Civ. P. 41(b). The jurisdictional exception under Rule 41(b) is not limited to "fundamental jurisdictional defects which render a judgment void and subject to collateral attack, such as lack of jurisdiction over the person or subject matter." *Costello v. United States*, 365 U.S. 265, 285 (1961). Rather, the exception broadly encompasses "those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim," such as a "[f]ailure to file the affidavit of good cause in a denaturalization proceeding." *Id*. Exhaustion is such a

---

[11] *Lee v. Blue Cross Blue Shield of Ala.*, No. 19-1895, 2020 U.S. Dist. LEXIS 174654, at *11–12 (N.D. Ala. Sep. 23, 2020) (granting dismissal "without prejudice to allow Lee to exhaust her claims"); *La Ley Recovery Sys.-OB, Inc. v. Unitedhealthcare Ins. Co.*, No. 14-23400, 2015 U.S. Dist. LEXIS 5799, at *5–6 (S.D. Fla. Jan. 7, 2015) (dismissing complaint without prejudice "to allow Plaintiff to pursue its administrative remedies under ERISA"); *Hutchinson v. Wickes Cos.*, 726 F. Supp. 1315, 1322 (N.D. Ga. 1989) ("A dismissal for failure to exhaust administrative remedies . . . is not a determination on the merits" but rather "results in an action being dismissed without prejudice prior to adjudication of the merits.").

precondition and is "like a defense for lack of jurisdiction" or improper venue in that it is treated as "a matter[] in abatement, and ordinarily [does] not deal with the merits." *Bryant*, 530 F.3d at 1374, 1376 (citation omitted).

Because exhaustion is a precondition requisite and jurisdictional in nature, the district court's exhaustion-based dismissal falls within the jurisdictional exception in Rule 41(b). Nevertheless, "even if a dismissal is presumptively without prejudice, it is a best practice for district courts to err on the side of clarity and indicate whether prejudice has attached." *Dupree v. Owens*, 92 F.4th 999, 1008 (11th Cir. 2024). Therefore, to the extent the Court does not reverse the dismissal outright, the Court should "vacate and remand for the limited purpose of allowing the district court to dismiss the case without prejudice," *id*., thereby clarifying that any post-exhaustion suit is not subject to a preclusion defense.

Although Defendants may argue that dismissal with prejudice was proper because ERISA's six-year statute of repose has now run, Plaintiffs contend that the tolling exception to the statute of repose applies, because this is a "case of fraud or concealment." 29 U.S.C. § 1113; A112–A115 (Am. Compl. ¶¶ 138–42). If Plaintiffs were to again file suit after exhausting administrative remedies, the timeliness of that pleading would necessarily depend on its content. Any ruling that a future action would necessarily be time-barred would be premature.

## CONCLUSION

The Court should reverse the district court's dismissal on exhaustion grounds and remand for further proceedings on the merits of Plaintiffs' claims.

March 18, 2026                    Respectfully submitted,

<div style="margin-left:40%">

/s/ *Sean E. Soyars*
Andrew D. Schlichter
Sean E. Soyars
Alexander L. Braitberg
SCHLICHTER BOGARD LLC
100 S. Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115

Attorneys for Plaintiffs-Appellants

</div>

## CERTIFICATE OF COMPLIANCE

1. I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) because it contains 9,283 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 Word Times New Roman 14-point font.

s/ *Sean E. Soyars*
Sean E. Soyars
Attorney for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

On March 18, 2026, I electronically filed and served this brief via CM/ECF.

s/ *Sean E. Soyars*
Sean E. Soyars
Attorney for Plaintiffs-Appellants

# ADDENDUM

## 29 U.S.C. §§ 1001, 1109, 1113, 1132, 1133 (excerpts)

## § 1001. Congressional findings and declaration of policy

. . .

**(b)** PROTECTION OF INTERSTATE COMMERCE AND BENEFICIARIES BY REQUIRING DISCLOSURE AND REPORTING, SETTING STANDARDS OF CONDUCT, ETC., FOR FIDUCIARIES.

It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

. . .

## § 1109. Liability for breach of fiduciary duty

**(a)** Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

. . .

## § 1113. Limitation of actions

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

> **(1)** six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> **(2)** three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

## § 1132. Civil enforcement

**(a)** PERSONS EMPOWERED TO BRING A CIVIL ACTION.

A civil action may be brought—

**(1)** by a participant or beneficiary—

**(A)** for the relief provided for in subsection (c) of this section, or

**(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

**(2)** by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

**(3)** by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

. . .

**(e)** JURISDICTION

**(1)** Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

…

## § 1133. Claims procedure

In accordance with regulations of the Secretary, every employee benefit plan shall—

**(1)** provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

**(2)** afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.