No. 24-10084

# United States Court of Appeals
## *for the*
## Eleventh Circuit

RANI BOLTON, ALISON MERCKER, JAMES ARMSTRONG, MELISSA SUTER, and BENJAMIN LYMAN, individually and as representatives of a class of participants and beneficiaries on behalf of the INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC. EMPLOYEE STOCK OWNERSHIP PLAN,
*Plaintiffs-Appellants,*

— v. —

INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC., JOEL KNOX, BILL DEMMOND, CHRIS ROSENBERGER, LES SCHNEIDER, JAMES R. URBACH, and the INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC. ESOP COMMITTEE,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Georgia
Case No. 1:22-cv-04602, Hon. Leigh Martin May

## EN BANC BRIEF FOR DEFENDANTS-APPELLEES

RICHARD PEARL
  *Faegre Drinker Biddle & Reath, LLP*
  *320 S. Canal St., Ste. 3300*
  *Chicago, IL 60606*
  *(312) 212-6525*

MARK D. TATICCHI
  *Faegre Drinker Biddle & Reath, LLP*
  *1 Logan Square, Ste. 2000*
  *Philadelphia, PA 19103*
  *(215) 988-2700*

*Counsel for Appellee James R. Urbach*

PAUL W. HUGHES
SARAH P. HOGARTH
CHARLES SEIDELL
  *McDermott Will & Schulte LLP*
  *500 North Capitol Street NW*
  *Washington, DC 20001*
  *(202) 756-8000*

THEODORE M. BECKER
  *McDermott Will & Schulte LLP*
  *444 West Lake Street, Ste. 4000*
  *Chicago, IL 60606*
  *(312) 372-2000*

*Counsel for Inland Fresh Appellees\**

\*Additional counsel listed inside cover.

SCOTT ZWEIGEL
WILLIAM JAMES HOLLEY, II
  *Bradley Arant Boult Cummings, LLP*
  *Promenade Tower, 20th Floor*
  *1230 Peachtree St., NE*
  *Atlanta, GA 30339*
  *(404) 868-2002*

*Counsel for Appellee James R. Urbach*

JULIAN L. ANDRÉ
  *McDermott Will & Schulte LLP*
  *2049 Century Park East, Ste. 3200*
  *Los Angeles, CA 90067*
  *(310) 277-4110*

PAUL OLIVER
  *Wimberly, Lawson, Steckel,*
    *Schneider & Stine, P.C.*
  *3400 Peachtree Rd., Ste. 400*
  *Atlanta, GA 30326*
  *(404) 365-0900*

*Counsel for Inland Fresh Appellees*

**STATEMENT REGARDING ORAL ARGUMENT**

The Court's en banc briefing notice advises that oral argument will be held in Atlanta in June 2026. Dkt. 57.

# TABLE OF CONTENTS

Statement Regarding Oral Argument............................................................. i

Table of Authorities ............................................................................ iv

Introduction.................................................................................... 1

Issue Statement ................................................................................ 3

Statement of the Case......................................................................... 3

    A.  Legal background ...................................................................... 3

    B.  Factual background..................................................................... 7

    C.  Procedural background.................................................................. 8

Summary of Argument .................................................................... 10

Standard of Review ........................................................................ 12

Argument.................................................................................... 13

I.    The Court should reaffirm *Mason* as requiring exhaustion of
mandatory contractual procedures. ................................................. 13

    A.  Courts must enforce plan terms as written—including those
channeling litigation.............................................................. 15

    B.  Courts must enforce plan exhaustion provisions. ....................... 18

        1.  Exhaustion provisions are plan terms enforceable like
any other, absent a contrary statute. ................................. 19

        2.  Nothing in the ERISA statute forecloses enforcing plan
exhaustion provisions......................................................... 22

        3.  As the panel (rightly) held, the Plan includes a
mandatory exhaustion provision for all ERISA claims. ...... 25

II.   There is no reason to overrule *Mason* in this case. ........................... 30

    A.  *Mason* need only be clarified to its uncontroversial
contractual foundation for purposes of this case......................... 31

    B.  *Stare decisis* compels reaffirming *Mason* in full because
*Mason* was rightly decided........................................................ 33

        1.  *Mason* was and remains correct as a matter of judicial
exhaustion, compelling affirmance. ..................................... 34

a. Courts uniformly—and correctly—agree that ERISA's silence on exhaustion grants courts discretion to require exhaustion. ....................................................... 35

b. Courts' discretion to require exhaustion equally applies to statutory ERISA claims. ............................... 38

2. *Mason* is workable and has engendered significant reliance interests by plans and participants alike. .............. 50

C. If the Court overrules *Mason*, it should do so prospectively. ....... 52

III. The district court correctly dismissed with prejudice. ........................ 56

Conclusion .............................................................................................. 58

# TABLE OF AUTHORITIES

**Cases**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) .........................................................4, 47, 48, 54

*Alliance Metals, Inc., of Atlanta v. Hinely Indus.*,
222 F.3d 895 (11th Cir. 2000) .................................................. 19

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .................................................................. 24

*Amaro v. Cont'l Can Co.*,
724 F.2d 747 (9th Cir. 1984) .................................................... 37

*Amato v. Bernard*,
618 F.2d 559 (9th Cir. 1980) .................................................... 48

*Anders v. Hometown Mortg. Servs.*,
346 F.3d 1024 (11th Cir. 2003) ................................................ 21

*Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*,
847 F.2d 475 (8th Cir. 1988) .................................................... 18

*In re Becker*,
993 F.3d 731 (9th Cir. 2021) .................................................... 17

*Bickley v. Caremark RX, Inc.*,
461 F.3d 1325 (11th Cir. 2006) ..................................6, 13, 28, 29

*Bird v. Shearson Lehman/Am. Exp., Inc.*,
926 F.2d 116 (2d Cir. 1991) ................................................ 18, 23

*Black & Decker Disability Plan v. Nord*,
538 U.S. 822 (2003) ............................................................. 4, 15

*Bolton v. Inland Fresh Seafood Corp. of Am., Inc.*,
155 F.4th 1272 (11th Cir. 2025)........................... 9, 10, 25, 27-29, 43, 58

*Booth v. Churner*,
532 U.S. 731 (2001) .................................................................. 46

*Borman v. Great Atl. & Pac. Tea Co.*,
64 F. App'x 524 (6th Cir. 2003).................................................. 47

*Brown v. J.B. Hunt Transp. Servs., Inc.*,
586 F.3d 1079 (8th Cir. 2009) .................................................... 46

*Bryant v. Avado Brands, Inc.*,
187 F.3d 1271 (11th Cir. 1999) .................................................. 9

**Cases—continued**

*Bryant v. Rich*,
530 F.3d 1368 (11th Cir. 2008) ...................................................... 57, 58

*Buce v. Allianz Life Ins. Co.*,
247 F.3d 1133 (11th Cir. 2001) .............................................................. 17

*Chailland v. Brown & Root, Inc.*,
45 F.3d 947 (5th Cir. 1995) ................................................................... 37

*Chevron Oil Co. v. Huson*,
404 U.S. 97 (1971) ........................................................................ 52, 53

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011) ...................................................................... 29, 51

*Clayton v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*,
451 U.S. 679 (1981) ......................................................35, 36, 38, 49

*Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins.*,
489 U.S. 561 (1989) ............................................................................. 45

*In re Colony Square Co.*,
843 F.2d 479 (11th Cir. 1988) .............................................................. 19

*Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*,
40 F.3d 426 (D.C. Cir. 1994) .......................................................... 39, 40

*CompuCredit Corp. v. Greenwood*,
565 U.S. 95 (2012) ......................................................................... 21, 23

*Conkright v. Frommert*,
559 U.S. 506 (2010) ......................................................4, 41, 45, 54

*Conley v. Pitney Bowes*,
34 F.3d 714 (8th Cir. 1994) ........................................................... 20, 32

*Counts v. Am. Gen. Life & Accident Ins. Co.*,
111 F.3d 105 (11th Cir. 1997) ............................................................... 7

*Coyote Potable Storage, LLC v. Pods Enters.*,
618 F. App'x 525 (11th Cir. 2015)........................................................ 19

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025) .............................................................................. 5

*Curry v. Contract Fabricators Inc. Profit Sharing Plan*,
891 F.2d 842 (11th Cir. 1990) .............................................................. 46

**Cases—continued**

*Darby v. Cisneros,*
509 U.S. 137 (1993) ........................................................2, 35, 36, 37

*Denton v. First Nat'l Bank of Waco,*
765 F.2d 1295 (5th Cir. 1985) ........................................... 46

*Diaz v. United Agr. Emp. Welfare Benefit Plan & Tr.,*
50 F.3d 1478 (9th Cir. 1995) ............................................. 46

*Doe v. Blue Cross & Blue Shield United of Wis.,*
112 F.3d 869 (7th Cir. 1997) ............................................. 37

*Dorman v. Charles Schwab Corp.,*
934 F.3d 1107 (9th Cir. 2019) ........................................... 18

*Fallick v. Nationwide Mut. Ins. Co.,*
162 F.3d 410 (6th Cir. 1998) ............................................. 46

*Fifth Third Bancorp v. Dudenhoeffer,*
573 U.S. 409 (2014) ................................................... 5, 41

*Firestone Tire & Rubber Co. v. Burch,*
489 U.S. 101 (1989) ........................................15, 37, 44, 45, 50

*Gilmer v. Interstate/Johnson Lane Corp.,*
500 U.S. 20 (1991) ........................................................ 21

*Glazner v. Glazner,*
347 F.3d 1212 (11th Cir. 2003) (en banc) ......................... 53, 55

*Griffin v. Coca-Cola Refreshments USA, Inc.,*
989 F.3d 923 (11th Cir. 2021) ............................................. 5

*Hall v. Nat'l Gypsum Co.,*
105 F.3d 225 (5th Cir. 1997) ............................................. 47

*Halliburton Co. v. Erica P. John Fund, Inc.,*
573 U.S. 258 (2014) ....................................................... 34

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.,*
530 U.S. 238 (2000) ......................................................... 6

*Heimeshoff v. Hartford Life & Accident Ins. Co.,*
571 U.S. 99 (2013) ........................ 5, 6, 15, 16, 22, 24, 35-38, 55

*Hoever v. Marks,*
993 F.3d 1353 (11th Cir. 2021) (en banc) ......................... 26, 57

**Cases—continued**

*Holmes v. Colo. Coal. for the Homeless
Long Term Disability Plan*,
762 F.3d 1195 (10th Cir. 2014) .............................................. 46

*Irwin v. Dep't of Veterans' Affs.*,
498 U.S. 89 (1990) ................................................................. 33

*Jimenez v. Wood Cnty.*,
660 F.3d 841 (5th Cir. 2011) (en banc) ................................. 26

*Jones v. Bock*,
549 U.S. 199 (2007) ........................................................ 36, 37

*Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*,
290 F.3d 1287 (11th Cir. 2002) .............................................. 19

*Kennedy v. Empire Blue Cross & Blue Shield*,
989 F.2d 588 (2d Cir. 1993) .................................................... 46

*Kimble v. Marvel Ent., LLC*,
576 U.S. 446 (2015) ........................................................ 36, 50

*Kinkead v. Sw. Bell Corp. Sickness & Accident
Disability Benefit Plan*,
111 F.3d 67 (8th Cir. 1997) ................................................... 20

*Kirkendall v. Halliburton, Inc.*,
707 F.3d 173 (2d Cir. 2013) ............................... 37, 39, 40, 47

*Kramer v. Smith Barney*,
80 F.3d 1080 (5th Cir. 1996) ................................................. 18

*Kross v. W. Elec. Co.*,
701 F.2d 1238 (7th Cir. 1983) ............................................... 37

*Kunda v. C.R. Bard, Inc.*,
671 F.3d 464 (4th Cir. 2011) ................................................. 46

