No. 24-10084-U

## UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

RANI BOLTON, ALISON MERCKER, JAMES ARMSTRONG, MELISSA SUTER, and BENJAMIN LYMAN, individually and as representatives of a class of participants and beneficiaries on behalf of the INLAND FRESH SEAFOOD CORPORATION OF AMERICA, INC. EMPLOYEE STOCK OWNERSHIP PLAN,

*Plaintiffs-Appellants,*

v.

INLAND FRESH SEAFOOD CORPORATION, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the Northern District of Georgia
Hon. Leigh Martin May
No. 1:22-cv-04602-LMM

## APPELLANTS' EN BANC REPLY BRIEF

Andrew D. Schlichter
Sean E. Soyars
Alexander L. Braitberg
SCHLICHTER BOGARD LLC
100 S. Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115

Attorneys for Plaintiffs-Appellants

*Rani Bolton, et al. v. Inland Fresh Seafood Corp. of Am., Inc., et al.*,

No. 24-10084-U

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT (CIP)**

Pursuant to 11th Cir. R. 26.1-1(a) and 11th Cir. R. 26.1-2(b), the following is

an alphabetical list of additional persons and entities omitted from the CIP

contained in Appellants' En Banc Brief filed March 18, 2026 (ECF No. 61) and the

Amended Certificate of Interested Persons for Defendants-Appellees filed April

17, 2026 (ECF No. 74):

1.  Berry, Jonathan (U.S. Department of Labor, Office of the Solicitor, Solicitor

    of Labor)

2.  Stasko, Stephen (U.S. Department of Labor, Office of the Solicitor,

    Counselor)

3.  Wenger, Edward M. (U.S. Department of Labor, Office of the Solicitor,

    Senior Counselor)

**TABLE OF CONTENTS**

Table of Citations ...................................................................................... ii

Introduction.............................................................................................. 1

Argument ................................................................................................. 2

    I.   Defendants improperly attempt to change the issue.................................. 2

    II.  This appeal does not present the issue of whether contractual exhaustion requirements are enforceable. .................................................. 5

        A.  *Mason* involves judicial exhaustion, not contractual exhaustion. .......... 6

        B.  Defendants have not shown that Plaintiffs are bound by any contractual exhaustion requirement. ....................................................... 9

    III. Defendants fail to show that *Mason* was rightly decided.......................... 17

        A.  ERISA's "silence" does not support a judicial policy-based exhaustion requirement. ....................................................................... 17

        B.  Defendants fail to show the existence of significant reliance interests................................................................................................ 20

        C.  Overruling should apply to this case..................................................... 21

    IV. Plaintiffs properly preserved their argument for dismissal without prejudice. ....................................................................................... 23

Conclusion ............................................................................................... 24

Certificate of Compliance.......................................................................... 25

Certificate of Service ................................................................................ 25

# TABLE OF CITATIONS

**Cases**

*Adams v. Sch. Bd. of St. Johns Cty.*,
57 F.4th 791 (11th Cir. 2022) ........................................................................ 2, 5

*Bickley v. Caremark RX, Inc.*,
461 F.3d 1325 (11th Cir. 2006) ............................................................................ 8

*Bolton v. Inland Fresh Seafood Corp. of Am., Inc.*,
155 F.4th 1272 (11th Cir. 2025) .................................... 1, 5, 8, 9, 14, 15, 21, 22

*Callahan v. United States HHS*,
939 F.3d 1251 (11th Cir. 2019) ............................................................................ 9

*Cedeno v. Sasson*,
100 F.4th 386 (2d Cir. 2024) ............................................................................. 15

*Costello v. United States*,
365 U.S. 265 (1961) ........................................................................................... 24

*Felder v. Casey*,
487 U.S. 131 (1988) ........................................................................................... 20

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989) ..................................................................................... 18, 19

*Glazner v. Glazner*,
347 F.3d 1212 (11th Cir. 2003) .......................................................................... 22

*Harper v. Va. Dep't of Taxation*,
509 U.S. 86 (1993) ............................................................................................. 21

*Henry v. Wilmington Tr., N.A.*,
No. 19-1925 (MN), 2021 U.S. Dist. LEXIS 171927 (D. Del. Sep. 10,
2021) .................................................................................................................. 15

*James B. Beam Distilling Co. v. Georgia*,
501 U.S. 529 (1991) ........................................................................................... 22

*John Blair Communs., Inc. Profit Sharing Plan v. Telemundo Group, Inc.
Profit Sharing Plan*,
26 F.3d 360 (2d Cir. 1994) ................................................................................. 19

*Lanfear v. Home Depot, Inc.*,
536 F.3d 1217 (11th Cir. 2008) ...................................................................... 4, 13

*Mason v. Continental Group, Inc.*,
   763 F.2d 1219 (11th Cir. 1985) ........................................................ 1, 6, 8, 14, 23

*McCarthy v. Madigan*,
   503 U.S. 140 (1992) ................................................................................. 20

*Patsy v. Board of Regents of Fla.*,
   457 U.S. 496 (1982) ................................................................................. 20