*Lanfear v. Home Depot, Inc.*,
536 F.3d 1217 (11th Cir. 2008) .......................................... 6, 12

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
552 U.S. 248 (2008) ........................................................... 7, 51

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996) ................................................................. 4

**Cases—continued**

*Loeffelholz v. Ascension Health, Inc.,*
34 F. Supp. 3d 1187 (M.D. Fla. 2014) .................................................. 17

*Madera v. Marsh USA, Inc.,*
426 F.3d 56 (1st Cir. 2005) .................................................................. 46

*Makar v. Health Care Corp. of Mid-Atl. (CareFirst),*
872 F.2d 80 (4th Cir. 1989) ................................................................. 38

*Martin v. Heckler,*
773 F.2d 1145 (11th Cir. 1985) (en banc) ...................................... 26, 57

*Mason v. Cont'l Grp., Inc.,*
763 F.2d 1219 (11th Cir. 1985) ........................... 1-3, 6, 10-14, 19, 20, 22,
30-34, 37-40, 45, 50-56

*Mass. Mut. Life Ins. Co. v. Russell,*
473 U.S. 134 (1985) ............................................................................. 15

*In re Mathias,*
867 F.3d 727 (7th Cir. 2017) ............................................................... 17

*McCann v. Unum Provident,*
907 F.3d 130 (3d Cir. 2018) ................................................................. 46

*McCarthan v. Dir. of Goodwill Indus.-Suncoast,*
851 F.3d 1076 (11th Cir. 2017) (en banc) ................................. 13, 33, 34

*McCarthy v. Madigan,*
503 U.S. 140 (1992) .............................................................35, 36, 45, 46

*McGraw v. Prudential Ins. Co. of Am.,*
137 F.3d 1253 (10th Cir. 1998) ........................................................... 40

*McKart v. United States,*
395 U.S. 185 (1969) ................................................................. 43, 44, 50

*Metro. Life Ins. v. Taylor,*
481 U.S. 58 (1987) ............................................................................... 48

*Miner v. Local 373,*
513 F.3d 854 (8th Cir. 2008) ............................................................... 49

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
473 U.S. 614 (1985) ....................................................................... 21, 22

*Miyahira v. Vitacost.com, Inc.,*
715 F.3d 1257 (11th Cir. 2013) ........................................................... 12

viii

**Cases—continued**

*Moragne v. States Marine Lines, Inc.*,
398 U.S. 375 (1970) ............................................................ 13

*Moratz v. Reliance Standard Life Ins. Co.*,
152 F.4th 799 (7th Cir. 2025)............................................ 47

*Nachman Corp. v. Pension Benefit Guar. Corp.*,
446 U.S. 359 (1980) .............................................................. 3

*Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emp. Benefit Plan*,
160 F.3d 1301 (11th Cir. 1998) .............................. 15, 16, 56

*Patsy v. Bd. of Regents of State of Fla.*,
457 U.S. 496 (1982) ................................................ 36, 37, 45

*Pension Benefit Guar. Corp. v. R.A. Gray & Co.*,
467 U.S. 717 (1984) .............................................................. 3

*Perrino v. S. Bell Tel. & Tel. Co.*,
209 F.3d 1309 (11th Cir. 2000) ........................................ 6, 13

*Physicians Multispecialty Grp. v. Health Care
Plan of Horton Homes, Inc.*
371 F.3d 1291 (11th Cir. 2004) ....................................... 17

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41 (1987) ........................................................ 37, 48

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
7 F.3d 1110 (3d Cir. 1993)................................................ 18

*Rader v. United Transp. Union*,
718 F.2d 1012 (11th Cir. 1983) ....................................... 38

*RCM Secs. Fund, Inc. v. Stanton*,
928 F.2d 1318 (2d Cir. 1991)............................................. 5

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) ............................................................ 21

*Republic Steel Corp. v. Maddox*,
379 U.S. 650 (1965) .......................................................... 20

*Ross v. Blake*,
578 U.S. 632 (2016) ..................................................... 36, 37

*Rush Prudential HMO, Inc. v. Moran*,
536 U.S. 355 (2002) ..................................................... 41, 54

**Cases—continued**

*Schneider Moving & Storage Co. v. Robbins*,
   466 U.S. 364 (1984) ........................................................... 20

*Slater v. United States Steel Corp.*,
   871 F.3d 1174 (11th Cir. 2017) (en banc) ........................................ 32, 33

*Smith v. Aegon Cos. Pension Plan*,
   769 F.3d 922 (6th Cir. 2014) ..................................................... 17

*Smith v. Bd. of Dirs. of Triad Mfg., Inc.*,
   13 F.4th 613 (7th Cir. 2021)....................................................... 18, 23

*Smith v. Sydnor*,
   184 F.3d 356 (4th Cir. 1999) ..................................................... 32

*Springer v. Wal-Mart Assocs.' Grp. Health Plan*,
   908 F.2d 897 (11th Cir. 1990) ..................................................... 7, 24

*Stephens v. Pension Benefit Guar. Corp.*,
   755 F.3d 959 (D.C. Cir. 2014) .................................................. 6, 37, 38

*Sutherlin v. Sutherlin*,
   802 S.E.2d 204 (Ga. 2017)......................................................... 29

*United States v. Svete*,
   556 F.3d 1157 (11th Cir. 2009) (en banc) ........................................ 57

*United States v. Swopes*,
   886 F.3d 668 (8th Cir. 2018) (en banc) .......................................... 26

*US Airways, Inc. v. McCutchen*,
   569 U.S. 88 (2013) ............................................................. 4, 16, 17

*Vandalia R.R. Co. v. Pub. Serv. Comm'n of Ind.*,
   242 U.S. 255 (1916) .............................................................. 36

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) .........................................................4, 41, 51, 54

*Wallace v. Oakwood Healthcare, Inc.*,
   954 F.3d 879 (6th Cir. 2020) .................................................... 21, 30

*Watts v. BellSouth Telecomms., Inc.*,
   316 F.3d 1203 (11th Cir. 2003) .................................................. 6, 13, 32

*Whitehead v. Okla. Gas & Elec. Co.*,
   187 F.3d 1184 (10th Cir. 1999) .................................................. 50

**Cases—continued**

*Williams v. Imhoff,*
203 F.3d 758 (10th Cir. 2000) .......................................................... 18

*Williams v. Shapiro,*
161 F.4th 1313 (11th Cir. 2025)......................................18, 24, 29, 37

*Wilson v. BellSouth Telecomms., Inc.,*
97 F. App'x 36 (6th Cir. 2004).......................................................... 37

*Woods v. Halliburton Co.,*
49 F. App'x 827 (10th Cir. 2002) ...................................................... 47

*Yarbrough v. Decatur Hous. Auth.,*
931 F.3d 1322 (11th Cir. 2019) (en banc) ....................................... 26, 57

*Zhou v. Guardian Life Ins. Co. of Am.,*
295 F.3d 677 (7th Cir. 2002) ............................................................ 46

**Statutes**

29 U.S.C.
§ 173(d)......................................................................................... 48, 49
§ 1001(b)........................................................................................ 23, 38
§ 1102(a)(1) .................................................................................... 4, 15
§ 1104(a)(1)(D) ............................................................................... 4, 15
§ 1106 ............................................................................................. 6
§ 1107(d)(6) .................................................................................... 5
§ 1109 ............................................................................................. 6
§ 1113 ............................................................................................. 38, 52
*§ 1132 ............................................................................................ 5
§ 1132(a)......................................................................................... 48
§ 1132(a)(1)(B) ...........................................5, 6, 24, 38, 46, 47, 49
§ 1132(a)(2) .................................................................... 6, 7, 9, 45
§ 1132(a)(3) ......................................................................... 6, 9, 17
§ 1132(e)(1) .................................................................................... 23
*§ 1133 ...........................................................45, 46, 47, 48, 49

42 U.S.C. § 1983 ................................................................................. 37

**Regulations and Rules**

29 C.F.R. § 2560.503-1(c)(2)................................................................ 25

Fed. R. App. P. 35.............................................................................. 26

Fed. R. Civ. P. 41(b) .......................................................................... 57

**Other Authorities**

120 Cong. Rec. 29942 (1974)........................................................... 37

Amicus Br. of Encore Fiduciary, *Parker-Hannifin v. Johnson*,
  No. 24-1030 (U.S.) ...................................................................... 40

Bryan A. Garner et al., *The Law of Judicial Precedent* 388 (2016) ........... 13

*Hearing Before the Subcommittee on Health, Employment, Labor,*
  *and Pensions of the H. Comm. on Education & Workforce*
  (Dec. 2, 2025) ........................................................................... 39

Restatement (Second) of Trusts (1959) § 187 ...................................... 44, 45

Scott V. Rozmus, *Resolving Statutory Claims Under ERISA:*
  *An Analysis of Whether Courts May Permit or Require*
  *Litigants to Use Nonjudicial Fora to Resolve Claims Brought*
  *Under § 502(a)(3)*, 1994 Det. C.L. Rev. 1027......................................... 47

Staff of S. Comm. on Finance, 95th Cong., *ESOPs: An*
  *Explanation for Employees* (Mar. 1978) .................................................. 5

# INTRODUCTION

One straightforward principle resolves this case: when an ERISA plan's terms require exhaustion as a mandatory precondition for litigation, courts should enforce those terms, like any other. That is precisely what occurred here. The ERISA plan at issue requires exhaustion. Faithfully adhering to the contract thus requires exhaustion.

For decades, this Court has enforced pre-suit administrative procedures contained in ERISA plans regardless of the legal theory underlying plaintiffs' claims. The rule has stood the test of time. When this Court joined the Seventh Circuit in recognizing exhaustion for statutory claims, other circuits reached different conclusions—refusing to enforce parties' agreed-upon pre-suit procedures for claims rooted in statute. But the early opposition did so based on outdated assumptions. Since 1985, the Supreme Court has reaffirmed time and time again that statutory rights are not beyond the reach of contract. Courts, including this one, have invoked these cases in the ERISA context to enforce contractual limitations periods, choice of law provisions, venue provisions, and arbitration provisions.

Contracts can shape when, where, and even whether parties can litigate statutory claims. Where parties have agreed by contract to comply with pre-suit procedures, those terms must be enforced as well. This is the core underpinning of *Mason* and its progeny.

The Court should thus reaffirm *Mason* for two independent reasons.

*First*, ERISA plans are contracts and, where plan terms create administrative procedures that apply to the would-be plaintiff's claims, the Court should enforce those terms. This proposition—that exhaustion is mandatory when the plan requires it—follows necessarily from well-settled law obligating plan-term adherence. The Court need not venture beyond this principle to decide this case: the panel unanimously concluded the Plan here provides a forum for plaintiffs to raise their claims and requires exhaustion, an aspect of the panel's holding not at issue in this en banc proceeding.

*Second*, *Mason* remains doctrinally sound based on judicial exhaustion. The Supreme Court has repeatedly confirmed that "courts are free to impose an exhaustion requirement as a matter of judicial discretion" where Congress has not "provided otherwise." *Darby v. Cisneros*, 509 U.S. 137, 144-145 (1993). Only where a statutory scheme includes its own exhaustion rules does judicial discretion vanish. Plaintiffs' and their amici's thesis— that ERISA is "silent" on exhaustion—thus proves the Court's power to require exhaustion as a matter of judicial discretion.

For 40 years, this Court has instructed participants to exhaust plan remedies for *all* ERISA claims. And for good reason: exhaustion of claims enables course-correction, builds a record, may prompt settlement, and

weeds out meritless claims without expensive litigation. *Mason*'s exhaustion rule has proven workable over many decades and has engendered substantial reliance interests by both plans and participants. The Court should decline plaintiffs' request to overturn *Mason*—or at most should overrule it only prospectively.