*Perrino v. S. Bell Tel. & Tel. Co.*,
   209 F.3d 1309 (11th Cir. 2000) ............................................................... 8

*Smith v. Sydnor*,
   184 F.3d 356 (4th Cir. 1999) ............................................................ 14, 17

*Springer v. Wal-Mart Associates' Grp. Health Plan*,
   908 F.2d 897 (11th Cir. 1990) ................................................................. 8

*Stephens v. Pension Benefit Guar. Corp.*,
   755 F.3d 959 (D.C. Cir. 2014) ..................................................... 17, 18, 19

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ................................................................................. 14

*Sweda v. Univ. of Pa.*,
   923 F.3d 320 (3d Cir. 2019) ..................................................................... 19

*Tussey v. ABB, Inc.*,
   850 F.3d 951 (8th Cir. 2017) ................................................................... 19

*United States v. Sigma Int'l., Inc.*,
   300 F.3d 1278 (11th Cir. 2002) ............................................................... 23

*Williams v. Shapiro*,
   161 F.4th 1313 (11th Cir. 2025) .............................................................. 16

**Statutes**

29 U.S.C. § 1001(b) ........................................................................... 20, 23

29 U.S.C. § 1104(a)(1) ............................................................................ 19

29 U.S.C. § 1108(b)(17)(B)(ii) .......................................................... 13, 19

29 U.S.C. § 1109(a) ................................................................................. 15

29 U.S.C. § 1110(a) ................................................................................. 20

29 U.S.C. § 1132(a)(1)(B) ....................................................................... 18

29 U.S.C. § 1132(e)(2) ............................................................................ 21

29 U.S.C. § 1133.................................................................................. 11, 12, 14, 17

**Rules**

11th Cir. R. 40-11 ........................................................................................ 23

11th Cir. R. 40-6 .......................................................................................... 10

**Regulations**

29 C.F.R. § 2560.503-1 ........................................................................... 11, 12

## INTRODUCTION

Throughout the litigation and until this en banc proceeding—in four motions to dismiss and a motion for attorney fees in the district court, and their brief in this Court—Defendants took the position that this case was about enforcing "*the Eleventh Circuit's*" judicially created and policy-based administrative exhaustion requirement for ERISA claims, first adopted in *Mason v. Continental Group, Inc.*, 763 F.2d 1219 (11th Cir. 1985).[1] The district court understood that to be Defendants' argument,[2] as did the panel in affirming dismissal.[3]

Now that the Court has granted en banc rehearing explicitly to consider whether to "overrule" *Mason*'s "administrative exhaustion requirement for plaintiffs bringing fiduciary-breach and statutory claims under ERISA," ECF No. 57, Defendants seek to change the issue. Apparently anticipating *Mason*'s demise, Defendants now change course, essentially asserting that any judicial exhaustion requirement is irrelevant because even if it did not exist, Plaintiffs as a factual

---

[1] *See, e.g.*, Mem. at 14 (Doc. 42-1) (arguing that Plaintiffs failed to comply with "*the Eleventh Circuit's* long-standing exhaustion requirement"); Mem. at 1 (Doc. 57-1) (referring to "*the Eleventh Circuit's* well-established administrative exhaustion requirement") (emphases added). "Doc." refers to the district court ECF Document Number.

[2] Appendix, A244 ("Exhaustion is Required *in this Circuit*.") (emphasis added).

[3] *Bolton v. Inland Fresh Seafood Corp. of Am., Inc.*, 155 F.4th 1272, 1278 (11th Cir. 2025) ("In 1985, *our Circuit* grafted an administrative exhaustion requirement onto the Employee Retirement Income Security Act," which "applies across the spectrum of ERISA claims, for benefits due under a retirement plan and for substantive violations of ERISA.") (emphasis added).

matter contractually agreed to exhaust administrative remedies before filing suit for breach of fiduciary duty.

Defendants' attempt to change the issue at the en banc rehearing stage is improper, and meritless in any event. This appeal presents no occasion for the Court to address contract-based exhaustion (a question outside the scope of the en banc briefing order), as the record does not support Defendants' fact-bound argument that Plaintiffs agreed to such a prerequisite to suit. When they get around to addressing the actual question presented, Defendants' efforts to salvage *Mason*'s atextual, policy-based exhaustion requirement for fiduciary breach claims are unavailing. Accordingly, the Court should overrule *Mason*, reverse the district court's dismissal on exhaustion grounds, and remand the case for further proceedings.

## ARGUMENT

### I.     Defendants improperly attempt to change the issue.

When a party proceeds under one theory throughout the litigation, the Court has declined to allow the party to raise new issues at the en banc rehearing stage, instead limiting review to the questions in the en banc briefing notice. *See, e.g.*, *Adams v. Sch. Bd. of St. Johns Cty.*, 57 F.4th 791, 799 & n.2 (11th Cir. 2022) (limiting review to challenge to bathroom policy and excluding new challenge to enrollment documents policy where appellee had "centered the district court

litigation on the bathroom policy" and maintained on appeal "that this lawsuit was about" the bathroom policy "until this en banc proceeding after two prior opinions had been vacated").