## ISSUE STATEMENT

The Court granted en banc rehearing to decide the following question:

> Should the Court overrule *Mason v. Continental Group, Inc.*, 763 F.2d 1219 (11th Cir. 1985), which imposed an administrative exhaustion requirement for plaintiffs bringing fiduciary-breach and statutory claims under ERISA?

Dkt. 57.

## STATEMENT OF THE CASE

### A.    Legal background

**1.** ERISA is a "comprehensive and reticulated statute" designed "to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720 (1984) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361-362 (1980)). In crafting ERISA, Congress struck a careful balance between two chief goals: "ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Conkright v. Frommert*, 559 U.S. 506,

517 (2010) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215 (2004)).

Recognizing that benefit and retirement packages are how employers compete for talent, Congress did not "mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). Rather, ERISA specifies a variety of minimum requirements for plan contents and administrator conduct and leaves it to employers to fill in the details. Under this scheme, employers "have large leeway to design … plans as they see fit." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003).

Every ERISA-governed employee benefit plan must "be established and maintained pursuant to a written instrument" (29 U.S.C. § 1102(a)(1)), and administrators must act "in accordance with the documents and instruments governing the plan" so long as they are consistent with ERISA (*id.* § 1104(a)(1)(D)). ERISA's focus on the plan is central to its guarantee of predictability and uniformity, and to Congress's efforts not to "unduly discourage employers from offering [ERISA] plans in the first place." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996); "The plan, in short, is at the center of ERISA." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013). Courts must therefore "give effect to the Plan's" written terms. *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 109 (2013)

One type of ERISA benefit arrangement is the employee stock owner-ship plan (ESOP). 29 U.S.C. § 1107(d)(6). Employees in a company with an ESOP can build wealth by working because the value of their accounts reflects the company's overall success. Staff of S. Comm. on Finance, 95th Cong., *ESOPs: An Explanation for Employees* 9 (Mar. 1978), perma.cc/9TRS-AN4Q. ESOPs allow employers to "increase[e] productivity by giving employees a stake in a firm." *RCM Secs. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1333 (2d Cir. 1991). Recognizing the value of this tool to both employers and workers, "Congress [has] sought to encourage the creation of ESOPs." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424 (2014).

**2.** To enforce its requirements, ERISA Section 502 creates federal civil causes of action. 29 U.S.C. § 1132. Participants may, for example, sue "to recover benefits due … under the terms of [the] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(B). Or, relevant here, "partic-ipants [can] bring actions … against plan fiduciaries for breach of fiduciary duty" (*Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 931 (11th Cir. 2021)), including duties of loyalty, prudence, and not to engage in "pro-hibited transactions" (*Cunningham v. Cornell Univ.*, 604 U.S. 693, 697 (2025)). *See* 29 U.S.C. § 1132(a)(2) (cause of action "for appropriate relief under section 1109"); *id.* § 1109 (liability for breach of "duties imposed upon

fiduciaries"); *id.* § 1106 ("prohibited transactions"). Relatedly, participants can bring actions under Section 502(a)(3) against non-fiduciaries who knowingly participate in such breaches. *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 252 (2000); 29 U.S.C. § 1132(a)(3).

Because ERISA is silent on exhaustion of plan procedures, "[t]he courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)." *Heimeshoff*, 571 U.S. at 105. While all courts enforce exhaustion for claims under Section 502(a)(1)(B) as a matter of judicial discretion, some circuits have declined to enforce exhaustion for Section 502(a)(2) claims and other claims deemed "statutory." *See, e.g.*, *Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 965 (D.C. Cir. 2014) (collecting cases).

This Court, however, has recognized that so long as the plan creates viable, non-optional procedures to hear a plaintiff's claim, this Court will require exhaustion before a plaintiff files litigation. *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1209-1210 (11th Cir. 2003). The Court's rule traces to *Mason*, 763 F.2d 1219, and has been consistently reaffirmed. *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223-1224 (11th Cir. 2008); *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1330 (11th Cir. 2006); *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000); *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108-109 (11th Cir. 1997);

*Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990).

The Supreme Court has expressly reserved judgment on exhaustion requirements for Section 502(a)(2) claims. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 n.3 (2008).

### B.    Factual background

Inland Fresh is one of the largest seafood distributors in the southeastern United States. In March 2016, Inland Fresh established an ESOP to provide eligible employees with beneficial ownership interests in the company. R.35:7-8 (A61-62).[1] The ESOP Committee serves as the named plan fiduciary. R.35:7-8 (A61-62), R.35:10 (A64), R.35:14 (A68).

In November 2016, the Plan acquired all 100,000 outstanding shares of Inland Fresh common stock from defendants Joel Knox, Bill Demmond, Chris Rosenberger, and Les Schneider, who serve on the company's board of directors and as officers of the company. R.35:2-3 (A56-57), R.35:7-8 (A61-62), R.35:10-14 (A64-68). The transaction was fully leveraged, meaning it was financed entirely by a $92 million loan. R.35:7-8 (A61-62), R.35:21 (A75). The Plan holds the stock as loan collateral and allocates shares to

---

[1]   Citations to the record are in the form R.X:Y, where X is the district court docket number and Y is the page or paragraph number.

individual participant accounts as loan payments come due, and participants earn allocations through continued service. R.35:8 (A62), R.42:20 (A174), R.42:25-26 (A179-180).

The Plan includes detailed "Claims and Review Procedures" (Supplement A) providing a mechanism for participants to submit written claims, receive a full-and-fair review of adverse determinations, and appeal to plan fiduciaries. R.42:60 (A214), R.42:69-71 (A223-225). The Plan's "Arbitration Requirement and Procedure" reiterates that claimants must exhaust these Plan procedures before arbitrating (or litigating) any claim, including claims for breach of fiduciary duty. R.42:64 (A218), R.42:78-82 (A232-236).

## C. Procedural background

Plaintiffs are five former Inland Fresh employees who left to work at a competitor. In May 2021, plaintiff Alison Mercker—through counsel—requested that Inland Fresh provide her with copies of the Plan documents, summary plan description, the latest annual report, and the trust agreement. R:35-2:1-2 (A157-158). More than a year and a half later—on the eve of expiration of ERISA's six-year statute of repose—plaintiffs filed a putative class action on behalf of the Plan and its participants. R.1:1-2 (A8-9). Plaintiffs alleged that through the November 2016 transaction, the Plan purchased shares for more than adequate consideration, and that defendant Urbach unlawfully approved the transaction without due diligence. R.1:2-3

(A9-10), R.1:25 (A31).[2] The complaint asserted fiduciary breach, prohibited transaction, failure-to-monitor, and non-fiduciary liability claims under 29 U.S.C. § 1132(a)(2) and (a)(3).[3]

The complaint did not allege exhaustion of Plan procedures, and defendants moved to dismiss. Plaintiffs responded by amending their complaint, acknowledging they had not exhausted the Plan's procedures but contending they had no obligation to do so. R.35:38-58 (A92-112). The district court dismissed for failure to exhaust. R.55:1-15 (A240-254).

A panel of this Court affirmed. *Bolton v. Inland Fresh Seafood Corp. of Am., Inc.*, 155 F.4th 1272 (11th Cir. 2025), *reh'g en banc granted, opinion vacated,* 166 F.4th 106 (11th Cir. 2026). The panel held that "[t]he average plan participant would understand that exhaustion of the claims procedures is mandatory," and that "[t]he plan expressly requires it." *Id.* at 1285. And it applied "binding Eleventh Circuit precedent" that "requires exhaustion of

---

[2] While plaintiffs suggest their delay is attributable to lack of access to documents, the purchase price was publicly available as early as 2018 on the Plan's Form 5500 filings. *See* Plan 2016 Form 5500 at 9 (Jan. 11, 2017), perma.cc/SA6N-BWX5. As public records filed with the Department of Labor and available on its website, Form 5500s are judicially noticeable. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

[3] The non-fiduciary breach claims under section 502(a)(3) were raised "alternatively" in the event the individual defendants are non-fiduciaries. R.35:4 (A58). Those claims derive from the section 502(a)(2) claims but require a showing that the non-fiduciaries "knowingly participate[d]" in the fiduciary violations. R.35:76-77 (A130-131).

… breach-of-fiduciary-duty claims"—*Mason* and its progeny—consistent with those plan terms. *Id.* at 1280.

Judge Jordan, joined by Judge Jill Pryor, concurred but wrote separately to recommend en banc consideration of *Mason*. 155 F.4th at 1289-1291. The Court granted en banc rehearing to consider whether to overrule *Mason*. Dkt. 57.[4]

SUMMARY OF ARGUMENT

**I.** The Court should affirm the district court and reaffirm *Mason*'s core holding. ERISA plans are contracts whose terms must be enforced unless expressly foreclosed by federal statute. Courts have consistently enforced plan terms governing when, where, how, and even *whether* plaintiffs may assert ERISA claims in federal court. Plan terms creating and mandating use of pre-suit administrative procedures are no different. As plaintiffs, all courts, and amici here agree, ERISA is silent on exhaustion—so where exhaustion is a plan requirement, it must be enforced. The panel correctly determined that the Plan here so requires—and plaintiffs have not (and could not have) challenged that conclusion en banc. The uncontroversial proposition that plan terms must be enforced resolves this case.

**II.** There is, accordingly, no reason to overrule *Mason*.

---

[4]   The Court did not request a response before granting en banc rehearing.

**A.** Though *Mason* justified exhaustion based on compelling reasons for a judicial exhaustion requirement, its application has been consistent with the independent, contract-based foundations just described. The Court has required exhaustion only where a plan creates adequate procedures to exhaust and exhaustion is not optional. To resolve this case, the Court need only reaffirm *Mason* at least insofar as it enforces ERISA plan contracts.

**B.** *Stare decisis* counsels strongly in favor of reaffirming *Mason*. First and most importantly, *Mason* remains rightly decided. Plaintiffs misread the Supreme Court cases on which they rely to suggest that judicial exhaustion requirements have fallen out of favor. But judicial discretion to require exhaustion continues to exist unless and until it is affirmatively displaced by Congress's own choices about exhaustion. Unlike other statutory contexts, ERISA is silent as to exhaustion—and Congress intended courts to expound a common law of ERISA. Congressional silence despite the numerous amendments to ERISA in the last forty years means *Mason* should be affirmed, not overruled—especially because it has proved eminently workable over the last four decades and has engendered substantial reliance interests by plans and participants.

**C.** If the Court does overrule *Mason*, it should do so prospectively only. Prospective application best fits the equities here, respects plans' longstanding reliance on *Mason* and the importance of exhaustion, and best preserves the expectations of the parties to the plan contract.

**III.** The Court should reject plaintiffs' attempt to broaden the scope of en banc rehearing to encompass the prejudicial status of the district court's dismissal. The issue was not addressed in the rehearing petition, is outside the scope of the question the parties were directed to brief, and there is no plausible argument that the issue rises to the level of importance warranting en banc consideration. If the Court does reach the issue, the district court correctly dismissed with prejudice. The Court should affirm or at most remand to the district court (as the panel did) for further clarification.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim is generally reviewed *de novo*. *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013). In the context of ERISA exhaustion, whether a plan requires exhaustion of administrative remedies "is a question of law that [this Court] review[s] *de novo*." *Lanfear*, 536 F.3d at 1221. But the "decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims" as a matter of judicial discretion is reviewed

"only for a *clear* abuse of discretion." *Bickley*, 461 F.3d at 1328 (quoting *Perrino*, 209 F.3d at 1315).