Here, until their en banc brief, Defendants argued throughout the litigation that this case is about the Eleventh Circuit's *judicial* exhaustion requirement. In their motions to dismiss the original complaint, the Inland Fresh Defendants and trustee Urbach both argued that "*the Eleventh Circuit*" requires plaintiffs "to exhaust their administrative remedies before filing an ERISA suit," citing *Mason*'s "policy rationales" and "Congressional intent." Inland Mem. at 1, 9 (Doc. 25-5); *id*. at 10 ("*The Eleventh Circuit* requires an ERISA plaintiff to affirmatively plead exhaustion or an exception to the rule on the face of the complaint."); Urbach Mem. at 1 (Doc. 26-1) (arguing that "exhaustion is required *in the Eleventh Circuit*" based on "important *policy* rationales") (emphases added). They repeated the same arguments in seeking to dismiss the amended complaint. Inland Mem. at 1–2 (Doc. 42-1) (asserting that exhaustion was required "under long-standing *Eleventh Circuit precedent*"); *id*. at 6 ("*The Eleventh Circuit* has long held" that exhaustion is required based on "policy rationales"); *id*. at 8, 10, 14 (referring to "the Eleventh Circuit's exhaustion requirement"); Urbach Mem. at 3 (Doc. 40-1) (invoking "*the Eleventh Circuit's* exhaustion requirement") (emphases added). While Defendants referenced the Plan's terms in passing to show that

administrative procedures were available to Plaintiffs, Inland Mem. at 10–11 (Doc. 25-5), they made no argument that the Plan alone, divorced from "the Eleventh Circuit's" judicial policy-based exhaustion requirement, established a contractual basis for dismissal on exhaustion grounds.

In granting Defendants' motions, the district court relied solely on the Eleventh Circuit's judicial exhaustion requirement. A244 ("Exhaustion is Required *in this Circuit.*") (emphasis added). The court stated that "[t]he law is clear *in this circuit* that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court" (A244–45, quoting *Lanfear v. Home Depot, Inc.,* 536 F.3d 1217, 1223 (11th Cir. 2008)), noting that "the Eleventh Circuit may be unique" in that regard (A253) (emphasis added). It repeatedly referenced *Mason*'s "policy reasons" in declining to excuse exhaustion or stay dismissal. A250, A252–53. It referenced the Plan language only to address Plaintiffs' argument that *exceptions* to the judicial exhaustion requirement applied. A247–48.

Thereafter, Defendants sought attorney fees on the ground that Plaintiffs purportedly ignored "precedent" by filing suit despite "*the Eleventh Circuit's* long-standing exhaustion requirement." Mem. at 1–2 (Doc. 57-1). The motion said nothing about breaching any supposed "contractual" exhaustion obligation.

Defendants' brief in this appeal likewise relied on "*this Court's precedent*" requiring exhaustion, reciting the policy considerations that this Court has

4

"repeatedly emphasized" since *Mason*. Br. at 16–19 (ECF No. 28) (emphasis added). The panel's opinion understood that Defendants' argument for dismissal hinged on the exhaustion requirement that *Mason* judicially "grafted" onto ERISA based on "policy considerations" and "Congressional intent." *Bolton*, 155 F.4th at 1278–79. The panel discussed the Plan language only in the context of addressing Plaintiffs' arguments that the district court "clearly abused" its discretion in not finding an *exception* to that judicial exhaustion requirement. *See id*. at 1284–85.

Now that the Court has granted en banc rehearing after Judge Jordan's concurring opinion summarizing "a number of good reasons for overruling *Mason*," *id*. at 1289, Defendants' en banc brief advances a completely different theory than the one they have advanced throughout the litigation. They now primarily contend that exhaustion was required by "contract" rather than a judicial, policy-based requirement grounded in precedent. Defs.' En Banc Br. at 1–2, 13–30. This fact-based argument seeks to substantially alter the issue on which the Court granted rehearing and was forfeited or waived by virtue of Defendants not raising it until en banc rehearing. *See Adams*, 57 F.4th at 799 & n.2. Thus, the Court should decline to consider it.

## II. This appeal does not present the issue of whether contractual exhaustion requirements are enforceable.

In addition to Defendants' forfeiture, the new contractual exhaustion issue that Defendants seek to inject is not presented here. Defendants concede, as they must,

that *Mason* "invoked judicial exhaustion." Br. 19. Thus, whether affirmance is possible on grounds of contractual exhaustion is outside the scope of the briefing order. Moreover, Defendants have not established the fact-intensive premise that Plaintiffs contractually agreed to exhaust administrative remedies before filing suit for breach of fiduciary duty. Accordingly, this case presents no occasion for this Court to render an advisory opinion as to whether "contractual exhaustion requirements" are generally enforceable under ERISA. *See* Defs.' En Banc Br. at 22.