The question before the en banc Court is whether to overrule *Mason*. "[C]ourts should not lightly overrule past decisions" (*Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 403 (1970)) and, in considering whether to overrule a prior holding, this Court "follows the principles of stare decisis as described by the Supreme Court" (*McCarthan v. Dir. of Goodwill Indus.-Suncoast*, 851 F.3d 1076, 1095 (11th Cir. 2017) (en banc)). The Court will overrule a prior precedent only where it is "plainly and palpably wrong" or where its "statutory and doctrinal underpinnings have eroded and there has not been significant reliance on the precedent." *Id.* at 1096 (quoting Bryan A. Garner et al., *The Law of Judicial Precedent* 388 (2016)).

## ARGUMENT

## I.   THE COURT SHOULD REAFFIRM *MASON* AS REQUIRING EXHAUSTION OF MANDATORY CONTRACTUAL PROCEDURES.

Over more than forty years, this Court has obligated plan participants to follow contract terms that provide for exhaustion of plan remedies before bringing federal litigation. *Mason*, 763 F.2d at 1226-1227; *Watts*, 316 F.3d at 1209-1210. That rule is as correct today as it was in 1985. The panel held, and plaintiffs do not dispute in their rehearing petition or en banc brief, that the Plan here creates pre-suit procedures to resolve statutory ERISA claims

and makes those procedures mandatory. Those contractually agreed procedures must be enforced.

Plaintiffs attack *Mason* as inconsistent with recent Supreme Court cases they claim undermine courts' ability to impose judicially created exhaustion requirements. Plaintiffs are wrong about that, as we show below (*infra* at 35-38). But plaintiffs more fundamentally disregard the Supreme Court's repeated holdings that ERISA plans are contracts that must be enforced according to their terms. Applying those cases, every court of appeals to have considered the question holds that ERISA requires courts to enforce mandatory pre-suit alternative dispute resolution procedures contained in plan language.

Resolving this case on the uncontroversial basis that courts must enforce ERISA plan terms renders unnecessary any consideration of whether the Court should apply a more general rule imposing an exhaustion requirement regardless of plan language. And it is not at all clear that this broad rule is what *Mason* held—no court has required exhaustion of remedies where there are no remedies to exhaust. But at the very least, as the panel held, the Plan *here* requires exhaustion. That makes this case an easy one.

14

**A. Courts must enforce plan terms as written—including those channeling litigation.**

**1.** ERISA requires every employee benefit plan to "be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). Administrators must act "in accordance with the documents and instruments governing the plan" so long as they are consistent with ERISA. 29 U.S.C. § 1104(a)(1)(D). "The plan, in short, is at the center of ERISA." *McCutchen*, 569 U.S. at 101.

Indeed, "[a]n ERISA plan is nothing more than a contract." *Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emp. Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998). And the Supreme Court has consistently referred to the governing plan document as "the plan contract." *See Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 108 (1989); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985). In designing these contracts, "employers have large leeway to design … plans as they see fit." *Black & Decker*, 538 U.S. at 833. And because the "focus on the written terms of the plan is the linchpin" of ERISA's complex statutory scheme, the Supreme Court adheres to the principle that contractual terms "ordinarily should be enforced as written." *Heimeshoff*, 571 U.S. at 108.

The baseline assumption in ERISA cases is therefore that courts "must give effect to the Plan's" written terms. *Heimeshoff*, 571 U.S. at 109.

15

There are exceptions to this general rule—plan provisions must, for example, "accord with the statute." *McCutchen*, 569 U.S. at 101. But unless some "controlling statute" overrides a term of the parties' agreement, a plan's terms govern. *Heimeshoff*, 571 U.S. at 105-106.

**2.** Applying these cases, courts have consistently enforced various plan requirements shaping ERISA litigation—not as a matter of judicial discretion, but as a matter of the parties' agreement.

Both the Supreme Court and this Court have upheld plan terms governing *when* parties may sue. In *Northlake Regional Medical Center*, this Court enforced a plan requirement that "no legal action may be commenced or maintained against the Plan" more than 90 days after the trustee completed the internal, administrative review procedures. 160 F.3d at 1303. The Court explained that "by participating in the Plan," the plaintiff had "agreed" to that provision. *Id.* at 1302-1303. The normal course—selecting an analogous state-law statute of limitations to apply—was "unnecessary … where the parties ha[d] contractually agreed upon a limitations period." *Id.* at 1303. "An ERISA plan is nothing more than a contract, in which parties as a general rule are free to include whatever limitations they desire." *Id.* So long as the terms the parties have agreed upon are reasonable, the Court held they must be enforced. *Id.* at 1303-1304. Several years later, the Supreme Court reached an identical result. *Heimeshoff*, 571 U.S. at 105-106

("Absent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable.").

Courts have similarly enforced provisions in ERISA plans that dictate *where* parties may sue. *E.g.*, *In re Becker*, 993 F.3d 731, 733 (9th Cir. 2021) ("ERISA does not bar forum selection clauses."); *In re Mathias*, 867 F.3d 727, 732 (7th Cir. 2017); *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 930-932 (6th Cir. 2014); *Loeffelholz v. Ascension Health, Inc.*, 34 F. Supp. 3d 1187, 1189 (M.D. Fla. 2014). Such clauses are "controlling *unless* ERISA invalidates" them (*In re Mathias*, 867 F.3d at 732), and no circuit to have considered a challenge to a venue-selection clause has read ERISA's text to do so.

Courts (including this one) have routinely upheld and enforced numerous other litigation-related plan provisions, including:

- plan provisions determining what law will apply (*Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1149 (11th Cir. 2001));

- plan provisions precluding assignment of claims (*Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.* 371 F.3d 1291, 1295 (11th Cir. 2004) ("[W]e are persuaded by the reasoning of the majority of federal courts that have concluded that an assignment is ineffectual if the plan contains an unambiguous anti-assignment provision.")); and

- plan provisions shaping available remedies in litigation (*McCutchen*, 569 U.S. at 100-101 (holding that contractual provisions can abrogate the common-fund doctrine in Section 502(a)(3) actions)).

Courts also enforce plan terms that dictate *whether* a plaintiff can bring suit in federal court. In particular, courts in recent decades have uniformly recognized that ERISA claims are generally arbitrable. *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 620 (7th Cir. 2021); *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1111-1112 (9th Cir. 2019); *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000); *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993); *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 122 (2d Cir. 1991); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 478-479 (8th Cir. 1988).[5]

### B.   Courts must enforce plan exhaustion provisions.

Enforcing exhaustion provisions is no different from courts' routine enforcement of the variety of other plan terms dictating where, when, and whether would-be plaintiffs can bring claims in federal court. Because this Plan required exhausting statutory claims and nothing in ERISA forbids enforcing such a plan term, the district court correctly dismissed in light of plaintiffs' failure to exhaust.

---

[5]   This Court recently assumed this conclusion without deciding it. *Williams v. Shapiro*, 161 F.4th 1313, 1318 (11th Cir. 2025).

### 1. *Exhaustion provisions are plan terms enforceable like any other, absent a contrary statute.*

Exhaustion procedures merely define the parties' conduct prior to litigation. In that way, they resemble other contractual pre-suit requirements courts routinely encounter and enforce. This Court has, for example, consistently recognized the enforceability of pre-suit notice-and-cure requirements. *See, e.g.*, *Coyote Potable Storage, LLC v. Pods Enters.*, 618 F. App'x 525, 535-536 (11th Cir. 2015); *Alliance Metals, Inc., of Atlanta v. Hinely Indus.*, 222 F.3d 895, 903 (11th Cir. 2000); *In re Colony Square Co.*, 843 F.2d 479, 481 (11th Cir. 1988). Like exhaustion requirements, notice-and-cure provisions preserve the right to sue but require a prospective plaintiff to first notify the counterparty of its claim and afford that party an opportunity to voluntarily remedy any issue. More, this Court has recognized that pre-suit (or pre-arbitration) mediation requirements are enforceable, and that the failure to comply with them will result in dismissal. *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1291 (11th Cir. 2002).

Though the Court invoked judicial exhaustion, *Mason* also rests on this contract-based foundation. 763 F.2d at 1226. The Court began with the plan text creating an appeals procedure for "[a]ny difference that may arise between [the employee] and the Company" concerning a benefit. *Id.* The Court then observed that the language tracked others the Supreme Court construed to impose a mandatory exhaustion requirement as a matter of

contract. *Id.* (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 658-659 (1965) ("Use of the permissive 'may' does not of itself reveal a clear understanding between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the contract procedure and its time limitations in favor of a judicial suit.")). It was only after observing that the plan created procedures and made them mandatory that the Court held that "plaintiffs must exhaust their remedies under the pension plan agreement before they may bring their ERISA claims in federal court." *Id.* at 1227.

Other courts and jurists have also framed the exhaustion question in terms of contract. The Supreme Court, for example, has recognized that whether parties have agreed that exhaustion of pre-suit grievance or administrative requirements is a prerequisite to suit in federal court is "a narrow question of contract interpretation." *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 368 (1984) (considering claims under the LMRA and ERISA). The Eighth Circuit has noted that "the need to exhaust is a question of contract interpretation." *Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan*, 111 F.3d 67, 70 (8th Cir. 1997); *accord Conley v. Pitney Bowes*, 34 F.3d 714, 716 (8th Cir. 1994). And in a recent concurrence, Judge Thapar concluded that, "[o]f course, even if the *statute* doesn't require exhaustion, a plan's documents may require it as a precondition of

going to court." *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 901 (6th Cir. 2020) (Thapar, J., concurring).

Guidance in enforcing contractual exhaustion requirements can be found in the arbitration context, where courts are similarly duty-bound to enforce the parties' agreements as written. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The Supreme Court has repeatedly reiterated that "federal statutory claims" are arbitrable "unless the FAA's mandate has been overridden by a contrary congressional command." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (internal quotation marks omitted); *accord Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1030 (11th Cir. 2003).

Courts ask only two questions in evaluating whether a statutory claim is arbitrable: (1) whether the parties agreed to arbitrate the claim; and (2) whether Congress intended to prohibit "waiver of the right to a judicial forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). In this inquiry, there is a strong presumption in favor of enforcing the contract. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991).

The test for arbitrability thus closely tracks the test for enforceability of other contractual terms in ERISA plans. In either case, courts assess (1) whether the parties agreed to a given term and (2) whether the relevant

statutory text indicates that Congress intended to "protect[] against" the result the parties agreed to. *See Mitsubishi Motors*, 473 U.S. at 628. That test likewise should govern whether the Plan's exhaustion provision should be enforced here.

### 2. *Nothing in the ERISA statute forecloses enforcing plan exhaustion provisions.*

Nothing in the ERISA statute would support a court's refusal to enforce a plan's reasonable pre-suit requirements for statutory ERISA claims—exhaustion included. Indeed, plaintiffs do not seem to disagree. Because plaintiffs cannot show that the ERISA statute overrides contractual exhaustion requirements, the Court must enforce the contract as written.

Plaintiffs effectively concede this point by admitting (at 22) that ERISA is silent on exhaustion. *Accord Mason*, 763 F.2d at 1225 (observing that ERISA "is silent with regard to whether exhaustion is to be required before these claims are brought in federal court."). Although plaintiffs presume that congressional silence forecloses exhaustion, the opposite is true: So long as Congress has not *precluded* parties from entering into a particular contractual agreement, courts must enforce that agreement as written. *Heimeshoff*, 571 U.S. at 108.

Nothing about exhaustion nor the statutory basis of plaintiffs' claims justifies a departure from the regular rule that plan terms must be enforced.