### A.   *Mason* **involves judicial exhaustion, not contractual exhaustion.**

The en banc briefing notice is limited to the question of whether the Court should "overrule *Mason v. Continental Group, Inc.*, 763 F.2d 1219 (11th Cir. 1985), which imposed an administrative exhaustion requirement for plaintiffs bringing fiduciary-breach and statutory claims under ERISA." ECF No. 57. Defendants seek to bring their new argument within the scope of the notice by arguing that the Court need only "reaffirm *Mason* as requiring exhaustion of mandatory contractual procedures." Br. at 13. But to do so would not be to "reaffirm *Mason*," but to rewrite it.

As Defendants acknowledge, *Mason* "invoked judicial exhaustion." *Id*. 19; 33 (acknowledging "*Mason*'s judicial-exhaustion underpinnings"). Defendants contend that *Mason* nevertheless rests on a "contract-based foundation" because

the Court recited the pension plan's appeal procedure before holding that the plaintiffs were required to exhaust the plan's administrative remedies. Br. 19–20. The flaw in Defendants' argument is that nothing in the opinion suggests that the Court concluded that the "plaintiffs' claims for breach of defendants' fiduciary duties and fraudulent use of the pension plan" were within the scope of the appeals procedure as a matter of *contract*. *See id*. at 1226.

In fact, the opposite is true. As to the non-ERISA claims, the Court explicitly concluded that the claims were within the scope of the collective bargaining agreement's arbitration provision, which was "quite broad" and thus encompassed even "arguably extrinsic" claims such as fraud. *Id.* at 1223–24. The opinion contains no similar conclusion that the ERISA claims for breach of fiduciary duty and unlawful retaliation fell within the scope of the pension plan's much narrower appeals procedure, which was limited to disputes regarding "application for, entitlement to or the amount of payment" under the plan. *See id*. at 1226. The clear implication is that the Court did *not* find the ERISA claims to be covered by the appeals procedure. The Court thus turned to the reasoning of other appellate decisions, ultimately holding that policy considerations and its view of Congressional intent supported an exhaustion requirement for such claims. *Id*. If the plaintiffs' claims were subject to exhaustion as a contractual matter, it would have been unnecessary to resort to policy. Accordingly, Defendants' assertion that

the Court can somehow merely "reaffirm" that *Mason* requires exhaustion of mandatory contractual procedures is simply wrong.

Defendants' position is further undermined by their failure to cite a single case that has interpreted *Mason* as merely establishing a rule of contract enforcement. As Defendants' brief before the panel stressed, this Court has "repeatedly emphasized" that *Mason*'s exhaustion requirement derives from policy concerns, not contractual obligations. *See* Defs.' Br. at 17 (ECF No. 28) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1330 (11th Cir. 2006), in turn quoting *Mason*, 763 F.2d at 1227). The panel likewise interpreted *Mason*'s exhaustion requirement as being based on "policy considerations" and "Congressional intent," as have other decisions of this Court. *Bolton*, 155 F.4th at 1279; *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) ("This [exhaustion] rule is grounded in several important policy rationales, and also is consistent with Congressional intent. As we explained in *Mason* . . . ."); *Springer v. Wal-Mart Associates' Grp. Health Plan*, 908 F.2d 897, 900 (11th Cir. 1990) ("The very premise of *Mason*" is that "*a strong policy* favoring such exhaustion underlies the statutory scheme.") (citing *Mason*, 763 F.2d at 1227) (emphasis added).

Unable to identify any relevant precedent construing *Mason* as establishing a contract-based exhaustion rule, Defendants cite various cases enforcing ERISA plan terms on *other* subjects, such as statutes of limitation, venue clauses, and

choice of law. Br. 17–18. These cases have nothing to do with whether *Mason*'s

policy-based exhaustion requirement should be overruled. Simply put, reaching

these contract-based arguments would require substantially rewriting the en banc

briefing notice. The Court should decline to do so.

**B.      Defendants have not shown that Plaintiffs are bound by any contractual exhaustion requirement.**

As Defendants never sought dismissal on contract grounds, the "unavoidably

fact-sensitive" question of whether Plaintiffs are contractually bound by a

supposed plan-based exhaustion requirement should be directed to the district court

in the first instance at summary judgment. *See Callahan v. United States HHS*, 939

F.3d 1251, 1266 (11th Cir. 2019) (remanding fact-dependent questions to district

court because court of appeals is "a court of review, not a court of first view"). If

the Court were to consider the issue now (which it should not), the existing record

does not support Defendants' position that the Plaintiffs themselves are bound by,

or that their breach of fiduciary duty claims are subject to, any plan-based

exhaustion requirement.

Defendants' assertion (Br. 25–29) that the panel held that the Plan includes a

mandatory exhaustion provision for all ERISA claims misunderstands the decision.