*First*, enforcement of contractual exhaustion requirements does not frustrate any of ERISA's objectives. It certainly does not deprive plaintiffs of "ready access to the Federal courts" (29 U.S.C. § 1001(b)), as plaintiffs and amici suggest (at 21-23). On the contrary, plaintiffs can still vindicate their rights in court at the end of the day, after exhausting. Were it otherwise, exhaustion could not be justified for benefit claims, either, despite the uniform consensus of circuits on this point. The uniform agreement among courts that ERISA claims are generally arbitrable also confirms the point. *See Smith*, 13 F.4th at 620. Courts have specifically held that enforcement of arbitration agreements frustrates neither ERISA's grant of exclusive jurisdiction to federal courts (29 U.S.C. § 1132(e)(1)) nor its policy of providing ready access to courts (*id.* § 1001(b)). *See, e.g.*, *Smith*, 13 F.4th at 620; *Bird*, 926 F.2d at 120. This conclusion follows perforce from the Supreme Court's "repeated[] recogni[tion] that contractually required arbitration of claims satisfies the statutory prescription of civil liability in court." *CompuCredit Corp.*, 565 U.S. at 101. *See also supra* at 15-16.

If arbitration—where an arbitrator's review *replaces* that of a court—is consistent with ERISA's goal of ensuring ready access to courts, exhaustion is even more so. When a party must exhaust her claim, all that is affected is *when* she may file in court and what she must do before then. Exhaustion serves only to allow plans to rectify errors in the first instance and

to build a record for later judicial review—it does not deprive plaintiffs of their day in court.[6]

*Second*, plaintiffs' suggestion (at 32) that statutory ERISA claims cannot be adjudicated in the first instance by those alleged to have violated ERISA[7] because of alleged conflicts of interest must fail "as a matter of law." *Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 901 (11th Cir. 1990).[8] Such arguments sound in the futility exception to exhaustion, but accepting them would eviscerate a plan's exhaustion requirement in *all* cases. *Id.* Indeed, for self-funded health plans where employers fund the payment of healthcare claims, the employer *always* has a direct financial

---

[6]   For the same reason, the effective vindication doctrine poses no barrier to enforcement of contractual exhaustion requirements. That doctrine "invalidates arbitration provisions that prospectively waive 'a party's right to pursue statutory remedies.'" *Williams*, 161 F.4th at 1318 (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013)). But that is inapplicable to exhaustion, where a party may subsequently resort to court to seek statutory remedies.

[7]   This argument also rests on the faulty assumption that claims will be adjudicated by the accused fiduciaries. Here, the claims against the Trustee would be determined by the Administrator—a separate individual.

[8]   *Springer* considered a claim under Section 502(a)(1)(B) for a denial of benefits. 908 F.2d at 899. The Supreme Court has observed that "[t]he courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)." *Heimeshoff*, 571 U.S. at 105. Plaintiffs do not challenge the exhaustion requirement in the benefit-denial context and do not ask the Court to overrule *Springer* or any other benefit-denial cases.

stake in the outcome of every claim—yet DOL regulations support administrative review of such claims. 29 C.F.R. § 2560.503-1(c)(2). While "a conflict may sometimes justify overruling an administrator's decision, … a potential conflict should [not] invalidate an administrative proceeding before it has even begun." *Bolton*, 155 F.4th at 1286.

### 3. *As the panel (rightly) held, the Plan includes a mandatory exhaustion provision for all ERISA claims.*

Courts must enforce a plan's mandatory exhaustion requirement even as to statutory ERISA claims. Because, as the panel held, the Plan requires exhaustion of these procedures for all claims, the district court correctly held that plaintiffs failed to exhaust.

**a.** The panel rightly held that the Plan here both creates an adequate administrative forum for the consideration of statutory ERISA claims, and "exhaustion of the claims procedures is mandatory" because "[t]he plan expressly requires it." *Bolton*, 155 F.4th at 1283-1285.

For present purposes, though, plaintiffs have not challenged the portion of the panel's opinion affirming the district court's decision not to excuse plaintiffs' failure to exhaust on the ground that the Plan's procedures were mandatory. In their rehearing petition, plaintiffs identified only "[w]hether a plan participant must exhaust administrative remedies before commencing a civil action alleging a violation of ERISA's statutory obligations" as the question warranting en banc review. Dkt. 53 at 1. It was only

on that question that plaintiffs' counsel certified exceptional importance. *Id.* at i. That is because interpretation of idiosyncratic plan language cannot plausibly be described as exceptionally important. And "an *en banc* court should not rule on issues which do not clearly merit consideration under Fed. R. App. P. 35." *Martin v. Heckler*, 773 F.2d 1145, 1155 (11th Cir. 1985) (en banc).

It is both inappropriate and unnecessary to "consider issues en banc that are not specifically raised in the suggestion for en banc consideration" (*United States v. Swopes*, 886 F.3d 668, 672 (8th Cir. 2018) (en banc)), much less those that are completely omitted from plaintiffs' en banc brief. Indeed, this en banc Court has consistently declined to address issues "outside the scope of the en banc briefing question posed to the parties." *Hoever v. Marks*, 993 F.3d 1353, 1364 n.5 (11th Cir. 2021) (en banc); *accord Yarbrough v. Decatur Hous. Auth.*, 931 F.3d 1322, 1327 (11th Cir. 2019) (en banc).

The Court should thus reinstate these unchallenged portions of the panel opinion (or find the issue forfeited) should it conclude that exhaustion *can* be required by contract. *See Jimenez v. Wood Cnty.*, 660 F.3d 841, 844 n.1 (5th Cir. 2011) (en banc).

**b.** The panel was, in any event, correct that the Plan requires exhaustion of plan procedures for all ERISA claims.

The Plan establishes "Claims and Review Procedures" through which a participant "may submit a written claim to the Committee or seek a review of the Committee's benefit determination." R.42:60 (A214). Supplement A details those procedures, through which an aggrieved participant can file a "written request for review … with the Committee." R.42:70 (A224). All claims "must be filed on the appropriate claim forms … or in accordance with the procedures established by the Committee for claim purposes." R.42:69 (A223). The claimant will receive an opportunity to "submit written comments, documents, records, and any other information" in support of her claim, and "will be provided … all documents, records and other information" relevant to the claim. *Id.* The appeal "will receive a full and fair review by an appropriate named fiduciary of the Plan," and the Committee will render a decision within 60 days. R.42:70-71 (A224-225).

*First*, as the panel held, these procedures encompass statutory claims. *Bolton*, 155 F.4th at 1283-1284. The Plan's governing documents provide the committee with "the duties and powers necessary to … construe and interpret the Plan and decide all questions arising in the administration, interpretation and application of the Plan and Trust Agreement." R.42:58-59. The plan further states that "in no event will the Trust hold shares of Company Stock if and to the extent such investment would violate any provision of ERISA" and "[a]ll purchases of Company Stock by the Trust will

27

be made at a price, ... which, in the judgment of the Trustee, do[es] not exceed the fair market value of such Company stock." R.42:38 (A192). These are the precise issues plaintiffs raise in court, and based on materially identical language, this Court has consistently recognized that plan procedures allow plans to consider statutory claims. *See Bickley*, 461 F.3d at 1329. And plaintiffs have pointed to "nothing in the record" that "indicates that the committee cannot properly remedy their alleged harm." *Bolton*, 155 F.4th at 1284.

Additionally, a later arbitration provision reiterates that these procedures apply both to claims for benefits and to statutory claims. R.42:78 (A232). Read in its entirety, it is evident that the Plan contemplates a forum for adjudicating statute-based claims as well as benefits claims.

*Second*, as the panel held, the Plan "expressly requires" exhaustion of statutory claims. *Bolton*, 155 F.4th at 1284-1285. The Plan empowers the committee to "decide all questions arising in the administration, interpretation and application of the Plan." R.42:59 (A213). It then creates a mandatory set of procedures applicable to claims. R.42:69 (A223), R.42:78-79 (A232-233).

The mandatory character of exhaustion under the Plan is not undercut by any of the "few isolated phrases" on which plaintiffs relied. *Bolton*, 155 F.4th at 1284. The statement in the summary description (which is not

a binding plan document, *see CIGNA Corp. v. Amara*, 563 U.S. 421 (2011)) that a plaintiff "may file suit in a … federal court" "merely reminds the plaintiffs of their 'general rights under ERISA' to eventually seek judicial review, but it does not affirmatively excuse them from exhausting the plan's required claims procedures." *Bolton*, 155 F.4th at 1284 (quoting *Bickley*, 461 F.3d at 1329). And the language explaining that a beneficiary "need not file a claim to receive a benefit under the Plan" "does nothing more than advise participants that they will receive benefits automatically." *Id.*

While the Plan itself makes exhaustion mandatory, "any lingering ambiguity" is dispelled by the Plan's arbitration provision. *Bolton*, 155 F.4th at 1285. "There, the language is explicit" (*id.*)—the Plan reiterates that "the Plan's claims procedures … must be exhausted" before participants can assert claims in arbitration. R.42:78 (A232). This provision accordingly further evidences that the plan's existing procedures must be followed.[9]

---

[9]   The panel declined to address an argument that Section 14.1 is invalid because it was not before the Court. *Bolton*, 155 F.4th at 1285. *Williams*, in which this Court declined to enforce an arbitration provision requiring individual arbitration, would not change the analysis (161 F.4th 1313), and plaintiffs have not raised it. The mandatory-exhaustion language sits in the preamble to the Arbitration Procedures and evidences that Section 14.1 is importing existing procedures that are already mandatory pre-litigation and applying them to the new Arbitration Procedure as well. More, even if the arbitration procedures were invalid, their language still informs how the parties understood other provisions of the contract. *Cf. Sutherlin v. Sutherlin*, 802 S.E.2d 204, 209 (Ga. 2017) (explaining that contracts are interpreted "in their entirety").

*    *    *

By now, it is uncontroversial that ERISA plans are contracts whose terms must be enforced unless squarely precluded by ERISA. And it is established that the Plan here requires exhaustion as a precondition for suit for *all* claims. This is not a case "[w]here both the statute *and the plan documents* are silent about any duty to exhaust." *Wallace*, 954 F.3d at 901 (Thapar, J., concurring) (emphasis added). Where the plan document requires exhaustion, as here, the answer is easy: the exhaustion requirement must be enforced.

## II.    THERE IS NO REASON TO OVERRULE *MASON* IN THIS CASE.

Properly understood, *Mason* can be upheld, at a minimum, based on the parties' agreement. With that framing, *Mason* is both plainly correct and uncontroversial. The Court thus has no reason to take the extraordinary step of overruling a case that has provided the governing framework in this circuit for decades.

Plaintiffs cannot overcome stare decisis in any event. The Supreme Court has long held that, where a statute is "silent" on exhaustion—as plaintiffs agree ERISA is—judicially imposed exhaustion is available. And it makes eminent sense to adhere to the *Mason* rule: plaintiffs have no convincing reason why a fiduciary should not have at least an opportunity to

30

self-correct, build a record, settle, or ferret out meritless litigation before it reaches the courts. The Court should thus reaffirm *Mason*.

### A. *Mason* need only be clarified to its uncontroversial contractual foundation for purposes of this case.

Because courts must enforce plan terms unless contradicted by ERISA, and because ERISA is silent on exhaustion, courts must therefore enforce plan terms requiring exhaustion of available remedies. *See supra* at 15-25. That rule resolves *this* case, and the Court need go no further.

As discussed above, *Mason* is fully consistent with the general principle that courts must enforce ERISA plans as written. *Supra* at 19-20. In cases like this one where the plan creates internal procedures through which plaintiffs can raise breach of fiduciary duty claims and then makes those procedures mandatory, plaintiffs provide no reason courts could permissibly depart from that contractual agreement. Indeed, this has effectively been the governing rule for four decades in this circuit and others. *See supra* at 19-20.

Reaffirming the rule of *Mason* based on contractual exhaustion would change little about the rule this Court has applied for decades. Obviously, the requirement that plaintiffs exhaust available remedies does nothing where there are no remedies to exhaust, and contractual exhaustion thus has a role only where a plan creates administrative review procedures that

apply to the claims at issue. *See supra* at 6, 13, 19-20; *Watts*, 316 F.3d at 1209-1210 (optional plan procedures need not be exhausted).