The issue before the panel was whether the district court "clearly abused" its

discretion in rejecting Plaintiffs' argument "that the plan itself" affirmatively

*excused* them from complying with *Mason*'s exhaustion requirement. *Bolton*, 155

F.4th at 1284. Against the backdrop of *Mason*'s default rule that the entire "spectrum of ERISA claims" is subject to a mandatory judicial exhaustion requirement, the panel found no clear abuse of discretion in the district court's conclusion that the plan language did not excuse Plaintiffs' compliance with *Mason*. *Id.* at 1278, 1284–85. That is a far cry from Defendants' interpretation that the panel effectively held that the Plan would affirmatively compel exhaustion as a matter of contract irrespective of *Mason*. Indeed, the panel understood that the enforceability of the plan as a matter of contract was not at issue. *Id.* at 1285 ("[T]he issue is not before us.").

Defendants also mistakenly assert that the panel's discussion of the issue should be reinstated because Plaintiffs did not challenge it in their rehearing petition or en banc brief. Br. 25–26. But in the same breath, Defendants acknowledge that it would have been *inappropriate* to raise such a fact-intensive question under the rules governing en banc review. *See* 11th Cir. R. 40-6. And Plaintiffs had no reason to challenge the panel's (vacated) discussion in their en banc brief because the question of whether the Plan language excused compliance with *Mason* is beyond the scope of whether *Mason* should be overruled. In that regard, Defendants' assertion (at 26) that it is "inappropriate" to consider issues "not specifically raised" in the en banc petition simply proves Plaintiffs' point that the Court should disregard Defendants' new contract-based arguments.

In any event, if viewed as a matter of contract, the record does not support Defendants' position that Plaintiffs were contractually obligated to exhaust administrative remedies before filing suit for breach of fiduciary duty. Defendants rely on two portions of the Plan: (1) "Claims and Review Procedures," and (2) "a later arbitration provision." Neither provision supports Defendants' view.

As discussed in the Secretary of Labor's amicus brief, the Plan's Claims and Review Procedures are designed "for deciding whether participants *are entitled to benefits*" and "reviewing benefit grievances." *i.e*., 29 U.S.C. § 1132(a)(1)(B) claims. DOL En Banc Br. 12. The procedures are "facially inapplicable" to Plaintiffs' claims that Defendants breached their fiduciary duties by causing the Plan to overpay for Inland Fresh stock. *Id*. at 12–13. The Plan's procedures are also inadequate; they "*cannot* give Plaintiffs the relief they seek" because only courts, not plan administrators, have authority to impose personal liability on breaching fiduciaries to restore plan losses. *Id*.; *see* 29 U.S.C. § 1109(a).

Indeed, the Plan's Claims and Review Procedures is clearly modeled on the Secretary's claims-procedure regulation. 29 C.F.R. § 2560.503-1. The regulation implements the statutory requirement that "every employee benefit plan shall" include administrative review procedures "[i]n accordance with regulations of the Secretary." 29 U.S.C. § 1133 (emphasis added). The regulation "sets forth minimum requirements for employee benefit plan procedures pertaining to *claims*

11

*for benefits* by participants and beneficiaries." 29 C.F.R. § 2560.503-1(a) (emphasis added). As the Secretary previously explained, the procedures required by this regulation "are simply not designed for statutory claims." Pls.' Br. 26 & n.9 (citing ECF No. 32, Br. for Acting Sec'y of Labor as Amicus Curiae Supporting Pls-Appellants' Pet. for Initial Hearing En Banc at 10 (May 22, 2024)). Attempting to "contort[] benefits-claim review procedures to apply to ERISA statutory violations is illogical," as illustrated by this case. DOL En Banc Br. 12.

The regulation defines a "claim for benefits" as a "request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims." 29 C.F.R. § 2560.503-1(e). The Plan's Claims and Review Procedures use nearly identical language, stating that they apply only to "Benefit Claims," defined as "a request for a Plan benefit or benefits, made by a Claimant, that complies with the Plan's procedures for making benefit claims." A223. Given that this definition is based on a minimum regulatory requirement a holding that the Plan here requires exhaustion of fiduciary breach claims as a matter of contract would necessarily apply to "every employee benefit plan" in the United States. 29 U.S.C. § 1133. It cannot be the case that complying with minimum regulatory requirements which the Secretary promulgated and interprets as applying to plan-based claims for benefits only and "illogical" as applied to statutory claims somehow creates a mandatory contractual exhaustion duty for statutory claims.

Defendants further assert (at 27–28) that the Claims and Review Procedures can be read to encompass Plaintiffs' claims because *other* Plan provisions grant the administrator the authority to "decide all questions" arising in its administration, A212, and prohibit the fiduciaries from violating "any provision of ERISA" or paying more than "fair market value" for Company stock, A192. The prohibition on violating ERISA or paying more than "fair market value" merely recites statutory standards that would govern Defendants' conduct regardless of the Plan language. *See* 29 U.S.C. § 1108(b)(17)(B)(ii) (exemption from liability if plan pays no more than "fair market value" for stock that is not publicly traded). Including such provisions in the Plan does not transform breach of fiduciary duty claims into "Benefit Claims" within the meaning of the Plan's Claims and Review Procedures or the Secretary's regulation. Reading the term "Benefits Claim" to encompass fiduciary breach claims obliterates any distinction between plan-based denials of benefits and statute-based fiduciary-breach claims.