These principles are longstanding and uncontroversial. Indeed, many of the cases plaintiffs discuss considered only whether to impose a judicial exhaustion requirement in the *absence* of plan procedures for non-benefit issues. *See Smith v. Sydnor*, 184 F.3d 356, 365 (4th Cir. 1999) ("That the language of the 401(k) Plan makes no provision for handling this type of claim is further support for not referring this type of claim to the Plan for administrative consideration."); *Conley*, 34 F.3d at 716 ("The doctrine is, in this context, a creature either of contract or judicial invention. We have required exhaustion in ERISA cases only when it was required by the particular plan involved. … We have declined to apply a broader, judicially-crafted exhaustion requirement in ERISA actions."). This Court is thus not the outlier plaintiffs portray (at 29-33).

Because the rule announced in *Mason* can be readily justified based on well-established Supreme Court precedent, the Court should take that path. In *Slater v. United States Steel Corp.*, for example, this Court en banc reaffirmed the general principle that where a plaintiff fails to disclose a civil claim in bankruptcy proceedings "a district court may apply judicial estoppel to bar the plaintiff's civil claim if it finds that the plaintiff intended to make a mockery of the judicial system." 871 F.3d 1174, 1176 (11th Cir. 2017)

(en banc). But it overruled portions of the earlier analysis creating an inference of intent to misuse the courts from "the mere fact of the plaintiff's nondisclosure." *Id.* The Court undertook an examination of the reasoning of its earlier cases and took the narrowest path that would eliminate the "flaws in [their] reasoning … and the inconsistencies in [the] precedent." *Id.* at 1185.

All the Court need do to resolve this case is enforce Plan terms. The doctrine of stare decisis "demands that [the Court] attempt to reconcile [its] prior decisions rather than hastily overrule some of them." *Irwin v. Dep't of Veterans' Affs.*, 498 U.S. 89, 99-100 (1990) (White, J., concurring in part). Adhering to the Supreme Court's mandate to enforce Plan terms justifies *Mason* and its progeny and resolves this case.

### B. *Stare decisis* compels reaffirming *Mason* in full because *Mason* was rightly decided.

Although broader than necessary to resolve this case, the Court should also reaffirm *Mason*'s judicial-exhaustion underpinnings in full.

This Court "follows the principles of stare decisis as described by the Supreme Court," and accordingly, "overturning precedent is and should be a rare occurrence." *McCarthan*, 851 F.3d at 1095. Under the applicable test, the Court "may overrule precedent that is 'plainly and palpably wrong' if overruling the precedent would not 'result in more harm than continuing to follow the erroneous decision.'" *Id.* at 1096. The Court also considers

whether "the statutory and doctrinal underpinnings" of the precedent "have eroded," whether "there has not been significant reliance on the precedent", and whether the decision has "proved unworkable." *Id.* Stare decisis has "special force" when considering whether to overturn either a "statutory interpretation" or a "judicially created doctrine" that "Congress may overturn or modify." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 274 (2014).

The stare decisis analysis counsels strongly against overruling *Mason*. Plaintiffs dramatically overstate the Supreme Court's limitations on judicial exhaustion requirements—*Mason* was and remains rightly decided and is therefore not "plainly and palpably wrong." And *Mason* has engendered significant reliance interests and has proved eminently workable. The Court should thus not discard forty years of predictability.

### 1. *Mason* was and remains correct as a matter of judicial exhaustion, compelling affirmance.

As shown at length, *Mason* is correct as a matter of contract. It is also correct as an exercise of judicial exhaustion doctrine. Because the district court could impose exhaustion as a matter of judicial discretion, its decision to do so should be affirmed. Plaintiffs and their amici lack a doctrinally sound theory: their position would undo exhaustion requirements for benefit claims as well—a result no one here contends is correct—and which would fundamentally upend ERISA's scheme.

### a. Courts uniformly—and correctly—agree that ERISA's silence on exhaustion grants courts discretion to require exhaustion.

Courts have discretion to require exhaustion in ERISA cases. In requesting (at 23) that the Court abrogate its exhaustion requirement as "'inconsistent' with the statutory text," plaintiffs seek something far more radical than they let on. Refusing to apply judicial exhaustion in the face of a statutory command is one thing; refusing to apply it in the face of statutory *silence* would mean erasing the doctrine of judicial exhaustion entirely, despite Supreme Court precedent holding that such exhaustion requirements are proper. *See Heimeshoff*, 571 U.S. at 105; *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *superseded by statute on other grounds as recognized in Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Darby*, 509 U.S. at 144-145; *Clayton v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 451 U.S. 679, 689 (1981). No court has accepted that. Although there is disagreement as to the *scope* of a judicial exhaustion requirement, all courts agree on a key foundational point: exhaustion is both appropriate in the ERISA context and well-grounded in judicial discretion.

Although plaintiffs (at 22) and their amici (at 5) agree that ERISA is silent as to exhaustion, they then assume that if a statute does not require exhaustion, courts may not require it either. *E.g.*, Plaintiffs' Br. 24. That inverts the law: "where Congress has not clearly required exhaustion, sound

judicial discretion governs" (*McCarthy*, 503 U.S. at 144), and "courts are free to impose an exhaustion requirement as a matter of judicial discretion" where Congress has not "provided otherwise" (*Darby*, 509 U.S. at 144-145). *See, e.g.*, *Clayton*, 451 U.S. at 689 (holding, in the labor context, that "courts have discretion to decide whether to require exhaustion of internal union procedures"). The contours of judicial exhaustion requirements are thus "rightfully subject to crafting by judges" where the statute is silent. *McCarthy*, 503 U.S. at 144 (quoting *Patsy v. Bd. of Regents of State of Fla.,* 457 U.S. 496, 518 (1982) (White, J., concurring in part)).

Plaintiffs (at 24, 27-29) thus vastly overstate the demise of judicial exhaustion, especially in the ERISA context. Judicial exhaustion "is not the kind of doctrinal dinosaur or legal last-man-standing for which we sometimes depart from *stare decisis*." *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 458 (2015). Rather, judicial discretion is only restricted when Congress in fact prescribes its own exhaustion rule. Absent such a rule, the judicial-exhaustion doctrine remains very much alive under *McCarthy, Darby,* and *Clayton. See Heimeshoff*, 571 U.S. at 105.[10] That is especially true in the

---

[10]  *Jones v. Bock* is not to the contrary. That case applied the rule that judicial discretion is foreclosed when Congress enacts an explicit "exhaustion provision." 549 U.S. 199, 204 (2007). As explained, "a statutory exhaustion provision stands on a different footing" (*Ross*, 578 U.S. at 639) from other contexts, where the "general rule" of judicial exhaustion governs (*Vandalia R.R. Co. v. Pub. Serv. Comm'n of Ind.*, 242 U.S. 255, 261 (1916)).

ERISA context, where the Supreme Court has "held that courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone*, 489 U.S. at 110 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)); *see also* 120 Cong. Rec. 29942 (1974) (remarks of Senator Javits); *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 873 (7th Cir. 1997) (explaining that exhaustion is "a matter of the federal common law of ERISA"). "[W]hether [the Court] think[s] judge-made doctrines are generally appropriate or wise is of little importance when the United States Supreme Court repeatedly acknowledges a doctrine's existence" (*Williams*, 161 F.4th at 1319), as it did in *Heimeshoff*, 571 U.S. at 105. *Cf. Ross v. Blake*, 578 U.S. 632, 639 (2016) (recognizing that "judge-made exhaustion doctrines" apply outside the "statutory exhaustion" context).

ERISA's broadly recognized "silen[ce]" on exhaustion necessarily distinguishes it from the Administrative Procedure Act (at issue in *Darby*), the Prison Litigation Reform Act (at issue in *Jones v. Bock*), and Section 1983 (at issue in *Patsy*). *E.g.*, *Kross v. W. Elec. Co.*, 701 F.2d 1238, 1244 (7th Cir. 1983); *Wilson v. BellSouth Telecomms., Inc.*, 97 F. App'x 36, 37 (6th Cir. 2004); *Amaro v. Cont'l Can Co.*, 724 F.2d 747, 750 (9th Cir. 1984); *Mason*, 763 F.2d at 1225; *Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950 (5th Cir. 1995); *Stephens*, 755 F.3d at 964; *Kirkendall v. Halliburton, Inc.*, 707

F.3d 173, 179 (2d Cir. 2013); *Makar v. Health Care Corp. of Mid-Atl. (Care-First)*, 872 F.2d 80, 82 (4th Cir. 1989). ERISA is instead like the Railway Labor Act and the Labor Management Relations Act, where exhaustion requirements are properly imposed by courts *because* of congressional silence, not *despite* it. *See Rader v. United Transp. Union*, 718 F.2d 1012, 1013-1014 (11th Cir. 1983); *Clayton*, 451 U.S. at 689.[11]

For that reason, "[t]he courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)." *Heimeshoff*, 571 U.S. at 105. And these courts have "universally applied the requirement as a matter of *judicial discretion*," not statutory command. *Stephens*, 755 F.3d at 964 (emphasis added).

### b. Courts' discretion to require exhaustion equally applies to statutory ERISA claims.

Because nothing in ERISA speaks to exhaustion, exhaustion is accordingly subject to judicial discretion. Various "[c]ompelling considerations," including those this Court first identified in *Mason* as the basis for requiring exhaustion of all ERISA claims, exist more forcefully today than ever. *See*

---

[11] Plaintiffs briefly identify (at 23) two provisions of ERISA to support their textual argument. But exhaustion does not frustrate the general policy of providing access to courts in Section 1001(b). *Supra* at 23-24. And the existence of a statute of limitations in Section 1113 does not speak to exhaustion—*all* claims have limitations periods, whether exhausted or not.

*Pension Predators: Stopping Class Action Abuse against Workers' Retirement: Hearing Before the Subcommittee on Health, Employment, Labor, and Pensions of the H. Comm. on Education & Workforce* (Dec. 2, 2025), perma.cc/7HHP-443T.

**i.** Courts have recognized numerous rationales justifying an exhaustion requirement for benefits claims—justifications that apply equally to statutory claims as well.

First, exhaustion promotes accountability by permitting fiduciaries to correct their conduct. Exhaustion of statutory claims "uphold[s] Congress' desire that ERISA trustees be responsible for their actions" by ensuring that administrators and trustees can review and correct alleged problems. *Kirkendall*, 707 F.3d at 179; *see also Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 432 (D.C. Cir. 1994) (exhaustion "enables plan administrators to … correct errors"); *Mason*, 763 F.2d at 1227 (exhaustion "allow[s] prior fully considered actions").

Second, exhaustion provides an opportunity for plan administrators to "apply their expertise and exercise their discretion to manage the plan's funds" and to "make considered interpretations of plan provisions." *Kirkendall*, 707 F.3d at 179; *Mason*, 763 F.2d at 1227 (exhaustion "enhance[s] the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently").

Third, exhaustion builds a factual record for later judicial review. Both benefits-exhaustion and statutory-exhaustion requirements "provide a sufficiently clear record of administrative action if litigation should ensue," compiled by those with the greatest understanding of the facts underlying the claims. *Kirkendall*, 707 F.3d at 179; *Commc'ns Workers of Am.*, 40 F.3d at 432; *accord McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998).

Fourth, exhaustion promotes efficiency: a plan's opportunity to correct its own errors "render[s] subsequent judicial review unnecessary in many ERISA cases because a plan's own remedial procedures will resolve many claims." *Commc'ns Workers of Am.*, 40 F.3d at 432. And it "provide[s] a non-adversarial method of claims settlement" and "minimize[s] the costs of claims settlement for all concerned." *Kirkendall*, 707 F.3d at 179.