But even if the term "Benefit Claims" encompasses the breaches of fiduciary duty that Plaintiffs assert, that would establish only the "availability" of an administrative remedy, *Lanfear*, 536 F.3d at 1224, not a contractual *obligation* to exhaust. Defendants cite nothing in the Plan supporting such a duty as a matter of contract for fiduciary breach claims. As a matter of statutory interpretation, the mere availability of an administrative remedy for claims for benefits that have been

denied carries an implied obligation to exhaust, because it would be "anomalous" if Congress required such remedies in 29 U.S.C. § 1133 without intending that courts would "see that those remedies are regularly utilized." *Smith v. Sydnor*, 184 F.3d 356, 364 (4th Cir. 1999) (citation omitted). That logic does not extend to the contractual exhaustion context, given that there is no "statutory mandate for benefit plans to provide review of claims for violation of ERISA itself," *id*., as even *Mason* recognizes, 763 F.2d at 1227, particularly when the text of the agreement otherwise states that an administrative claim is *not* required (A214 (§ 8.10).

That leaves the "later arbitration provision." Defs.' En Banc Br. 28. Although this provision does indeed suggest that fiduciary-breach claims are subject to the Plan's Claims and Review Procedures, A233, it is invalid or unenforceable. The panel acknowledged that the arbitration provision is the only part of the Plan "explicitly" subjecting fiduciary-breach claims to an exhaustion requirement, but declined to address its contractual validity due to a lack of circuit precedent and because the issue was not before the Court. *Bolton*, 155 F.4th at 1285.

If the issue is now before the Court based on Defendants' new contract-based argument, the arbitration provision is invalid or unenforceable for two reasons. *First*, arbitration is strictly "a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 681 (2010). Each of the named Plaintiffs is a *former* employee of Inland Fresh. A62–A63 (Am. Compl. ¶¶ 20–24). Nothing in

14

the record shows that Defendants provided appropriate notice of the arbitration provision to any of the named Plaintiffs, let alone that all five of them agreed to be bound by it. *See, e.g.*, *Henry v. Wilmington Tr., N.A.*, No. 19-1925 (MN), 2021 U.S. Dist. LEXIS 171927, at *13 (D. Del. Sep. 10, 2021), *aff'd on other grounds*, 72 F.4th 499 (3d Cir. 2023) (denying motion to compel arbitration of ERISA claims due to a lack of evidence that "notice was provided to any of the Plan participants when the Plan later adopted the arbitration provision in 2017" or that plaintiff had the "the necessary intent to manifest assent.").

*Second*, even assuming that all five Plaintiffs would otherwise be bound, the arbitration provision contains a class action waiver that is invalid because it purports to limit Plaintiffs to "individual" relief (thereby precluding the pursuit of statutory rights to seek plan-wide relief under 29 U.S.C. § 1109(a)), thus rendering the entirety of Section 14.1 "null and void in all respects." A234. The panel acknowledged that other circuits had invalidated nearly identical provisions, but noted that this Circuit had not yet reached the issue. *Bolton*, 155 F.4th at 1285; *see Cedeno v. Sasson*, 100 F.4th 386, 406–07 (2d Cir. 2024) (joining Third, Seventh, and Tenth Circuits in invalidating similar class action waivers in ERISA cases).

After the panel's opinion in this case, this Court joined six other circuits in holding that a nearly identical arbitration provision was unenforceable because it "forbids the plaintiffs from asserting substantive rights (like plan-wide relief)

under ERISA." *Williams v. Shapiro*, 161 F.4th 1313, 1321 (11th Cir. 2025). The Plan's arbitration provision suffers from the same infirmity. A233 (purporting to prohibit participants from proceeding "in a representative capacity" or seeking or receiving "monetary or other relief" on behalf of anyone other than the claimant); *cf. Williams*, 161 F.4th at 1316–17, 1320–22 (quoting nearly identical language and explaining that 29 U.S.C. § 1109(a) authorizes plan-wide monetary and equitable remedies). By its own terms, this renders Section 14.1 "null and void in *all* respects." A234 (emphasis added); *see Williams*, 161 F.4th at 1323 (invalidating arbitration procedure "entirely" based on identical language). Accordingly, Defendants cannot rely on an unenforceable legal nullity to create a contractual exhaustion requirement that exists nowhere else in the Plan.

Defendants try to brush off *Williams* in a footnote, insisting that even if Section 14.1 is unenforceable, the language of the provision is nevertheless relevant evidence that the provision is merely "importing existing procedures that are already mandatory." Br. 29 n.9. But as discussed, no other provision of the Plan remotely suggests that claims for breach of fiduciary duty are subject to mandatory pre-suit claims procedures. *See supra*, pp. 11–13. If the Plan terms already mandated exhaustion for fiduciary breach claims, it would have been unnecessary to amend the Plan to say so explicitly.