Finally, exhaustion "help[s] reduce the number of frivolous lawsuits under ERISA" and "promote[s] the consistent treatment" while still maintaining plaintiffs' access to courts. *Kirkendall*, 707 F.3d at 179; *Mason*, 763 F.2d at 1227 (exhaustion "reduce[s] the number of frivolous lawsuits"). Stemming meritless litigation early is of enormous importance: a fiduciary liability insurer recently estimated that 401(k) plans with $500 million in assets have "close to a 10% chance of being sued each year" on various fiduciary theories. Amicus Br. of Encore Fiduciary 6-7, *Parker-Hannifin v.*

*Johnson*, No. 24-1030 (U.S.). Requiring exhaustion of statutory claims is one way to ensure plan administrators have ability to address these issues before costly litigation arrives. *Accord Dudenhoeffer*, 573 U.S. at 425 (noting the importance of available "mechanism[s] for weeding out meritless claims").

**ii.** These material benefits from exhaustion requirements apply equally to benefits-denial, plan-term enforcement, fiduciary breach, *and* statutory claims and ultimately serve ERISA's interests—to "'induc[e] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.'" *Conkright*, 559 U.S. at 517 (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002)); *see also Varity Corp.*, 516 U.S. at 497 (ERISA was designed to avoid creating burdens such as "litigation expenses" that would "unduly discourage employers from offering … benefit plans in the first place").

Plaintiffs suggest (at 31-33) four reasons why statutory claims should be treated differently: because courts should assess statutes, because courts can "promote uniformity," because "cost reduction" is irrelevant, and because wrongdoers should not assess their own conduct.

The first two are easily dispensed with—plaintiffs may go to court after exhausting. Nothing about exhaustion changes that. Courts will still interpret statutes and promote uniform statutory interpretations post-exhaustion.

These rationales (and amici's similarly wrong suggestion that statutory claims are not "relating to Plan administration") also disregard that "statutory" ERISA claims are not *only* about statutes. They often turn—like here—on complex fact patterns and plan provisions that *can* be addressed by a plan administrator.

When a claim is presented to a plan administrator, the plan administrator acts in a fiduciary capacity in considering and resolving that claim. Plan administrators may, and often do, retain outside counsel to assist with the resolution of claims. They also have the discretion to retain other advisors as they deem appropriate.

Plan administrators and their advisors possess intimate familiarity with the history, transactions, motivations, and documentation necessary to resolve claims, particularly, as relevant here, those relating to a third-party, independent trustee's assessment and approval of an ESOP transaction. They are uniquely qualified to assemble a comprehensive record before a dispute reaches the courts. Sidestepping administrator review of alleged

breaches and proceeding directly to litigation deprives courts of this assembled record and development of important factual background concerning internal plan and company events, resulting in costly and potentially unnecessary discovery. "It is normally desirable to let the [decisionmaker] develop the necessary factual background upon which decisions should be based." *McKart v. United States*, 395 U.S. 185, 194 (1969).

Plaintiffs' concern about alleged wrongdoers reviewing their own conduct is similarly misplaced. While "a conflict may sometimes justify overruling an administrator's decision, … a potential conflict should [not] invalidate an administrative proceeding before it has even begun." *Bolton*, 155 F.4th at 1286. *See also supra* at 24-25. Fiduciaries maintain a fiduciary duty—and should not be assumed unwilling to course-correct.

Finally, plaintiffs' speculation that costs will increase is overstated. The exhaustion process will either satisfactorily resolve the plaintiffs' claims or, if the plaintiff is not satisfied, a starting record for ensuing litigation will exist, rather than having to be fully created from scratch in discovery. Using the process thus either cures the issue or at least is useful later. Moreover, if the process proves unduly costly, the administrator could waive exhaustion or amend plan terms to exclude certain claims from the process.

Plaintiffs' limited reasons why participants should be able to skip right to court cannot overcome the many compelling reasons for requiring exhaustion.

**iii.** Indeed, plaintiffs' claims in this case are a compelling example of why courts should be permitted to require exhaustion. The Supreme Court has said that exhaustion requirements are appropriate for disputes involving decisions of a "discretionary nature," and most significant discretionary decisions under ERISA are fiduciary by nature. *McKart*, 395 U.S. at 193-194. In *Firestone*, the Court held that the deferential abuse-of-discretion standard applies to exercises of a fiduciary's discretionary powers, mirroring the approach of trust law. 489 U.S. at 111-115; *see* Restatement (Second) of Trusts § 187 (1959).

That abuse-of-discretion standard governs the review of plaintiffs' claims in this case; the Trustee's fiduciary decisions regarding the valuation of company stock are quintessential exercises of fiduciary discretion. The Plan itself makes this express. R.42:38 (A192) ("Following the initial acquisition of Company Stock, in which the Trustee will determine fair market value *in its own discretion*, the determination of fair market value of Company Stock for all purposes under the Plan will be made by the Trustee.") (emphasis added). And the Restatement of Trusts, which informs the interpretation of ERISA, also identifies "valuation[]" decisions as discretionary.

Restatement (Second) of Trusts § 187 & cmt. g, illus. 6 (1959).

As *Conkright* recognized, ERISA was designed to "encourag[e] resolution of benefits disputes through internal administrative proceedings rather than costly litigation." 559 U.S. at 517. The same reasoning applies when the *Firestone* standard governs claims under Section 502(a)(2), as here.

**iv.** Nothing in Section 503 warrants overruling *Mason* and forbidding courts from imposing a judicial exhaustion requirement in appropriate contexts for Section 502(a)(2) and derivative (a)(3) claims. In fact, Section 503 reinforces that courts *should* direct using any available procedures to resolve disputes before filing ERISA litigation.

Judicial discretion to require exhaustion has been cabined only where statutes themselves speak to exhaustion. But, contrary to plaintiffs' passing suggestion (at 24), the text of Section 503 does not mandate an exhaustion requirement for *any* claims. Statutes mandate exhaustion only if Congress has "specifically mandate[d]" and "clearly required" it. *McCarthy*, 503 U.S. at 145; *Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins.*, 489 U.S. 561, 579 (1989) (exhaustion is only statutory where the "requirement of exhaustion is … explicit"); *accord Patsy*, 457 U.S. at 502 n.4. Where it has not done so, "sound judicial discretion governs." *McCarthy*, 503 U.S. at 144.

No court has held that Section 503 creates a statutory exhaustion requirement of its own force. In addition to their express statements to that

effect, the judicial character of exhaustion in the ERISA context is evident from the manner in which courts have applied the doctrine. One clear indicator is that courts uniformly recognize that "courts have discretion not to require exhaustion where it would be futile." *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 850 (11th Cir. 1990).[12] By contrast, courts must "not read futility or other exceptions into statutory exhaustion requirements" where Congress has made exhaustion mandatory. *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Another clue is that courts apply exhaustion requirements to all Section 502(a)(1)(B) claims, including those seeking "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," in addition to claims seeking "to recover benefits due" (29 U.S.C. § 1132(a)(1)(B)), which sweep

---

[12] *See also Madera v. Marsh USA, Inc.*, 426 F.3d 56, 62 (1st Cir. 2005); *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993); *McCann v. Unum Provident*, 907 F.3d 130, 151 (3d Cir. 2018); *Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 471-472 (4th Cir. 2011); *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1302 (5th Cir. 1985); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998); *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 680 (7th Cir. 2002); *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1085 (8th Cir. 2009); *Diaz v. United Agr. Emp. Welfare Benefit Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995); *Holmes v. Colo. Coal. for the Homeless Long Term Disability Plan*, 762 F.3d 1195, 1204 (10th Cir. 2014).

obviously beyond Section 503's minimum requirements for benefit-denial procedures. *Id.* § 1133(2).[13]

Section 503, set in ERISA's overall structure, confirms that Congress intended for plans to create procedures (with certain minimum-required elements). *See Aetna*, 542 U.S. at 220 (Section 503 creates "minimum requirements for a plan's claim procedure"); Scott V. Rozmus, *Resolving Statutory Claims Under ERISA: An Analysis of Whether Courts May Permit or Require Litigants to Use Nonjudicial Fora to Resolve Claims Brought Under § 502(a)(3)*, 1994 Det. C.L. Rev. 1027, 1047 ("Congress did not affirmatively *prohibit* plans from using the same procedures that exist for analyzing contractual claims to review alleged violations of ERISA itself."). It would, of course, be "anomalous" for Congress to require the creation of administrative remedies and not "see that those remedies are regularly used." *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980).

---

[13] *E.g.*, *Kirkendall*, 707 F.3d at 178 (applying exhaustion analysis to a "claim for clarification of future benefits"); *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir. 1997) (applying exhaustion requirement to "action[] to clarify rights to benefits"); *Borman v. Great Atl. & Pac. Tea Co.*, 64 F. App'x 524, 526 n.1 (6th Cir. 2003) ("a juridical action to resolve a plaintiff's claimed entitlement to participation in an ERISA plan is subject to the identical … exhaustion requirements … as a claim for unpaid ERISA benefits"); *Moratz v. Reliance Standard Life Ins. Co.*, 152 F.4th 799, 807 (7th Cir. 2025) (requiring exhaustion for actions "to enforce the terms of a plan"); *Woods v. Halliburton Co.*, 49 F. App'x 827, 831 (10th Cir. 2002) (requiring exhaustion for "claims for clarification of future benefits").

Although plaintiffs and amici assume without further analysis that this reasoning applies only to benefits-denial procedures, it is equally anomalous to conclude that Congress wanted *only* the minimum administrative remedies used where a plan creates broader procedures. Consistent with other requirements of ERISA, Section 503 creates "minimum requirements for a plan's claim procedure"; it does not exhaustively specify the scope or features of procedures plans can permissibly adopt. *Aetna*, 542 U.S. at 220. ERISA's structure thus equally directs that *any* procedures a plan permissibly creates for the pre-suit, intra-plan resolution of claims should be used.

This reading of Section 503 is confirmed by ERISA's statutory and legislative history. Section 503 is closely analogous to the section addressing dispute-resolution procedures in the Labor Management Relations Act (LMRA), a statute after which Congress explicitly modeled ERISA. *See* 29 U.S.C. § 173(d); *Pilot Life*, 481 U.S. at 52 (noting "the pre-emptive force of § 502(a) was modeled on the exclusive remedy provided by § 301 of the [LMRA]"); *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987). The LMRA favors internal resolution of labor disputes through procedures made available in private agreements, yet, like ERISA, the statute does not make those procedures a prerequisite to suit. 29 U.S.C. § 173(d). Nevertheless, the congressional "approv[al]" of "contract grievance procedures" "influenced [the

Supreme Court's] decision to require exhaustion" as it applied the "principles of federal common law." *Clayton*, 451 U.S. at 686. And in analyzing Congress's intent for Section 301, courts have concluded that exhaustion of grievance procedures is required both for claims based on violations of the collective bargaining agreement (analogous to benefit denial claims in ERISA), as well as those for violation of the duty of fair representation (analogous to fiduciary duty claims). *See, e.g.*, *Miner v. Local 373*, 513 F.3d 854, 864 (8th Cir. 2008).

In all, Section 503 reinforces the common-sense reason that all courts require exhaustion of Section 502(a)(1)(B) claims: where the plan creates administrative procedures, they should be used before resorting to the courts for the many reasons we have described. *See supra* at 38-41. And that common sense reason applies equally to statutory claims. Section 503 certainly nowhere restricts courts' ability to invoke judicial exhaustion principles when they otherwise make sense. And plaintiffs offer no compelling distinction between a judicially imposed exhaustion requirement for Section 502(a)(1)(B) claims and claims alleging other violations of ERISA.