16

## III. Defendants fail to show that *Mason* was rightly decided.

### A. ERISA's "silence" does not support a judicial policy-based exhaustion requirement.

Defendants' principally argue that *Mason* was rightly decided because courts have discretion to adopt judicial exhaustion rules when a statute is otherwise "silent" on the question. Br. 34–38. Defendants overstate both ERISA's "silence" and the extent of judicial discretion to fashion exhaustion rules.

While ERISA may not expressly mandate exhaustion, it is not "silent" on the issue of administrative review procedures. *See* 29 U.S.C. § 1133. This provision is the very reason that other courts of appeals have uniformly adopted a judicial exhaustion requirement for denial of benefits claims. *See* Pls' En Banc Br. at 6; *Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 964 (D.C. Cir. 2014) ("The exhaustion doctrine effectuates Congress's purpose in requiring that benefit plans provide for administrative review procedures by ensuring those internal remedial procedures are utilized."). Thus, because an implied exhaustion requirement for denial-of-benefits claims is grounded in ERISA's text, Defendants' assertion (at 34) that Plaintiffs' argument "would undo exhaustion requirements for benefit claims as well" is incorrect. In short, while judicial exhaustion requirements for denial-of-benefits claims have an arguable textual basis in § 503, that reasoning does not apply to fiduciary breach and statutory claims. Pls.' En Banc Br. 25–26; *Sydnor*, 184 F.3d at 364–65 ("It follows,

17

therefore, that if there is no statutory requirement for an appeals procedure respecting claims not involving benefits, the logic of the exhaustion requirement no longer applies.").

Defendants retort that although § 503's review requirement only explicitly applies to some § 502(a)(1)(B) claims (concerning the denial of benefits), courts have nevertheless applied an exhaustion requirement to *all* claims under that provision, such as those seeking to "enforce" or "clarify" rights under a plan. Br. 46–47. What the different types of § 502(a)(1)(B) claims have in common is that they are all based on "the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Thus, the same rationale for requiring exhaustion for plan-based denial-of-benefits claims applies to plan-based enforcement or clarification claims: their proper resolution requires interpreting the plan's terms, an area within the "particular expertise" of plan administrators. *Stephens*, 755 F.3d at 966. Plans may grant the administrator "power to construe disputed or doubtful terms," and in such cases "the trustee's interpretation will not be disturbed if reasonable." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989).

Fiduciary-breach claims are different in kind because they are not based on the language of the plan, but on substantive requirements of the statute. In that regard, Defendants' assertion (Br. 44–45) that so-called "*Firestone* deference" should be extended to fiduciary breach claims because the trustee had "discretion" to value

the stock misses the mark. *Firestone* explicitly limited its holding to "the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations." 489 U.S. at 108. The Court "express[ed] no view as to the appropriate standard of review for actions under other remedial provisions of ERISA." *Id.*

While a plan may properly grant discretion to a trustee to interpret its terms, a trustee cannot be granted discretion to determine whether its own conduct violates a substantive statutory requirement such as ERISA's prudence, loyalty, or fair-market value standards (29 U.S.C. §§ 1104(a)(1), 1108(b)(17)(B)(ii)), which is a task for the judiciary. *See Stephens*, 755 F.3d at 966; *see also Tussey v. ABB, Inc.*, 850 F.3d 951, 958 (8th Cir. 2017) ("[T]he choice of whose interests to favor, the plans' or their own, was not one over which the ABB fiduciaries could claim any discretion."); *Sweda v. Univ. of Pa.*, 923 F.3d 320, 333 (3d Cir. 2019) ("Fiduciary discretion must be exercised within the statutory parameters of prudence and loyalty," which impose a fiduciary standard that is considered 'the highest known to the law.'") (citation omitted); *John Blair Communs., Inc. Profit Sharing Plan v. Telemundo Group, Inc. Profit Sharing Plan*, 26 F.3d 360, 369 (2d Cir. 1994) (holding that *Firestone* did not apply to fiduciary breach claims, as "[a]ny other rule would allow plan administrators to grant themselves broad discretion over all matters concerning plan administration, thereby eviscerating ERISA's statutory

command that fiduciary decisions be held to a strict standard."). Any plan term that purports to grant the trustee discretion to discharge his duties in a way that violates ERISA would be "void as against public policy." 29 U.S.C. § 1110(a).

Defendants also overstate courts' discretion to judicially require exhaustion. "[E]ven in this field of judicial discretion, appropriate deference to Congress' power to prescribe the basic procedural scheme under which a claim may be heard in a federal court requires fashioning of exhaustion principles in a manner consistent with congressional intent and any applicable statutory scheme." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Because ERISA is not silent on the issue of appeals procedures and adopted them for denial-of-benefits claims only, extending them to other types of claims is inconsistent with Congressional intent. Pls.' En Banc Br. 24–25. Imposing exhaustion on fiduciary-breach claims also inconsistent with Congressional intent that plan participants would have "ready access to the Federal courts." 29 U.S.C. § 1001(b). Finally, the policy considerations on which Defendants rely as justifying *Mason*'s exhaustion rule "are best left to 'Congress' superior institutional competence.'" *Felder v. Casey*, 487 U.S. 131, 149 (1988) (quoting *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 513 (1982)).