Nor could they in the context of a case like this one—where the core issues require factual development uniquely within defendants' knowledge, defendants possess the documentation relevant to the transaction in question, and defendants are best situated to address the exercise of their own

"discretion authority" (R.35:15), as the challenged valuation decision in this case (R.35:26) was entrusted to Trustee Urbach's discretion (R.42:38 ("[T]he Trustee will determine fair market value in its own discretion" for "the initial acquisition of Company Stock")); *Firestone*, 489 U.S. at 115 (recognizing more deferential standard of review applies where "the benefit plan gives the administrator or fiduciary discretionary authority"); *McKart*, 395 U.S. at 193-194 (exhaustion requirements are appropriate for challenged decisions that are of a "discretionary nature or frequently require expertise"); *supra* at 38-44 (explaining why exhaustion is appropriate in the ERISA context); *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999) (the doctrine "is necessary to keep from turning every ERISA action, literally, into a federal case").

### 2. Mason *is workable and has engendered significant reliance interests by plans and participants alike.*

The reliance interests affected by overruling *Mason* and its progeny are also significant. In any "cases involving property and contract rights," the "considerations favoring *stare decisis* are 'at their acme'" because "parties are especially likely to rely on such precedents when ordering their affairs." *Kimble*, 576 U.S. at 457. Plans in this circuit, including the ESOP here, certainly relied on this Court's precedent, and ERISA also implicates property (the shares allocated to participants) and contract rights (the plan itself). *See CIGNA Corp.*, 563 U.S. at 443.

The Plan in this case expressly requires exhaustion for statutory claims, and that drafting choice reflects forty years of settled expectations. Overruling *Mason* (at least if such overruling is applied retrospectively) would upset those expectations, frustrating "Congress' … desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." *Varity Corp.*, 516 U.S. at 497. Indeed, the Supreme Court has recognized that "safeguards" like exhaustion "encourage employers and others to undertake the voluntary step of providing medical and retirement benefits to plan participants." *LaRue*, 552 U.S. at 259 (Roberts, C.J., concurring in part). *Mason* has "no doubt engendered substantial reliance interests on the part of plans and fiduciaries." *Id.*

Plaintiffs' countervailing concern (at 34-35) that exhaustion will result in "inequity" because of ERISA's statute of repose cannot undercut this interest. They still have provided no explanation for their failure to exhaust. Their claims are based on information that was available in public filings immediately after the ESOP transaction. *Supra* page 9 n.2. And even if they were not, plaintiffs' own allegations (at 36) that the Administrator "refused to produce information" defeat their claim of inequity; in such cases, ERISA's statute of repose would not begin to run until "after the date of discovery of such breach or violation" (29 U.S.C. § 1113).

Last, the exhaustion requirement has not proved "unworkable," and plaintiffs have not argued otherwise. To the contrary, it is a straightforward rule that is easy to administer.

The standards for overturning precedent have not been met. That is particularly clear because, if *Mason* is wrong, Congress can easily correct it, as it has done in the PLRA.

## C. If the Court overrules *Mason*, it should do so prospectively.

For all the reasons described above, there is no reason the Court should use this case to revisit and overrule *Mason*. If the Court disagrees, however, it should apply its new law prospectively to avoid frustrating ERISA's purposes by unjustly injuring plan sponsors that have reasonably relied on *Mason* for decades.

While holdings are generally applied both to the parties and to other pending cases, the Supreme Court has for centuries permitted courts to announce purely prospective rules of law where justice requires. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-107 (1971) (collecting cases). This Court has reaffirmed the continuing validity of pure prospectivity and has adopted *Chevron Oil*'s three-factor inquiry to "determine whether a newly announced rule in civil cases should apply retroactively or prospectively in the first instance." *Glazner v. Glazner*, 347 F.3d 1212, 1219 (11th Cir. 2003) (en banc).

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. …
>
> Second … [a court must look] to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. …
>
> [Third, a court must look to] the inequity imposed by retroactive application.

*Id.* at 1216 (quoting *Chevron Oil*, 404 U.S. at 106-107). Based on intervening cases, the *Glazner* court clarified that "the second and third prongs … are properly viewed … as objective inquiries that examine the impact of a newly announced rule on the entire class of persons potentially affected by the new rule, rather than the impact on any specific litigant." *Id.* at 1219. Here, all three factors counsel nonretroactive application of any new rule governing exhaustion of ERISA claims like those here.

*First*, a decision overruling *Mason* would plainly establish a new principle of law. *Mason* has been "the law of this circuit" for over forty years. *Glazner*, 347 F.3d at 1220 (recognizing that overruling a 40-year-old precedent satisfied the first prong). If the Court were to "unequivocally abandon[]" that precedent, the first factor would "weigh[] in favor of prospectivity." *Id.*

*Second*, retroactive application of a new rule precluding district courts from requiring exhaustion of statutory ERISA claims would hinder ERISA's

statutory purpose. ERISA represents a "'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Conkright*, 559 U.S. at 517 (quoting *Aetna*, 542 U.S. at 215). Key to Congress's goal of incentivizing the creation of plans was the offer of "a *predictable* set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Moran*, 536 U.S. at 379 (emphasis added). By offering predictability, Congress aimed to avoid creating "a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." *Varity Corp.*, 516 U.S. at 497.

Retroactively applying a bar on exhaustion requirements would frustrate plans' investment-backed expectations formed under the Court's prior rule. Whether or not the "[c]ompelling considerations" discussed in *Mason* are sufficient to support a judicially imposed exhaustion requirement, those considerations illustrate why a *predictable* rule of exhaustion is critical for ERISA plans. *Mason*, 763 F.2d at 1227. Nonjudicial claim resolution procedures, including administrative exhaustion requirements, "reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the

decisionmaking process, and … assist courts if the dispute is eventually litigated." *Id.* ERISA plan sponsors have built their plans and supporting infrastructure around these administrative procedures and this Court's four-decade guarantee that they will be effective. And fidelity to plan terms is "the linchpin" of Congress's design to incentivize the creation of ERISA plans. *Heimeshoff*, 571 U.S. at 108. Retroactive application of an abandonment of *Mason* would frustrate the predictability and concomitant efficiency Congress sought to guarantee to all ERISA sponsors.

*Third*, the equities favor a nonretroactive rule. In assessing this factor, the Court focuses principally on the effects retroactive application would have on liability for existing conduct. *Glazner*, 347 F.3d at 1220. By requiring that plans have an opportunity to correct errors in the first instance, exhaustion requirements help ensure that administrators can plan around predictable liabilities. Retroactively modifying the exhaustion requirement deprives plans of the notice of claims and the opportunity to resolve them to which they were entitled under *Mason*'s rule. The cost to plans could be substantial and would be avoided by nonretroactive application.

Nonretroactivity is also the more equitable outcome because it ensures parties' expectations in ERISA contracts are enforced. *Northlake*, 160 F.3d at 1303. As is typical, the Plan included both a choice of law clause (selecting Georgia law) and a venue clause (requiring suit in the United

States District Court where the company is headquartered). R.42:62 (A216); R.42:82 (A236). Terms like these are a key part of the parties' bargain. *Cf. Northlake*, 160 F.3d at 1303. The parties accepted these terms against the backdrop of governing law in this Circuit. Retroactively applying any over-ruling of *Mason* would thus frustrate the parties' bargain by upsetting the foundations of the parties' agreement—a result avoided by prospective application.

Because all three factors here favor prospectivity, any new rule the Court announces in this case should not apply to this or other pending cases.

## III. THE DISTRICT COURT CORRECTLY DISMISSED WITH PREJUDICE.

Plaintiffs conclude (at 36) with a brief alternative argument that the district court erred in dismissing their complaint without specifically stating that dismissal was without prejudice. The Court should not address this argument. If it does, the Court should either affirm the dismissal with prejudice or, at most, remand to the district court to clarify its dismissal.

**A.** The character of the district court's dismissal was not challenged—or even mentioned—in the petition for rehearing. *See generally* Dkt. 53. It certainly is not encompassed within the narrow question on which this Court ordered en banc review. Dkt. 57. But the Court will not address arguments "outside the scope of the issue that [it] decided to reconsider en banc."

*United States v. Svete*, 556 F.3d 1157, 1170 (11th Cir. 2009) (en banc); *accord Hoever*, 993 F.3d at 1364 n.5; *Yarbrough*, 931 F.3d at 1327.

There is no plausible basis to argue that the question whether dismissal here should have been without prejudice satisfies this Court's stringent criteria for issues deserving en banc review—which is presumably why plaintiffs have not certified that it does. It is thus not appropriate for en banc consideration. *Martin*, 773 F.2d at 1155.

**B.** If the Court reaches this case-specific issue, it should affirm the district court or—at most—remand for clarification.

The district court here was well within its discretion to dismiss with prejudice. That is the relief Inland Fresh sought. R.42-1:19, 25. And there is no doubt that the dismissal *was* with prejudice. Under Federal Rule of Civil Procedure 41(b), unless a dismissal order states otherwise, the dismissal, "except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." Plaintiffs quibble with the clear application of Rule 41(b) based on *Bryant v. Rich*, but the Court there expressly noted that its holding did "not mean … that a failure to exhaust can never correctly result in a dismissal with prejudice." 530 F.3d 1368, 1375 n.11 (11th Cir. 2008). The Court was likely contemplating a case just like this one—where exhaustion of administrative remedies is "absolutely time barred." *Id.*

Should any doubt remain, the proper course is a remand for clarification. *Bolton*, 155 F.4th at 1289. Doing so "avoid[s] any conjecture about what the district court might have intended to do" and allows the district court to decide the issue "in the first instance." *Id.*

## CONCLUSION

The Court should affirm the district court's dismissal.[14]

---

[14] The district court left unresolved several additional grounds for dismissal. Should the Court not affirm, its judgment should only vacate and remand for further proceedings on defendants' motion to dismiss.

Dated: April 17, 2026

Respectfully submitted,

/s/ *Richard Pearl*
RICHARD PEARL
  *Faegre Drinker Biddle & Reath, LLP*
  *320 S. Canal St., Ste. 3300*
  *Chicago, IL 60606*
  *(312) 212-6525*

MARK D. TATICCHI
  *Faegre Drinker Biddle & Reath, LLP*
  *1 Logan Square, Ste. 2000*
  *Philadelphia, PA 19103*
  *(215) 988-2700*

SCOTT ZWEIGEL
WILLIAM JAMES HOLLEY, II
  *Bradley Arant Boult Cummings, LLP*
  *Promenade Tower, 20th Floor*
  *1230 Peachtree St., NE*
  *Atlanta, GA 30339*
  *(404) 868-2002*

*Counsel for Appellee James R. Urbach*

/s/ *Sarah P. Hogarth*
PAUL W. HUGHES
SARAH P. HOGARTH
CHARLES SEIDELL
  *McDermott Will & Schulte LLP*
  *500 North Capitol Street NW*
  *Washington, DC 20001*
  *(202) 756-8000*

THEODORE M. BECKER
  *McDermott Will & Schulte LLP*
  *444 West Lake Street, Ste. 4000*
  *Chicago, IL 60606*
  *(312) 372-2000*

JULIAN L. ANDRÉ
  *McDermott Will & Schulte LLP*
  *2049 Century Park East, Ste. 3200*
  *Los Angeles, CA 90067*
  *(310) 277-4110*

PAUL OLIVER
  *Wimberly, Lawson, Steckel,*
    *Schneider & Stine, P.C.*
  *3400 Peachtree Rd., Ste. 400*
  *Atlanta, GA 30326*
  *(404) 365-0900*

*Counsel for Inland Fresh Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief:

(i) complies with the type-volume limitation of Rule 32(a)(7) because it contains 12,973 words, excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word for Microsoft 365 MSO and is set in New Century Schoolbook LT Std font in a size equivalent to 14 points or larger.

Dated: April 17, 2026                    */s/ Sarah P. Hogarth*

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2026, I electronically filed the foregoing brief with the Clerk of this Court using the CM/ECF system, and counsel for all parties will be served by the CM/ECF system.

Dated: April 17, 2026                    */s/ Sarah P. Hogarth*