**B.      Defendants fail to show the existence of significant reliance interests.**

As the party seeking to uphold an otherwise legally invalid rule, the burden of

showing the presence of significant reliance interests should be squarely on Defendants. Yet Defendants rely solely on speculation and the bald assertion that plans in this circuit "certainly relied on" *Mason*'s exhaustion requirement. Br. 50–51. Defendants' reliance theory is dubious at best. Because the Eleventh Circuit "stands alone in requiring mandatory exhaustion for fiduciary-breach and statutory claims under ERISA." *Bolton*, 155 F.4th at 1291 (Jordan, J., concurring)—a rule squarely rejected by seven sister circuits, including every court to address the issue since *Mason*—any employer with a presence outside of this circuit certainly could not have justifiably relied on an expectation that fiduciary-breach claims against it would be subject to exhaustion. *See* 29 U.S.C. § 1132(e)(2) (proper venue includes any district where the defendant "may be found"). Even purely local employers would have understood that litigation would likely ensue after the participant exhausts internal procedures. Such minimal reliance interests do not justify preserving *Mason*.

### C. Overruling should apply to this case.

Defendants fail to justify a departure from the "normal rule of principle "that a rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 96 (1993). "After the case announcing any rule of federal law has 'applied that rule with respect to the litigants' before the

21

court, no court may 'refuse to apply [that] rule . . . retroactively.'" *Id*. (quoting

*James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 540 (1991) (opinion of

Souter, J.)). Although *Glazner* held that *Harper* and *Beam* do not completely

preclude prospective application, these cases show that "prospectivity appears to

have fallen into disfavor with the Supreme Court." *Glazner v. Glazner*, 347 F.3d

1212, 1216 (11th Cir. 2003).

To justify pure prospectivity, Defendants would have to show something along

the lines of severe injustice from adhering to the presumption of retroactivity, but

they come nowhere close to making that showing. In *Glazner*, for instance, the

defendant and those similarly situated faced significant liability for punitive

damages based on past conduct based on the newly announced rule of federal law,

which overruled "clear past precedent." *Id*. at 1220. Yet that did not justify

prospective application given that retroactive application furthered the statute's

purpose and numerous state laws already governed such conduct. *Id.* at 1220–21.

Here, although overruling *Mason* would establish a new rule of law, exhaustion

pertains solely to a procedural requirement rather than a new substantive liability

that fiduciaries did not anticipate. Moreover, because the Eleventh Circuit "stands

alone in requiring mandatory exhaustion for fiduciary-breach and statutory claims

under ERISA." *Bolton*, 155 F.4th at 1291 (Jordan, J., concurring), any employer

with multi-circuit operations likely did not rely on *Mason*'s continuing viability.

Retroactive application also furthers ERISA's primary purpose of protecting participants and is consistent with the "ready access to the Federal courts" that Congress intended. 29 U.S.C. § 1001(b). Prospective application would also be inequitable to fiduciary-breach litigants like Plaintiffs whose substantive rights may be lost because critical information was concealed until there was insufficient time to exhaust administrative procedures before the repose period would have run. *See* Pls.' Br. 35–36.[4] Thus, the normal retroactivity rules should apply.

## IV. Plaintiffs properly preserved their argument for dismissal without prejudice.

Defendants criticize Plaintiffs for making the alternative argument that the district court erred in not dismissing without prejudice if *Mason* is not overruled, which Defendants contend is outside the scope of the en banc briefing notice. Br. 56–57. While the order directed the parties to "focus" on the question of overruling *Mason*, it did not *prohibit* Plaintiffs from preserving other points decided by the panel. Given that the effect of the order granting en banc review is to vacate the panel opinion, 11th Cir. R. 40-11, and deprive it of "any remaining force," *United States v. Sigma Int'l., Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002), Plaintiffs

---

[4] Defendants simplistically claim that Plaintiffs had enough information to pursue their claims based on disclosure of the purchase price in publicly available annual reports. Br. 9 n.2. Whether the price of a privately held stock was artificially *inflated* (the claim here) requires access to more than just the face value of the transaction.

reasonably preserved their position that anything other than an outright reversal based on overruling *Mason* should be accompanied by a dismissal without prejudice, a result compelled by *Costello v. United States*, 365 U.S. 265, 285 (1961), which Defendants ignore.

## CONCLUSION

The Court should reverse the district court's dismissal on exhaustion grounds and remand for further proceedings on the merits of Plaintiffs' claims.

May 8, 2026

Respectfully submitted,

/s/ *Sean E. Soyars*
Andrew D. Schlichter
Sean E. Soyars
Alexander L. Braitberg
SCHLICHTER BOGARD LLC
100 S. Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115

Attorneys for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

1. I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 5,478 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 Word Times New Roman 14-point font.

s/ *Sean E. Soyars*
Sean E. Soyars
Attorney for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

On May 8, 2026, I electronically filed and served this brief via CM/ECF.

s/ *Sean E. Soyars*
Sean E. Soyars
Attorney for Plaintiffs-Appellants